M987HWAC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

    v.         22 Cr. 240 (AKH)

SUNG KOOK HWANG and
PATRICK HALLIGAN,


     Defendants.
              Conference
------------------------------x

             New York, N.Y.
             September 8, 2022
             12:00 p.m.

Before:


      HON. ALVIN K. HELLERSTEIN,

             District Judge


        APPEARANCES

DAMIAN WILLIAMS
  United States Attorney for the
  Southern District of New York
BY: ANDREW M. THOMAS
  MATTHEW D. PODOLSKY
  Assistant United States Attorneys

GIBBONS, PC
  Attorney for Defendant Hwang
BY: LAWRENCE S. LUSTBERG
  JEFFREY L. NAGEL
  THOMAS R. VALEN

FRIEDMAN KAPLAN SEILER & ADELMAN, LLP
  Attorneys for Defendant Halligan
BY: MARY E. MULLIGAN
  TIMOTHY M. HAGGERTY

M987HWAC

```
 1              (Case called)
 2              MR. THOMAS:  Good morning, your Honor.
 3              Andrew Thomas and Matthew Podolsky on behalf of the
 4    United States.
 5              THE COURT:  Who is going to speak?
 6              MR. THOMAS:  I am, your Honor; Andrew Thomas.
 7              MR. LUSTBERG:  Good afternoon, your Honor.
 8              Lawrence S. Lustberg from Gibbons, PC.  With me are my
 9    partners, Thomas R. Valen and Jeffrey Nagel, on behalf of
10    Mr. Hwang.
11              THE COURT:  Good afternoon, everybody.
12              MS. MULLIGAN:  Good afternoon, your Honor.
13              Mary Mulligan from Friedman Kaplan.  With me is my
14    colleague, Tim Haggerty, on behalf of Patrick Halligan.
15              THE COURT:  Okay.  The defendant's not present?
16              MR. LUSTBERG:  Mr. Hwang is present, your Honor.
17              SPEAKER8:  Your Honor, Mr. Halligan is present as
18    well.
19              THE COURT:  Thank you.  Good afternoon.
20              Okay.  Mr. Thomas, what are we doing today?
21              MR. THOMAS:  Your Honor, a lot has happened since we
22    were last before the Court.  The government has made a number
23    of substantial discovery productions and has completed its
24    Rule 16 productions.
25              THE COURT:  If you would sit down and speak louder, it
```

M987HWAC

1  would be easier for me.

2          MR. THOMAS:  Yes, your Honor.

3          The government has completed its Rule 16 productions.

4  In addition, we have filed a 12-page letter, at the Court's

5  suggestion detailing with great specificity a number of the

6  misstatements and misrepresentations that defendants made or

7  caused to be made during the course of their conspiracies and

8  schemes.  We think where that leaves us today is that the Court

9  ought to adopt the parties' proposed briefing schedule for

10  motions.  And because the trial in this case will likely take

11  close to two months on account of expert testimony and lots of

12  witnesses, we think it would be very prudent to set a trial

13  date now, even if that date is next spring or some distance

14  off.

15          THE COURT:  What are the nature of the motions, Mr.

16  Lustberg?

17          MR. LUSTBERG:  Thank you, your Honor.

18          Is it okay if I remain seated?

19          THE COURT:  I wish you would.

20          MR. LUSTBERG:  Thank you.

21          You had asked us to be prepared to talk about the

22  motions.  There will be, frankly, extensive motion practice in

23  this matter.  Both motions address to the face of the

24  indictment.  The charges in this case include RICO charges.

25  And the Court is very well aware that when there are RICO

M987HWAC

1   charges there's almost always motion practice.  But in this

2   case, we have what we think is particularly meritorious motion

3   practice with regard to the pattern element of RICO, among

4   other things.  As well, there are counts regarding

5   manipulation.

6           As the Court may recall from last time, it is our view

7   and you -- and I had a colloquy about this the last time

8   around -- we believe that the type of trading that is at issue

9   in this case, which was open-market trading has never in the

10  history of this nation before been declared unlawful, let alone

11  criminal.  And indeed, to the extent it were --

12          THE COURT:  The point is that the trading on an open

13  markets -- what do you mean by an open market?

14          MR. LUSTBERG:  Yeah, I'm happy to -- obviously this

15  will be more fully briefed.  And I should mention to the Court

16  that there are other related matters.  There's an SEC matter

17  and a CFDC matter.  We're not involved in the CFDC matter.  But

18  in the SEC matter, we have begun to brief these issues.

19          But just to answer your question very directly, the

20  trading in this case by Mr. Hwang was trading in admittedly

21  large volumes without sending any false signals to the

22  marketplace.  There's no allegation of spoofing or layering or

23  the type of thing where you would place a trade and then cancel

24  it.  The allegation here is not that there was any fraudulent

25  conduct in regard to the trading itself.  There are separate

M987HWAC

1    fraud allegations -- and we can talk about those in just a

2    moment -- but there were certainly be motion practice emanating

3    from the second circuit's decision back in the 1990s in *United*

4    *States v. Mulheren*, which we believe stands for the proposition

5    that that sort of trading on the open market without false

6    signals, no question, big trades, trades that would or could

7    affect price, do not themselves, in our view, constitute

8    unlawful manipulation.

9            THE COURT:  By open market, do you mean someone

10   sitting at one desk and someone sitting at another desk, in

11   effect, to buy and sell without reporting to anyone?

12           MR. LUSTBERG:  So it's a little bit more complicated

13   in this case because these are swapped transactions, but at the

14   end of the day you're correct, your Honor.  These are simple

15   buys and sells of securities.  That's what this is about.  And

16   there's not the type of fraud that, in our view, one sees in

17   manipulation cases, and we think the law supports our argument

18   that that is not unlawful.  This is going to be, as I described

19   it last time, very robust motion practice with regard to that

20   issue.

21           THE COURT:  By robust, do you mean lengthy papers?

22           MR. LUSTBERG:  Well, you asked us last time.  We can

23   talk about the length of the papers.  Obviously, we will

24   coordinate with our friends who represent Mr. Halligan to make

25   sure that the Court does not get redundant papers.  And to the

M987HWAC

1   extent that your Honor wishes, we can try to combine the

2   motions into a single brief, but either way we will, I promise,

3   avoid redundancy and we will be as brief as we can be but still

4   be as helpful to the Court as we think we should be.

5          THE COURT:  You may have phrased slot market.  Did I

6   here correctly?

7          MR. LUSTBERG:  No, no, no, no.  I said these are swap

8   transactions.

9          THE COURT:  Swap, yes.

10          MR. LUSTBERG:  Yeah, that will be part of the motion

11   practice as well.

12          With regard to the securities fraud counts, which come

13   at the end, the securities fraud transactions, in order to be

14   securities fraud, it has to be in connection with the purchase

15   or sale of securities.  The misrepresentations that the

16   government has set forth—and and we'll come back to those in a

17   moment your Honor—in the lengthy filing that they did at your

18   Honor's request or demand or order was -- those transactions

19   have to do with them getting capacity that is sort of like a

20   line of credit in order to purchase the securities.  We argue,

21   and we will argue to the Court, and we have argued to the Court

22   in the SEC case, that that is not, therefore, in connection

23   with the purchase or sale of securities, because it's for the

24   purpose of generating capacity that is essentially alone.

25          So, we're happy to especially out in further detail if

M987HWAC

1   your Honor wishes.

2           THE COURT:  No.  I think that gives me enough --

3           MR. LUSTBERG:  Yeah, but I think you have a sense of

4   those motions that will be directed to the face of the

5   indictment.

6           If your Honor wants me to continue, there will be

7   other motions in this case that will be directed -- that will

8   be a motion to suppress the fruits of certain searches based

9   upon *Franks v. Delaware* and *Overbreadth*.  There will be

10  discovery motions because we believe that the government's

11  filing is inadequate under the standard that this Court set

12  forth.  There may be motion practice directed to *Brady*.  We

13  made a *Brady* request on July 19 that has not been responded to.

14  The government, I believe, said they would respond by October

15  20 to that.

16          THE COURT:  Is there a *Brady* order in this case?

17          MR. THOMAS:  There is, your Honor.

18          THE COURT:  Ms. Mulligan, is it possible to have a

19  single brief?

20          MS. MULLIGAN:  Your Honor, we also have substantial

21  motions to make.  To the extent possible, we will coordinate.

22  But I do think there are some separate issues with respect to

23  motion practice here that we're exploring.

24          THE COURT:  So I suppose if Mr. Lustberg is correct in

25  his position, that will benefit you.

M987HWAC

1          MS. MULLIGAN:  Your Honor, Mr. Halligan was not

2     involved in trading, and we obviously take the same position

3     with respect to open market manipulation.  It's completely

4     unprecedented for that charge to be brought in this case and

5     unsupported in the law.

6          THE COURT:  What is Mr. Halligan's alleged role?

7          MS. MULLIGAN:  Your Honor, my understanding is that he

8     allegedly made, according to the government, or directed

9     certain misrepresentations, but we're still trying to

10     understand his role in the case.  He is not involved in trading

11     whatsoever, yet he finds himself part of this alleged RICO

12     conspiracy.

13          THE COURT:  So it goes back to the question, "how much

14     do I have to read?"  The way you're present this to me,

15     Ms. Mulligan, is that it's going to be likely be a great amount

16     of repetition between your papers and Mr. Lustberg's papers.

17     So I'd like you to build into your position a time when you and

18     Mr. Lustberg exchange briefs or speak about a common brief to

19     the greatest extent possible.  I recognize you have separate

20     clients and you have separate issues, and you could either have

21     supplemental briefs that deal with that or include them as

22     supplemental parts of one main brief.  But the main point I

23     want to make is where there is a commonality between you that

24     should be a single presentation.

25          MS. MULLIGAN:  Thank you, your Honor.

M987HWAC

1          MR. LUSTBERG:  And, your Honor, Ms. Mulligan and I

2     have become good friends, and we have begun the process of

3     coordinating our positions, and we will be sure to -- and for

4     example, I do think that with regard to motions directed to the

5     face of the indictment that those are things we may be able to

6     file a single brief on with just supplemental briefs on some

7     other matters.

8          Judge, if I might, there's just one thing I want to

9     bring to the Court's attention because I would feel badly if I

10    didn't.  At least some of the motion practice that we envision

11    may require the Court to hold evidentiary hearings.  Those

12    would be, obviously, I mentioned, a motion to suppress earlier.

13    We also will be intending to file a motion that goes to the

14    process that resulted in this indictment, which is a process

15    that we think was one in which we were deceived by the

16    government into understanding what the status of the matter

17    was.  I can lay that out in further detail for the Court if I

18    wish now.

19          THE COURT:  No.

20          MR. LUSTBERG:  But I can assure the Court that we will

21    do that in our papers.  But that, too, I suspect will be

22    factually disputed by the government and may require

23    evidentiary hearings.  But the Court will of course decide

24    whether one is necessary, but I just wanted you to know that.

25          THE COURT:  We're talking about evidentiary hearings

M987HWAC

1    of a day or less, right?

2              MR. LUSTBERG:  Yeah.  I don't think we're talking

3    about lengthy trial-like proceedings, I'll agree with that.

4              THE COURT:  I'll fit those in.

5              As to trial dates, you're saying, Mr. Thomas, that you

6    think it will be a two-month trial.

7              MR. THOMAS:  I think it would be prudent for the Court

8    to set aside two months.  I think the way that we look at the

9    evidence now it's highly likely to be at least six weeks long.

10   We think it is unlikely to be eight weeks long.  The way that

11   we look at the evidence now, we think that the trial will

12   likely take six weeks or so, but anticipating the defendants

13   are likely to have experts of their own, we think it would be

14   prudent to --

15             THE COURT:  All right.  So we'll set aside two months.

16             MR. THOMAS:  Yes, your Honor.

17             THE COURT:  When would you be ready?

18             MR. THOMAS:  Your Honor, the government could be ready

19   I think next spring after these motions are resolved, or sooner

20   if the Court is available.  But we would propose a trial date

21   in April of next year.

22             MR. LUSTBERG:  Judge, I just we think that the trial

23   should be later.  First of all, we think your Honor should --

24             THE COURT:  When do you think a trial should be?

25             MR. LUSTBERG:  Yeah.  So I know Ms. Mulligan has

M987HWAC

1   particularly strong feelings about this, but I just want to

2   bring, as I said to the government before, as well -- I have

3   another trial that's a date certain for March 2 that's --

4               THE COURT:  Just give me a date.

5               MR. LUSTBERG:  Yeah.  So I do know not think -- we

6   think the trial should be in early 2024.  So we do not think it

7   should be next year, we think it should be in early 2024.  We

8   think that will that allow the Court to decide the motions, it

9   will allow us adequate preparation that takes into account both

10  mine and Ms. Mulligan's schedules.

11              Let me also say I do agree with Mr. Thomas as to the

12  length of the trial that he's described.

13              THE COURT:  Ms. Mulligan, is Mr. Lustberg speaking for

14  you now also?

15              MS. MULLIGAN:  That's correct, your Honor.  We have

16  discussed this and we are in agreement that an early 2024 trial

17  works with our schedule, given the volume and discovery issues

18  that are involved in the case with respect to *Brady* and other

19  issues.

20              THE COURT:  This will be a jury, right?

21              MR. THOMAS:  That's right, your Honor.

22              Your Honor, may I respond to the proposed trial date

23  from the defendants?

24              THE COURT:  No, not yet.

25              MS. MULLIGAN:  Your Honor, there are --

M987HWAC

1        THE COURT:  Give me a moment, counsel.

2        Let me hear you Mr. Thomas.

3        MR. THOMAS:  Your Honor, understanding that there is a

4    significant volume of discovery in the case, we have agreed and

5    are happy to accommodate the defendants in an extended briefing

6    schedule.  But at the end of the day, the issues in the case

7    aren't so extreme or extraordinary that it requires two years

8    of preparation.

9        THE COURT:  I'm thinking of a start date in October

10   2023.

11       MR. THOMAS:  The government would be prepared at that

12   time, your Honor.

13       MR. LUSTBERG:  So I will tell you, at least for me,

14   that's a workable date with other matters, so I can be ready in

15   October of 2023.  Again, if it turns out there's more that

16   needs to be done, we can approach the Court and seek additional

17   time if that's required, but I'm okay with setting that date as

18   an initial matter, for sure.

19       MS. MULLIGAN:  It's a workable date, your Honor,

20   depending on the various contingencies that may play out, as

21   Mr. Lustberg indicated.

22       THE COURT:  So we'll start October 10.

23       THE DEPUTY CLERK:  Wait, wait, wait.  Why not October

24   3.

25       THE COURT:  Okay.  October 10 will be the start date.

M987HWAC

1    And whatever final pretrial conference, October 4 at 10

2    o'clock.  So that will be the day that I will be deciding 404

3    motions, motions in *limine* of various sorts, Daubert motions.

4    It will be the day you're delivering your proposed findings so

5    a jury can decide, your proposed *voir dire*, and proposed jury

6    instructions.

7            Some judges now are working on getting lawyers to do

8    joint instructions.  Not I.  I will do my instructions taking

9    into consideration all that you suggest to me, so you needn't

10   bother with boiler plate stuff.  Leave that for the *voir dire*

11   or for the jury instructions.  Okay?

12           MR. THOMAS:  Yes, your Honor.

13           THE COURT:  I will exclude time until October 10?

14           MR. THOMAS:  Yes, your Honor.  Doing so would be in

15   the interest of justice because it would permit the parties to

16   prepare for trial, for the defendants to prepare and file their

17   motions, and for the Court to take time to decide them.

18           MR. LUSTBERG:  No objection.

19           THE COURT:  So without objection, so ordered.

20           October 10, 2023.

21           MR. THOMAS:  Your Honor, I think the only remaining

22   matter is the briefing schedule itself.

23           THE COURT:  Yes.

24           MR. THOMAS:  The parties submitted a proposed

25   schedule, which is ECF Document 39, which would give December 2

M987HWAC

1    as the --

2              THE COURT:  Wait.  Let me find it on here.

3              Did you send it to me?

4              MR. THOMAS:  It was filed on ECF, your Honor.  I have

5    a copy here if the Court would like.

6              THE COURT:  So the defense motion papers be filed no

7    later than December 2, 2022.

8              MR. THOMAS:  Correct, your Honor.

9              THE COURT:  The government's oppositions by

10   January 12, 2023.  Replies -- there's too long a time built in

11   for replies.  Except for a few points, the main papers and the

12   opposition papers should suffice.  So I'm going to give you a

13   reply date of January 27.

14             I'll raise another point.  Why do we want an omnibus

15   motion between motions to suppress and motions to dismiss?  The

16   motions to dismiss are more complicated, I think, but a motion

17   to suppress should be more finite.  As I say it, I see it

18   doesn't work, because you can't deal with a suppression until

19   you first deal with the validity of the complaint.  So I think

20   in deciding this I would focus first on the validity issue and

21   then on the suppression issue.

22             Anything else?

23             MR. THOMAS:  Nothing from the government, your Honor.

24   Thank you.

25             MR. LUSTBERG:  Nothing from the defense, your Honor.

M987HWAC

1    Thank you very much for your time.

2              MS. MULLIGAN:  Nothing, your Honor.  Thank you very

3    much.

4              THE COURT:  Pleasure to see you all.

5              MS. MULLIGAN:  Thank you.

6              (Adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25