EXHIBIT U



Lawrence S. Lustberg
Director

Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
Direct: 973-596-4731 Fax: 973-639-6285
llustberg@gibbonslaw.com

August 24, 2022

**VIA EMAIL**

Matthew Podolsky, Assistant U.S. Attorney
Alex Rossmiller, Assistant U.S. Attorney
Andrew Thomas, Assistant U.S. Attorney
1 Saint Andrews Plaza
New York, New York  10007

     **Re:**    **United States of America v. Hwang, _et al._, No. 22-cr-240-AKH**

Counsel:

     We write on behalf of defendant Bill Hwang in response to the Government's August 18, 2022 letter, ECF No. 38, supplying information regarding certain alleged misrepresentations.  In particular, we write to express our concern that the Government has not fully complied with the Court's June 1, 2022 Order requiring "identification of _each and all_ the alleged misrepresentations," and information regarding "persons who made it, by their nature, persons who received it, date, time, [and] place."[1]  Transcript ("Tr.") of June 1, 2022 Status Conference, ECF No. 29, 16:23-17:1 (emphasis added).  To date, the Government has provided only incomplete information regarding "certain" alleged misrepresentations, ECF No. 38 at 1.  Among other deficiencies, rather than identify alleged misrepresentations as ordered by the Court, the Government has in most instances only provided generic topical characterizations of such statements.  In addition, we still have not been provided with notice of any alleged misrepresentations made by Mr. Hwang, or any basis to understand the Government's conclusory allegation that Mr. Hwang somehow directed or controlled any of the alleged misrepresentations made by Archegos employees.   We will, of course, be prepared to move for appropriate relief based upon these deficiencies, but wanted to write in advance of the hearing scheduled for September 8, 2022, to provide the Government with an opportunity to address them without our seeking relief from the Court.

     More specifically, and contrary to the specific language of the Court's Order, the Government has admittedly provided only a sampling of the alleged misrepresentations and incomplete information regarding their circumstances.  First, we understand that the Government

---

[1] The Government appears to believe that the Court's June 1, 2022 Order was not a binding order, but rather "encouragement" toward for a voluntary effort.  ECF No. 38 at 1.  The transcript does not, however, support the Government's view, as we will make clear, should it be necessary to do so, in any future Court proceedings.

GIBBONS P.C.

August 24, 2022
Page 2

may later come into possession of additional information regarding other alleged false or misleading statements. But if the Government is presently aware of additional alleged misrepresentations beyond those listed, those must, under the Court's Order, be provided now, as the Court made perfectly clear. Tr. of June 1, 2022 Status Conference 16:6-17:3 Second, and in any event, the materials cited by the Government do not each supply the information that the Court specifically required, namely identification of the actual misrepresentation (rather than a generic characterization of it), the alleged speaker, date, time, and place of the misrepresentations. *Id.* (requiring "identification of each and all the alleged misrepresentations," the "persons who made [the alleged misrepresentations], by their nature, persons who received it, date, time, [and] place"). It is not enough to state, as the Government does repeatedly, that an Archegos employee made misrepresentations about a topic. The Government must identify the specific statement that is alleged to be false or misleading. Nor does the Government provide this information through its discovery, *e.g.*, in internal counterparty reports and communications summarizing conversations with Archegos's employees. That is, even assuming, contrary to Second Circuit law, that those documents can substitute for an appropriately specific indictment,[2] at least some of those documents themselves fail to identify the speaker, date, time, or place of the alleged misrepresentations, as the Court required. *See, e.g.,* SDNY_P001_0002582206; SDNY_P001_0004795408; SDNY_P001_0005233622; SDNY_P001_0005277938; SDNY_P001_0005115188. Third, notwithstanding the Court's specific direction that the Government's submission contain the kind of specifics required by Civil Rule 9(b), Tr. of June 1, 2022 Status Conference 17:3-4, the Government has not explained why the statements at issue are allegedly false or misleading, as would be required under that Rule. *See, e.g., Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015) ("To satisfy the pleading standard for a misleading statement or omission under Rule 9(b), a complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" (quoting *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004))). Finally, other than reference to the Portfolio Swaps Annex discussed in footnote 3 below, SDNY_P001_0004791589, the Government has identified no alleged misrepresentations made by Mr. Hwang or, for that matter, any specific allegation setting forth Mr. Hwang "directing" or "controlling" any alleged misrepresentation.[3]

---

[2] *See United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) (concluding that "mountains of documents" did not cure the insufficient indictment).

[3] As counsel explained during the April 25, 2022 presentation to the Government to which you invited us, the December 15, 2020 Portfolio Swaps Annex with Credit Suisse ("CS PSA"), SDNY_P001_0004791589, is not a statement that can be attributed to Mr. Hwang, who had no knowledge of the representation in the document that the sum of equity and swap positions in a given stock would not exceed a certain threshold. As we told you then, Mr. Hwang left negotiations of the CS PSA to Scott Becker and Will Tomita, who were in turn advised by counsel for Archegos. Neither Mr. Becker nor Mr. Tomita brought this provision to Mr. Hwang's attention,

Gɪʙʙᴏɴs P.C.

August 24, 2022
Page 3

As discussed above, in the interest of avoiding unnecessary motion practice, we invite further dialogue with the Government with regard to addressing these deficiencies.  In addition, as we will detail for the Court on September 8, we anticipate seeking a bill of particulars identifying (perhaps among other things) each alleged manipulative or otherwise unlawful trade, including each time Mr. Hwang's trading allegedly created an artificial price.  *See United States v. Bortnovsky,* 820 F.2d 572, 573-74 (2d Cir. 1987) (holding trial court erred in failing to order bill of particulars to "identify which of appellants' insurance claims for burglary losses were fraudulent and which of the many invoices submitted to substantiate these claims were falsified"); *United States v. Savin,* No. 00-CR-45, 2001 WL 243533, at *3 (S.D.N.Y. Mar. 7, 2001) (granting request for particulars about defendant's role in transactions, where defendant had "been provided with 100,000 pages of discovery," a "veritable mountain of documents" that the government would have forced the defendant to "comb through" to "attempt to guess at" which transactions, during a six-year period, were allegedly improper); *United States v. Nachamie,* 91 F. Supp. 2d 565, 571–72 (S.D.N.Y. 2000) (granting bill of particulars where government had produced 200,000 documents relating to 2,000 Medicare claims, but had not told the defendants which claims were alleged to be false); *United States v. Nikas*, No. 19-CR-716, 2019 WL 6838673, at *2 (S.D.N.Y. Dec. 13, 2019) (requiring bill of particulars identifying each specific payment the defendant allegedly made to receive material nonpublic information).  However, rather than moving directly to that motion practice, we would prefer to work these issues out in advance of the September 8 conference.  To that end, please advise whether you are willing to provide that information or whether, at the very least, it is worth discussing.

Finally, we note AUSA Thomas's reference to *Brady* material in the last paragraph of the Government's production cover letter dated August 18, 2022.  Our understanding, based on that letter, is that the Government intends to respond in full to the *Brady* letter dated July 19, 2022, that we submitted on behalf of Mr. Hwang, by no later than October 20, 2022.[4]  Three months to provide *Brady* information which was required by the Court's Order to be provided as soon as the

_____

and only the signature page was presented for Mr. Hwang's execution. Neither is the correspondence between Mr. Hwang and Mr. Tomita regarding the plan to use a sample portfolio, SDNY_P001_0002582206, a misrepresentation attributable to Mr. Hwang. Rather, and again as we explained to you, based upon your representation to us that you were open-mindedly and in good faith considering what we had to say, use of sample portfolios is a common method to determine margin during the onboarding process. Goldman Sachs, a sophisticated institution, was certainly aware of that industry practice.

In any event, it is critical to know if this is the proof upon which the Government intends to rely for its allegation that Mr. Hwang purportedly made or directed any alleged misrepresentations, as that fact may determine the course of future motion practice in this matter.

[4] In accordance with that production cover letter, this date is "two weeks before the deadline for submission of the defendants' pretrial motions," which you proposed be set for November 3.

GIBBONS P.C.

August 24, 2022
Page 4

Government was aware of it, *see* ECF No. 4 at 1 ("The Government shall disclose [*Brady* material] to the defense promptly after its existence becomes known to the Government so that the defense may make effective use of the information in the preparation of its case.")—and especially the exculpatory information that we very specifically requested in our July 19th letter—seems to us to be an unjustifiably long stretch of time.  Accordingly, we would like to meet and confer on this issue as well so that we can discuss this timing with you before the conference on September 8 and hopefully avoid having to raise it with the Court at that time.

Thank you for your kind attention to this matter.

Respectfully yours,

Lawrence S. Lustberg

cc:    Mary E. Mulligan, Esq.