# EXHIBIT Y



**MARY E. MULLIGAN**
mmulligan@fklaw.com
212.833.1123

November 14, 2022

BY E-MAIL

AUSA Matthew D. Podolsky
AUSA Alexander Rossmiller
AUSA Danielle R. Sassoon
AUSA Andrew M. Thomas
U.S. Attorney's Office for the SDNY
One St. Andrews Plaza
New York, NY 10007

     Re:  *United States v. Hwang et ano.*, No. 22-cr-240 (AKH)

Dear Counsel:

    On behalf of our client Patrick Halligan, we write in response to the Government's October 19, 2022 letter addressed to defense counsel ("October 19 Letter"). We remain concerned that the Government continues to fall short of its *Brady* obligations and still has not complied with Judge Hellerstein's directive that the Government identify "each and all [of] the alleged misrepresentations, by persons who made it, by their nature, persons who received it, date, time, [and] place." June 1, 2022 Tr. at 16:24-17:1 (the "June 1 Order"). If the deficiencies described below are not cured by November 28, 2022, we intend to raise these issues with the Court in our December 2 omnibus motion or otherwise as appropriate.

    *First*, despite defense counsel's repeated correspondence regarding this issue,[1] the Government has failed to comply with the June 1 Order. Judge Hellerstein directed the Government to identify "*each and all* [of] the alleged misrepresentations," but the Government has refused to do so. Its letter to the Court and defense counsel, dated August 18, 2022 ("August 18 Letter"), characterized its disclosures as "voluntary" and the Court's direction as mere "encouragement," and then purported to provide only "examples reflecting false and misleading statements." *See* Dkt. No. 38, at 4, 5, 7, 9. This is wrong on every count. The Court's June 1 Order was not merely "encouragement" or a "suggestion" as the Government has previously described it (Sept. 8, 2022 Tr. at 3:3-8). It was an order (*see* June 1 Order at 16:24-17:1, 19:15-16 ("*mak[e] sure* that there is identification of *each and all* the alleged misrepresentations, by persons who made it, by their nature, persons who received it, date, time, place….[Y]ou already heard my exercise of discretion with regard to misrepresentations.") (emphases added), and an order is not merely a "suggestion." *See*

---

[1] We refer to our letters of August 24 and October 11, 2022, and Mr. Hwang's counsel's letters of July 19 and August 24, 2022.

AUSA Matthew D. Podolsky *et al.*            - 2 -                    November 14, 2022

*United States v. Pescatore*, 637 F.3d 128, 144 (2d Cir. 2011) ("It is axiomatic that a court order must be obeyed") (internal citations omitted).[2]

Accordingly, the Government must provide *every* misstatement it intends to rely on at trial, not merely non-exhaustive "examples." Furthermore, even the "examples" recited in the August 18 Letter fall short of the Government's obligations under the June 1 Order. In many instances, the Government has not identified, or provided documents reflecting, the "persons who received" the alleged misrepresentations, as well as the "date, time [and] place." For example, the August 18 Letter refers to conversations between Scott Becker and "MUFG employees," a "Credit Suisse employee," a "Nomura employee," and a "representative of Deutsche Bank," without identifying any of these individuals by name. *See* Dkt. No. 38, at 5-6. Many of the documents identified are also missing key data such as the time of a call, and the names of all participants on a particular phone call. We therefore reiterate our request that the Government identify *every* alleged misrepresentation, and as to each of them, *all* of the details that Judge Hellerstein directed.

*Second*, the Government's October 19 Letter reveals that it has not made appropriate efforts to collect, search, review, and produce documents that were created or maintained by the Securities & Exchange Commission ("SEC") and the Commodity Futures Trading Commission ("CFTC"). (*See* October 19 Letter at 1-2.) The Government's contention that the SEC and CFTC are not "members of the prosecution team" is incorrect as a matter of law and significantly understates the Governments obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and Fed. R. Cr. P. 16. "For *Brady* purposes, it is enough that the agencies are engaged in joint fact-gathering, even if they are making separate investigatory or charging decisions, because the purpose of *Brady* is to apprise the defendant of exculpatory evidence obtained during the fact-gathering that might not otherwise be available to the defendant." *See United States v. Gupta*, 848 F. Supp. 2d 491, 494 (S.D.N.Y. 2012); *United States v. Martoma*, 990 F. Supp. 2d 458, 459 (S.D.N.Y. 2014) ("At various times in connection [with] the criminal investigation . . . representatives of the U.S. Attorney's Office conferred with the SEC about the SEC's parallel investigation. . . . Clearly, the agencies [were] engaged in joint fact-gathering, even if they [were] making separate investigatory or charging decisions.")

---

[2] *See also* Order, Dkt. No. 4, at 1-2 & n.1 ("The Government *must* disclose to the defense all information favorable to [the] accused that is material either to guilt or to punishment and that is known to the Government . . . This Order does not purport to set forth an exhaustive list of the Government's disclosure obligations. . . . If the Government fails to comply with this Order, the Court, in addition to ordering production of the information, may (1) specify the terms and conditions of such production; (2) grant a continuance; (3) impose evidentiary sanctions; (4) impose contempt or other sanctions on any lawyer responsible for violations of the Government's disclosure obligations, or refer the matter to disciplinary authorities; (5) dismiss charges before trial or vacate a conviction after trial or a guilty plea; or (6) enter any other order that is just under the circumstances.") (emphasis added) (internal citations omitted).

AUSA Matthew D. Podolsky *et al.*            - 3 -                      November 14, 2022

Contrary to the Government's suggestion, the SEC and CFTC obviously participated in a joint investigation of Mr. Halligan. Indeed, the Government, the SEC, and the CFTC have each publicly acknowledged their joint efforts – the U.S. Attorney described the SEC and CFTC's efforts as "invaluable"[3] – and consistent with those statements, it is our understanding that representatives from the SEC and CFTC participated with the Government in witness interviews and meetings with witnesses' counsel, and undoubtedly other collaborative investigative efforts as well.

Accordingly, the law (as well as the *Brady* order specifically entered in this case, ECF No. 4, attached hereto as Exhibit A) requires the Government to ensure that all investigating offices (including without limitation the SDNY, the DOJ, the FBI, the SEC, and the CFTC) preserve all of their notes and reports (including drafts) of all interviews during the investigation and to search and review documents possessed by all investigating offices for exculpatory or otherwise discoverable evidence. We understand from the Government's October 19 Letter that it has not complied with these obligations, but please advise if that understanding is incorrect and the Government has in fact obtained, reviewed, and produced all discoverable records that were created or maintained by these co-investigating agencies.

*Third*, the Government states that it "disagrees that documents showing how counterparties hedged Archegos's swap agreements necessarily constitute *Brady* materials," but that it has "requested information from counterparties including information relating to this topic," and that it will "continue to produce" any discovery it receives from counterparties. (October 19 Letter at 3.) Evidence regarding the manner in which

---

[3]  *See* DOJ Office of Public Affairs Release: "Four Charged in Connection with Multibillion-Dollar Collapse of Archegos Capital Management," April 27, 2022, *available at* https://bit.ly/3dRCFjF ("This case was investigated by the U.S. Attorney's Office for the Southern District of New York and the FBI. The Justice Department's Organized Crime and Gang Section provided valuable assistance. ***The U.S. Securities and Exchange Commission and the U.S. Commodity Futures Trading Commission, each of which today filed a parallel civil action, assisted and cooperated in this investigation***."); U.S. Attorneys' Office for the Southern District of New York, "United States Attorney Announces Charges in Connection with Collapse of Archegos Capital Management," April 27, 2022 (*available at* https://youtu.be/DZIWvpDmhc8, at 9:16) ("I also want to thank our partners at the FBI, the SEC, and the CFTC. ***Their dedication and hard work on this investigation was invaluable.***"); SEC, "SEC Charges Archegos and its Founder with Massive Market Manipulation Scheme," Press Release No. 2022-70, April 27, 2022 (*available at*: https://www.sec.gov/news/press-release/2022-70) ("***The SEC acknowledges the assistance and cooperation of the U.S. Attorney's Office for the Southern District of New York, the FBI, and the CFTC***"); CFTC, "CFTC Charges Archegos Capital Management and Three Employees with Scheme to Defraud Resulting in Swap Counterparty Losses Over $10 Billion," Press Release No. 8520-22, April 27, 2022 (*available at* https://www.cftc.gov/PressRoom/PressReleases/8520-22) ("***The Division of Enforcement thanks and acknowledges the assistance of the U.S. Attorney's Office for the Southern District of New York, the Federal Bureau of Investigation, and the SEC.***") (all emphases added).

AUSA Matthew D. Podolsky *et al.*          - 4 -                    November 14, 2022

counterparties hedged (or declined to hedge) Archegos's swap transactions is plainly exculpatory. The Indictment alleges that the defendants engaged in a "scheme" to "fraudulently induce the Counterparties into trading with and extending credit to Archegos, enabling and facilitating the market manipulation scheme, and to hide the true risk of doing business with Archegos." (Indictment, Dkt. No. 1, at ¶ 3.) It further alleges that for Counterparties who entered into total return swaps with Archegos, "in order to avoid market exposure on a swap contract, the Counterparties themselves purchased the stock underlying the swap." (*Id.* at ¶ 16.) Based on these alleged facts (i.e., these allegations regarding the Counterparties' hedging practices), the Government further alleges that "trading using swap contracts instead of purchasing actual shares meant that Archegos could bet on the price of a stock, and ***dictate trading in the stock***, without owning the stock itself. Archegos therefore would not have to disclose its positions even if it effectively exceeded the 5% ownership threshold that ordinarily would require public disclosure." (*Id.* at ¶ 17; emphasis added.) The Government also claims that the Counterparties "were taking on risk in entering into the swap contracts. If the stock prices associated with Archegos's long positions dropped, for example, a Counterparty would be faced with the risk that Archegos could not or would not make good on what it owed the Counterparty – and even if the Counterparty sold the shares it held as a hedge, it could face losses because the price dropped." (*Id.*)

In light of these allegations, evidence that any Counterparty did not actually hedge all of Archegos's total return swap positions by holding shares of the underlying issuer's stock, but instead had other hedge arrangements, such as an offset with other clients or their own trading desk's positions, or no hedge at all, directly contradicts the Government's thesis of Counterparty exposure and the defendants' ability and intent to manipulate the markets through swaps. Such evidence is exculpatory and must be produced under *Brady*. Please confirm that the Government has produced all evidence regarding the counterparties' hedging, and will continue to produce all such evidence as it is received.

*Fourth,* despite defense counsel's specific and itemized demands for appropriate *Brady* disclosures, the Government's October 19 Letter almost entirely fails to identify responsive evidence other than witnesses' prior statements. Rather than identifying the exculpatory evidence that plainly exists among the millions of pages of text messages, emails, contracts, audio files, and other documentary records that the Government has produced, the Government has simply dumped a mountain of evidence on the defense. Asking the defense to find a "needle in a haystack" does not comply with the demands of *Brady*. *See United States v. Thomas*, 981 F. Supp. 2d 229, 239 (S.D.N.Y. 2013) ("the Government cannot hide *Brady* material as an exculpatory needle in a haystack of discovery materials."). Accordingly, we repeat our request that the Government specifically identify by Bates number all exculpatory documents that the Government has identified, including all exculpatory documents that third parties or their counsel have identified to the Government in the course of defending themselves or their clients.

*Fifth*, we seek clarification regarding the Government's non-production and apparent disclaimer of any *Brady* obligation with respect to material underlying conclusions of the Credit Suisse Group Special Committee of the Board of Directors Report on Archegos Capital Management, dated July 29, 2021 ("CS Report"). (October 19 Letter at 5.)  As the

AUSA Matthew D. Podolsky *et al.*          - 5 -          November 14, 2022

Government is aware, in preparing the CS Report, Credit Suisse claims to have "conducted a comprehensive review of Credit Suisse's relationship with Archegos," which "consisted of more than 80 interviews with current and former Credit Suisse employees as well as the collection of more than 10 million documents and other data."[4] Following this supposedly "comprehensive review," Credit Suisse concluded that that the "Archegos matter directly calls into question the competence of the business and risk personnel *who had all the information necessary to appreciate the magnitude and urgency of the Archegos risks*, but failed at multiple junctures to take decisive and urgent action to address them." (CS Report at 2 (emphasis added).) This conclusion contradicts the Government's allegations that Counterparties were misled or were "fraudulently induced" into entering into business arrangements with Archegos. As such, any documents or other material that Credit Suisse relied on to arrive at that conclusion is exculpatory *Brady* material, and must be produced.

Please confirm whether the Government has withheld *any* documents relating to the CS Report or Credit Suisse's underlying investigation from its production to the Defendants. If the Government has declined to seek the production of such documents, or Credit Suisse has failed to produce them, we will take appropriate steps to obtain this highly relevant, exculpatory evidence, but if the Government has those materials, they should be provided forthwith.

*Finally*, we seek the production of all privilege logs produced to the Government (including to the CFTC, SEC, FBI, or any other investigating agency) by any non-party, as well as any agreements between any non-party and the Government limiting, clarifying, defining, or narrowing the scope of the production that the non-party would make to the Government. If these materials have been included in the Government's previous productions, we request that you please direct us to the applicable Bates range(s).

We look forward to the Government's response. If you would like to discuss these matters, please let us know.

Sincerely,

*May Mulligan*

Mary E. Mulligan

cc:   Lawrence S. Lustberg, Esq.
      Thomas R. Valen, Esq.

---

[4]  Credit Suisse, "Credit Suisse Group publishes the report of the independent external investigation into Archegos Capital Management," July 29, 2021 (*available at* https://www.credit-suisse.com/about-us-news/en/articles/media-releases/archegos-202107.html)

# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
                                                   :

**UNITED STATES OF AMERICA**
                                                   :

          **-v-**                                    :          **22 CR 240**

                                                   :

**SUNG KOOK (BILL) and PATRICK HALLIGAN,**   :          **ORDER**

                                                   :

               **Defendants.**                     :

                                                   : :
-------------------------------------------------------------------X

**JENNIFER E. WILLIS, United States Magistrate Judge:**

      This Order is entered, pursuant to Federal Rule of Criminal Procedure 5(f) and the Due

Process Protections Act, Pub. L. No 116–182, 134 Stat. 894 (Oct. 21, 2020), to confirm the

Government's disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963), and its

progeny, and to summarize the possible consequences of violating those obligations.

      The Government must disclose to the defense all information "favorable to an accused"

that is "material either to guilt or to punishment" and that is known to the Government. Id. at 87.

This obligation applies regardless of whether the defendant requests this information or whether

the information would itself constitute admissible evidence. The Government shall disclose such

information to the defense promptly after its existence becomes known to the Government so

that the defense may make effective use of the information in the preparation of its case.

      As part of these obligations, the Government must disclose any information that can be

used to impeach the trial testimony of a Government witness within the meaning of Giglio v.

United States, 405 U.S. 150 (1972), and its progeny. Such information must be disclosed

sufficiently in advance of trial in order for the defendant to make effective use of it at trial or at such other time as the Court may order.[1]

The foregoing obligations are continuing ones and apply to materials that become known to the Government in the future. These obligations also apply to information that is otherwise subject to disclosure regardless of whether the Government credits it.

In the event the Government believes that a disclosure under this Order would compromise witness safety, victim rights, national security, a sensitive law-enforcement technique, or any other substantial government interest, it may apply to the Court for a modification of its obligations, which may include in camera review or withholding or subjecting to a protective order all or part of the information otherwise subject to disclosure.[2]

For purposes of this Order, the Government has an affirmative obligation to seek all information subject to disclosure under this Order from all current or former federal, state, and local prosecutors, law enforcement officers, and other officers who have participated in the prosecution, or investigation that led to the prosecution, of the offense or offenses with which the defendant is charged.

If the Government fails to comply with this Order, the Court, in addition to ordering production of the information, may:

(1) specify the terms and conditions of such production;

(2) grant a continuance;

(3) impose evidentiary sanctions;

(4) impose contempt or other sanctions on any lawyer responsible for violations of the Government's disclosure obligations, or refer the matter to disciplinary authorities;

---

[1] This Order does not purport to set forth an exhaustive list of the Government's disclosure obligations.
[2] The Classified Information Procedures Act sets forth separate procedures to be followed in the event that the Government believes matters relating to classified information may arise in connection with the prosecution. *See* 18 U.S.C. app. 3 §§ 1 *et seq.*

(5) dismiss charges before trial or vacate a conviction after trial or a guilty plea; or

(6) enter any other order that is just under the circumstances.

**SO ORDERED**.

Dated: April 27, 2022
New York, New York

_Jennifer E. Willis_

JENNIFER E. WILLIS
United States Magistrate Judge