# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

    - vs -              04 CIV 1584 (RJH)

MOISES SABA MASRI,

        Defendant.

---

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANT'S MOTION FOR RECONSIDERATION OF
# ORDER DENYING MOTION FOR SUMMARY JUDGMENT

NIXON PEABODY LLP
Roger R. Crane, Jr. (RC-0469)
David A. Feldman (DF-5663)
437 Madison Avenue
New York, New York 10022
(212) 940-3000

Attorneys for Defendant
  Moises Saba Masri

July 25, 2008

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .............................................................................................. ii

PRELIMINARY STATEMENT........................................................................................ 1

BACKGROUND AND BASIS FOR RECONSIDERATION ........................................... 3

A.   Defendants' Motion for Summary Judgment ....................................................... 3

B.   The SEC's Opposition to Summary Judgment ..................................................... 5

C.   The Court's Decision:  Statements at Oral Argument and in the November Order.............. 6

D.   The Second Circuit's *ATSI* Opinion; Judge Sand's Subsequent *Nanopierce* Rulings .......... 7

ARGUMENT ................................................................................................................... 8

POINT I  MR. SABA'S MOTION FOR RECONSIDERATION SHOULD BE GRANTED ...... 8

POINT II  UPON RECONSIDERATION, THE COURT SHOULD GRANT SUMMARY
JUDGMENT BECAUSE MR.  SABA'S PURCHASE WAS NOT "WILLFULLY
COMBINED WITH SOMETHING MORE"AS REQUIRED BY THE SECOND
CIRCUIT IN *ATSI*.......................................................................................... 9

A.   Under *ATSI*, Liability for an Open-Market Trade Cannot Be Established  Absent Other
Misleading or Deceptive Behavior by a Defendant .......................................... 11

B.   Judge Sand's Application of *ATSI* in *Nanopierce I-V* Reflects Precisely  The Proper
Application of *ATSI* to this Case ...................................................................... 12

1.   *Nanopierce* Decisions Prior to *ATSI*........................................................ 12

2.   *Nanopierce* Decisions Following *ATSI* .................................................... 13

C.   Application of *ATSI* and *Nanopierce* to Mr. Saba's Motion for Summary Judgment ........ 14

1.   The *ATSI* Requirement of "Something More" Cannot Be Satisfied By  Identification
of Features of the Disputed Open-Market Trade Itself ............................. 14

2.   Far From Being an Ordinary "Marking the Close" Case, This Case Is Uniquely
Devoid of Conduct to Meet *ATSI*'s "Something More" Standard ........... 16

POINT III  *ATSI* ALSO ESTABLISHES THAT SUMMARY JUDGMENT SHOULD BE
GRANTED HERE BECAUSE SCIENTER CANNOT BE ESTABLISHED ABSENT
EVIDENCE THAT MR. SABA INTENDED TO DECEIVE INVESTORS ................... 18

CONCLUSION ............................................................................................................... 21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ATSI Communications, Inc. v. The Shaar Fund, Ltd.*, 493 F.3d 87
(2d Cir. 2007) ....................................................................... 1, 2, 10, 11, 12, 18, 19, 20, 21

*In re College Bound Consolidated Litig.*, No. 93 Civ. 2348, 1995 U.S. Dist. LEXIS 10684
(S.D.N.Y. July 31, 1995) ................................................................................................. 5, 6

*Dunn v. Standard Bank London Ltd.*, No. 05 Civ. 2749 (DLC), 2006 U.S. Dist. LEXIS 54578
(S.D.N.Y. Aug. 8, 2006) ....................................................................................................... 8

*GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189 (3d Cir. 2001)...................................4, 7, 10

*In re Initial Public Offering Securities Litig.*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003) .................. 6

*Markowski v. SEC*, 274 F.3d 525 (D.C. Cir. 2001) .................................................................... 6

*McAnaney v. Astoria Fin. Corp.*, No. 04-CV-1101, 2008 U.S. Dist. LEXIS 5535 (E.D.N.Y
Jan. 25, 2008) ................................................................................................................. 8, 9

*Nanopierce Techs., Inc. v. Southridge Capital Mgmt.*, No. 02 Civ. 0767 (LBS), 2008 U.S.
Dist. LEXIS 34560 (S.D.N.Y. Apr. 21, 2008) ..........................................................8, 14, 17

*Nanopierce Techs., Inc. v. Southridge Capital Mgmt.*, No. 02 Civ. 0767 (LBS), 2008 U.S.
Dist. LEXIS 6225 (S.D.N.Y. Jan. 28, 2008)....................... 2, 8, 12, 13, 14, 16, 18, 19, 20, 21

*Nanopierce III, Techs, Inc. v. Southridge Capital Mgmt. LLC,* No. 02 Civ 0767 (LBS), 2003
U.S. Dist. LEXIS 21854 (S.D.N.Y. Dec. 4, 2003) .....................................................4, 6, 13

*Nanopierce Techs, Inc. v. Southridge Capital Mgmt. LLC,* No. 02 Civ 0767 (LBS), 2003 U.S.
Dist. LEXIS 11108 (S.D.N.Y. June 30, 2003) ............................................................... 5, 13

*Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*, No. 02 Civ. 0767 (LBS), 2002
U.S. Dist. LEXIS 24049 (S.D.N.Y. Oct. 10, 2002)........................................ 7, 12, 13, 14, 15

*In re Olympia Brewing Co. Securities Litig.*, 613 F. Supp. 1286 (N.D. Ill. 1985) ....................... 4

*Rispler v. Sol Spitz Co.*, No. 04-CV-1323, 2006 U.S. Dist. LEXIS 75840 (E.D.N.Y. Oct. 18,
2006) ............................................................................................................................. 8, 9

*Santa Fe Indus., Inc. v. Green*, 430 U.S. 462 (1977) ................................................................ 17

*SEC v. Competitive Technologies, Inc.*, No. 3:04-cv-1331, 2005 U.S. Dist. LEXIS 43349 (D.
Conn. July 21, 2005)....................................................................................................... 17

*SEC v. Masri*, 523 F. Supp. 2d 361 (S.D.N.Y. 2007)............. 3, 6, 7, 10, 11, 15, 16, 17,19, 20, 21

*SEC v. Schiffer*, No. 97 Civ. 5853, 1998 WL 226101 (S.D.N.Y. May 5, 1998)......................... 16

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) .................................... 9

*Sullivan & Long, Inc. v. Scattered Corp.*, 47 F.3d 857 (7th Cir. 1995) ....................................... 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, ___U.S.___, 168 L. Ed. 2d 179 (2007).................. 19

*United States v. Finnerty*, 474 F. Supp. 2d 530 (S.D.N.Y. 2007), *aff'd*, 2008 U.S. App. LEXIS 15296 (2d Cir. July 18, 2008) .................................................................... 10

*United States v. LoRusso*, 695 F.2d 45 (2d Cir. 1983) ................................................. 8

*United States v. Mulheren*, 938 F.2d 364 (2d Cir. 1991) ............................................ 3

*United States v. Regan*, 937 F.2d 823 (2d Cir. 1991)................................................ 6

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245 (2d Cir. 1992) ........................ 8

## SEC CASES

*In the Matter of the Application of Amr Elgindy*, 2004 SEC LEXIS 555 (March 10, 2004) ........ 4

## FEDERAL STATUTES

15 U.S.C. § 78j(b) ............................................................................................... 9

Fed. R. Civ. P. 9(b)............................................................................................. 19

Fed. R. Civ. P. 54(b)........................................................................................... 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

SECURITIES AND EXCHANGE COMMISSION,

                                 Plaintiff,

                   - vs -                       04 CIV 1584 (RJH)

MOISES SABA MASRI,

                              Defendant.

_____

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR RECONSIDERATION

      Defendant Moises Saba Masri ("Saba") respectfully submits this memorandum of law in support of his motion for reconsideration of the Court's November 20, 2007 memorandum opinion and order ("November Order") insofar as it denied Mr. Saba's motion for summary judgment.  Mr. Saba requests that, upon reconsideration, the Court grant summary judgment in his favor, dismissing the complaint of plaintiff Securities and Exchange Commission ("SEC").

## PRELIMINARY STATEMENT

      This Court did not have a full opportunity to address the significance of a Second Circuit case decided after defendants' summary judgment motion was fully briefed.  The Second Circuit case—*ATSI Communications, Inc. v. The Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007)—bears directly on the question of whether manipulative intent alone can support liability for otherwise legal open-market transactions.  It was only because the Court resolved this core question in the SEC's favor that it denied Mr. Saba's motion for summary judgment notwithstanding the fact that the Court found the SEC's evidence of intent to be "weak," and acknowledged having

"given serious consideration to booting the case" because it is "extremely thin."  Now, the Second Circuit has resolved the core question:

> In essence, taking a short position is no different than taking a long position.  To be actionable as a manipulative act, short selling **must be willfully combined with something more** to create a false impression of how market participants value a security.

*ATSI*, 493 F.3d at 101 (emphasis added).  Accordingly, it is clear that Mr. Saba's motion for summary judgment should be granted and the SEC's ill-conceived case dismissed.

The appropriateness of summary judgment based on *ATSI* is made particularly clear by a recent decision issued by Judge Sand in *Nanopierce Techs., Inc. v. Southridge Capital Mgmt.*, No. 02 Civ. 0767 (LBS), 2008 U.S. Dist. LEXIS 6225 (S.D.N.Y. Jan. 28, 2008) ("*Nanopierce IV*").  Prior to *ATSI*, Judge Sand, like this Court, carefully applied the then-existing, unsettled law regarding open-market manipulation and, somewhat reluctantly, allowed certain claims to go forward.  Following *ATSI*, however, Judge Sand "agree[d] that the Second Circuit's *ATSI* decision precludes liability," and granted defendant's motion for summary judgment on those same claims.  *Nanopierce IV*, 2008 U.S. Dist. LEXIS 6225, at *8.

A similar result is warranted here upon reconsideration.  *ATSI* demonstrates that Mr. Saba's August 20, 1999 purchase of securities cannot constitute a manipulative act for purposes of Section 10(b).  In addition, *ATSI* clarifies the Second Circuit's requirements for demonstrating scienter in the context of an open-market manipulation case.  Application of those requirements exposes the SEC's evidence of manipulative intent as not merely "weak," but insufficient as a matter of law.

## BACKGROUND AND BASIS FOR RECONSIDERATION

### A.   Defendants' Motion for Summary Judgment

On May 16, 2006, Mr. Saba and former defendant Albert Meyer Sutton ("Sutton") each moved for summary judgment dismissing the SEC's complaint.  The motion was fully briefed on July 14, 2006, when defendants submitted reply papers in further support of their motion.  The Court heard oral argument on September 28, 2007.  On November 20, 2007, the Court issued the November Order granting Mr. Sutton's motion for summary judgment and denying Mr. Saba's.  The November Order was subsequently published as *SEC v. Masri*, 523 F. Supp. 2d 361 (S.D.N.Y. 2007).[1]

As described by the Court, one of the principal arguments relied upon by defendants in their motion for summary judgment was that, "regardless of intent, an open-market transaction (such as end-of-day stock purchases) unaccompanied by other deceptive or fraudulent conduct cannot, as a matter of law, support a finding of market manipulation under Section 10(b) of the Securities Exchange Act."  *Masri*, 523 F. Supp. 2d at 366.  Defendants' motion papers relied heavily on *United States v. Mulheren*, 938 F.2d 364, 366-68 (2d Cir. 1991), a case in which the Second Circuit stated that it "harbor[ed] doubt" and had "misgivings" about the theory that a person violates Section 10(b) of the Securities Exchange Act by engaging in a transaction with the intent—even the "sole intent"—to affect the price of a security.  (*See* Memorandum of Law in Support of Defendants' Motion for Summary Judgment, dated May 16, 2006 ("Mov. Mem.") at 21-24; Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment, dated July 14, 2006 ("Reply Mem.") at 2-7).  At the time, *Mulheren* constituted the

---

[1] Mr. Saba's full name is Moises Saba Masri, following the common practice in Spanish-speaking countries to have a paternal and a maternal surname (the father's last name followed by the mother's).  Because he is more commonly referred to by his paternal surname, we refer to Mr. "Saba" throughout our submissions to the Court.  However, it is also correct to use "Masri."

Second Circuit's most recent and relevant discussion bearing on the question of whether manipulative intent alone can support liability for otherwise legal open-market transactions.

Based on *Mulheren* and other cases, defendants argued that Mr. Saba's purchase of 200,000 T.V. Azteca S.A. de C.V. American Depositary Receipts ("TZA") on August 20, 1999 did not, as a matter of law, constitute market manipulation under Section 10(b) because it was unaccompanied by any deceptive practices such as wash sales or matched orders, or by any misrepresentations or omissions.  (Mov. Mem. at 21-24; Reply Mem. at 3-7).

Among the cases cited in support of this argument was *GFL Advantage Fund, Ltd. v. Colkitt*, a Third Circuit case holding that in order to be liable for manipulation based on otherwise legal trading of securities, a defendant would need to have engaged in "deceptive or manipulative conduct by injecting inaccurate information into the marketplace or creating a false impression of supply and demand for the stock," and that "it is unreasonable to infer unlawful intent from lawful activity alone."  272 F.3d 189, 207 (3d Cir. 2001).  (Mov. Mem. at 21-23; Reply Mem. at 3-4).  Defendants noted that the *GFL Advantage Fund* requirements have been cited with approval by the SEC itself.  *See In the Matter of the Application of Amr Elgindy*, 2004 SEC LEXIS 555, *13 (March 10, 2004) (reversing manipulation sanctions and stating that "manipulation requires the injection of inaccurate information into the market or creation of a false impression of market activity"); *see also In re Olympia Brewing Co. Securities Litig.*, 613 F. Supp. 1286, 1292 (N.D. Ill. 1985).  (Reply Mem. at 4).

Similarly, defendants discussed decisions by Judge Sand in *Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*, No. 02 Civ. 0767 (LBS), which dismissed certain counterclaims for failure to allege "some other deceptive practice" beyond allegedly manipulative open-market transactions.  2003 U.S. Dist. LEXIS 21854, *24-27 (S.D.N.Y. Dec. 4, 2003) ("*Nanopierce III*");

2003 U.S. Dist. LEXIS 11108, *28-29 (S.D.N.Y. June 30, 2003) ("*Nanopierce II*"). Mr. Saba and Mr. Sutton also relied upon Judge Mukasey's dismissal of claims with prejudice in *In re College Bound Consolidated Litig.*, No. 93 Civ. 2348, 1995 U.S. Dist. LEXIS 10684, *16-17, *20-21 (S.D.N.Y. July 31, 1995), where plaintiffs failed to present facts demonstrating that open-market purchases were deceptive; and upon the Seventh Circuit's decision to affirm dismissal of a market manipulation claim where the defendant's short selling activity was not accompanied by "deception." *Sullivan & Long, Inc. v. Scattered Corp.*, 47 F.3d 857, 864-65 (7th Cir. 1995). (Mov. Mem. at 21-23; Reply Mem. at 4-5).

Messrs. Saba and Sutton, in their motion for summary judgment, also argued that even assuming that the SEC may allege market manipulation based solely on intent, summary judgment was nevertheless warranted because the SEC's evidence of manipulative intent was based on false premises and impermissible speculation. (Mov. Mem. at 13-21; Reply Mem. at 7-16). The substantial evidence that Mr. Saba purchased TZA for investment purposes made the SEC's unsupported theory of manipulation especially untenable. (Mov. Mem. at 20-21; Reply Mem. at 6-10).

## B.   The SEC's Opposition to Summary Judgment

In opposing defendants' argument, the SEC asserted that *Mulheren* did not have the significance ascribed to it by defendants. Instead, the SEC sought to characterize its case against Mr. Saba as an "ordinary, unremarkable" marking the close case, and argued that market manipulation claims under Section 10(b) may be established based solely on the investor's intent in making an otherwise legitimate securities trade on the open market. (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, dated June 19, 2006 ("Opp. Mem.") at 11-16).

The SEC did not address the requirement, set forth in *GFL Advantage Fund*, of "injecting inaccurate information into the marketplace or creating a false impression of supply and demand for the security." Nor did the SEC address the requirement of "some other deceptive practice" set forth by Judge Sand in *Nanopierce*. In arguing that its case could move forward based solely upon allegations that the relevant transaction was completed with manipulative intent, the SEC relied primarily on *In re Initial Public Offering Securities Litig.*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003); *United States v. Regan*, 937 F.2d 823 (2d Cir. 1991), *cert. denied sub nom. Zarzecki v. United States*, 504 U.S. 940 (1992); and *Markowski v. SEC*, 274 F.3d 525 (D.C. Cir. 2001), *cert. denied*, 537 U.S. 819 (2002). (*See* Opp. Mem. at 12-15). The SEC also sought to identify record evidence of Mr. Saba's manipulative intent. (*See* Opp. Mem. at 5-11, 16-20).

**C.      The Court's Decision:  Statements at Oral Argument and in the November Order**

The Court carefully addressed, at oral argument and in the November Order, the Second Circuit's previous treatment of open-market manipulation in *Mulheren*, and discussed the different ways in which lower courts in this district applied *Mulheren*—including Judge Mukasey's decision to dismiss claims in *College Bound*, Judge Sand's decision to dismiss a counterclaim in *Nanopierce III*, and Judge Scheindlin's denial of a motion to dismiss in *In re Public Offering Securities Litig.*—but did not analyze those different approaches in light of the Second Circuit's decision in *ATSI*, which was decided after the summary judgment motion was fully briefed.

After discussing the "legal landscape" as it existed prior to *ATSI*, the Court ultimately concluded that manipulative intent alone can support liability for otherwise legal open-market transactions. *Masri*, 523 F. Supp. 2d at 371. The Court's reasoning reflected the observation, accurate prior to *ATSI*, that "the law of the Second Circuit on so-called open-market manipulation—where the alleged manipulator has made otherwise legitimate trades, yet with the

subjective intent to affect the stock price thereby—is not yet fully settled." *Id.* at 368 (citing *Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*, No. 02 Civ. 0767 (LBS), 2002 U.S. Dist. LEXIS 24049, *21 (S.D.N.Y. Oct. 10, 2002) ("*Nanopierce I*")). The Court declined to follow *GFL Advantage Fund*, *id.* at 371-72, and indicated that Judge Sand's decision to dismiss counterclaims in *Nanopierce II* "doesn't go [as] far" as *GFL Advantage Fund*. (Transcript of Sept. 28, 2007 Oral Argument ("Tr.") at 47:23-24).

In considering the summary judgment motion, the Court demonstrated that it correctly perceived the SEC's fraud case against Mr. Saba to be extremely tenuous, and that summary judgment would have been granted but for the Court's ultimate conclusion that the SEC could proceed to trial based solely on allegations of manipulative intent, even absent any alleged misconduct beyond the open-market trade itself. After discussing various arguments, including the pre-*ATSI* state of the law concerning open-market manipulation, the Court stated that defendants' summary judgment motion presented an "extremely close case and I have given serious consideration to booting the case, because I think it is extremely thin." (Tr. at 51:15-17).

Similarly, the November Order stated that "[t]he Court may find the SEC's evidence of intent to be weak, but it is not so unconvincing as to allow the Court to encroach on the province of the fact-finder at this stage of the proceeding." *Masri*, 523 F. Supp. 2d at 375.

**D.** **The Second Circuit's *ATSI* Opinion; Judge Sand's Subsequent *Nanopierce* Rulings**

On July 11, 2007, the Second Circuit decided *ATSI*. As discussed more fully below, the Second Circuit's opinion bore directly on the open-market manipulation issues that were decided in this Court's November Order.

On January 28, 2008, Judge Sand analyzed the import of *ATSI* with respect to certain manipulation claims that he had previously sustained in *Nanopierce I*. Judge Sand held that the newly clarified law of the Second Circuit required that summary judgment be granted, and that

the previously sustained claims be dismissed. *Nanopierce IV*, 2008 U.S. Dist. LEXIS 6225, at *8-14. Judge Sand later adhered to that decision after granting a motion for reconsideration. *Nanopierce Techs., Inc. v. Southridge Capital Mgmt.*, No. 02 Civ. 0767 (LBS), 2008 U.S. Dist. LEXIS 34560, *6-7 (S.D.N.Y. Apr. 21, 2008) ("*Nanopierce V*").

## ARGUMENT

### POINT I

### MR. SABA'S MOTION FOR RECONSIDERATION SHOULD BE GRANTED

Pursuant to Rule 54(b), a court may reconsider and revise "any order or other decision … that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties … any time before the entry of a judgment adjudicating all the claims…." Fed. R. Civ. P. 54(b). *See also Dunn v. Standard Bank London Ltd.*, No. 05 Civ. 2749 (DLC), 2006 U.S. Dist. LEXIS 54578, *4 (S.D.N.Y. Aug. 8, 2006). Any such order may be changed if there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *McAnaney v. Astoria Fin. Corp.*, No. 04-CV-1101, 2008 U.S. Dist. LEXIS 5535, *9 (E.D.N.Y Jan. 25, 2008); *Rispler v. Sol Spitz Co.*, No. 04-CV-1323, 2006 U.S. Dist. LEXIS 75840, *4 (E.D.N.Y. Oct. 18, 2006) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). "Similarly, the court's plenary power to review its own interlocutory orders may be applied in circumstances 'when it is consonant with justice to do so.'" *Rispler*, 2006 U.S. Dist. LEXIS 75840, at *4 (quoting *United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1983)).

This motion for reconsideration should be granted because a controlling decision of law—the Second Circuit's decision in *ATSI*—was previously overlooked. Because consideration

of the *ATSI* decision may alter certain of the Court's previous conclusions regarding Mr. Saba's motion for summary judgment, reconsideration will prevent a potential manifest injustice. *ATSI*, *Nanopierce IV*, and *Nanopierce V* all address the question of whether manipulative intent alone can support liability for otherwise legal open-market transactions, and each decision answers the question in the negative. In addition, each of those decisions clarifies the requirements for proving scienter in a Section 10(b) manipulation case. It is "reasonably … expected [that these decisions will] alter the conclusion reached by the [C]ourt." *See McAnaney*, 2008 U.S. Dist. LEXIS 5535, at *10 (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).[2]

## POINT II

### UPON RECONSIDERATION, THE COURT SHOULD GRANT SUMMARY JUDGMENT BECAUSE MR. SABA'S PURCHASE WAS NOT "WILLFULLY COMBINED WITH SOMETHING MORE" AS REQUIRED BY THE SECOND CIRCUIT IN *ATSI*

The question before the Court is whether an open-market transaction without "something more" can constitute manipulation in violation of Section 10(b) based on defendant's subjective intent. Section 10(b) prohibits the "use or employ[ment]… [of] any… manipulative or deceptive device or contrivance." 15 U.S.C. § 78j(b). In manipulation cases, the Second Circuit and other courts have required a showing that an alleged manipulator engaged in market activity "aimed at deceiving investors as to how other market participants have valued a security." *ATSI*, 493 F.3d at 100. Although the word "manipulative" precedes the disjunctive "or" in the text of Section 10(b), it "cannot be isolated from the context of the statute. In the securities context,

---

[2] This motion is timely filed. Although Local Rule 6.3 provides that a motion for reconsideration shall be served within ten days after entry of the court's determination of the original motion, that timeframe may be disregarded if the court specifically directs otherwise. *See Rispler*, 2006 U.S. Dist. LEXIS 75840, at *4-6. In an order filed on July 14, 2008, the Court granted permission for Mr. Saba to move for reconsideration. This motion is being served within ten business days of July 14, 2008.

manipulation still requires misleading or deceiving someone." *United States v. Finnerty*, 474 F. Supp. 2d 530, 542 (S.D.N.Y. 2007) (Chin, J.) (granting judgment of acquittal after jury returned guilty verdict on manipulation and other charges), *aff'd*, 2008 U.S. App. LEXIS 15296 (2d Cir. July 18, 2008) (affirming judgment of acquittal on all charges remaining after government abandoned manipulation claims on appeal). An assertion that conduct might "manipulate" the price of a security in some other sense, without more, "says nothing about whether [that conduct] misled or deceived" anyone. *See id.* at 543.

The November Order recognized that district judges within this Circuit, prior to *ATSI*, took varying approaches on the question now presented to this Court and, "at least on first blush, [came] out on different sides of the issue." S*ee Masri*, 523 F. Supp. 2d at 367-69. The Court noted that the Third Circuit answered the question in the negative in *GFL Advantage Fund*, requiring that the alleged manipulator "injected inaccurate information into the market or created a false impression of market activity." *Id.* at 367 (citing *GFL Advantage Fund*, 272 F.3d at 205).

The Court, in analyzing the issue in the context of Mr. Saba's motion for summary judgment, did not have the opportunity to address the impact of the Second Circuit's *ATSI* decision. *ATSI*'s requirements for manipulation claims warrant reconsideration of the applicable principles of law and, ultimately, a different result on Mr. Saba's summary judgment motion. The *ATSI* decision, after citing *GFL Advantage Fund* with approval, sets forth an equivalent requirement:

> To prevent this deleterious effect on the capital markets, the Third Circuit distinguishes manipulative from legal conduct by asking whether the manipulator "inject[ed] inaccurate information into the marketplace or creat[ed] a false impression of supply and demand for the security … for the purpose of artificially depressing or inflating the price of the security." *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 207 (3d Cir. 2001) … In essence, taking a short position is no different than taking a long position. To be

> actionable as a manipulative act, short selling ***must be willfully combined with something more to create a false impression of how market participants value a security***.

*ATSI*, 493 F.3d at 101 (emphasis added).

**A.** **Under *ATSI*, Liability for an Open-Market Trade Cannot Be Established Absent Other Misleading or Deceptive Behavior by a Defendant**

Without the Second Circuit's decision in *ATSI*, this Court grappled with the difficult question of whether an open-market transaction could constitute manipulation in violation of Section 10(b) of the Securities Exchange Act (i) only if accompanied by additional "deceptive or fraudulent conduct" or (ii) based "entirely on the intent of the trader," with allegations of other deceptive conduct, like allegations describing the "features of open-market transactions themselves," being "only required to render plausible allegations of manipulative intent." *See Masri*, 523 F. Supp. 2d at 369, 371-72.

The *ATSI* decision answered the question by clarifying that, in order to establish a market manipulation claim based on an open-market trade, it is necessary to demonstrate some deceptive or fraudulent behavior in addition to the transaction itself. The *ATSI* court held that, "to be actionable as a manipulative act," an open-market trade must be "willfully combined with something more to create a false impression of how market participants value a security." *ATSI*, 493 F.2d at 101.

By stating that the transaction must be "***willfully***" combined with something more, the Second Circuit foreclosed the possibility that the "something more" requirement could be satisfied by mere reference to the "features" of an open-market transaction. *See ATSI*, 493 F.3d at 101.

**B. Judge Sand's Application of *ATSI* in *Nanopierce I-V* Reflects Precisely The Proper Application of *ATSI* to this Case**

    **1.    *Nanopierce* Decisions Prior to *ATSI***

Like this Court, Judge Sand in *Nanopierce* was faced with interpreting open-market manipulation claims under the law as it existed both prior to and following *ATSI*. After *ATSI*, Judge Sand granted summary judgment dismissing manipulation claims that he had previously allowed to stand. *See Nanopierce IV*, 2008 U.S. Dist. LEXIS 6225, at *8-14. The same result is warranted here.

In *Nanopierce I*, Judge Sand set forth a standard that required "deceptive conduct" in addition to subjective intent. *See Nanopierce I*, 2002 U.S. Dist. LEXIS 24049, at *30. That decision involved a motion to dismiss claims alleging that defendants had manipulated downward the price of Nanopierce stock (NPCT). Plaintiff alleged that the defendants engaged in large sales immediately after entering a "death spiral" financing transaction pursuant to which defendants had received "reset rights" entitling them to additional shares of common stock in the event of a decline in stock price. *Id.* at *4-7. The plaintiff claimed that the unusual timing, pattern and volume of these sales, combined with the fact that much of the trading was conducted through an entity that was not a market maker in NPCT, demonstrated that defendants had manipulated the stock price downward in order to profit from their reset rights. *Id.* at *7-8.

Judge Sand carefully analyzed the existing law—including *Mulheren*, *Regan*, *College Bound*, *Markowksi*, and *GFL Advantage Fund*—and, "[r]ecognizing the closeness of the issue," held that the plaintiff's claims could stand because the following allegations described a sufficient "combination of subjective intent and deceptive conduct":

    1)    **subjective intent** to depress the value of NPCT stock, based on a financing agreement that provides a motive for manipulation;

2)      **timing** of sales beginning the first trading day after closing and continuing until liquidation;

3)      **dominant or near-dominant trading volume** throughout a six-month period;

4)      significant amounts of trading conducted through a non-market maker; and

5)      an extensive pattern of similar investments and subsequent stock price drops in other companies.

*Nanopierce I*, 2002 U.S. Dist. LEXIS 24049, at *30.

In *Nanopierce II* and *Nanopierce III*, also decided prior to *ATSI*, Judge Sand applied the same requirement that "deceptive conduct" must accompany subjective intent, this time to counterclaims brought by the defendants. The counterclaims alleged that certain open-market purchases had been arranged and paid for by plaintiff and others for the purpose of artificially inflating the volume of trading in NPCT, in order to make the stock more attractive to potential investors. *Nanopierce II*, 2003 U.S. Dist. LEXIS 11108, at *25-26. Judge Sand held that defendants' counterclaims, unlike plaintiff's claims at issue in *Nanopierce I*, failed to allege "some other deceptive practice beyond mere sales," and he dismissed the counterclaims as a result. *See id.* at *28-29. *See also Nanopierce III*, 2003 U.S. Dist. LEXIS 21854, at *24-27 (dismissing same counterclaims with prejudice when pleadings, supplemented by additional allegations, still failed to allege "any deceptive practice beyond mere sales").

### 2.    ___Nanopierce_ Decisions Following _ATSI___

After *ATSI*, Judge Sand revisited the open-market manipulation claims that had been permitted to withstand a motion to dismiss in *Nanopierce I*. Ruling on defendants' motion for summary judgment, Judge Sand held that *ATSI* precludes liability for death spiral financing as a matter of law, unless some other manipulative behavior accompanies it. *Nanopierce IV*, 2008 U.S. Dist. LEXIS 6225, at *8. He recognized that in *ATSI*, the Second Circuit had endorsed the Third Circuit's holding in *GFL Advantage Fund* that to be liable for manipulation for an open-

market trade, "a defendant would need to 'inject[] inaccurate information into the marketplace or create a false impression of supply and demand for the security … for the purpose of artificially depressing or inflating the price of the security.'" *Id.* at *9.

Importantly, in granting summary judgment, Judge Sand implicitly recognized that the five enumerated allegations he had held to be sufficient to state a claim prior to *ATSI*, *see Nanopierce I*, 2002 U.S. Dist. LEXIS 24049, at *30, were no longer sufficient after *ATSI*. Since the defendants' behavior—entering into "death spiral" financing agreements and engaging in short selling—was not "inherently manipulative," summary judgment was warranted. *Nanopierce IV*, 2008 U.S. Dist. LEXIS 6225, at *9-10, *13-14.

Judge Sand further clarified the import of *ATSI* in a subsequent decision granting plaintiff's motion for reconsideration but adhering to the grant of summary judgment. In *Nanopierce V*, plaintiff sought to argue that it had met the requirements of *GFL Advantage Fund* that *ATSI* endorsed, claiming that its expert report had concluded that the stock sales "injected material false information into the market." *Nanopierce V*, 2008 U.S. Dist. LEXIS 34560, at *6. In language applicable here, Judge Sand swiftly rejected plaintiff's argument:

> But this argument is simply incorrect. Mere sales do not inject false information into the market place, nor can a party inject false information into the marketplace, as required to defeat summary judgment under the Second Circuit's *ATSI* decision, simply by selling stock on the open market.

*Id.*

## C.   Application of *ATSI* and *Nanopierce* to Mr. Saba's Motion for Summary Judgment

### 1.   The *ATSI* Requirement of "Something More" Cannot Be Satisfied By Identification of Features of the Disputed Open-Market Trade Itself

On Mr. Saba's motion for summary judgment, the Court stated that it was presented with an "extremely close case" (Tr. 51:15) that required analysis of the "not yet fully settled" law in

the Second Circuit. *Masri*, 523 F. Supp. 2d at 368. Similarly, in *Nanopierce I*, Judge Sand "recogniz[ed] the closeness of the issue" and "acknowledge[d] that the law of the Second Circuit on so-called open-market manipulation … [was] not yet fully settled." *Nanopierce I*, 2002 U.S. Dist. LEXIS 24049, at *21, *31. The Court noted a justified reluctance by American courts, including Judge Sand's in *Nanopierce*, to impose liability based upon intent alone. *Masri*, 523 F. Supp. 2d at 367-69. Nevertheless, the Court, like Judge Sand in *Nanopierce I*, decided its "close case" by permitting claims of market manipulation to stand, citing as support what it aptly described as "features of open-market transactions themselves," as opposed to any deceptive or fraudulent behavior. *See Masri*, 523 F. Supp. 2d at 369, 372; *Nanopierce I*, 2002 U.S. Dist. LEXIS 24049, at *30.

A review of the four bases for the Court's denial of Mr. Saba's motion for summary judgment illustrates that the Court relied on the features of Mr. Saba's open-market purchase, and did not find any additional deceptive or fraudulent behavior. *See Masri*, 523 F. Supp. 2d at 372. The Court identified (1) the timing of the open-market trade (late in the day); (2) the size of the trade (constituting a large majority of shares purchased that day); (3) the existence of outstanding put options that Mr. Saba allegedly did not wish to be assigned; and (4) the alleged fact that purchasing 200,000 TZA allowed Mr. Saba to avoid assignment of the options. *Id.*

Of these four items, only the third—existence of outstanding put options based on earlier transactions—reflects any activity that occurred outside of the open-market trade itself. And inasmuch as there is no allegation whatsoever that Mr. Saba's acquisition of those put options involved any impropriety, the acquisition of the puts, by definition, cannot have been "willfully" combined with Mr. Saba's later open-market purchase of 200,000 TZA.

Accordingly, just as Judge Sand held that the five enumerated allegations found sufficient in *Nanopierce I* failed as a matter of law after *ATSI* because they reflect no "other manipulative behavior," *see Nanopierce IV*, 2008 U.S. Dist. LEXIS 6225, at *8, summary judgment is also warranted here.

### 2. Far From Being an Ordinary "Marking the Close" Case, This Case Is Uniquely Devoid of Conduct to Meet *ATSI*'s "Something More" Standard

We expect that the SEC will oppose this motion by repeating its mantra that Mr. Saba engaged in an "ordinary, unremarkable 'marking the close' type of market manipulation" that courts have prohibited in the past (*see*, *e.g.*, Opp. Mem. at 11), and that *ATSI*'s principles should therefore not extend to this case. But the Court has already correctly perceived that the SEC "is pushing this case beyond any other cases they have brought" (Tr. at 26:15-16), and that the SEC "goes too far in arguing that end-of-day transactions, by themselves, have long been actionable as market manipulation and that Congress 'clearly intended' such conduct to fall within the ambit of Section 10(b)." *Masri*, 523 F. Supp. 2d at 370.

The November Order clearly and correctly recognizes that "stock transactions made at the close of the day are not prohibited" and, indeed, studies have shown that trading is heaviest just before the market closes, as traders monitor activity and their positions throughout the day before conducting their trades. *Masri*, 523 F. Supp. 2d at 370.

In the context of SEC enforcement actions, "marking the close" has been defined as "the practice of *repeatedly* executing the last transaction of the day in a security in order to affect its closing price." *Masri*, 523 F. Supp. 2d at 373 n.21 (quoting *SEC v. Schiffer*, No. 97 Civ. 5853, 1998 WL 226101, *1 n.3 (S.D.N.Y. May 5, 1998)). Such instances of "marking the close" invariably, if not by definition, occur in conjunction with other conduct that is at least arguably deceptive or fraudulent, as reflected in various cases surveyed in the November Order. *See*

-16-

*Masri*, 523 F. Supp. 2d at 369-71.  It is with good reason that the Court has not "seen one case where the SEC brought an action in a situation like this."  (Tr. at 26:20-21).  Indeed, the SEC conceded at oral argument that it has never litigated an injunctive case that turns "on subjective intent based on ten minutes of trading in one day."  (Tr. at 27:9-21).

After *ATSI*, it is clear that a market manipulation claim arising under Section 10(b) based on a purchase at the end of the day must involve some deceptive or misleading act beyond the otherwise legitimate open-market trade.  Because Mr. Saba is not even alleged to have engaged in any acts beyond requesting an open-market purchase, this Court can grant summary judgment without deciding whether or not particular acts in other "marking the close" cases might satisfy *ATSI*'s requirements.[3]

Indeed, it would be difficult to imagine a case where the absence of other deceptive or fraudulent behavior is more pronounced than it is here.  Not only is there a complete dearth of evidence or even allegations regarding "practices, such as wash sales, matched orders, or rigged prices," or other recognizably deceptive conduct that normally constitutes "manipulation," *see Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977), there is not even a hint of an argument that Mr. Saba's conduct was deceptive in any way, other than the alleged intent behind the open-market trade itself.  (*See* Moving Mem. at 13-15, 18-19).  For instance, the SEC does not dispute

---

[3] In *Nanopierce V*, 2008 U.S. Dist. LEXIS 34560, at *7, Judge Sand indicated that after *ATSI*, it "is unresolved" whether a Section 10(b) market manipulation claim could be established in the context of a "marking the close" case like *SEC v. Competitive Technologies, Inc.*, No. 3:04-cv-1331, 2005 U.S. Dist. LEXIS 43349 (D. Conn. July 21, 2005).  In *Competitive Technologies*, repeated "marking the close" transactions were among "several techniques," including placing successive, small-amount buy orders to simulate increased demand (*i.e.*, "painting the tape") and arranging identical buy and sell orders, to simulate active trading and to offset the impact of other sales of the stock (*i.e.*, "matching orders").  2005 U.S. Dist. LEXIS 43349, at *14-16.  Here, by contrast, there is no conduct that could satisfy the *ATSI* requirement that the open-market trading be "willfully combined with something more."

that, although Mr. Saba owned multiple trading accounts, the August 20, 1999 purchase was completed in the same account that held the short put option position.  (Reply Mem. at 6).

The SEC is left with nothing other than its allegations of manipulative intent.  Whatever the SEC might now seek to identify as satisfying the "something more" required under *ATSI*, it will necessarily consist of a feature of the open-market trade itself which, like the short selling at issue in *ATSI* and *Nanopierce*, is not inherently manipulative.  *See ATSI*, 493 F.3d at 101; *Nanopierce IV*, 2008 U.S. Dist. LEXIS 6225, at *10, *13-14.  There is simply nothing about Mr. Saba's activities that could properly be identified as having been "willfully" combined with his open-market trade.

## POINT III

### *ATSI* ALSO ESTABLISHES THAT SUMMARY JUDGMENT SHOULD BE GRANTED HERE BECAUSE SCIENTER CANNOT BE ESTABLISHED ABSENT EVIDENCE THAT MR. SABA INTENDED TO DECEIVE INVESTORS

*ATSI*, in addition to establishing that Mr. Saba's purchase of TZA cannot constitute a manipulative act as a matter of law (*see* Point II, *supra*), also establishes that summary judgment is appropriate based upon the SEC's inability to demonstrate scienter.  *See ATSI*, 493 F.3d at 101.  A claim for market manipulation "must plead with particularity facts giving rise to a strong inference that the defendant intended to deceive investors by artificially affecting the market price of securities."  *Id.* at 102.  Attempts to establish scienter based on mere allegations that a legitimate investment vehicle created an opportunity for profit through manipulation are not sufficient, because plausible nonculpable explanations for the defendant's actions will be more

likely than any inference that the defendant intended to manipulate the market. *See id.* at 104

(citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, __ U.S. __, 168 L. Ed. 2d 179, 193 (2007)).[4]

In granting summary judgment in *Nanopierce IV*, Judge Sand correctly recognized that in

*ATSI*, "[t]he Second Circuit has spoken clearly about the principle that '[a] strong inference of

scienter [sufficient to withstand a motion to dismiss] is not raised by alleging that a legitimate

investment vehicle…creates an opportunity for profit through manipulation.'" 2008 U.S. Dist.

LEXIS 6225, at *10 (quoting *ATSI*, 493 F.3d at 104). "Such an allegation, standing by itself, is

insufficient to defeat a motion to dismiss; it is certainly insufficient to defeat a motion for

summary judgment." *Id.*

In its November Order, the Court correctly recognized that even if the SEC may allege

market manipulation based on intent alone, it must still proffer sufficient evidence of intent to

survive summary judgment. *Masri*, 523 F. Supp. 2d at 372. After analyzing the SEC's

purported evidence of intent, the Court found it to be "weak." *Id.* at 373-75. The Court denied

summary judgment, however, on grounds that the SEC's evidence of intent, while "weak," "is

not so unconvincing as to allow the Court to encroach on the province of the fact-finder at this

stage of the proceeding." *Id.* at 375.

*ATSI*, however, demonstrates that the evidence of manipulative intent proffered here is

not only "weak," it is insufficient as a matter of law in the context of a claim alleging market

manipulation in violation of Section 10(b). The SEC has not proffered sufficient evidence to

show that Mr. Saba "intended to deceive investors by artificially affecting the market price of

---

[4] At least in the Second Circuit, the "strong inference" requirement for pleading scienter applies not only to private class actions governed by the Private Securities Litigation Reform Act of 1995 (PSLRA), but to all fraud-based cases governed by Fed. R. Civ. P. 9(b). *See Tellabs*, 168 L. Ed. 2d at 192 (noting that the PSLRA adopted the Second Circuit's "strong inference" standard).

securities," as required to establish manipulative intent under *ATSI*. *See ATSI*, 493 F.3d at 102.

Rather, the SEC relies on inferences or speculation stemming from the concept that Mr. Saba's

legitimate investment activity "creat[ed] an opportunity for profit through manipulation," *ATSI*,

493 F.3d at 104. Whether viewed charitably as "inferences" or less charitably as "speculation,"

the factors relied upon by the SEC to establish manipulative intent do not constitute a sufficient

basis on which to proceed to trial in the Second Circuit. *See ATSI*, 493 F.3d at 104; *Nanopierce*

*IV*, 2008 U.S. Dist. LEXIS 6225, at *10.

Moreover, the Court has already recognized that Mr. Saba's contrary evidence

demonstrating that he purchased for investment purposes has "some force" and that Mr. Saba

"proffers reasonable replies to the SEC's rhetorical questions." *See Masri*, 523 F. Supp. 2d at

373-75. In both the November Order and at oral argument, the Court acknowledged that the

SEC's purported evidence of manipulative intent is undermined by, among other things, the

following:

(1) That this transaction was executed at the end of the day provides little indication of manipulative intent because trading is heavily concentrated at the end of the day (*Masri*, 523 F. Supp. 2d at 373);

(2) Mr. Saba plausibly stated that he waited until the end of day in order to see whether or not he would be put the 860,000 TZA as a result of the August 5 put options, particularly in light of the substantial number of TZA November 5 call options he had sold (*Masri*, 523 F. Supp. 2d at 373-74; Tr. 35:16-23, 61:22-23);

(3) It was not necessary to purchase anywhere near 200,000 TZA if the goal was to achieve a closing price above $5 and, accordingly, the considerable size of the transaction actually cuts against a theory of manipulative intent (*Masri*, 523 F. Supp. 2d at 374; Tr. 14:3-11, 15:21-16:2);

(4) The floor trader testified that the trade was a "best execution" transaction, and there was no manipulative reason to execute a purchase of an additional 55,000 TZA at a limit of $5⅜ when TZA was already trading above $5⅛ at 3:59 p.m. (*Masri*, 523 F. Supp. 2d at 374; Tr. 22:24-23:6);

(5) Mr. Saba could have bought the options back if he didn't want to be put the stock (Tr. 29:22-23);

(6) The purchase of 200,000 TZA averaged down shares Mr. Saba was being put at $7.50 (*Masri*, 523 F. Supp. 2d at 374; Tr. 31:23-25);

(7) Mr. Saba's testimony is not really inconsistent, as claimed by the SEC (*Masri*, 523 F. Supp. 2d at 374; Tr. 32:7-13); and

(8) The explanation regarding Mr. Sutton's order ticket is understandable and reasonable (*Masri*, 523 F. Supp. 2d at 374; Tr. 19:24-25).

"Accordingly, there is a 'plausible nonculpable explanation' for the defendant['s] actions that is more likely than any inference that the defendant[] intended to manipulate the market." *ATSI*, 493 F.3d at 104 (quoting *Tellabs*, 168 L. Ed. at 193) (brackets omitted); *see also Nanopierce IV*, 2008 U.S. Dist. LEXIS 6225, at *10.

## CONCLUSION

For the foregoing reasons, defendant Moises Saba Masri respectfully requests that this Court grant his motion for reconsideration and, upon reconsideration, grant summary judgment dismissing the complaint against him, and grant such other relief as may be proper.

Dated: New York, New York
July 25, 2008

Respectfully submitted,

NIXON PEABODY LLP

By:      /s/ David A. Feldman
              Roger R. Crane, Jr. (RC-0469)
              David A. Feldman (DF-5663)

              437 Madison Avenue
              New York, New York 10022
              (212) 940-3000

              Attorneys for Defendant
               Moises Saba Masri