UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x
                                                                               :

UNITED STATES OF AMERICA              :
                                                                                :     No. 22-CR-240 (AKH)
         - v. -                                         :

SUNG KOOK (BILL) HWANG and         :
PATRICK HALLIGAN,                             :
                                                             :
                               Defendants.          :
                                                               :
-------------------------------------------------------------- x

**DEFENDANT PATRICK HALLIGAN'S REPLY MEMORANDUM IN
SUPPORT OF MOTION FOR ISSUANCE OF RULE 17(C) SUBPOENAS**

FRIEDMAN KAPLAN SEILER
 ADELMAN & ROBBINS LLP
7 Times Square
New York, New York  10036-6516
(212) 833-1100

September 27, 2023                                *Attorneys for Patrick Halligan*

4895-5232-9346.2

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ...................................................................................................................1

INCORPORATION OF MR. HWANG'S ARGUMENTS.......................................................2

MR. HALLIGAN'S ADDITIONAL ARGUMENTS ...............................................................2

    A.      The Court Should Apply the *Tucker* Standard..........................................................2

    B.      The Revised Subpoenas Satisfy Both the *Nixon* and *Tucker* Standards ..................4

CONCLUSION.......................................................................................................................10

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Neder v. United States*,
 527 U.S. 1 (1999)..................................................................................................................8

*United States v. Akhavan*,
 No. 20-CR-188-2 (JSR), 2021 WL 1251893 (S.D.N.Y. Apr. 2, 2021) ....................................3

*United States v. Avenatti*,
 No. 19-CR-373 (PGG), 2020 WL 508682 (S.D.N.Y. Jan. 31, 2020) .......................................5

*United States v. Barnes*,
 560 F. App'x 36 (2d Cir. 2014) ...............................................................................................3

*United States v. Bergstein*,
 788 F. App'x 742 (2d Cir. 2019) .............................................................................................3

*United States v. Caro*,
 597 F.3d 608 (4th Cir. 2010) ...................................................................................................1

*United States v. Cole*,
 No. 19-CR-869 (ER), 2021 WL 912425 (S.D.N.Y. Mar. 10, 2021) ........................................4

*United States v. Goldstein*,
 No. 21-CR-550 (DC), 2023 WL 3662971 (E.D.N.Y. May 25, 2023) .....................................3

*United States v. Nachamie*,
 91 F.Supp.2d 552 (S.D.N.Y. 2000) .........................................................................................2

*United States v. Rajaratnam*,
 753 F. Supp. 2d 317 (S.D.N.Y. 2011)......................................................................................4

*United States v. RW Pro. Leasing Servs. Corp.*,
 228 F.R.D. 158 (E.D.N.Y. 2005) .............................................................................................5

*United States v. Tucker*,
 249 F.R.D. 58 (S.D.N.Y. 2008) ...................................................................................2, 3, 4, 6

*United States v. Velissaris*,
 No. 22-CR-105 (DLC), 2022 WL 17076747 (S.D.N.Y. Nov. 18, 2022) .................................8

*United States v. Weigand*,
 520 F. Supp. 3d 609 (S.D.N.Y. 2021)..................................................................................3, 9

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Neder v. United States*,
 527 U.S. 1 (1999)..................................................................................................................8

*United States v. Akhavan*,
 No. 20-CR-188-2 (JSR), 2021 WL 1251893 (S.D.N.Y. Apr. 2, 2021) ....................................3

*United States v. Avenatti*,
 No. 19-CR-373 (PGG), 2020 WL 508682 (S.D.N.Y. Jan. 31, 2020) .......................................5

*United States v. Barnes*,
 560 F. App'x 36 (2d Cir. 2014) ...............................................................................................3

*United States v. Bergstein*,
 788 F. App'x 742 (2d Cir. 2019) .............................................................................................3

*United States v. Caro*,
 597 F.3d 608 (4th Cir. 2010) ...................................................................................................1

*United States v. Cole*,
 No. 19-CR-869 (ER), 2021 WL 912425 (S.D.N.Y. Mar. 10, 2021) ........................................4

*United States v. Goldstein*,
 No. 21-CR-550 (DC), 2023 WL 3662971 (E.D.N.Y. May 25, 2023) .....................................3

*United States v. Nachamie*,
 91 F.Supp.2d 552 (S.D.N.Y. 2000) .........................................................................................2

*United States v. Rajaratnam*,
 753 F. Supp. 2d 317 (S.D.N.Y. 2011)......................................................................................4

*United States v. RW Pro. Leasing Servs. Corp.*,
 228 F.R.D. 158 (E.D.N.Y. 2005) .............................................................................................5

*United States v. Tucker*,
 249 F.R.D. 58 (S.D.N.Y. 2008) ...................................................................................2, 3, 4, 6

*United States v. Velissaris*,
 No. 22-CR-105 (DLC), 2022 WL 17076747 (S.D.N.Y. Nov. 18, 2022) .................................8

*United States v. Weigand*,
 520 F. Supp. 3d 609 (S.D.N.Y. 2021)..................................................................................3, 9

**Other Authorities**

17 C.F.R § 240.10b-5 .................................................................................................................. 10

Fed. R. Crim. P. 17(c) ............................................................................................................. 1, 4

Second Circuit Local R. 32.1.1 .................................................................................................... 3

U.S. Const. Amend VI ................................................................................................................ 1

4895-5232-9346.2

Mr. Halligan respectfully submits this memorandum of law in further support of Defendants' motion for the issuance of Rule 17(c) subpoenas (the "Motion").[1] As set forth below and in Mr. Halligan's opening brief, Mr. Halligan expressly incorporates Mr. Hwang's arguments in support of the Motion and adopts those arguments as if fully set forth herein.

## INTRODUCTION

The Government invites this Court to constrict Rule 17(c) to a virtual nullity, wrongly re-casting Defendants' finely tailored subpoenas as "broad and blunt" and seeking to foreclose Defendants from obtaining the specific, relevant, and admissible evidence that they need to defend against the Government's deeply flawed allegations. The Government's opposition misconstrues the proposed subpoenas and misapplies relevant law, and asks the Court to circumscribe Rule 17(c) so narrowly that the Defendants would not enjoy the "Sixth Amendment guarantee that an accused have compulsory process to secure evidence in [their] favor." *United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010) (citation omitted). The Government is wrong, and the proposed subpoenas should issue.

Moreover, while the proposed subpoenas were appropriate as originally drafted, the defense has submitted revised proposed subpoenas ("Revised Subpoenas") in an effort at compromise and to facilitate the timely production of the critical evidence being sought. The Revised Subpoenas address and moot many of the Government's objections by narrowing and eliminating certain requests and providing additional specification of the documents being requested. Put simply, the Revised Subpoenas are laser focused on the evidence essential to Defendants' ability to present a meaningful defense.

---

[1] Capitalized terms are used as defined in the Motion (ECF No. 79) and Mr. Halligan's joinder to the Motion (ECF No. 80). The Government's opposition brief (ECF No. 84) is referred to as the "Opp."

## INCORPORATION OF MR. HWANG'S ARGUMENTS

Mr. Halligan joins the arguments submitted by Mr. Hwang in his reply brief and incorporates them as if fully set forth herein. While Mr. Halligan has not been charged in the substantive market manipulation counts of the Indictment (Counts Two through Nine), he has been charged along with Mr. Hwang in a racketeering conspiracy count (Count One) that revolves around alleged supposed market manipulation conduct. Thus, as Mr. Halligan explained in his joinder (ECF No. 80 at 1-2), evidence that refutes the Government's theory of alleged market manipulation is material to Mr. Halligan's defense to the racketeering conspiracy count, as well as the securities fraud and wire counts (Counts Ten and Eleven, respectively) charged against both Defendants. Therefore, Mr. Halligan joins Mr. Hwang's arguments in full and addresses this brief only to limited, additional arguments in support of the Motion.

## MR. HALLIGAN'S ADDITIONAL ARGUMENTS

A.  **The Court Should Apply the *Tucker* Standard**

As an initial matter, the Government is wrong to suggest that the application of the *Nixon* standard is a foregone conclusion in this Circuit. *See* Opp. at 7-8. The Government wrongly discounts Judge Scheindlin's holding and reasoning in *United States v. Tucker*, where the court concluded that the *Nixon* standard – while perhaps appropriate "in the context of a Government subpoena, *especially one seeking evidence from the President*" – is inappropriate where the defense is seeking the production of evidence from non-parties. 249 F.R.D. 58, 66 (S.D.N.Y. 2008) (quoting *United States v. Nachamie*, 91 F.Supp.2d 552, 562 (S.D.N.Y. 2000)) (emphasis added). Other district courts in the Circuit have agreed that the *Tucker* standard should govern

2

defendants' non-party subpoenas,[2] and the Second Circuit has not held that this is error.[3] In this case, while the Government seeks the rote application of the *Nixon* standard, it has offered no *reason* that the subpoenas requested by the Defendants and directed to some of the world's largest banks should be subject to the same scrutiny as a subpoena requested by a special prosecutor and directed to a sitting President of the United States, as in *Nixon*. It should not; for the reasons set forth in *Tucker* and the cases that have followed it, the *Tucker* standard should control and Defendants' proposed subpoenas should issue because they are reasonable, seek documents that are material to the defense, and are not unduly oppressive for the Counterparties to comply with. *See Tucker*, 249 F.R.D. at 66.

In one limited respect, Mr. Halligan agrees with the Government: the outcome of the Motion is the same under *Nixon* and *Tucker*. *See* Opp. at 8 n.2. Indeed, the Motion demonstrated in detail why the subpoenas are appropriate under every prong of both *Nixon* and *Tucker*. Motion at Pt. I (*Tucker*) and Pt. II (*Nixon*). In stark contrast, the Government broadly contends (in a footnote) that the subpoenas fail under *Tucker* for the same reasons they

---

[2] *See United States v. Akhavan*, No. 20-CR-188-2 (JSR), 2021 WL 1251893, at *1 (S.D.N.Y. Apr. 2, 2021) ("This Court joins those who have expressed doubt about the imbalance created by the *Nixon* standard.); *United States v. Weigand*, 520 F. Supp. 3d 609, 613 (S.D.N.Y. 2021) ("Judge Scheindlin's approach is more consistent with modern principles of liberal discovery than *Nixon*."); *United States v. Goldstein*, No. 21-CR-550 (DC), 2023 WL 3662971, at *2 (E.D.N.Y. May 25, 2023) (applying *Tucker* standard on motion to quash criminal defendants' nonparty subpoenas).

[3] The Government refers to the Second Circuit's decision in *United States v. Bergstein*, 788 F. App'x 742, 746 (2d Cir. 2019) (summary order) (cited in Opp. at 8), where the Court held that the subpoena in that case would fail under *Nixon* and *Tucker*, and thus did not need to resolve the appropriate standard. Moreover, that decision is a summary order, which under the Second Circuit's rules does "not have precedential effect." Second Circuit Local R. 32.1.1. In an earlier case, also resolved by non-precedential summary order, the Second Circuit expressly *declined* to decide whether the *Nixon* or *Tucker* standard would govern a nonparty subpoena because the defendant's showing failed under both standards. *United States v. Barnes*, 560 F. App'x 36, 40 (2d Cir. 2014) (summary order).

3

supposedly fail under *Nixon*, without any meaningful effort to address *Tucker*'s specific requirements. *See* Opp. at 8 n.2. Notably, without appearing to take any position of its own on the matter, the Government muses that "it expects the Counterparties would find the volume of material sought unduly oppressive." *Id*. It offers no foundation for this speculative contention, and it defies reason that sophisticated banks with extensive experience in document-intensive litigation will be *unduly oppressed* by the electronic collection and production of narrowly targeted categories of readily identifiable documents.

B. **The Revised Subpoenas Satisfy Both the *Nixon* and *Tucker* Standards**

Whether under *Tucker* or *Nixon*, the Government's further arguments in opposition to the Motion must fail.

First, the Government challenges the specificity of the proposed subpoenas. It quarrels with the subpoenas insofar as they seek "any" and "all" records pertaining to certain specifically identified, narrowly targeted topics, such as the Counterparties' transactions in the very securities at issue in the Indictment (defined as the "At-Issue Securities"), the Counterparties' hedging of their transactions with Archegos, and the Counterparties' risk management with respect to Archegos. *See* Opp. at 9 (opposing Requests 1-5), *id.* at 11 (opposing Requests 8-14). But it simply *not* the case that "the words 'any' and 'all' . . . automatically render a document request so broad that it must be quashed." *United States v. Cole*, No. 19-CR-869 (ER), 2021 WL 912425, *5 (S.D.N.Y. Mar. 10, 2021) (denying motion to quash a Rule 17(c) subpoena request for "all" "documents from a narrow time period [that related] to a specific subject matter—namely, to [an identified individual's] resignation or termination"); *United States v. Rajaratnam*, 753 F. Supp. 2d 317, 322 (S.D.N.Y. 2011) (holding that a Rule 17(c) subpoena

4

request seeking "all" communications between defendants and "any agent or employee" of nonparty was not an "improper fishing expedition").[4]

Moreover, the Government's focus on the terms "any" and "all" is a red herring, because the requests – both as initially proposed and even more so in the Revised Subpoenas – define categories of evidence that are so specific and narrow that "any" and "all" documents within those well-articulated categories are appropriately sought. No more is required. *See, e.g.*, *United States v. RW Pro. Leasing Servs. Corp.*, 228 F.R.D. 158, 164 (E.D.N.Y. 2005) ("A request is considered sufficiently specific where it states with reasonable particularity the subjects to which the documents relate and limits documents to a reasonable period of time.").

In fact, many of the proposed subpoenas' requests mirror the specific allegations of the Indictment – and often its language – so closely that the Government cannot credibly suggest that the documents sought by these requests are not readily identifiable (or, for that matter, relevant). For example, Request 5 of the Revised Subpoenas seeks documents concerning the Counterparties' management of their risk exposure to Archegos, and Request 6 of the Revised Subpoenas seeks documents reflecting Counterparties' knowledge of Archegos's positions with other prime brokers. These topics feature prominently in the Indictment, which describes "risk

---

[4] The Government cites *United States v. Avenatti*, No. 19-CR-373 (PGG), 2020 WL 508682, at *5-6 (S.D.N.Y. Jan. 31, 2020) (cited in Opp. at 10-11), seemingly to support its contention that the request for "all" documents bearing on certain subjects is inappropriate. The subpoena at issue in *Avenatti* sought "[a]ll text messages and emails (without redaction) between (to/from) Jeffrey Auerbach and Gary Franklin relating to, mentioning or concerning Michael Avenatti" that were sent during a specified period. *Id.* at *1. The specified period began before Avenatti's arrest and continued for months after. *Id.* But the Government fails to acknowledge that there was *no dispute* over the proprietary of Avenatti's request insofar as it sought "all" communications *before* his arrest (indeed, the nonparties complied with that aspect of the subpoena). *Id.* The Court addressed and quashed only the portion of the subpoena seeking communications created after his arrest. *Id.* at *5-6. Thus, the *Avenatti* case fails to support the Government's knee-jerk opposition to the terms "any" and "all."

5

assessments" the Counterparties conducted "in order to determine whether to transact with Archegos, whether to continue transacting with Archegos, whether to impose or raise limits on trading with Archegos, and whether to raise or lower their margin rates," Ind. ¶ 43; "due diligence" that Counterparties conducted "before onboarding [Archegos] as a client" and through "period credit reviews . . . to track its risk profile," *id.*; a series of specific measures that Counterparties took to "manage their own risk from exposure to client trading," *id.* ¶ 42; and the significance of the Counterparties' "visibility" into "Archegos's overall portfolio," *id.* ¶ 44. The Government cannot have it both ways: it cannot allege that the Defendants engaged in a scheme to circumvent the Counterparties' risk management efforts, but then claim that same topic is too vague and irrelevant when the Defendants seek the evidence necessary to present a meaningful defense.

In a similar vein, the Government argues that the Defendants show "little regard for what materials actually exist," Opp. at 1, suggesting that the proposed subpoenas are impermissibly speculative. *See* Opp. at 10, 12. In one instance, the Government relies on the defense's concession that the evidence it seeks through the proposed subpoenas is ***not*** in the discovery materials produced to date. *Id.* at 11. Of course, the Defendants don't have these materials: that is why they seek them now. If the *prior* non-production of materials were a legitimate basis to prevent their production *now*, then the Government could unilaterally control the entire scope of discoverable evidence. That is plainly the outcome that the Government seeks, but it is not the law. *See Tucker*, 249 F.R.D. at 65 (rejecting the notion that "the government could prevent defendants from obtaining material by choosing not to obtain it for itself" and explaining that "[t]his perverse result cannot be intended by the Federal Rules of Criminal Procedure.").

In any event, the proposed subpoenas are not improperly speculative. The existence of specific, relevant documents responsive to the subpoenas' requests necessarily follows from the allegations of the Indictment itself. For example, the Indictment alleges that the Counterparties conducted "risk assessments" that they used to, among other things, determine "whether to impose or raise limits on trading" (i.e., capacity limits) and "whether to raise or lower their margin lending rates" with Archegos. Ind. ¶ 43. Given these allegations, there is nothing speculative about Revised Subpoena Requests 3 and 4, which seek the documents that reflect how the very capacity and margin rate determinations described in the Indictment were actually made.

Similarly, the Government questions the existence of documents reflecting Counterparties' hedging of swap transactions through arrangements *other than* purchasing shares of the underlying stock. Opp. at 10. But here again, the basis for this request (Revised Subpoena Request 1) is the Indictment itself: Paragraph 25 allows that Counterparties "typically" (i.e., *not exclusively*) hedged swap transactions by buying stock, and thus it is not at all speculative to insist that records relating to these hedging transactions exist in the banks' files. Moreover, the Counterparties can easily locate these records, and given the extensive internal and governmental investigations that followed Archegos's collapse, there is little doubt that the Counterparties have already identified them. Similarly unpersuasive are the Government's objections to requests relating to the lucrative fees that Counterparties earned through their business with Archegos (now Revised Subpoena Requests 7 and 8). *See* Opp. at 12. The Government asserts that the Defendants "assume the existence of records without endeavoring to demonstrate any likelihood that they do [exist]," Opp. at 12, as if common sense and commercial experience alone are insufficient to establish that banks do, indeed, maintain records of the fees that they charge and receive. Even if common sense were set aside, here too the predicate for the requests lies in

7

Indictment, which explains that the entire reason the Counterparties entered into swap trades with Archegos was "to profit from the financing fees charged on the transaction." Ind. ¶ 16. To the extent the Government has not itself subpoenaed Counterparty records bearing upon this allegation, it is only because it has elected to avoid seeking obviously exculpatory evidence, not because there is any credible doubt that such records exist.

The Indictment's allegations also foreclose the Government's contention that the requests seek irrelevant evidence. *See* Opp. at Pt. II.C. As discussed above, the requests seek evidence necessary to defend against the specific allegations of the Indictment. The Government also misconstrues the requests, the reasons that the Defendants have made them, and the legal arguments that they support. In particular, the Government opposes the bulk of the requests – including requests related to the Counterparties' margin and capacity determinations (Revised Subpoena Requests 3 and 4), the Counterparties' risk management (Revised Subpoena Requests 5 and 6), and the fees that Counterparties earned from their dealings with Archegos (Revised Subpoena Requests 7 and 8) – by arguing that these requests seek evidence related to whether the Counterparties "relied" on the charged misrepresentations and whether the Counterparties were negligent, careless, or incompetent in their dealings with Archegos. Opp. at 16-17, 18. This mischaracterizes the reasons that the Defendants seek this evidence, and the Government's further arguments only expound upon this distortion.

Defendants seek these categories of evidence because they are necessary to defeat the Government's ability to prove the element of *materiality*, which indisputably *is* an element that the Government must establish as to all three counts charged against Mr. Halligan (securities fraud and wire fraud, and the predicate acts charged as part of the racketeering conspiracy). *See, e.g.*, *Neder v. United States*, 527 U.S. 1, 25 (1999) (wire fraud); *United States v. Velissaris*, No.

8

4895-5232-9346.2

22-CR-105 (DLC), 2022 WL 17076747, at *5 (S.D.N.Y. Nov. 18, 2022) (securities fraud). Indeed, the Government made a similar, and unavailing, argument in *United States v. Weigand*, arguing that the "negligence or ineptitude" of banks – the supposed victims in a bank fraud prosecution – "is no defense to bank fraud." 520 F. Supp. 3d at 614. Judge Rakoff thoroughly rejected the Government's argument, explaining that it "misunderstands defendants' theory," which, as the Court explained, was directed to the *materiality* of the alleged misrepresentations, not the banks' competence. *Id.* (explaining that defendants "intend to argue *not* that banks are lackadaisical in their enforcement, but rather that banks <u>do not care</u> about whether their cardholders are purchasing marijuana (at least in states where that is legal).").

Here, the Defendants' requests are relevant for the same reason: they seek evidence that will demonstrate that the Counterparties <u>did not care</u> about the alleged misstatements, because (among other reasons) their capacity and margin frameworks (Revised Subpoena Requests 3 and 4) and risk management operations (Revised Subpoena Requests 5 and 6) prioritized other considerations – such as the lucrative fees the Counterparties were earning (Revised Subpoena Requests 7 and 8) – over the subjects of the alleged misrepresentations. As the Court wrote in *Weigand* and equally applicable here, "If defendants uncover evidence sufficient to support such an inference [i.e, that the banks did not care about the alleged misstatements], then, at least arguably, a juror might find that the alleged misstatements did not have a natural tendency to influence or a reasonable likelihood of influencing a bank's decision whether to [process the transactions in *Weigand*, or whether to enter into securities transactions here]." *Weigand*, 520 F. Supp. 3d at 614. Thus, these requests appropriately seek evidence relevant to the element of materiality.

4895-5232-9346.2

**CONCLUSION**

For these reasons, and those set forth in Mr. Hwang's papers in support of the Motion, Mr. Halligan respectfully requests that the Court issue the proposed subpoenas and require the covered documents to be produced before trial, with an electronic copy provided simultaneously to Mr. Halligan's counsel.

Dated: New York, New York
September 27, 2023

                                       Respectfully Submitted,

                                       FRIEDMAN KAPLAN SEILER
                                         ADELMAN & ROBBINS LLP

                                       s/ Mary E. Mulligan
                                       Mary E. Mulligan (mmulligan@fklaw.com)
                                       Timothy M. Haggerty (thaggerty@fklaw.com)
                                       Bonnie M. Baker (bbaker@fklaw.com)
                                       Anil Vassanji (avassanji@fklaw.com)
                                       Rupita Chakraborty (rchakraborty@fklaw.com)
                                       7 Times Square
                                       New York, New York  10036-6516
                                       (212) 833-1100

                                       *Attorneys for Patrick Halligan*