# EXHIBIT B



**Kramer Levin**

**Jordan Estes**
Partner
**T** 212.715.9132
**F** 212.715.8132
jesetes@KRAMERLEVIN.com

1177 Avenue of the Americas
New York, NY 10036
**T** 212.715.9100
**F** 212.715.8000

**December 8, 2023**

**BY EMAIL**

Matthew Podolsky
Alexandra Rothman
Samuel Rothschild
Andrew Thomas
Assistant United States Attorneys
United States Attorney's Office
Southern District of New York
One Saint Andrews Plaza
New York, New York 10007

Re: *United States v. Sung Kook (Bill) Hwang, et al.*, No. 22 Cr. 240 (AKH)

Dear Counsel:

Pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C), we provide notice that the defense anticipates calling Fabio Savoldelli as an expert witness.

Set forth below are Mr. Savoldelli's qualifications and a summary of his anticipated testimony. We reserve the right to update, amend, and/or supplement the below summary of testimony based on further developments. Mr. Savoldelli's curriculum vitae, which details his professional and teaching experience over the last 40 years, is attached hereto as Exhibit A. Exhibit A also contains a list of all other cases in which he has testified in the last four years as an expert at trial or in a deposition.

**I.     QUALIFICATIONS**

Mr. Savoldelli has 40 years of professional experience in investing and investment analysis, on behalf of financial institutions, including banks and asset management firms. Clients included family offices, banks, insurance companies, trusts, single-investor and co-mingled investors. Since 2007, Mr. Savoldelli has been an adjunct professor in the Department of Finance and Economics at the Columbia University Graduate School of Business, where he is the sole teacher of "Hedge Funds," a course focusing on trading, execution strategies (including strategies

for swaps and other derivatives), portfolio risk, and other successful strategies common in various hedge fund styles.

Mr. Savoldelli's consulting and academic work was preceded by three decades of experience in finance, trading, and asset management, both for banks and private funds. In the 1980s and early 1990s, he served as a Senior Fund Manager and Head of Derivatives for the Bank of Tokyo in London, England, where he introduced high-yield and dynamic derivative product hedging, and as the Deputy Chief Investment Officer and Head of Fixed Income and Derivatives for the Swiss Bank Corporation in New York, where his responsibilities included training investment staff in trade execution strategies, modern portfolio theory, and derivatives. He was Chief Investment Officer for the Americas at Chase Manhattan Private Bank, where he set the investment policy for all institutional and private client accounts in North and South America, a total of $22 billion in discretionary and trust assets.

From the late 1990s into the late 2000s, Mr. Savoldelli worked on investment strategies at Merrill Lynch, first as Managing Director of the Industry Specialist Group of its Global Markets & Investment Banking (GMI) segment, at that time one of the world's largest equity trading and underwriting operations. In that role, he advised commercial and central banks on asset allocation and advanced portfolio management based on their particular regulatory constraints, and he advised mutual fund companies on improving their total performance and Morningstar ratings through superior asset allocation. He next served as Managing Director of Merrill Lynch's asset management segment, Merrill Lynch Investment Managers (MLIM), and as President and Chief Investment Officer of MLIM Alternative Strategies. At Merrill Lynch, he oversaw the portfolios in the Merrill Lynch Hedge Access Program and multiple separate accounts, which gave him direct visibility into hedge fund strategies. From 2007 to 2012, Mr. Savoldelli was Chief Investment Officer and Partner at Optima Fund Management, where he oversaw the investment and performance of $3.2 billion in funds and was the sector head for discretionary macro, quantitative investments, fixed income, and frontier strategies. In the above roles, Mr. Savoldelli had transparency into managed accounts and thus had direct visibility into trading styles of large hedge funds. Mr. Savoldelli implemented a quantitative alternative investment allocation that integrated traditional portfolios with hedge funds and private equity investments. In his role as Chief Investment Officer, Mr. Savoldelli supervised and analyzed investment risk.

## II. SUMMARY OF ANTICIPATED TESTIMONY

Mr. Savoldelli will offer testimony on background topics related to family offices, common trading practices, and financial markets that the jury will need to understand as part of its consideration of the defense case. Unless otherwise noted, the basis for Mr. Savoldelli's testimony will be research, academic literature, publicly available information including industry news, his 40 years of professional experience and training in finance, trading, and investment and asset management, which, as explained above, includes overseeing investment strategies on behalf of banks, institutional asset managers, and hedge funds; his 15 years of teaching a graduate-level course on hedge funds at Columbia University's Graduate School of Business; and his decade of consulting on investment strategies for a family office.

1. Mr. Savoldelli will testify that family offices manage the assets of wealthy families and individuals, and provide these investors with desirable benefits, such as close control over their own investments. He will testify that family offices can be run in a variety of ways, in accordance with the wishes, goals, and risk profile of the family or individual whose funds the office manages.

2. Mr. Savoldelli will testify that family offices may be run by the individual whose assets are under management, and in such cases that individual, as the investment manager, has sole discretion to adjust the office's investment style, portfolio composition, leverage, or other investment parameters in response to personal developments or changes to the markets.

3. Mr. Savoldelli will testify about industry standards and practices in connection with the United States Securities and Exchange Commission's Family Office Rule (Advisers Act Rule 202(a)(11)(G)-1), commonly referred to as the "Family Office Rule," which exempts family offices from a variety of regulations that apply to other asset management firms like hedge funds, which manage capital or assets from outside investors.

4. Mr. Savoldelli will testify that, due to their particular nature and regulation, family offices operate in a manner distinct from other trading structures. Mr. Savoldelli will testify that family offices make investment decisions in accordance with any reasoning, process, or data they wish and need not explain the bases of these decisions to outside investors.

5. Mr. Savoldelli will testify that a concentrated investment strategy is a strategy used by investors who focus their investments in a small number of companies they see as offering opportunities for profit, and that this strategy can yield much higher returns than diversified investments.

6. Mr. Savoldelli will testify that a private equity approach to public equity investment may involve taking a long-term view of a security with deep knowledge of the company.

7. Mr. Savoldelli will testify about the potential advantages of trading in total return swaps, including that they (1) allow investors to gain exposure to certain assets that are difficult to access directly, (2) may be cheaper and easier to leverage than stock purchased on margin, and (3) may not require disclosure. Mr. Savoldelli will also testify about the size of the market for these instruments.

In addition to his professional and teaching experience, the basis for Mr. Savoldelli's testimony on total return swaps will be his review of public reports issued by regulators and other publicly available information.[1]

8. Mr. Savoldelli will testify that transacting with multiple counterparties is commonplace for, and may be advantageous to, institutional asset managers and funds. He will testify that transacting with multiple counterparties may allow investors to negotiate better terms (including margin rates) and pricing from each of them. He will also testify that the use of multiple

---

[1] This material is contained in today's defense production of Rule 16 material.

counterparties is a form of risk mitigation, minimizing the risk of frontrunning and minimizing the fund's losses in the event that any single counterparty fails or experiences financial difficulties.

9. Mr. Savoldelli will testify that institutional asset managers and funds use leverage for a variety of reasons. Borrowing funds, he will testify, amplifies the gains of a successful trade, and so institutional asset managers and funds use leverage to increase their potential returns. Conversely, leverage amplifies the losses of an unsuccessful trade. Mr. Savoldelli will further testify that institutional asset managers and funds seek to minimize margin rates.

10. Mr. Savoldelli will testify that it is standard industry practice for funds to tightly control disclosure of the names and/or magnitudes of their positions, including by gradually building a position in a company, trading in swaps, using multiple counterparties, and having confidentiality agreements regarding positions and sizes with employees and counterparties. He will testify that investors that publicly disclose their positions can risk:

- Undermining their competitive advantage by allowing others to replicate their investment analysis and profit off of the same opportunities;

- Impacting the market by attracting the attention of other investors, whose "copycat" pursuit of the same opportunities can impact the price of an asset and dilute potential investment gains; and

- Market participants seeking to profit by targeting their positions with offsetting trades.

Mr. Savoldelli will testify that in negotiating counterparty agreements with banks, the amount of information a customer provides with respect to its positions and other issues is subject to negotiation.

11. Mr. Savoldelli will testify that investors often seek to structure their business activities so as to minimize the burden of regulatory filings.

12. Mr. Savoldelli will testify that it is standard industry practice for investors to use indicative portfolios and/or decoy or sample names when negotiating with counterparties, including for the purpose of avoiding frontrunning. Mr. Savoldelli will testify about block trading, and that it is standard industry practice for investors seeking to execute block trades to choose to disclose a list of stocks to potential counterparties—containing both the stock they want to purchase and potentially decoy stocks—rather than disclose the target stock alone, to avoid potential frontrunning by the counterparties, their employees, or their clients.

13. Mr. Savoldelli will testify about trading at the close and the concepts of liquidity and slippage. He will testify that, generally speaking, markets are most liquid at or near closing, and that greater liquidity minimizes slippage because it allows traders to buy or sell assets quickly and at a price closer to the pre-execution market price.

14.     Mr. Savoldelli will testify that traders may decide to trade and build a position quickly or slowly depending on a variety of factors, including the portfolio manager's objectives and strategy, expected price movements, and market conditions (including liquidity, volatility, market activity, and anticipated market events such as earnings reports).

15.     Mr. Savoldelli will testify about limit prices and how they are used in trading. He will testify that limit prices can mitigate slippage and also allow portfolio managers and/or traders to adjust their execution strategy if the price unexpectedly changes.

16.     Mr. Savoldelli will testify that "dark pools" are used by institutional asset managers and funds and provide additional avenues for funds to seek liquidity.

17.     Mr. Savoldelli will explain what excess margin is. He will testify that, as a general matter, portfolio managers may withdraw excess margin and reinvest or redeploy it.

18.     Mr. Savoldelli will testify about the concepts of liquidity and solvency and how institutional asset managers and funds apply those concepts, including that funds are considered solvent if they have assets greater than their liabilities.

### III.     RESERVATION OF RIGHTS TO SUPPLEMENT DISCLOSURES

The defense reserves their right to supplement and/or amend these disclosures, including in response to the government's disclosures and the evidence presented in its case-in-chief.

*\*\*\**

Please let us know if you have any questions.  We are available to meet and confer to further discuss these disclosures.

Very truly yours,

Barry H. Berke
Dani R. James
Jordan Estes

cc:     Mary E. Mulligan
        Timothy M. Haggerty


Reviewed and Approved by:

Fabio Savoldelli

6

# EXHIBIT A

Fabio Savoldelli
New York, NY  10024
Tel (212) 579-4300 / Cell (917) 699 6294
Email – FPS@AltInvInst.com

**Consultant, Alternatives Investment Institute.** New York, NY (2012 to Present)
*Multi-State Family Office*: Advise CEO on full spectrum of hedge fund investments for retail and institutional clients. Perform analytics and due diligence on a range of alternative investments. Provide macroeconomic basis for investment positioning and participate in asset allocation and risk budgeting.
*Individual Hedge Funds*: Advise funds on structure and selection of service providers, advise funds on macroeconomic factors, risk positioning and hedging strategies.

***Board Positions 2016-Present)*:** Independent Director, Sphera Global Healthcare and Sphera Global Biotech funds.

Fall Semesters, 2007-Present
**Adjunct Professor, Department of Finance and Economics,**
**Columbia University Graduate School of Business**

Sole professor teaching *Hedge Funds*, a course focused on identifying the drivers of success in hedge funds and the limitations of applying traditional security analysis for investments to hedge funds.  Lectures cover trades and portfolio risks in a variety of hedge fund styles, with particular focus on identifying risk, successful hedging strategies. Fiduciary responsibility, with the definition of primary and support roles, and the avoidance of conflicts of interest, is covered in all relevant lectures.

Lecture topics include:
- The role and obligations of the Manager, Administrator, Fund Accountant, Evaluation Agent, Prime Broker, Placement Agent, Consultants etc.
- Fiduciary Duty: Mangers, Marketers, Prime Brokers, Administrators, Auditors, Directors and Investors: who owes what to whom? What is "disclosure?"  What is industry best practice for in the hedge fund world?
- When things go wrong… Side pockets, discretionary liquidity restrictions, forced liquidations and "fair value."  Impact and costs of hard decisions
- Hedge Fund Due Diligence: Questions to Ask and Expect
- Investor Criteria for Fund Investment and Retention
- Directional Investing (equity and macro), Event Driven Strategies, Arbitrage and Relative Value Strategies
- "Delivering Alpha" Alpha drivers, categories and styles.  Modeling resultant performance across asset classes.
- Quantitative Return Measures:
- Hedge Fund Leverage
- Short Selling.  Mechanics of short selling, risk and returns
- Hedge fund "core investment  philosophy"  and "residual trade risk"
- Merger Arbitrage as a "classic arbitrage strategy" with parallels to written options.  M&A cyclicality and the basis for merger arbitrage profitability.
- Fixed Income Arbitrage: key concepts and risks
- Long Term Capital: Lessons in Risk Control.  Some learned, some not…
- Equity Investing From a Hedge Fund Perspective
- Macro Investing From a Hedge Fund Perspective

May 2007 – May 2012
**Optima Fund Management,** New York
*Chief Investment Officer, Partner*
**Investment Leadership:**

*Chief Investment Officer*
Partner responsible for investment and performance of $3.2BN fund of funds, including manager selection and portfolio construction.  Set key components of "top down" view of sector allocation, as well as final responsibility for all "bottom up" manager selection.
Recognized in the industry as an early identifier of Madoff, with a proven track record of successfully avoiding operational issues in funds.
Sector Head for Discretionary, Quantitative, Fixed Income and Frontier strategies.  Selected / recruited team investing in funds across entire Hedge Fund spectrum.
Created fund platform for direct investment into approved managers.

<u>1997 – April 2007</u>
**Merrill Lynch,** New York, New York
**MLIM**
*Managing Director, ML Investment Managers*
*President, Chief Investment Officer, MLIM Alternative Strategies*
**Investment Leadership**
- Devised qualitative and quantitative due diligence process that has consistently avoided fund defaults, frauds and inappropriate strategies.
- Implemented quantitative alternative investment asset allocation methodology that produced a maximum monthly loss of less than 2%, with only two down months in three years.  Assets consistently outperformed HFR index with much lower volatility.
- Created broad alternative investment asset allocation model that integrates Hedge Funds, CDO, CBO and private equity investments with traditional portfolios.
- Oversaw ML proprietary capital in hedge funds and private equity investments.
- Selected mangers and approved service providers for ML Hedge Access, the first major hedge fund platform created for domestic and international investors.

**GMI**
*Managing Director, ML Industry Specialist Group*
- Led team of recognized industry experts in Banking, Insurance regulation, Structured Products and Asset Allocation.
- Advised insurance companies, commercial banks and central banks (G7 and Latin American) on asset allocation and advanced portfolio management, optimized to their regulatory constraints.
- Advised mutual fund companies on improving total performance and Morningstar (risk adjusted) ratings through superior asset allocation.

<u>1995 - 1997</u>
**Chase Manhattan Private Bank,** New York, New York
*Chief Investment Officer (Americas)*
- Set Investment policy for all Institutional and Private Client accounts in North and South America.  Co-Director, Chase Trust Committee.   Direct management of Chase Manhattan Bank's key clients.  Direct reports included 28-person team of domestic and international senior money managers, running $22 Bn in discretionary and Trust assets.

**Investment Leadership**
- Introduced alternative and international investments to domestic accounts.

<u>1989 – 1995</u>
**Swiss Bank Corporation,** New York, New York
*Deputy Chief Investment Officer, Head of Fixed Income and Foreign Exchange*
- Responsible for all investment activity in absence of CIO.
- Responsible for top-down component of asset allocation.
- Portfolio Review committee Senior Member, ensuring compliance with objectives across 100+ accounts.
- Extensive training of investment staff in theory, application and systems requirements of modern portfolio theory, derivatives and advanced fixed income and FX investment techniques.  Actively trained relationship managers.
- Broadened product line, including launch of first foreign bank managed SEC registered mutual fund.

*Director, Fixed Income*
- Responsible for all private client, institutional SBC Pension and 401(k) accounts.
- Aggregate returns ranked consistently in Money Magazine Top Ten Short-Intermediate Taxable Bond Funds.

*Deputy CIO, Equities*
- Set macro-economic factors, dividend discount parameters, set EPS estimates in all G7 and selected Pac Rim and Latin American markets.
- Extensive client contact with presentations to clients and to the media.  Presentations ranged from individual family office seminars to presentations to boards of Fortune 500 companies.

<u>1987 – 1989</u>
**Bank of Tokyo International Asset Management,** London, England
*Senior Fund Manager, Head of Dollar Block Fixed Income*
- Oversaw multi-currency investments.
- Devised asset allocation model, wrote analytics.
- Introduced high-yield and dynamic derivative product hedging.

<u>1983 – 1985</u>
**Edilesse Group,** Toronto, Canada
    Cash flow and rental analysis.
    Regulatory approvals and funding.

**Media/Industry Recognition:**
Bloomberg TV Contributing Editor on Hedge Funds
Numerous (non-purchased) speaking engagements, including AIMR best practice presentations
GAIM Monaco/London/Geneva conference etc.  Extensively quoted in all media.

**Academics:**
<u>1986 – 1987</u>
**London School of Economics,** London, England
Post Graduate Diploma in Business Studies (DBS), Awarded with "Academic Credit."

<u>1986</u>
**University of Windsor,** Windsor, Canada
B.A. Economics (First Class Honors in Econ.) Industrial Engineering Minor.

# Fabio Savoldelli

## Testimony

*Highline Capital Management, LLC v. High Line Venture Partners, L.P., et al.*, Case No. 1:15-cv-00660, United States District Court, Southern District of New York, 2015

*Kortright Capital Partners LP, et al., v. Investcorp Investment Advisers Limited*, Case No. 16-cv-7619, United States District Court, Southern District of New York, 2018

*Firefighters Retirement System, et al., v. Citco Group Limited, et al.*, Case No. 3:13-cv-00373, United States District Court, Middle District of Louisiana, 2018

*Arc Capital, LLC, Rakshitt Chugh And Peak XV Capital, LLC v. Aashish Kalra, Trikona Advisers, Ltd,* Case No. HHV-CV-14-v. 6047993-S, Superior Court J.D. of Hartford CT, 2020

*Iowa Pub. Emps.' Ret. Sys. et al. v. Bank of Am. Corp. et al.,* No. 1:17-cv-06221-KPF, United States District Court, Southern District of New York, 2021

*Manbro Energy Corporation v. Chatterjee Advisors, LLC, et al.,* 20 Civ. 3773 (LGS). United States District Court, Southern District of New York, 2021

*GWA, LLC, George A. Weiss Tax Matters Partner, Petitioner, v. Commissioner of Internal Revenue, Respondent,* No. 6981-192022, United States Tax Court, 2022

*RMBS Recovery Holdings I, LLC, et al., v. HSBC BANK USA*, Case No. 2017-7583, Fairfax County Virginia Circuit Court, 2022

*Politan Capital Management LP et al., v. Joe E. Kiani and Masimo Corporation*, Court of Chancery of the State of Delaware, C.A. No. 2022-0948, 2023

*Delaware County Employees Retirement System v. Adapthealth Corp. et al.*, United States District Court Eastern District of Pennsylvania, Civ. Action No. 2:21-cv-03382-HB, 2023

*Aurelius Capital Master, Ltd. v. Hertz International Limited, et al.*, New York Supreme Court, County of New York, No. 654710/2021, 2023