# Kramer Levin



**Jordan Estes**
Partner
**T**  212.715.9132
**F**  212.715.8132
jestes@KRAMERLEVIN.com

1177 Avenue of the Americas
New York, NY 10036
**T**  212.715.9100
**F**  212.715.8000

**January 9, 2024**

**BY ECF AND EMAIL**

Hon. Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

     Re: *United States v. Sung Kook (Bill) Hwang, et al.*, No. 22 Cr. 240 (AKH)

Dear Judge Hellerstein:

     In light of the prosecution's characterization of the Undisclosed Trade Data in their letter on January 8, the defense writes to provide the Court with an example showing the difference between the previously produced data and the Undisclosed Trade Data that is the subject of our Motion to Preclude Evidence and for Discovery on the Prosecution's Rule 16 Violation.

     While the prosecution admits that it failed to produce the Undisclosed Trading Data for 17 months, it nevertheless dismisses the significance of the data by describing it as mere "metadata" or duplicative of other information that has been produced.  That is simply untrue.

     By way of example we submit two excerpts of relevant data that show the difference between the data that was initially produced in this case and the Undisclosed Trade Data.[1]  Exhibit A contains the information available on a single swap transaction in the produced Archegos Trade Data.  Exhibit B contains the information available on the same swap transaction in the Undisclosed Trade Data.

     As reflected in Exhibit A, the Archegos Trade Data has a single row of information on the swap transaction.  That row indicates that Archegos submitted a swap

---

[1] Because the excerpts are in excel format, we are submitting them by email.  The Undisclosed Trade Data in its entirety is too large to send by email.

January 9, 2024



order to buy TME at 9:38 a.m. on November 24, 2020.  It also indicates that the order ultimately filled 763,569 shares at an average price of 16.344, and using a final limit price of 16.4.  To be clear, in the Archegos Trade Data, there is **one row** of data on the trade.

As reflected in Exhibit B, the Undisclosed Trade Data has **3,659 rows** of data on the same swap transaction, illustrating how Archegos modified the order and how Archegos's counterparty was executing hedging transactions throughout the day.  Among other things, the exhibit indicates that the initial swap order was for exposure to 500,000 shares, that the limit price was modified ten times throughout the day (both higher and lower), that the order quantity was modified at least two times, and that there were 3,590 child executions by Archegos's counterparty, at various quantities, from 9:38 a.m. to 2:57 p.m., when the remainder of the order was ultimately cancelled.

And that's just one swap transaction.  There are thousands of swap transactions, and for each transaction, there are typically hundreds or thousands of rows of data in the Undisclosed Trade Data that reflect critical order execution information.

As the example makes clear, the substance of the Undisclosed Trade Data is significant and differs dramatically from the prior productions in this case, which is why the prosecution is refusing to forego it.  Far from engaging in "gamesmanship," all the defense is doing here is seeking a fair trial.  The introduction of the Undisclosed Trade Data at trial would change the landscape of the case dramatically and substantially impact the defense strategy and trial preparation mere weeks before trial. The prosecution should not be rewarded with an extraordinary advantage at trial as a result of its Rule 16 violation and misstatements to the defense and the Court.

Very truly yours,

_/s *Jordan Estes*_____
Barry H. Berke
Dani R. James
Jordan Estes

cc:	Counsel of record