UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                          :

UNITED STATES OF AMERICA        :

                          :     No. 22-CR-240 (AKH)

      - v. -             :

                          :

SUNG KOOK (BILL) HWANG and   :
PATRICK HALLIGAN,         :

                          :

             Defendants.    :

                          :
-------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PATRICK HALLIGAN'S MOTION TO EXCLUDE PROPOSED EXPERT TESTIMONY OF ROBERT BATTALIO, AMIT SERU, CARMEN TAVERAS, AND JOSEPH MASON

FRIEDMAN KAPLAN SEILER
ADELMAN & ROBBINS LLP

7 Times Square
New York, NY 10036-6516
(212) 833-1100

March 21, 2024            *Attorneys for Patrick Halligan*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................1

LEGAL STANDARD ..............................................................................................................2

ARGUMENT .............................................................................................................................3

I.     THE GOVERNMENT SHOULD BE PRECLUDED FROM OFFERING
       DUPLICATIVE OR CUMULATIVE EXPERT TESTIMONY .......................................3

II.    CERTAIN PROPOSED EXPERT TESTIMONY SHOULD BE EXCLUDED
       FOR THE SAME REASONS AS ARTICULATED IN HWANG'S *DAUBERT*
       MOTION ...........................................................................................................................6

III.   PRE-TRIAL RESOLUTION OF DEFENDANTS' *DAUBERT* MOTIONS IS
       WARRANTED ...................................................................................................................6

CONCLUSION ...........................................................................................................................7

APPENDIX A .........................................................................................................................A-1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002) ................................................................................................... 2

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ..................................................................................................... 1, 7

*Int'l Minerals & Res., S.A. v. Pappas*,
  96 F.3d 586 (2d Cir.1996) ............................................................................................... 2

*Nimely v. City of New York*,
  414 F.3d 381 (2d Cir. 2005) ............................................................................................. 2

*On Track Innovations Ltd. v. T-Mobile USA, Inc.*,
  106 F. Supp. 3d 369 (S.D.N.Y. 2015) ........................................................................... 2, 3

*Price v. Fox Entm't Grp., Inc.*,
  499 F.Supp.2d 382 (S.D.N.Y. 2007) .............................................................................. 2, 7

*United States v. Holmes*,
  44 F.3d 1150 (2d Cir.1995) ........................................................................................... 2, 7

**Rules**

Federal Rule of Evidence 403.................................................................................................. 1, 2

Federal Rule of Evidence 702.................................................................................................. 1, 2

Defendant Patrick Halligan ("Halligan") respectfully submits this memorandum of law in support of his motion, pursuant to Federal Rules of Evidence 403 and 702, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to exclude certain of the anticipated testimony and opinions of the government's proposed experts.[1]

## PRELIMINARY STATEMENT

Apparently abiding by the mantra of "four heads are better than one," the government has put forward four experts to offer opinions about Archegos's alleged manipulation of the securities markets. Much of this proposed testimony is improper and inadmissible for the reasons explained in Defendant Hwang's Motion to Exclude Proposed Government Experts (the "Hwang Motion"), which Halligan joins in full. As the Hwang Motion explains, the government's expert disclosures portend an effort to intrude upon the jury's role, confuse the issues, and unfairly prejudice the defense. Many of these improper opinions are the result of conjecture and unreliable methodologies, and in many instances outside the government's experts' experience, skills, and training.

All of these problems are multiplied – literally – by the government's apparent intent to present the same testimony and opinions through multiple experts. Even if, *arguendo*, the government were permitted to present certain opinions once, it should not be allowed to present them twice, three times, or four times, as its expert disclosures suggest. Such needlessly cumulative testimony would prolong an already lengthy trial, confuse and unfairly prejudice the jury against the Defendants, and should be precluded under Rule 403.

---

[1]  The accompanying Declaration of Mary E. Mulligan is referred to as the "Mulligan Decl.," and attaches the government's initial and supplemental disclosures for its four experts: Robert Battalio (Exs. A & B), Amit Seru (Exs. C & D), Carmen Taveras (Exs. E & F), and Joseph Mason (Exs. G & H).

## LEGAL STANDARD

The Supreme Court in *Daubert* held that courts have a gatekeeping responsibility to determine whether an expert's testimony is both (1) reliable and (2) relevant (*i.e.*, that it "fits" the facts of the case). 509 U.S. at 580, 590-91. Rule 702 and *Daubert* require the Court to "undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002).

"In addition to the requirements of Rule 702, expert testimony is subject to Rule 403" of the Federal Rules of Evidence. *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005). Rule 403 provides that "the Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of ... unfair prejudice … misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see also Int'l Minerals & Res., S.A. v. Pappas*, 96 F.3d 586, 596 (2d Cir.1996) ("A district judge has discretion to exclude evidence if it is cumulative of evidence already in the record."); *United States v. Holmes*, 44 F.3d 1150, 1157 (2d Cir.1995) (A "trial judge retains a wide latitude to exclude irrelevant, repetitive, or cumulative evidence.")

Expert testimony may be needlessly cumulative, and therefore excluded, where there is "substantial overlap" between the areas on which two or more experts will testify. *See Price v. Fox Entm't Grp.*, 499 F.Supp.2d 382, 390 (S.D.N.Y. 2007). "Multiple expert witnesses expressing the same opinions on a subject is a waste of time and needlessly cumulative. It also raises the unfair possibility that jurors will resolve competing expert testimony by 'counting heads' rather than evaluating the quality and credibility of the testimony." *See On Track Innovations Ltd. v. T-Mobile USA, Inc.*, 106 F. Supp. 3d 369, 414 (S.D.N.Y. 2015) (internal citations omitted).

## ARGUMENT

### I.
### THE GOVERNMENT SHOULD BE PRECLUDED FROM OFFERING DUPLICATIVE OR CUMULATIVE EXPERT TESTIMONY

Much of the proposed testimony of the government's four expert witnesses expresses the same opinions on the same subjects and is therefore "needlessly cumulative." *On Track Innovations Ltd.*, 106 F. Supp.3d at 414.

The government's disclosures reveal that all four of its proposed experts intend to provide the same conclusory opinion about the supposed impact of Archegos's trading on the markets, and how Archegos's trading patterns were consistent with a strategy to manipulate market prices.[2] Robert Battalio "will generally testify about the effects and significance of Archegos's trading on the markets for its various securities." Mulligan Decl. Ex. B, at 1. Similarly, Carmen Taveras "will testify about Archegos's portfolio as well as the trends, effects and significance of Archegos's trading on the markets for its various securities." Mulligan Decl. Ex. F, at 1. The expert disclosures of Amit Seru promise the same: he "will generally testify about Archegos's portfolio, Archegos's orders, and Archegos-linked trades, and will offer opinions about the price and demand signals conveyed by Archegos's orders and trading activities and how such price and demand signals altered the behavior of other market participants." Mulligan Decl. D, at 1. And Joseph Mason's disclosures indicate that he will also testify about Archegos's portfolio, and how its trading affected the markets for the securities in Archegos's portfolio. Mulligan Decl. Ex. G, at ¶¶ 4-6, 8-11, and Ex. H, at ¶ 8.

---

[2]  As the Hwang Motion explains in detail, none of the government's experts should be allowed to testify about price impact. Most fundamental among the many reasons, price impact is not market manipulation. The substantial reasons to exclude all of this testimony are set out in the Hwang Motion. This motion makes only the further point that the prejudicial effect of this improper testimony would be compounded if it is presented by multiple expert witnesses.

The government's experts have similarly disclosed overlapping and redundant specific opinions. For example, Battalio purports to "opine that Archegos's order submission strategies were consistent with a strategy to influence market prices in the Archegos Top Securities [*i.e.* the largest positions held by Archegos] and inconsistent with a strategy to build concentrated positions in the Top Archegos Securities at the best available prices." Mulligan Decl. Ex. A, ¶ 7; Ex. B, ¶ 127. In particular, "[b]ased on the Archegos Order and Execution Data and the Archegos Trading IB Records, Professor Battalio will opine that the Archegos trading team repeatedly made uneconomic trades." Mulligan Decl. Ex. A, ¶ 7(d). Seru purports to provide identical testimony on this point: he will "opine that Archegos's trade orders were consistent with a strategy to influence market prices in the Top Archegos Securities and inconsistent with a strategy to build concentrated positions in the Top Archegos Securities at the best available prices." Mulligan Decl. Ex. C, ¶ 11. Just like Battalio, "[b]ased on the Archegos Order and Execution Records and the Archegos Trading IB Records, Professor Seru will opine that Archegos consistently made uneconomic trades …" *Id.* ¶ 11(C). Mason intends to say the same thing as well: "Based on a review of the Archegos IB Trading Records and the Archegos Order and Execution Records, Dr. Mason will opine that, between December 2020 and March 2021, Hwang repeatedly and consistently provided trading directives to the Archegos trading team that were inconsistent with a long-term or value-based approach to investing and were consistent with a trading strategy to maximize price impact." Mulligan Decl. Ex. G, ¶ 11.

The experts appear to be arriving at the repeated opinion that Archegos made supposedly uneconomic trades by treading much the same path. As examples of such uneconomic trading, "Professor Battalio will identify multiple instances in which Archegos bought and short-sold the same stock, including on the same day." Mulligan Decl. Ex. A, ¶ 7(d)(i). As further support of this opinion, Battalio "will identify multiple instances in which Archegos increased

limit prices to limits in excess of the prevailing market prices and increased limit prices and order sizes near the end of the trading day." *Id.* ¶ 7(d)(ii). Seru plans to use the same examples, *described verbatim*: "Professor Seru will identify multiple instances in which Archegos bought and short-sold the same stock, including on the same day," Mulligan Decl. Ex. C, ¶ 11(C)(iv), and "Professor Seru will identify multiple instances in which Archegos increased limit prices to limits in excess of the prevailing market prices and increased limit prices and order sizes near the end of the trading day," *id.* ¶ 11(C)(iii).

   The government's experts also purport to use up valuable trial time providing the same types of graphical presentations and analysis of Archegos's trading patterns. For instance, Battalio, Seru, and Taveras all intend to "provide summary statistics and graphical representations reflecting the price and trade volume for" Archegos's top long and top short positions and "of Archegos's portfolio and market activities" from 2020 through March 2021. *See* Mulligan Decl. Ex. A ¶¶ 3-4; Ex. C ¶¶ 7-8; Ex. E ¶¶ 3-4.

   The four expert reports and four supplemental reports indicate significant overlap in the anticipated testimony, of both supporting definitions, graphical presentations, and analysis, as well as summary opinions. A chart showing these and additional instances of overlapping and cumulative proposed opinions and testimony is attached as Appendix A to this brief.

   Permitting the government to present a parade of experts offering the same opinion risks lengthening an already lengthy trial, and unfairly prejudicing the jury against the Defendants, as jurors may be inclined to assign weight to this opinion not based on whether it is credible, correct, or consistent with the admissible evidence, but rather based on the number of times that it is repeated by different "experts."

   For these reasons, the government should be instructed that it may not present the same opinion or testimony from multiple experts. This instruction should encompass *all* topics of

expert opinion and testimony, including without limitation those described in this brief and Appendix A hereto.

## II.
## CERTAIN PROPOSED EXPERT TESTIMONY SHOULD BE EXCLUDED
## FOR THE SAME REASONS AS ARTICULATED IN HWANG'S *DAUBERT* MOTION

Halligan also joins Hwang's Motion in full. The arguments made by Hwang in the Hwang Motion apply with equal force to the government's case against Halligan. That case rests necessarily on proving that Archegos engaged in market manipulation. Among other things, Halligan is charged in Count One with participating in a racketeering conspiracy, the alleged purpose of which was to manipulate the securities markets. *See* Superseding Indictment, Dkt. No. 134, at ¶¶ 68-74 ("The principal purpose of the racketeering conspiracy was to manipulate the prevailing prices of certain securities held in the Archegos Enterprise's investment portfolio.") Permitting the government's experts to provide improper opinions about the alleged market manipulation would therefore be unfairly prejudicial to Halligan, just as it is to Hwang.

Halligan therefore joins the Hwang Motion in full, incorporates the Hwang Motion in full as if fully set forth herein, and seeks exclusion of the government's proposed expert opinions and testimony to the full extent set forth in the Hwang Motion.

## III.
## PRE-TRIAL RESOLUTION OF
## DEFENDANTS' *DAUBERT* MOTIONS IS WARRANTED

The Court "retains a wide latitude to exclude irrelevant, repetitive, or cumulative evidence." *United States v. Holmes*, 44 F.3d 1150, 1157 (2d Cir.1995). Exclusion of duplicative or cumulative testimony in advance of trial, solely on the basis of expert reports, is proper. *See Price*, 499 F.Supp.2d at 390 (precluding expert from testifying because of "substantial overlap between the reports").

The inappropriateness and unfairness of the government's proposed expert testimony is an issue that is best decided as soon as possible, rather than at trial. Defendants Hwang and Halligan have already been hamstrung in their ability to prepare for trial because of the government's failure to produce – until the eve of trial – mountains of data upon which their experts have relied and conducted analysis for almost two years. *See* Dkt. Nos. 110, 114, 133. Deciding at this stage, and not later, which of the government's proposed expert testimony is admissible will allow Defendants to focus their preparation and permit a more efficient and orderly trial. Waiting until after certain experts have testified risks confusing or unfairly prejudicing the jury.

## CONCLUSION

For the reasons set forth herein, pursuant to Rule 403, the Court should preclude the government from offering cumulative expert testimony and opinions.

Additionally, for the reasons set forth herein and in the Hwang Motion, pursuant to Rules 702 and 403 and *Daubert*, the Court should exclude certain testimony and opinions from the government's proposed expert witnesses Robert Battalio, Amit Seru, Carmen Taveras, and Joseph Mason.

Dated:   New York, New York
         March 21, 2024

                              Respectfully Submitted,

                              FRIEDMAN KAPLAN SEILER
                               ADELMAN & ROBBINS LLP


                              s/ *Mary E. Mulligan*
                              Mary E. Mulligan (mmulligan@fklaw.com)
                              Timothy M. Haggerty (thaggerty@fklaw.com)
                              Bonnie M. Baker (bbaker@fklaw.com)
                              Anil Vassanji (avassanji@fklaw.com)
                              Rupita Chakraborty (rchakraborty@fklaw.com)
                              7 Times Square
                              New York, New York 10036-6516
                              (212) 833-1100

                              *Attorneys for Patrick Halligan*

**APPENDIX A: SUMMARY OF OVERLAPPING GOVERNMENT EXPERT OPINIONS AND TESTIMONY**

| Topics of Anticipated Opinions and Testimony | Robert Battalio[1] | Amit Seru[2] | Carmen Taveras[3] | Joseph Mason[4] |
|---|---|---|---|---|
| *Background terms and concepts* | "background terms and concepts related to trading and markets" *e.g.* "swap," "margin account," "family office," "Rehypothecation," "Trade imbalance." ¶1 | "background terms and concepts," *e.g.* "swap," "margin account," "family office," "Rehypothecation," "Imbalance," "bid," "ask," "bid-ask spread." ¶1 | "background terms and concepts," *e.g.* "swap," "margin account," "family office," "bid," "ask," "bid-ask spread." ¶1 | "background terms and concepts," *e.g.* "swap," "margin account," "family office," "Rehypothecation." ¶1. |
| *Functioning of securities exchanges* | "Professor Battalio will explain how securities exchanges, such as Nasdaq and NYSE, function, what trade and order information is captured by the market itself, what information is broadcast to market participants, and how securities transactions occur within them." ¶2 | "Professor Seru will explain how securities exchanges, such as NASDAQ and NYSE, function, what trade and order information is captured by the marketplace, what information is broadcast to market participants, and how securities transactions occur within them." ¶4 | "Dr. Taveras will explain how national exchanges, such as NASDAQ and NYSE, function, what trade and order information is captured by the marketplace, what information is broadcast to market participants, and how securities transactions occur within them." ¶2 | |

---

[1] Citations are to the Expert Disclosure of Robert Battalio, Mulligan Decl. Ex. A.

[2] Citations are to the Expert Disclosure of Amit Seru, Mulligan Decl. Ex. C.

[3] Citations are to the Expert Disclosure of Carmen Taveras, Mulligan Decl. Ex. E.

[4] Citations are to the Expert Disclosure of Joseph Mason, Mulligan Decl. Ex. G.

| Topics of Anticipated Opinions and Testimony | Robert Battalio[1] | Amit Seru[2] | Carmen Taveras[3] | Joseph Mason[4] |
|---|---|---|---|---|
| *Summary statistics and graphical representations of securities* | "Professor Battalio will provide summary statistics and graphical representations reflecting the price and trade volume for [the Top Archegos Securities] during 2020 and 2021 and at various points and intervals within 2020 and 2021." ¶3 | "Professor Seru will provide summary statistics and graphical representations reflecting the price and trade volume for [the Top Archegos Securities] during 2020 and 2021 and at various points and intervals within 2020 and 2021." ¶7 | "Dr. Taveras will provide summary statistics and graphical representations reflecting the price and trade volume for [the Top Archegos Securities] during 2020 and 2021 and at various points and intervals within 2020 and 2021." ¶3 | |
| *Summary statistics and graphical representations of Archegos's portfolio and market activities* | "Professor Battalio will provide summary statistics and graphical representations of Archegos's portfolio and market activities between March 2020 and March 2021." ¶4 | "Professor Seru will also provide summary statistics and graphical representations of Archegos's portfolio and market activities between March 2020 and March 2021." ¶8 | "Dr. Taveras will use the Archegos Order and Execution Records and Weekly Ownership Test Reports to provide summary statistics and graphical representations of Archegos's portfolio and market activities between January 2019 and March 2021." ¶4 | |

| Topics of Anticipated Opinions and Testimony | Robert Battalio[1] | Amit Seru[2] | Carmen Taveras[3] | Joseph Mason[4] |
|---|---|---|---|---|
| *Composition and value of Archegos's portfolio* | "Professor Battalio will use the Archegos Order and Execution Records to describe the composition and value of Archegos's portfolio and changes to the composition and value of the portfolio over time." ¶4(a) | "Professor Seru will use the Archegos Order and Execution Records to describe the composition and value of Archegos's portfolio and changes to the composition and value of the portfolio over time." ¶8(A) | | |
| *Summary of Archegos's trading patterns* | "Professor Battalio will use the Archegos Order and Execution Records to summarize Archegos's trading on specific days, including the time, size, prices, handling instructions, and venue routing of orders placed by Archegos." ¶4(b) | "Professor Seru will use the Archegos Order and Execution Records to summarize Archegos's trading on specific days, including the time, size, prices, handling instructions, and venue routing of orders placed by Archegos." ¶8(B) | | |
| *Concentration of Archegos's portfolio* | | | "Dr. Taveras will use the Archegos Order and Execution Records and Weekly Ownership Test Reports to … show that Archegos's long portfolio became increasingly concentrated in the Top Long Positions." ¶4(F) | "Based on Archegos Order and Execution Records, Dr. Mason will observe that between March 2020 and March 2021, Archegos's portfolio became increasingly concentrated in exposures to a small number of securities." ¶4 |

| Topics of Anticipated Opinions and Testimony | Robert Battalio[1] | Amit Seru[2] | Carmen Taveras[3] | Joseph Mason[4] |
|---|---|---|---|---|
| *Matching swaps with equity transactions* | "Professor Battalio will opine that Archegos's trade orders in swaps in the Top Archegos Securities can be associated with equity transactions in the National Market System—including NYSE and Nasdaq—and dark pools by matching price, quantity, order handling, and routing information from the Archegos Order and Execution Records to market trade data." ¶5 | | "Dr. Taveras will opine that Archegos's trade orders in swaps in the Top Archegos Securities can be associated with equity transactions in the National Market System—including NYSE, NASDAQ, and dark pools—by matching price, quantity, and time from the Archegos Order and Execution Records to the NYSE Daily TAQ Data." ¶5 | |
| *What Archegos's trade orders say about trading strategy* | "Professor Battalio will opine that Archegos's order submission strategies were consistent with a strategy to influence market prices in the Archegos Top Securities and inconsistent with a strategy to build concentrated positions in the Top Archegos Securities at the best available prices." ¶7 | "Professor Seru will opine that Archegos's trade orders were consistent with a strategy to influence market prices in the Top Archegos Securities and inconsistent with a strategy to build concentrated positions in the Top Archegos Securities at the best available prices." ¶11 | | "Based on a review of the Archegos IB Trading Records and the Archegos Order and Execution Records, Dr. Mason will opine that, between December 2020 and March 2021, Hwang repeatedly and consistently provided trading directives to the Archegos trading team that were inconsistent with a long-term or value-based approach to investing and were consistent with a |

| Topics of Anticipated Opinions and Testimony | Robert Battalio[1] | Amit Seru[2] | Carmen Taveras[3] | Joseph Mason[4] |
|---|---|---|---|---|
| | | | | trading strategy to maximize price impact." ¶11 |
| *"Buy low, sell high" investment strategy* | "Professor Battalio will opine that investing in equities markets, like in all financial markets generally, follows the simple logic of "buy low, sell high" where investors seek to gain by acquiring an asset at as low of a price as possible, and then to sell that asset at as high of a price as possible, with the intent of earning a profit. It follows that an investor pursuing an economically sensible strategy to buy the Archegos Top Securities would seek to buy at the lowest possible price and to sell at the highest possible price to maximize potential profits from its strategy." ¶7(a) | "Professor Seru will testify that investing in equities markets, like in all financial markets generally, follows the simple logic of "buy low, sell high" where investors seek to gain by acquiring an asset at as low of a price as possible, and then to sell that asset at as high of a price as possible, with the intent of earning a profit. It follows that an investor pursuing an economically sensible strategy to buy the Top Archegos Securities would seek to buy at the lowest possible price and to sell at the highest possible price to maximize potential profits from its strategy." ¶11(A) | | |

| Topics of Anticipated Opinions and Testimony | Robert Battalio[1] | Amit Seru[2] | Carmen Taveras[3] | Joseph Mason[4] |
|---|---|---|---|---|
| *Trading strategy of minimizing price impact of trading on the market.* | "Professor Battalio will opine that the economically sensible strategy when buying or selling equities is to seek to minimize the price impact of that trading on the market. This is because traders typically execute multiple trades to buy or sell a large volume of equities (as Archegos did) and want to be able to execute the later trades at better prices. In other words, if traders are buying, they typically aim to avoid having their trading push the market price up, avoid consistently beating the best price on the trading platforms, and avoid making their intent to buy large volumes clear to the market. Conversely, if traders are selling, they typically aim to avoid having their trading push the market price down, avoid clearing outstanding orders on the trading | Relatedly, Professor Seru will testify that the economically sensible strategy when buying or selling equities is to seek to minimize the price impact of that trading on the market. This is because traders typically execute multiple trades to buy or sell a large volume of equities (as Archegos did) and want to be able to execute the later trades at good prices. In other words, if traders are buying, they typically aim to avoid having their trading push the market price up, avoid consistently beating the best price on the trading platforms, and avoid making their intent to buy large volumes clear to the market. Conversely, if traders are selling, they typically aim to avoid having their trading push the market price down, avoid clearing outstanding | | |

| Topics of Anticipated Opinions and Testimony | Robert Battalio[1] | Amit Seru[2] | Carmen Taveras[3] | Joseph Mason[4] |
|---|---|---|---|---|
| | platforms, and avoid making their intent to sell large volumes clear to the market." ¶7(b) | orders on the trading platforms, and avoid making their intent to sell large volumes clear to the market." ¶11(B) | | |
| *Archegos made supposedly "uneconomic trades"* | "Based on the Archegos Order and Execution Data and the Archegos Trading IB Records, Professor Battalio will opine that the Archegos trading team repeatedly made uneconomic trades." ¶7(d) | "Based on the Archegos Order and Execution Records and the Archegos Trading IB Records, Professor Seru will opine that Archegos consistently made uneconomic trades during 2020 and 2021." ¶11(C) | | |
| *Buying and short-selling same stock on the same day* | "Professor Battalio will identify multiple instances in which Archegos bought and short-sold the same stock, including on the same day. Professor Battalio will identify instances of this trading pattern in the BIDU, DISCA, GSX, and VIAC tickers. Professor Battalio will further opine that certain of the trades in BIDU, GSX, VIAC, FUTU, and DISCA were | "Professor Seru will identify multiple instances in which Archegos bought and short-sold the same stock, including on the same day.  Professor Seru will identify instances of this trading pattern in the BIDU, DISCA, GSX, and VIAC tickers. Professor Seru will further opine that certain of the trades in BIDU, GSX, VIAC, FUTU, and DISCA were internally inconsistent in | | |

| Topics of Anticipated Opinions and Testimony | Robert Battalio[1] | Amit Seru[2] | Carmen Taveras[3] | Joseph Mason[4] |
|---|---|---|---|---|
| | internally inconsistent in that Archegos sought long exposure to particular stocks at prices that exceeded prices at which Archegos had recently sought short exposure to the same stock." ¶7(d)(i) | that Archegos sought long exposure to particular stocks at prices that exceeded prices at which Archegos had recently sought short exposure to the same stock." ¶11(C)(iv) | | |
| *Increasing limit prices above market prices, and increasing limit prices and order sizes at the end of the day* | "Based on the Archegos Order and Execution Data and the Archegos Trading IB Records … Professor Battalio will identify multiple instances in which Archegos increased limit prices to limits in excess of the prevailing market prices and increased limit prices and order sizes near the end of the trading day. ¶7(d)(ii) | "Based on the Archegos Order and Execution Records and the Archegos Trading IB Records … Professor Seru will identify multiple instances in which Archegos increased limit prices to limits in excess of the prevailing market prices and increased limit prices and order sizes near the end of the trading day." ¶11(C)(iii) | "Dr. Taveras will use the Archegos Order and Execution Records, NYSE Daily TAQ Data and Archegos Trading IB Records to show that, with respect to the Archegos Top Positions, as Archegos set limit prices for the Archegos Top Positions, the prevailing market prices for the Archegos Top Positions quickly followed the limit prices set by Archegos, in the end-of-day trading period, on multiple days between July 2020 and March 2021. Dr. Taveras will opine that the pattern of a limit price followed by a rise in market price to meet it | |

| Topics of Anticipated Opinions and Testimony | Robert Battalio[1] | Amit Seru[2] | Carmen Taveras[3] | Joseph Mason[4] |
|---|---|---|---|---|
| | | | across multiple observations and multiple tickers is highly unusual, indicative of market influence." ¶6 | |
| *Magnitude of Archegos's trade orders compared to other market participants, and supposed effect on price.* | "Professor Battalio will present a comparative analysis demonstrating that Archegos's active orders in the Top Archegos Securities were larger and more aggressive than active orders by other market participants. Professor Battalio will note that Archegos-linked orders came to represent a significant portion of the highest bids for the stock of its long positions than other market participants. Professor Battalio's analysis rests on a comparison between active orders reflected in the Nasdaq Order Book Data, the NYSE Daily TAQ Data, the Marketwide Trade Data, and the | "Professor Seru will identify multiple instances in which Archegos maintained a percentage of market buy volume—such as 20%, 25%, 30%, or more—that would be likely to cause the price of the underlying security to increase." ¶11(C)(ii) | | |

| Topics of Anticipated Opinions and Testimony | Robert Battalio[1] | Amit Seru[2] | Carmen Taveras[3] | Joseph Mason[4] |
|---|---|---|---|---|
| | Archegos Order and Execution Data.  ¶7(e) | | | |