# Exhibit A



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 12, 2023

**VIA EMAIL**

Barry H. Berke, Esq.
Dani R. James, Esq.
Jordan Estes, Esq.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036

Mary E. Mulligan, Esq.
Timothy M. Haggerty, Esq.
Friedman Kaplan Seiler & Adelman LLP
7 Times Square
New York, NY 10036

Re:     *United States v. Bill Hwang, et al.*, 22 Cr. 240 (AKH)

Dear Counsel:

Pursuant to the parties' agreement and the Court's scheduling order, the Government writes
(a) ███████████████████████████████ (b) to provide notice of certain
evidence the Government may present at trial as direct evidence or pursuant to Rule 404(b) of the
Federal Rules of Evidence. The Government reserves the right to supplement or revise this notice
based on subsequently obtained evidence and to offer the evidence summarized below—or any
other evidence—as direct evidence or as impeachment evidence.

**A.** ████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████

**B.  *Notice of Certain Evidence***

The Government will offer evidence described in each category below as direct proof of
the charges in the Indictment. Among other things, the evidence described below demonstrates
(a) the formation, existence, and purpose of the racketeering enterprise charged in Count One,

(b) the defendants' willfulness and knowledge with respect to the charged offenses, (c) the falsity of the defendants' statements about Archegos's compliance program and the institutional changes made following enforcement actions in 2012 and 2013, and (d) essential background to the crimes charged in the Indictment. Nonetheless, because, even if the evidence described below were not admissible as direct proof of the charged schemes, it would still be admissible pursuant to Rule 404(b), as it demonstrates the defendants' motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, and lack of accident, the Government provides notice that it intends to offer the following evidence at trial.

      1.     The Government will offer evidence to demonstrate that Hwang and his former head trader, Raymond Park, participated in securities manipulation and insider trading schemes in or about 2008 and 2009 through Archegos's predecessor firm, Tiger Asia (the "Tiger Asia Schemes"). The Tiger Asia Schemes included multiple episodes of market misconduct:

- On or about December 18, 2008, a UBS representative informed Park of an upcoming large block of Bank of China, Ltd ("BOC") shares that would be sold to investors. Tiger Asia agreed to participate in the transaction. Though Park and Tiger Asia were forbidden to trade based on that material non-public information ("MNPI") prior to the sale, Hwang and Park then short-sold BOC's stock. When the block sale subsequently occurred, it depressed market prices, and Hwang and Park bought shares, covering the prior short positions and realizing a profit.

- On or about January 5, 2009, a UBS representative informed Park of the opportunity to participate in a block sale of shares of China Construction Bank Corporation ("CCB"). Park said Tiger Asia would participate. Once again, after Park received that MNPI, Hwang and Park short-sold CCB and then bought CCB shares as part of the block transaction, covering the short and realizing a profit. In connection with this transaction, Hwang and Park placed sell orders where "[t]he purpose of the sell order was to stop the closing price of CCB shares from rising" and "with the intention of creating a false or misleading appearance with respect to the market for, or the price for dealings in, CCB securities." Market Misconduct Tribunal of Hong Kong ("MMT") Admitted Facts Paras. 32-33.

- On or about January 11, 2009, a Morgan Stanley representative informed Park of the opportunity to participate in a block sale of shares of BOC. Tiger Asia agreed to participate. Once again, after Park received that MNPI, Hwang and Park short-sold BOC and then bought BOC shares as part of the block transaction, covering the short and realizing a profit.

- On or about March 17, 2009, Hwang and Park manipulated the price of shares of Yahoo Japan Corporation by placing limit orders through multiple brokers with a limit on the prices that was higher than the latest execution price, a trading strategy that inflated the market price of Yahoo Japan Corporation.

      The specifics of the Tiger Asia Schemes are set out in further detail in Attachment A, Information 12 Cr. 808 (SRC) (D.N.J. Dec. 12, 2012), to which Tiger Asia pled guilty; Attachment

B, the Report of the MMT (Oct. 7, 2014); and Attachment C, the recommendation for Administrative Monetary Penalty Payment Order for Market Manipulation of the Shares of Yahoo Japan (Dec. 13, 2012).

Additionally, to accomplish the Tiger Asia Schemes, Hwang and Park used a variety of deceptive practices, such as:

- Chopping-up orders and dividing them between brokers with the intent to mask Tiger Asia's trading strategy.

- "Window dressing," in which Hwang and Park engaged in trades at month-end to make the Tiger Asia portfolio appear to investors to be more diversified and successful than it was. This conduct occurred, for example, in or about November and December 2008 after Tiger Asia's short position in Volkswagen moved against the fund.

- Using swaps to avoid disclosing significant and concentrated positions, such as the short on CCB.

- "Marking the close," a strategy wherein Hwang and Park would concentrate trading at the end of the day, such as in the Hong Kong exchange closing auction, to artificially drive up the value of certain securities for the benefit of Tiger Asia's portfolio and to avoid margin calls.

The Government's proof of the Tiger Asia Schemes will take the form of, among other things, witness testimony,[1] the transcript of Hwang's allocution on behalf of Tiger Asia management, contemporaneous emails, statements of fact adopted by Hwang, and regulatory and court orders.

2.      The Government will offer evidence regarding the existence and resolution of the criminal and regulatory investigations into the Tiger Asia Schemes.

- On or about November 7, 2012, Hwang, acting on behalf of Tiger Asia Management, executed a plea agreement wherein Tiger Asia Management agreed to plead guilty to an Information charging it with one count of wire fraud. On or about December 12, 2012, Tiger Asia Management pled guilty to one count of wire fraud related to Tiger Asia's insider trading. Hwang allocuted on behalf of Tiger Asia Management. During the allocution, Hwang admitted that, on three occasions, Park received MNPI about block sales and "Tiger Asia Management" traded on that MNPI for its benefit.

---

[1] For counsel's awareness, the Government is considering whether to call Sixuan Chen as a witness on this subject. In light of the fact that Ms. Mulligan previously represented Sixuan Chen in connection with the Tiger Asia Schemes, the Government may propose that the Court conduct a hearing consistent with *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982), to inform Mr. Halligan of the potential ethical conflict.

- On or about December 12, 2012, Japan's Securities and Exchange Surveillance Commission fined Tiger Asia Partners approximately $816,500 for market manipulation related to Tiger Asia's manipulation of Yahoo Japan stock.

- On or about December 13, 2012, the United States Securities and Exchange Commission (the "SEC") filed a complaint alleging violations of Section 10(b) of the Securities Exchange Act of 1934, Section 17(a) of the Securities Act of 1933, and Section 206 of the Investment Advisers Act. The complaint alleged three instances of insider trading and at least four instances of efforts to manipulate month-end closing prices of Chinese bank stocks publicly listed on the Hong Kong Stock Exchange. On or about December 14, 2012, the U.S. District Court for the District of New Jersey entered a final judgment on consent that, among other things, enjoined Hwang from future violations of Section 17(a) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder, and Sections 206(1), 206(2), and 206(4) of the Investment Advisers Act and Rule 206(4)-8 thereunder, in the civil action *SEC v. Tiger Asia Mgmt., LLC, et al.*, No. 12 Civ. 7601 (DMC) (D.N.J.). The SEC, through an administrative proceeding, subsequently barred Hwang from associating with any investment adviser for five years. *In re Sung Kook Hwang*, "Order Instituting Administrative Proceedings Pursuant to Section 203(f) of the Investment Advisers Act of 1940, Making Findings, and Imposing Remedial Sanctions," File No. 3-15181 (Jan. 22, 2013).

- In or about October 2014, the MMT determined that Tiger Asia Management LLC, Hwang, and Raymond Park, engaged in market misconduct in Hong Kong. *See* Attachment B ¶ 57. Tiger Asia, Hwang and Park admitted they had contravened Hong Kong's law prohibiting insider dealing when dealing in the shares of Bank of China Limited and of China Construction Bank Corporation (CCB) in December 2008 and January 2009 and had manipulated the price of CCB shares in January 2009. *See, e.g.*, Attachment B ¶¶ 39, 52. The MMT barred Hwang and Tiger Asia from participating in the Hong Kong securities markets for four years and prohibited Hwang from perpetrating "any conduct which constitutes insider dealing, false trading, price rigging or stock market manipulation as that misconduct is defined" by Hong Kong law. Attachment B ¶¶ 137-38.

The Government's proof will take the form of, among other things, witness testimony, contemporaneous emails, Hwang's allocution on behalf of Tiger Asia, Tiger Asia's criminal plea agreement, the consent statement of facts provided to the MMT, and notes of representations by Archegos employees to various counterparties explaining its regulatory history.

3.    The Government will offer evidence to demonstrate that the Tiger Asia Schemes and subsequent regulatory enforcement actions led to the formation of Archegos. Indeed, following the resolution of the various cases against Hwang and Tiger Asia, Hwang returned investor funds and rebranded Tiger Asia as the family office, "Archegos." Archegos continued to employ numerous individuals who had worked at Tiger Asia, including Halligan, Tomita, and Becker.

The Government's proof will take the form of, among other things, amended investment management agreements, corporate filings, witness testimony, contemporaneous emails, letters sent by Archegos to various counterparties explaining its regulatory history, and counterparty notes documenting statements from Archegos reflecting its regulatory history.

4. 

5.    The Government will offer evidence that prior to and during the pendency of the schemes charged in the Indictment, Hwang and Halligan attempted to and did mislead counterparties with respect to the Tiger Asia Schemes and the changes Archegos made in response to them. For example:

- Archegos representatives told multiple counterparties, in substance, that all trades were reviewed by compliance daily.

- In June 2019, for example, Archegos representatives Andy Mills and Tomita told UBS, in substance, that "Every name that is traded is reviewed within 24 hours of happening" and that the traders "must have a fundamental reason why it happened" and that compliance cross-checks that with stock movements and news.

- Archegos informed multiple counterparties, in substance, that its senior-level management constantly advised and interacted with Hwang throughout each day.

- Archegos informed certain counterparties that Mills managed all "day-to-day" decisions other than trading.

The Government's proof will take the form of, among other things, witness testimony, contemporaneous emails, notes by counterparties of representations made by Archegos regarding its compliance program and regulatory history, and Archegos's compliance manual and compliance training materials.

6.    The Government will offer evidence that, prior to the conduct charged in the Indictment, Halligan repeatedly and deliberately misled counterparties with respect to certain information about Archegos's portfolio and, at times, intentionally withheld information about the portfolio's performance. Specifically, Halligan would repeatedly understate the relative size of Archegos's largest position to its counterparties. In addition, in or about 2018, when Becker took over the role of liaising with the credit teams at the counterparties, Halligan instructed Becker, in

substance, to tell the counterparties that Archegos's largest position was 35% of Archegos's capital, even if that was not the truth. Relatedly, Halligan at times would purposefully withhold information from counterparties regarding Archegos's monthly performance and assets under management.

The Government's proof will take the form of, among other things, witness testimony, contemporaneous emails, and notes by counterparties of representations made by Archegos regarding its compliance program and regulatory history.





9.

Very truly yours,

DAMIAN WILLIAMS
United States Attorney

by: _____
Matthew Podolsky
Alexandra Rothman
Samuel P. Rothschild
Andrew Thomas
Assistant United States Attorneys
(212) 637-1947/-2580/-2504/-2106