# Exhibit H

DocuSign Envelope ID: 4D898B73-896C-40C3-9D3A-7A16FFD07334



MUFG Securities EMEA plc
Ropemaker Place, 25 Ropemaker Street
London EC2Y 9AJ
T: +44 (0)20 7628 5555
F: +44 (0)20 7782 9144

| | |
|---|---|
| To: | **Archegos Fund LP** |
| Attn: | Operations team |
| Email: | Sbecker@archegoscapital.com;<br>operationsarchegos@archegoscapital.com |
| From: | **MUFG Securities EMEA plc** |
| Date: | 07 May 2020 |
| Re: | **Equity Swap Transaction** |
| MUS(EMEA) Ref.: | ETU_IQ_1 / 46056447 |
| USI/UTI: | 1030446315XXX46056447 |

Dear Sir/Madam,

The purpose of this communication (this "**Confirmation**") is to confirm the terms and conditions of the Transaction entered into between us on the Trade Date specified below. This Confirmation constitutes a **"Confirmation"** as referred to in the ISDA Master Agreement specified below.

The definitions and provisions contained in the 2006 ISDA Definitions (the "**Swap Definitions**") and the 2002 ISDA Equity Derivatives Definitions (the "**Equity Definitions**" and together with the Swap Definitions, the "**Definitions**"), in each case as published by the International Swaps and Derivatives Association, Inc., are incorporated into this Confirmation. In the event of any inconsistency between the Swap Definitions and the Equity Definitions, the Equity Definitions will govern.   In the event of any inconsistency between the Definitions and this Confirmation, the provisions of this Confirmation will govern. References herein to the "**Transaction**" shall be deemed references to "**Swap Transaction**" for the purposes of the Swap Definitions.

This Confirmation supplements, forms part of, and is subject to, the ISDA Master Agreement dated as of 03 September 2019, as amended and supplemented from time to time (the "**Agreement**"), between MUFG Securities EMEA plc ("**MUS(EMEA)**") and Archegos Fund LP (the "**Counterparty**").   All provisions contained in the Agreement shall govern this Confirmation except as expressly modified below.

1.  **General Terms:**

The terms of the particular Transaction to which this Confirmation relates are as follows:

| | |
|---|---|
| Trade Date: | 24 April 2020 |
| Effective Date: | 28 April 2020 |
| Termination Date: | The Cash Settlement Payment Date |
| Shares: | The common stock of IQIYI<br>(Bloomberg Screen: IQ UW) |
| Exchange: | NASDAQ Global Select Market |
| Related Exchange(s): | All Exchanges |
| **Equity Amount(s):** | |
| Equity Amount Payer: | MUS(EMEA) |
| Number of Shares: | 1,000 |

A member of MUFG, a global financial group

Registered in England No: 1698498, Registered Office: Ropemaker Place, 25 Ropemaker Street, London EC2Y 9AJ
Authorised by the Prudential Regulation Authority and regulated by the Financial Conduct Authority and the Prudential Regulation Authority.

DocuSign Envelope ID: 4D898B73-896C-40C3-9D3A-7A16FFD07334

 **MUFG**

MUFG Securities EMEA plc

| | |
|---|---|
| Equity Notional Amount: | USD 17,720 |
| Equity Notional Reset: | Not Applicable |
| Type of Return: | Total Return |
| Initial Price: | USD 17.72 |
| Final Price: | The Closing Price |

ADTV Limitation:

If, as of the scheduled Valuation Date, the Number of Shares (or the relevant portion thereof being terminated, in the case of early termination), together with the number of Shares (or the relevant portion thereof being terminated, in the case of early termination) under any other equity swap transaction between the parties hereto with respect to securities of the same Issuer and for which the final Valuation Date or any early termination is occurring on the same day (the "Total Number of Shares"), is greater than the ADTV Limit, notwithstanding anything in this Confirmation or the Equity Definitions to the contrary, the following terms shall apply.

(a) Hedging Party may designate (as determined by it in its sole discretion), a number of Averaging Dates equal to or more than the quotient of the Total Number of Shares divided by the ADTV Limit;

(b) Any fractional Averaging Dates shall be rounded up to the next whole number; and

(c) the first Averaging Date shall be deemed to occur on the scheduled Valuation Date with the remaining number of Averaging Dates occurring thereafter, one on each succeeding Scheduled Trading Day. The latest occurring Averaging Date shall be deemed to be the final Valuation Date for purposes of this Transaction (or the relevant portion thereof being terminated, in the case of early termination) and, for the avoidance of doubt, the determination of the Final Price shall be determined as if Averaging Dates had been specified for the final Valuation Date and the corresponding Cash Settlement Payment Date shall be one Settlement Cycle after such final Valuation Date.

ADTV Limit:

A number of Shares equal to the product of (i) the ADTV Limitation Percentage and (ii) the trailing average daily trading volume for the most recent 30-day period, determined as of the scheduled final Valuation Date

| | |
|---|---|
| ADTV Limitation Percentage: | 20% |
| Valuation Dates: | 24 May 2021 |

Closing Price:

In respect of the determination of a Final Price or a Relevant Price, as applicable, the last official price per Share quoted or traded on the Exchange, at the Valuation Time on the Valuation Date or relevant Averaging Date, as applicable (being the NASDAQ Official Closing Price).

Valuation Time:

As specified in Section 6.1 of the Equity Definitions; provided that for the purposes of determining whether a Market Disruption Event has occurred, the actual closing time on the relevant Exchange on such

A member of MUFG, a global financial group

DocuSign Envelope ID: 4D898B73-896C-40C3-9D3A-7A16FFD07334

 **MUFG**

MUFG Securities EMEA plc

|  | Valuation Date |
|---|---|

**Floating Amounts:**

| Floating Amount Payer: | Counterparty |
|---|---|
| Notional Amount: | The Equity Notional Amount |
| Floating Amount Payer Payment Date(s): | 28 May 2020, 26 June 2020, 28 July 2020, 26 August 2020, 28 September 2020, 28 October 2020, 27 November 2020, 29 December 2020, 27 January 2021, 26 February 2021, 26 March 2021, 28 April 2021 and the final Cash Settlement Payment Date |
| Floating Rate Option: | USD-LIBOR-BBA |
| Designated Maturity: | One (1) month |
| Spread: | Plus 0.4000 per cent |
| Floating Rate Day Count Fraction: | Actual/360 |
| Reset Dates: | The first day of each Calculation Period. |
| Business Days: | New York |
| Business Day Convention: | Modified Following |

**Settlement Terms:**

| Cash Settlement: | Applicable |
|---|---|
| Settlement Currency: | USD |
| Cash Settlement Payment Date: | Two (2) Currency Business Days after the Valuation Date. |

**Dividends:**

| Dividend Period: | First Period |
|---|---|
| Dividend Amount: | The Paid Amount *multiplied by* the Number of Shares as of the relevant date |
| Dividend Payment Date: | In respect of a Dividend Amount, the Cash Settlement Payment Date relating to the end of the Dividend Period during which the Shares commenced trading "ex" the relevant dividend on the Exchange. |
| Re-investment of Dividends: | Not Applicable |
| Dividend Recovery: | If (a) the amount actually paid or delivered by the Issuer to holders of record of the Shares in respect of any gross cash dividend declared by the Issuer to holders of record of the Shares (a "**Declared Dividend**") is not equal to that Declared Dividend (a "**Dividend Mismatch Event**") or (b) the Issuer fails to make any payment or delivery in respect of that Declared Dividend by the second Currency Business Day following the relevant due date, then in either case the Equity Amount Payer may (but is not obliged to) require the Calculation Agent to determine: |
|  | (i)     any appropriate adjustment or repayment (including any |

A member of MUFG, a global financial group

DocuSign Envelope ID: 4D898B73-896C-40C3-9D3A-7A16FFD07334

 **MUFG**                                    MUFG Securities EMEA plc

interest payable thereon) to be made by a party to account for that Dividend Mismatch Event or non-payment or non-delivery, as the case may be; and

(ii)     the date that repayment should be made and/or the effective date of such adjustment.

If such an adjustment or repayment is made in accordance with the foregoing provisions of this section and the Issuer subsequently makes the relevant payment or delivery in respect of the Declared Dividend (after the second Currency Business Day following the relevant due date) to recipients that were holders of record of the Shares on the relevant record date on which the dividend was declared, then the Calculation Agent shall determine:

(i)     any appropriate adjustment or payment    (including any interest payable thereon) to be made by a party to account for that subsequent payment or delivery, as the case may be; and

(ii)     the date that payment should be made and/or the effective date of such adjustment.

The provisions of this section titled "Dividend Recovery" shall apply and remain in full force and effect even if the Termination Date has occurred.

**Adjustments:**

Method of Adjustment:                    Calculation Agent Adjustment

**Extraordinary Events:**

New Shares:                                   In the definition of "New Shares" in Section 12.1(i) of the Equity Definitions, (a) the text in clause (i) thereof shall be deleted in its entirety and replaced with "publicly quoted, traded or listed, (x) if the Exchange is located in the United States, on any of the New York Stock Exchange, The NASDAQ Global Select Market or The NASDAQ Global Market , their respective successors, or such other exchange or quotation system which, in the determination of the Calculation Agent, has liquidity comparable to the aforementioned exchanges; or, (y) if the Exchange is not located in the United States, on an exchange or quotation system which in the determination of the Calculation Agent has liquidity and other characteristics relevant to this Transaction comparable to the original Exchange" (b) the following language shall be inserted before the period at the end of the first sentence: "and (iii) of an entity or person that is a corporation organized under the laws of the jurisdiction under the laws of which the Issuer is organized (or, if the Issuer, is organized in a jurisdiction that is within the United States, that is organized under the laws of the United States, any State thereof or the District of Columbia)." and (c) the following sentence shall be inserted at the end of the first sentence thereof: "The exchange or quotation system on which the New Shares are quoted, traded or listed shall thereafter be the Exchange."

Consequences  of Merger Events:

Share-for-Share:                    Calculation Agent Adjustment

A member of MUFG, a global financial group

DocuSign Envelope ID: 4D898B73-896C-40C3-9D3A-7A16FFD07334

 **MUFG** MUFG Securities EMEA plc

| | |
|---|---|
| Share-for-Other: | Cancellation and Payment |
| Share-for-Combined: | Component Adjustment |
| Determining Party: | MUS(EMEA) |

Tender Offer:
Applicable; provided that (i) Section 12.1(d) of the Equity Definitions is hereby amended by adding ", or of the outstanding Shares," before "of the Issuer" in the fourth line thereof and (ii) Sections 12.1(e) and 12.1(l)(ii) of the Equity Definitions are hereby amended by adding "or Shares, as applicable," after "voting shares".

| | |
|---|---|
| Share-for-Share: | Calculation Agent Adjustment |
| Share-for-Other: | Calculation Agent Adjustment |
| Share-for-Combined: | Calculation Agent Adjustment |

Composition of Combined Consideration:
Not Applicable; provided that Sections 12.1(f) and 12.5(b) of the Equity Definitions notwithstanding, to the extent that the composition of the consideration for the relevant Shares pursuant to a Tender Offer or Merger Event could be elected by a holder of the Shares, the Calculation Agent will, in its sole discretion, determine such composition for purposes of this Transaction.

Nationalization, Insolvency or Delisting:
Cancellation and Payment; provided that in addition to the provisions of Section 12.6(a)(iii) of the Equity Definitions, it shall also constitute a Delisting if the Exchange is located in the United States and the Shares are not immediately re-listed, re-traded or re-quoted on any of the New York Stock Exchange, The NYSE Market LLC, the NASDAQ Global Select Market or The NASDAQ Global Market, their respective successors, or such other exchange or quotation system which, in the determination of the Calculation Agent, has liquidity comparable to the aforementioned exchanges; if the Shares are immediately re-listed, re-traded or re-quoted on any such exchange or quotation system, such exchange or quotation system shall be deemed to be the Exchange.

**Additional Disruption Events:**

Change in Law:
Applicable; provided that Section 12.9(a)(ii) of the Equity Definitions is replaced in its entirety as follows:

""Change in Law" means that, on or after the Trade Date of this Transaction, either party in good faith determines that (A) due to the adoption of or any change in any applicable law or regulation (including, without limitation, any tax law and notwithstanding the fact that such adoption or change may have occurred prior to the Trade Date), or (B) due to the promulgation of or any change in the interpretation by any court, tribunal or regulatory authority with competent jurisdiction of any applicable law or regulation (including any action taken by a taxing authority and notwithstanding the fact that such promulgation or change in interpretation may have occurred prior to the Trade Date):

(X) it has or it will, within the next 15 calendar days but on or before the Termination Date, become illegal for such party to hold, acquire

A member of MUFG, a global financial group

MUFG-Archegos-0000374

SDNY_P001_0005233875

DocuSign Envelope ID: 4D898B73-896C-40C3-9D3A-7A16FFD07334



MUFG Securities EMEA plc

or dispose of any of its Hedge Positions relating to this Transaction; or

(Y) either the adoption or change described in Section 12.9(a)(ii)(A) of the Equity Definitions or the promulgation or change described in (B) above has resulted or will result, within the next 15 calendar days but on or before the Termination Date, in an increased amount of tax, duty, expense or fee (other than brokerage commissions) for Hedging Party to (i) acquire, establish, re-establish, maintain, unwind or dispose of any of its Hedge Positions or (ii) realize, recover or remit the proceeds of such Hedge Positions, which amount such Calculation Agent in good faith determines to be material (relative to the position on the Trade Date).

Notwithstanding the foregoing, any determination as to whether an adoption or change in any applicable law or regulation described in Section 12.9(a)(ii)(A), or the promulgation of or any change any interpretation of any applicable law or regulation described in Section 12.9(a)(ii)(B), in each case, constitutes a "Change in Law" shall be made without regard to Section 739 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 or any similar legal certainty provision in any legislation enacted, or rule or regulation promulgated, on or after the Trade Date."

| | |
|---|---|
| Failure to Deliver: | Not Applicable |
| Insolvency Filing: | Applicable |
| Hedging Party: | MUS(EMEA) |
| Determining Party: | MUS(EMEA) |
| Hedging Disruption: | Applicable; provided that, (i) Section 12.9(a)(v) of the Equity Definitions is replaced with the following: |

"(v) "Hedging Disruption" means that the Hedging Party is unable, after using commercially reasonable efforts, to (A) acquire, establish, re-establish, substitute, maintain, unwind or dispose of any transactions or assets (including, without limitation, stock loans and other transactions that can be used to create a long or short exposure to the Shares) that hedge, in a commercially reasonable manner, based on prevailing circumstances applicable to the Hedging Party, the equity price risk, interest rate risk and dividend risk of entering into and performing its obligations with respect to the Transaction (any such transactions or assets, a "**Hedging Party Hedge**") or (B) realize, recover or remit the proceeds of a Hedging Party Hedge. However, any such inability that (1) occurs primarily due to the deterioration of the creditworthiness of the Hedging Party or (2) could be avoided by the Hedging Party, acting in a commercially reasonable manner based on prevailing circumstances applicable to the Hedging Party, shall not be a Hedging Disruption."; and

(ii) Section 12.9(b)(iii) of the Equity Definitions is hereby amended by (A) inserting "(A)" prior to the words "to terminate the Transaction" in the third line thereof, (B) inserting after the words "to terminate the Transaction", the words "or a portion of the Transaction affected by such Hedging Disruption" and (C) inserting prior to the period at the end of the sentence the words "(B) that such occurrence be a Potential Adjustment Event and/or (C) to deem that a Market

A member of MUFG, a global financial group

MUFG-Archegos-0000375

SDNY_P001_0005233876

DocuSign Envelope ID: 4D898B73-896C-40C3-9D3A-7A16FFD07334

 **MUFG**

MUFG Securities EMEA plc

|  | Disruption Event has occurred and will be continuing at any time following the occurrence and during the continuance of such an event". |
|---|---|
| Increased Cost of Hedging: | Applicable |
|  | Section 12.9(a)(vi) of the Equity Definitions is replaced with the following: |
|  | "(vi) "Increased Cost of Hedging" means that the Hedging Party would incur a materially increased (as compared with the circumstances that existed on the Trade Date) amount of tax, duty, expense or fee (other than brokerage commissions) (which amount of tax shall include, without limitation, any amount of tax due to any increase in tax liability, decrease in tax benefit or other adverse effect on its tax position in relation to dividends) (a "**Hedging Cost**") to (A) acquire, establish, re-establish, substitute, maintain, unwind or dispose of the Hedging Party Hedge or (B) realize, recover or remit the proceeds of the Hedging Party Hedge. However, any such materially increased amount that is (1) incurred solely as a result of the deterioration of the creditworthiness of the Hedging Party or (2) could be avoided by the Hedging Party, acting in a commercially reasonable manner based on prevailing circumstances applicable to the Hedging Party, shall not be an Increased Cost of Hedging." |
| Loss of Stock Borrow: | Applicable |
| Maximum Stock Loan Rate: | As determined by the Calculation Agent in a commercially reasonable manner |
| Increased Cost of Stock Borrow: | Applicable |
| Initial Stock Loan Rate: | As determined by the Calculation Agent in a commercially reasonable manner |
| Determining Party: | MUS(EMEA) |
| **Collateral:** | This Transaction is subject to the Credit Support Annex (the "**CSA**") which forms part of the Agreement between the parties, as the case may be. The Independent Amount under the CSA for Counterparty under this Transaction shall be 15% of the Equity Notional Amount. |

**Additional Representations, Agreements and Acknowledgements:**

| Agreements and Acknowledgments Regarding Hedging Activities: | Applicable |
|---|---|
| Additional Acknowledgments: | Applicable |
| Non-Reliance: | Applicable |
| **Calculation Agent:** | MUS(EMEA) or any of its affiliates. The Calculation Agent is responsible for making all determinations that are not expressed to be the responsibility of an identified party. |

A member of MUFG, a global financial group

DocuSign Envelope ID: 4D898B73-896C-40C3-9D3A-7A16FFD07334

 **MUFG Securities EMEA plc**

**Optional Early Termination**

The following optional early termination provision will apply to the Non-Hedging Party and will apply to the Hedging Party:

Notwithstanding any other terms under this Confirmation, the following optional early termination provisions will apply to the early termination of this Transaction (an "**Optional Termination**") by either party (such terminating party, the "**OET Electing Party**"), whether such termination is in part (a "**Partial Termination**") or in whole (a "**Transaction Termination**"); provided that such termination is made upon the proper prior notice specified in paragraph (a) below and neither an Event of Default with respect to the OET Electing Party nor an Additional Termination Event with to this Transaction and under which the OET Electing Party is the sole Affected Party has occurred or is continuing:

    (a)   The OET Electing Party may elect to terminate this Transaction in whole or in part by (i) delivering a notice of Optional Termination (an "**Optional Termination Notice**") to the other party by e-mail or otherwise in writing (including via Bloomberg) no later than 2:00 p.m. New York time on the Exchange Business Day such Optional Termination becomes effective (the "**Optional Termination Valuation Date**") and  (ii) specifying in the Optional Termination Notice the Optional Termination Valuation Date, whether the termination is in whole or in part, and, if in part, the relevant portion of the Equity Notional Amount (including the Issuer and Number of Shares) that is the subject of the proposed Optional Termination (the "**Terminated Number of Shares**", which shall be deemed to equal the Number of Shares for this Transaction if the OET Electing Party elects to terminate this Transaction in whole); provided that in no event will an Optional Termination Valuation Date for this Transaction occur later than  the scheduled final Valuation Date for this Transaction or the Terminated Number of Shares for this Transaction exceed the Number of Shares for this Transaction as of the date of the Optional Termination  Notice.

    (b)   If Averaging Dates and ADTV Limitations are Not Applicable, the Optional Termination Valuation Date shall be deemed the final Valuation Date for the Terminated Number of Shares and the corresponding Cash Settlement Payment Date shall be the final Period End Date for the Terminated Number of Shares. If Averaging Dates and ADTV Limitations are Applicable, the latest occurring Averaging Date shall be deemed to be the final Valuation Date for purposes of the Terminated Number of Shares, with the corresponding Cash Settlement Payment Date and Period End Date for the Terminated Number of Shares being the date that is one Settlement Cycle following such final Valuation Date; provided that, MUS(EMEA) may postpone the Valuation Date if MUS(EMEA) reasonably determines that such extension is reasonably necessary or appropriate in connection with its hedging activity hereunder due to illiquidity in the market for the Shares or its Hedge Position.

    (c)   The Calculation Agent shall (i) determine the net amount (the "**Optional Termination Amount**") payable in connection with the Optional Termination in accordance with the Confirmation and (ii) in the case of a Partial Termination, adjust any subsequent Equity Amount, Floating Amount and Dividend Amount to account for the payment of the Optional Termination Amount.

    (d)   In the case of a Partial Termination, this Transaction shall remain outstanding, but only in relation to the Number of Shares equal to the Number of Shares immediately prior to such Optional Early Termination Date less the Terminated Number of Shares. In the case of a Transaction Termination, the obligations of the parties to make further payments under the Transaction (except payments that are due but unpaid as of such Optional Termination Date) will cease on the Optional Termination Date.

**Additional Representations, Warranties and Covenants**

    (i)      All of the actions taken by MUS(EMEA) and Counterparty in connection with this Transaction shall be taken independently and without any advance or subsequent consultation. MUS(EMEA) and Counterparty have not informed and shall not inform the other

A member of MUFG, a global financial group

MUFG-Archegos-0000377

SDNY_P001_0005233878

DocuSign Envelope ID: 4D898B73-896C-40C3-9D3A-7A16FFD07334

 **MUFG**

MUFG Securities EMEA plc

of any existing positions or strategies, if any, with respect to securities of the Issuer under this Transaction or derivatives of such securities.

(ii)     For the avoidance of doubt and notwithstanding any provision of the Equity Definitions, neither MUS(EMEA) nor Counterparty shall acquire any right to vote or to give any consent with respect to the Shares underlying this Transaction by virtue of this Transaction. Without limiting the generality of the foregoing, the Floating Amount Payer, shall not be entitled pursuant to this Transaction, whether directly or indirectly, to vote or direct the voting of, or to give or direct the giving of any consent with respect to, any Shares underlying this Transaction (including any such Shares held by or on behalf of the Equity Amount Payer as a hedge for this Transaction), and the parties agree that the Equity Amount Payer shall not take any such directions or instructions from the other party, or any of its officers, directors, employees, agents or representatives as to such voting or consent. This provision shall not affect any rights the Equity Amount Payer has in any securities held by or on behalf of the Equity Amount Payer as a hedge for this Transaction, including the Shares underlying such transaction.

(iii)     Each party represents and warrants that they are not entering into this Transaction with the purpose or effect of changing or influencing control of the applicable Issuer and shall not seek to change or influence control of such Issuer during the term of this Transaction.

**Additional Representations and Agreements of Counterparty and MUS(EMEA):**

(i)     Without limiting any other protections under the U.S. Bankruptcy Code (Title 11 of the United States Code) (the "**Bankruptcy Code**"),The parties hereto intend as follows (x) this Transaction is a "swap agreement," as such term is defined in Section 101(53B) of the Bankruptcy Code, qualifying for protection under Section 560 of the Bankruptcy Code; and a "swap agreement," as such term is defined in Section 206(b) of the United States Gramm-Leach Bliley Act;  (y) any cash, securities or other property provided as performance assurance, credit support or collateral in respect of this Transaction constitute a "transfer" as defined in Section 101(54) of the Bankruptcy Code under a "swap agreement"; and (z) any payment for, under or in connection with this Transaction constitutes a "transfer" as defined in Section 101(54) of the Bankruptcy Code under a "swap agreement.

(ii)     As of the Trade Date of this Transaction, each party represents that it is not entering into this Transaction on behalf of or for the accounts of any other person or entity, and will not transfer or assign its obligations under this Transaction or any portion of such obligations to any other person or entity except in compliance with applicable laws and the terms of the Transaction.

(iii)     As of the Trade Date of this Transaction and as of the date of any payment or delivery by MUS(EMEA) or Counterparty hereunder, it is solvent and able to pay its debts as they come due, with assets having a fair value greater than liabilities and with capital sufficient to carry on the businesses in which it engages.

**Additional Representations of Counterparty.** The following representations and warranties shall be deemed, for the purposes of this Transaction, made on each day such Transaction is in effect:

(i) <u>Non-Affiliate Status.</u> Counterparty represents and warrants to MUS(EMEA), that (i) it is not and has not been during the three month period ending on the Trade Date thereof, and will not become during the term of this Transaction an affiliate, as defined in Rule 144 under the U.S. Securities Act of 1933, as amended (the "**Securities Act**"), of the Issuer of the Shares for this Transaction and (ii) it is not and will not become during the term of this Transaction an officer, director or "ten percent beneficial owner" within the meaning of Section 16 of the U.S. Exchange Act of 1934, as amended (the "**Exchange Act**") of the Issuer of the Shares underlying this Transaction.

A member of MUFG, a global financial group

MUFG-Archegos-0000378

SDNY_P001_0005233879

DocuSign Envelope ID: 4D898B73-896C-40C3-9D3A-7A16FFD07334



MUFG Securities EMEA plc

(ii) <u>No Material Non-public Information.</u> Counterparty represents and warrants to MUS(EMEA) that that (A) it will not enter into, amend, or terminate this Transaction while in possession of material, non-public information concerning the Issuer of, if this Transaction is a Share Transaction, the Shares for this Transaction and (B) it will enter into, amend or terminate this Transaction in good faith and not as part of a plan or scheme to evade the prohibitions of federal securities laws, including, without limitation, Section 13(d) of and Rule 10b-5 under the Exchange Act.

(iii) <u>Exchange Act Filings.</u>       Counterparty represents and warrants that (A) it has made all public filings under the Exchange Act with respect to the Shares as required by applicable law or regulation and, during the term of this Transaction, it will continue to make all such required public filings under the Exchange Act with respect to the Shares; (B) if it beneficially owns 5% or more of any class of the Issuer's securities registered under the Exchange Act, it is eligible to file reports on Schedule 13G; and (C) the aggregate amount of all Shares beneficially owned by it for purposes of Section 13(d) of the Exchange Act, when combined with the notional amount of Shares underlying any long derivative position, is less than 5% of the outstanding Shares.

(iv) <u>No Tax Advice.</u> Counterparty has not relied on MUS(EMEA) for tax advice and has consulted its own tax advisor.

(v) <u>Exemption from Registration.</u> To the extent the Transaction constitutes a sale of a security or securities (as defined in the United States Securities Act of 1933, as amended (the "Securities Act")), in addition to the representations contained in Section 3 of the Agreement, Counterparty hereby represents that it is an "accredited investor" as defined under Rule 501(a) of SEC Regulation D and understands that any offer and sale of securities under the Transaction is exempt from registration under the Securities Act by virtue of Section 4(a)(2) thereof. In furtherance thereof, Counterparty represents and warrants that (i) it has the financial ability to bear the economic risk of its investment and has adequate means of providing for its current needs and other contingencies, and (ii) it is experienced in investing in similar instruments and has determined that such securities are a suitable investment for it.

<u>**Additional Provisions:**</u>

(i)       <u>Exchange Codes.</u> To the extent that information within this Confirmation for an Exchange or Related Exchange provides a RIC, REC, or Bloomberg code that indicates an exchange, exchanges, a quotation system or quotation systems, such exchange, exchanges, quotation system and/or quotation systems shall be the Exchange(s) or Related Exchange(s) as applicable.

(ii)       <u>Entire Agreement; Amendments; Counterparts.</u>  This Confirmation constitutes the entire agreement and understanding of the parties with respect to its subject matter and supersedes all oral communication and prior writings with respect specifically thereto. An amendment, modification or waiver in respect of this Confirmation will be effective only if in writing (including a writing evidenced by a facsimile transmission) and executed by each of the parties or confirmed by an exchange of telexes or by an exchange of electronic messages on an electronic messaging system. This Confirmation may be executed in counterparts, each of which will be deemed an original. The headings used in this Confirmation are for convenience of reference only and shall not affect the construction of or be taken into consideration in interpreting this Confirmation.

(iii)       <u>Governing Law; Jurisdiction; Waiver of Jury Trial.</u>  This Confirmation will be governed by and construed in accordance with the law specified in the Agreement and will be subject to the jurisdiction, service of process and waiver of immunities provisions of Section 13 of the Agreement. Each party waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in respect of any suit, action or proceeding relating to this Confirmation.

A member of MUFG, a global financial group

DocuSign Envelope ID: 4D898B73-896C-40C3-9D3A-7A16FFD07334

                                        MUFG Securities EMEA plc

2.  **Account Details**

Payments to MUS(EMEA):        As per our standard settlement instructions.

Payments to Counterparty:        As per your standard settlement instructions.

3.  **Offices**

(a) The Office of MUS(EMEA) for this Transaction is London; and

(b) The Office of the Counterparty for this Transaction is New York.

4.  **Contacts**

Address:                MUFG Securities EMEA plc
                        Ropemaker Place,
                        25 Ropemaker Street,
                        London EC2Y 9AJ

Group:                  Derivative Confirmations
Email:                  docsconfirms@int.sc.mufg.jp
Telephone No.:          +44 207 577 2813 / 2640
Fax No.:                +44 207 577 2898

Group:                  Derivative Settlements
Email:                  dspsettlements@int.sc.mufg.jp
Telephone No.:          +44 207 577 2657 / 2663

MUS(EMEA) Contact Details for
purpose of giving Notice:
Name:                   Ryan Osbourne
Telephone:              +1-212-405-7451
E-mail:                 ETU-All@mufgsecurities.com

MUS(EMEA) confirms that it is acting as principal. The time of dealing will be confirmed by MUS(EMEA) upon written request.

A member of MUFG, a global financial group

DocuSign Envelope ID: 4D898B73-896C-40C3-9D3A-7A16FFD07334

 **MUFG**

Please confirm that the foregoing correctly sets forth the terms and conditions of the Transaction by executing a copy of this Confirmation and returning it to us.

Yours faithfully,

**MUFG Securities EMEA plc**

By: _____
Name:   Ching Yuen
Title:    Authorised Signatory

By: _____
Name:   Karla Dhanjal
Title:    Authorised Signatory

Accepted and agreed by

**Archegos Fund LP**

By: _____
Name:
Title:

By: _____
Name: Patrick Halligan
Title:   Authorized Person

MUS(EMEA) Ref: ETU_IQ_1  / 46056447

A member of MUFG, a global financial group

MUFG-Archegos-0000381

SDNY_P001_0005233882