# Exhibit N

# ARCHEGOS CAPITAL MANAGEMENT, LP

## Operations Compliance Manual
## and
## Code of Ethics

## July 30, 2018



GOVERNMENT
EXHIBIT
269
22 Cr. 240 (AKH)



## E.   Market Manipulation Policy

It is essential that no employee or principal of Archegos engages in any activity the purpose of which is to interfere with the integrity of the marketplace. Among other things, intentionally manipulating the market, as discussed below, is a violation of the securities laws and of Archegos' policies and standards of conduct.

### 1.   Policy and Procedure.

It is Archegos' policy that neither the Managing Member nor any Archegos personnel may engage in practices intended to manipulate the market. Therefore, the Managing Member may not give an order to enter into a securities transaction for a manipulative purpose. No Trader may facilitate in any way such an order. This means that if a Trader knows, or has reason to know or suspect, that the Managing Member is seeking to transact in a security for manipulative purposes, the Trader must refuse to give any such order to a broker.

If the Managing Member or any Trader has reason to believe that the Managing Member or any other Trader, as applicable, is engaging in manipulative practices, he or she must report this matter to Compliance immediately. The CCO will promptly report the matter to the Managing Member (unless he is involved in the trade) and conduct an internal investigation of the matter.

### 2.   Discussion of the Law.

The term "manipulation", which is not specifically defined under the federal securities laws, generally refers to any intentional or deliberate act or practice in the marketplace that is intended to mislead investors by artificially controlling or affecting the price of a security traded in such marketplace. For example, manipulation may involve efforts to stimulate artificially the public demand for a stock or to create the false appearance of actual trading activity. Practices that may be intended to mislead investors by artificially affecting market activity and thus may constitute manipulative acts include, but are not limited to:

- portfolio pumping (submitting orders to purchase securities held by a client near the close of trading on the last day of a period for which the client's performance will be reported (e.g., quarter-end));

26

- window dressing (adding or eliminating securities holdings of a client on or around the date for which the client's holdings will be reported solely in order to make the client's holdings appear more favorable to the client or the client's investors (*e.g.*, by eliminating a poorly performing holding or acquiring a security that has performed well));

- marking the close (executing securities transactions at or near the close with a purpose of inflating the day's price);

- wash sales (selling a security at a loss and purchasing the same or a substantially similar security soon afterwards);

- front running (transacting in a security for one's own account while taking advantage of advance knowledge of a client's pending transactions);

- spreading false rumors;

- disseminating false information into the marketplace that could reasonably be expected to cause the price of a security to increase or decrease;

- matched orders (buying a security with a low turnover and subsequently placing contemporaneous buy and sell orders for the security for substantially the same number of securities at substantially the same time and at substantially the same price, with the aim of conveying an appearance of renewed interest in the security);

- runs (also known as pumping and dumping); and

- corners and abusive squeezes (control of a large and dominating security position in a market in order deliberately to increase the price of the security).

The rules against market manipulation do not mean that merely trying to acquire or to dispose of stock for investment purposes and incidentally affecting the price is unlawful. It is permissible for trading to have a corollary effect upon the price of a security as an ancillary consequence of buying or selling that security, so long as the investor's purpose is not to create an artificial impression about the demand for, or supply of, the security. Further, certain of the practices described above may in certain instances be made in connection with legitimate business purposes and in such instances would not constitute market manipulation. Personnel with any questions whether any transaction may constitute market manipulation should contact the CCO immediately.

The SEC and the federal courts have emphasized that manipulation, in essence, interferes with the free forces of supply and demand, and, thus, the integrity of the market. As the SEC stated in a 1977 case:

> Investors and prospective investors... are... entitled to assume that the prices that
> they pay and receive are determined by the unimpeded interaction of real supply

27

Confidential Treatment Requested by King & Spalding

Archegos-CFTC-SEC 002084
SDNY_P001_0000030571

and demand so that those prices are the collective marketplace judgments that they purport to be. Manipulations frustrate these expectations. They substitute fiction for fact.... The vice is that the market has been distorted and made into a stage-managed performance.[3]

The most cited anti-manipulative provisions of the federal securities laws are Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. Section 10(b) makes it unlawful to use or employ, in connection with the purchase or sale of any security, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the SEC may prescribe. The various rules promulgated by the SEC under Section 10(b) define specific activities as manipulative or deceptive acts or practices. Rule 10b-5, however, sometimes referred to as the "anti-manipulation" rule, sets forth the general prohibition on fraudulent, deceptive or manipulative devices. The prohibitions against manipulative and deceptive acts under Section 10(b) and Rule 10b-5 apply to all securities not just those registered on a national stock exchange. The SEC and the federal courts have established that pure manipulation – that is, merely undertaking acts to raise or lower the price of a security – constitutes a "manipulative or deceptive device" and a "scheme to defraud."[4]

Section 17(a) of the Securities Act of 1933 (the "1933 Act") is also a general antifraud provision and applies to manipulation in the over-the-counter market. Section 17(a) proscribes material misrepresentations or omissions, any scheme, device or artifice to defraud, or any fraudulent or deceitful transaction, practice or course of business, in the offer or sale of securities.

Section 9(a) of the 1934 Act specifically prohibits various manipulative practices with regard to securities listed for trading on national exchanges. For example, Section 9(a)(1) prohibits the use of "wash sales" and "matched orders" for the purpose of creating a false or misleading appearance of active trading in any security registered on a national exchange. Section 9(a)(2) prohibits manipulation of prices by any person, acting alone or with others, who for the purpose of inducing others to buy or sell a particular security, effects a series of transactions in the security which creates actual or apparent active trading in the security or causes a rise or decline in the price of the security. Section 9(a)(3) prevents brokers, dealers and others from circulating or disseminating information about a security to the effect that the price of the security will or is likely to rise or fall for the purpose of raising or lowering the price of the security.

Rule 10b-21 under the Exchange Act makes it unlawful to submit an order to sell a security if the person submitting the order deceives a broker-dealer, a participant of a registered clearing agency or a purchaser regarding his or her intention or ability to deliver the security by the settlement date and to then fail to deliver the security by the settlement date. Rule 10b-21 also applies to sellers who misrepresent to their broker-dealers that they own the shares being sold.

---

[3] Edward J. Mawood & Co., 46 SEC 865 (1977).

[4] There is a limited exception for manipulative actions designed to stabilize the price of a new issue. This exception is not applicable to trading by Archegos.

28

Confidential Treatment Requested by King & Spalding

Archegos-CFTC-SEC 002085
SDNY_P001_0000030572