# Exhibit S

CJK2010R00115

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 12-808 |
| v. | 18 U.S.C. § 1343 |
| | INFORMATION |
| TIGER ASIA MANAGEMENT, LLC | |

The defendant having waived in open court prosecution by Indictment and any objections to venue, the United States Attorney for the District of New Jersey charges:

## BACKGROUND

**Defendant and Others**

1. At all times relevant to this Information:

a. TIGER ASIA MANAGEMENT, LLC ("Tiger Asia Management") was a limited liability company with headquarters in New York, New York. TIGER ASIA MANAGEMENT was the investment manager of the Tiger Asia Overseas Fund, Ltd. and served as the management company for the Tiger Asia Fund, L.P. (collectively, the "Tiger Asia Funds"), hedge funds specializing in Asian-traded equities. The Tiger Asia Funds maintained numerous brokerage accounts worldwide, including at Morgan Stanley, a financial services firm with offices and operations in New York, New Jersey and elsewhere. TIGER ASIA MANAGEMENT was founded by Sung Kook "Bill" Hwang, a New Jersey resident, in or about 2001 and was one of the so-called "Tiger Cubs," a group of hedge funds that were spun off from Tiger Management Corp., which in the late 1990s was one of the largest hedge fund sponsors in the world. At various times relevant to this Information, TIGER ASIA MANAGEMENT managed more than $5 billion in assets.

- 1 -



GOVERNMENT EXHIBIT 2704 22 Cr. 240 (AKH)

SDNY_P015_0000000032

   b. R.P., who is not named as a defendant herein, was employed by TIGER ASIA MANAGEMENT as Head of Trading. As Head of Trading, R.P. was responsible for executing securities trades on behalf of the Tiger Asia Funds. R.P. also held the title of Managing Director.

   c. Bank of China Limited ("Bank of China") was one of China's largest commercial banks. Shares of Bank of China stock were traded on the Hong Kong Stock Exchange.

   d. China Construction Bank Corporation ("CCB") also was one of China's largest commercial banks. Shares of CCB stock were traded on the Hong Kong Stock Exchange.

   e. Bloomberg L.P., which maintained offices in New Jersey, provided messaging services used by financial services firms to place electronic trades. TIGER ASIA MANAGEMENT used Bloomberg's messaging service to place trades, including the short sales referenced herein.

SDNY_P015_0000000033

**Relevant Terms**

        2.    At all times relevant to this Information:

        a.    The term "block trade" referred to a privately negotiated transaction involving the sale of large quantities of shares of stock executed away from the stock markets. Block trades often were used by institutional shareholders seeking to sell large quantities of stock other than through placing a sell order on the markets, for fear that a large sell order would, by virtue of the laws of supply and demand, depress the sale price. Ordinarily, block trades were brokered by investment banks, and were carried out on short notice and closed quickly. Often, the shares of stock sold in a block trade were sold at a discount to the market price.

        b.    The term "over the wall" was a term used in the financial markets to reflect that a potential investor had agreed to certain confidentiality and trading restrictions in exchange for receiving material, nonpublic information about a potential securities transaction.

        c.    The term "short selling" was the practice of selling a stock that had been borrowed from a third party with the intention of buying the stock back at a later date to return to the lender. The short seller hoped to profit from a decline in the price of the stock between the sale and the repurchase. The act of buying back the stock that was sold was called "covering the short" or "covering the position."

SDNY_P015_0000000034

## THE SCHEME TO DEFRAUD

3.  From in or about December 2008 through in or about January 2009, in the District of New Jersey and elsewhere, defendant

TIGER ASIA MANAGEMENT, LLC

did knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, as more fully described below.

### The Object of the Scheme and Artifice to Defraud

4.  The object of the scheme was for defendant TIGER ASIA MANAGEMENT to agree to be brought "over the wall" in order to receive confidential, material, and nonpublic information regarding impending block sales of stock, and then to improperly and unlawfully use that information to engage in profitable securities trades.

### The Means and Methods of the Scheme and Artifice to Defraud
### UBS AG's Sale of Bank of China Shares on or about December 31, 2008

5.  On or about December 18, 2008, a representative of UBS AG ("UBS"), a financial services company headquartered in Switzerland, contacted R.P. The UBS representative asked R.P. whether TIGER ASIA MANAGEMENT wanted to be "wall crossed" with respect to the sale of a large block of stock for which UBS was acting as the placement agent. The UBS representative told R.P. that if TIGER ASIA MANAGEMENT agreed to be wall crossed, it would have to keep the information that would be disclosed confidential and could not trade in the securities that were the subject of the information. R.P., on behalf of TIGER ASIA MANAGEMENT, agreed to these restrictions.

6.  Once R.P., on behalf of TIGER ASIA MANAGEMENT, agreed to be bound by these confidentiality and trading restrictions, the UBS representative told him that UBS intended to sell approximately 3.3 billion shares of Bank of China stock at a discount of between

SDNY_P015_0000000035

approximately 8% and approximately 10% of market price. The UBS representative also told R.P. that the deal would close on or about December 31, 2008.

7. On or about December 22, 2008, the UBS representative sent an e-mail to R.P. confirming their prior conversation in which R.P. had agreed to be brought over the wall. In the e-mail, the UBS representative wrote:

> This e-mail is being sent to memorialize a previous conversation between us whereby you agreed on behalf of Tiger Asia to receive confidential information from UBS . . . in connection with a potential sell down of the shares in Bank of China. As part of that conversation, you expressly agreed that Tiger Asia will hold any information regarding Bank of China and UBS AG in confidence . . . [and] you will not engage in any trading activities regarding any security of Bank of China.

Within minutes of receiving this e-mail, R.P. responded, "Got it. Thx."

8. Although R.P. had expressly agreed on behalf of TIGER ASIA MANAGEMENT to keep this information confidential and not to trade on it, TIGER ASIA MANAGEMENT almost immediately violated that agreement and, between on or about December 18, 2008 and on or about December 22, 2008, TIGER ASIA MANAGEMENT caused the Tiger Asia Funds to short sell a total of approximately 104 million shares of Bank of China stock.

9. On or about December 31, 2008, pursuant to the block trade, UBS allocated the Tiger Asia Fund's approximately 199 million shares of Bank of China stock at a price of approximately HK$1.93 per share, which represented a discount of approximately 12% off the closing price on or about December 30, 2008.

10. By covering the approximate 104 million shares of Bank of China stock that Tiger Asia short sold between on or about December 18, 2008 and on or about December 22, 2008 with the shares acquired from UBS (at a discount) in the block sale, the Tiger Asia Funds reaped illicit profits of more than approximately $3,000,000.

SDNY_P015_0000000036

**Bank of America's Sale of CCB Shares on or about January 6, 2009**

11. In or about December 2008, Bank of America ("BOA") retained UBS to assist BOA in arranging the block sale of approximately 5.6 billion shares of CCB stock which were owned by BOA.

12. On or about January 5, 2009, a representative of UBS contacted R.P., told R.P. that he had price-sensitive information regarding a block sale in which TIGER ASIA MANAGEMENT might be interested, and asked R.P. whether he wanted to be wall crossed. R.P., on behalf of TIGER ASIA MANAGEMENT, agreed to be wall crossed.

13. The UBS representative then told R.P. that BOA intended to sell approximately 5.6 billion shares of CCB stock at a discount of approximately 15% of market price. The UBS representative also told R.P. that the deal would close within approximately 48 hours.

14. Although R.P. expressly agreed on behalf of TIGER ASIA MANAGEMENT to keep this information confidential and not to trade on it, TIGER ASIA MANAGEMENT almost immediately violated that agreement and, on or about January 6, 2009, TIGER ASIA MANAGEMENT caused the Tiger Asia Funds to short sell approximately 93 million shares of CCB stock.

15. On or about January 6, 2009, UBS allocated to the Tiger Asia Funds approximately 1.97 billion shares of CCB stock at a price of approximately HK$3.92 per share, which represented a discount of approximately 11.9% off of that day's closing price.

16. By covering the approximately 93 million shares of CCB stock that they short sold on or about January 6, 2009 with the shares purchased from BOA (at a discount) in the block sale on or about January 7, 2009, the Tiger Asia Funds reaped illicit profits of more than approximately $7,000,000.

- 6 -

SDNY_P015_0000000037

### RBS's Sale of Bank of China Shares on or about January 13, 2009

17. In or about January 2009, Royal Bank of Scotland ("RBS") retained Morgan Stanley Hong Kong Securities Limited ("Morgan Stanley HK") to assist RBS in arranging the block sale of approximately 10.8 billion shares of Bank of China stock which were owned by RBS.

18. On or about January 11, 2009, representatives of Morgan Stanley HK contacted R.P. at TIGER ASIA MANAGEMENT. The Morgan Stanley HK representatives told R.P. that Morgan Stanley HK had confidential, material and nonpublic information regarding a potential block sale of stock that TIGER ASIA MANAGEMENT might be interested in, and asked R.P. whether he wanted to be wall crossed. R.P. indicated that he understood the term "wall crossed," and the concomitant restriction on disclosing the confidential information, and agreed on behalf of TIGER ASIA MANAGEMENT to be wall crossed.

19. After R.P. agreed on behalf of TIGER ASIA MANAGEMENT to be wall crossed, the Morgan Stanley HK representatives told R.P. that RBS intended to sell approximately 10.8 billion shares of BOC stock at a discount of between approximately 7% and approximately 11% of market price. The Morgan Stanley HK representatives also told R.P. that the deal would close within approximately 24 to 48 hours.

20. Although R.P. had expressly agreed on behalf of TIGER ASIA MANAGEMENT to keep this information confidential and not to trade on it, TIGER ASIA MANAGEMENT almost immediately violated that agreement and, on or about January 12 and January 13, 2009, caused the Tiger Asia Funds to short sell approximately 282 million shares of BOC stock.

21. On or about January 13, 2009, after the market close and pursuant to the block trade, Morgan Stanley HK allocated to the Tiger Asia Funds approximately 450 million shares of BOC stock at a price of approximately HK$1.71 per share, which represented a discount of approximately 7.6% off the closing price.

- 7 -

22. By covering the approximately 282 million shares of Bank of China stock that they short sold on or about January 12 and January 13, 2009 with the shares purchased from RBS (at a discount) in the block sale on or about January 13, 2009, the Tiger Asia Funds reaped illicit profits of more than approximately $5,700,000.

23. As a result of the illicit transactions described herein, TIGER ASIA MANAGEMENT reaped illicit profits of approximately $16,257,000.

24. On or about December 22, 2008, in the District of New Jersey, and elsewhere, for the purpose of executing and attempting to execute this scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, defendant TIGER ASIA MANAGEMENT did knowingly and intentionally transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce certain writings, signs, signals, pictures and sounds, to wit, a short sale of approximately 7,310,000 shares of Bank of China stock which cleared, electronically, through Tiger Asia Fund L.P.'s account at Morgan Stanley.

In violation of Title 18, United States Code, Section 1343.

SDNY_P015_0000000039

## FORFEITURE ALLEGATION

1. The allegations contained in this Information are hereby realleged and incorporated by reference for the purpose of noticing forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(c) and Title 28, United States Code, Section 2461(c).

2. The United States hereby gives notice to the defendant, that upon its conviction of the offense charged in this Information, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(c) and Title 28, United States Code, Section 2461(c), which requires any person convicted of such offense to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offense.

3. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

> (a) cannot be located upon the exercise of due diligence;
>
> (b) has been transferred or sold to, or deposited with, a third party;
>
> (c) has been placed beyond the jurisdiction of the court;
>
> (d) has been substantially diminished in value; or
>
> (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described in paragraph 2.

PAUL J. FISHMAN
UNITED STATES ATTORNEY

- 9 -

SDNY_P015_0000000040

Case 2:12-cr-00808-SRC   Document 1   Filed 12/12/12   Page 10 of 10 PageID: 10

SDNY_P015_0000000041

CASE NUMBER: _____

# United States District Court
# District of New Jersey

UNITED STATES OF AMERICA

v.

TIGER ASIA MANAGEMENT, LLC

## INFORMATION FOR

18 U.S.C. § 1343

PAUL J. FISHMAN
*U.S. Attorney*
*Newark, New Jersey*

CHRISTOPHER J. KELLY
*Assistant U.S. Attorney*
*Newark, New Jersey*
973-645-6112