UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                    :

UNITED STATES OF AMERICA,       :

                                    :

        - against -          :

                                    :      No. 22-cr-240 (AKH)

SUNG KOOK (BILL) HWANG and PATRICK  :
HALLIGAN

                                    :

                      Defendants.    :

                                    :
----------------------------------------------------------------x


## PATRICK HALLIGAN'S MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTIONS *IN LIMINE*


FRIEDMAN KAPLAN SEILER
ADELMAN & ROBBINS LLP

7 Times Square
New York, NY  10036-6516
(212) 833-1100

April 4, 2024                      *Attorneys for Patrick Halligan*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ...................................................................................................... 1

ARGUMENT .............................................................................................................. 3

I.      THE GOVERNMENT IS NOT ENTITLED TO BROAD, PREEMPTIVE
        RULINGS EXCLUDING RELEVANT EVIDENCE AND ARGUMENTS
        *(GOVERNMENT REQUESTS I.A – I.H)* ...................................................... 3

        A.      Mr. Halligan Does Not Intend to Argue That "Fraud Should Be Excused"
                But Should Be Allowed to Present Evidence and Arguments About the
                Sophistication and Conduct of Archegos's Counterparties *(Government
                Request I.A)* ........................................................................................... 4

        B.      Evidence Bearing Upon the Materiality of Alleged Misrepresentations Is
                Relevant and Admissible *(Government Request I.B)* .............................. 7

        C.      ████████████████████████████████████████████████ .............. 13

        D.      The Defense Must Be Allowed to Present Evidence and Argument That
                the Charged Conspiracy Involved Lawful Conduct *(Government Request
                I.D)* ......................................................................................................... 15

        E.      Mr. Halligan Does Not Intend to Argue for Jury Nullification
                *(Government Request I.E)* ...................................................................... 17

        F.      The Government's Request to Categorically Exclude Evidence of
                Mr. Halligan's Good Acts and Non-Criminal Conduct Should be Denied
                *(Government Request I.F)* ...................................................................... 18

        G.      The Government's Request to Categorically Exclude All Evidence of
                Mr. Halligan's Personal Circumstances Should Be Denied Because It Is
                Overbroad and Premature *(Government Request I.G)* .......................... 22

        H.      The Government Is Not Entitled to a Preview of Mr. Halligan's Trial
                Evidence and Strategy *(Government Request I.H)* ................................ 23

II.     THE GOVERNMENT'S REQUEST FOR WHOLESALE ADMISSION OF
        UNSPECIFIED HEARSAY STATEMENTS SHOULD BE DENIED
        *(GOVERNMENT REQUEST II)* ..................................................................... 25

**Page**

A.      The Government Bears the Burden to Establish That Out-of-Court Statements Fall Within a Hearsay Exception or Are Not Hearsay .......................25

       1.      Rule 801(d)(2)(D) ..........................................................................................26

       2.      Rule 801(d)(2)(E)...........................................................................................27

B.      The Government Has Not Met Its Burden for the Admission of Statements Under Rules 801(d)(2)(D) or 801(d)(2)(E).......................................................28

       1.      The Motion Should Be Denied In Its Entirety Because the Government Has Not Identified the Statements It Intends To Introduce, Far Less Laid an Appropriate Foundation for Their Admission ............................................................................................28

       2.      The Government Has Not Established That Rule 801(d)(2)(D) Applies to Particular Statements .................................................................28

       3.      The Government Has Not Established That Rule 801(d)(2)(E) Applies to Particular Statements .................................................................29

III.      MR. HWANG'S PROFFER STATEMENTS SHOULD NOT BE INTRODUCED, BUT IF THEY ARE, THEN SEVERANCE IS REQUIRED *(GOVERNMENT REQUEST IV)* ........................................................................32

A.      The Prejudicial Impact of the Admission of a Co-Defendant's Testimonial Statements Is Well Established..............................................................................32

B.      If Mr. Hwang's Proffer Statements Are Admitted, Severance Is Required..........34

CONCLUSION........................................................................................................................35

4863-4880-0436.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bourjaily v. United States,*
483 U.S. 171 (1987).................................................................................................27

*Bruton v. United States,*
391 U.S. 123 (1968).................................................................................................33

*Chambers v. Mississippi,*
410 U.S. 284 (1973)............................................................................................25, 26

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.,*
187 F.3d 229 (2d Cir. 1999).....................................................................................20

*Crane v. Kentucky,*
476 U.S. 683 (1986).................................................................................................16

*Davis v. Alaska,*
415 U.S. 308 (1974).................................................................................................13

*Garanti Finansal Kiralama A.S. v. Aqua Marine and Trading Inc.,*
697 F.3d 59 (2d Cir. 2012).......................................................................................26

*Henry v. Speckard,*
22 F.3d 1209 (2d Cir.), *cert. denied*, 513 U.S. 1029 (1994)...................................13

*Holmes v. South Carolina,*
547 U.S. 319 (2006).................................................................................................21

*Howard v. SEC,*
376 F.3d 1136 (D.C. Cir. 2004)...............................................................................24

*Leser v. U.S. Bank Nat'l Ass'n,*
No. 1:09-cv-2362, 2012 WL 6738402 (E.D.N.Y. Dec. 29, 2012)...........................25

*Levine v. SEC,*
436 F.2d 88 (2d Cir. 1971).......................................................................................19

*Marcic v. Reinauer Transp. Co.,*
397 F.3d 120 (2d Cir. 2005).....................................................................................26

*Medinol Ltd. v. Bos. Sci. Corp.,*
346 F. Supp. 2d 575 (S.D.N.Y. 2004).....................................................................20

4863-4880-0436.1

**Page(s)**

*Pappas v. Middle Earth Condominium Ass'n*,
 963 F.2d 534 (2d Cir. 1992) ..................................................................................26

*SEC v. Am. Growth Funding II, LLC*,
 No. 16-cv-828 (KMW), 2019 WL 1748186 (S.D.N.Y. Apr. 19, 2019) ...................................5

*Tagliaferri v. United States*,
 No. 13-cr-115, 2018 WL 3752371 (S.D.N.Y. Aug. 8, 2018) ..................................24

*In re Tribune Co. Fraudulent Conveyance Litig.*,
 946 F.3d 66 (2d Cir. 2019) .............................................................................26, 29

*TSC Indus., Inc. v. Northway, Inc.*,
 426 U.S. 438 (1976) ...........................................................................................8

*TVT Recs. v. Island Def Jam Music Grp.*,
 250 F. Supp. 2d 341 (S.D.N.Y. 2003) ..................................................................1, 3

*United Paperworkers Int'l Union v. Int'l Paper Co.*,
 985 F.2d 1190 (2d Cir. 1993) ...............................................................................9

*United States v. Adelekan*,
 567 F. Supp. 3d 459 (S.D.N.Y. 2021) ..................................................................11

*United States v. Amico*,
 486 F.3d 764 (2d Cir. 2007) ...............................................................................11

*United States v. Baker*,
 98 F.3d 330 (8th Cir. 1996) ............................................................................33, 34

*United States v. Balboa*,
 No. 1:(S1) 12 Cr. 196 (PAC), 2013 WL 6196606 (S.D.N.Y. 2013) ...............................18, 19

*United States v. Bankman-Fried*,
 No. 22 Cr. 673 (LAK), 2023 WL 6283509 (S.D.N.Y. Sept. 26, 2023)...............................8

*United States v. Battaglia*,
 No. S9 05 Cr. 774 (KMW), 2008 WL 144826 (S.D.N.Y. Jan. 15, 2008) ...........................22

*United States v. Benchick*,
 No. 13-cr-20453, 2014 WL 4181970 (E.D. Mich. Aug. 21, 2014) ...............................12, 13

*United States v. Best*,
 No. 3:20-cr-00028 (VAB), 2022 WL 4008087 (D. Conn. Sept. 2, 2022) ...........................30

*United States v. Birnbaum*,
 337 F.2d 490 (2d Cir. 1964)................................................................................30

iv

**Page(s)**

*United States v. Borello*,
    766 F.2d 46 (2d Cir. 1985)........................................................................................6

*United States v. Boykoff*,
    67 F. App'x 15 (2d Cir. 2003) ................................................................................19

*United States v. Bradley*,
    No. 21-CR-00087, 2022 WL 1708400 (D. Conn. May 27, 2022)............................7

*United States v. Carton*,
    No. 17 CR 680 (CM), 2018 WL 5818107 (S.D.N.Y. Oct. 19, 2018)....................11

*United States v. Chambers*,
    800 F. App'x 43 (2d Cir. 2020) ..............................................................................19

*United States v. Connolly*,
    No. 16-cr-370 (CM), 2019 WL 2125044 (S.D.N.Y. May 2, 2019)..........................4

*United States v. Damti*,
    109 F. App'x 454 (2d Cir. 2004) ............................................................................19

*United States v. Demosthene*,
    334 F. Supp. 2d 378 (S.D.N.Y. 2004)....................................................................16

*United States v. Figueroa*,
    No. 7:23-CR-161 (MAD), 2023 WL 8258735 (S.D.N.Y. Nov. 29, 2023)..............3

*United States v. Fiumano*,
    No. 14 Cr. 518 (JFK), 2016 WL 1629356 (S.D.N.Y. Apr. 25, 2016) .............19, 22

*United States v. Fratello*,
    44 F.R.D. 444 (S.D.N.Y. 1968) ...............................................................................3

*United States v. Freedman*,
    1:18-cr-00217, 2019 WL 5387866 (S.D.N.Y. Oct. 22, 2019) ..........................27, 28

*United States v. Geaney*,
    417 F.2d 1116 (2d Cir. 1969)..................................................................................27

*United States v. Harvey*,
    991 F.2d 981 (2d Cir. 1993)......................................................................................6

*United States v. Jabar*,
    19 F.4th 66 (2d Cir. 2021), *cert. denied sub nom. Bowers v. United States*,
    142 S. Ct. 1396 (2022)...............................................................................................8

*United States v. Jamil*,
    707 F.2d 638 (2d Cir. 1983)......................................................................................7

4863-4880-0436.1

**Page(s)**

*United States v. Jass*,
   569 F.3d 47 (2d Cir. 2009)....................................................................................34

*United States v. June*,
   No. 10–cr–30021–MAP, 2012 WL 245243 (D. Mass. Jan. 25, 2012) ....................12

*United States v. Kurland*,
   No. 20-cr-306 (NGG), 2022 WL 2669897 (E.D.N.Y. July 11, 2022)......................6

*United States v. Lane*,
   883 F.2d 1484 (10th Cir. 1989) .............................................................................32

*United States v. Levin*,
   15 Cr. 101 (KBF), 2016 WL 8711458, (S.D.N.Y. Jan. 8, 2016) ...........................20

*United States v. Lingat*,
   No. 1:21-cr-573 (MKV), 2024 WL 1051633 (S.D.N.Y. Mar. 11, 2024) ...............25

*United States v. Litvak*,
   808 F.3d 160 (2d Cir. 2015)....................................................................................23

*United States v. Litvak*,
   889 F.3d 56 (2d Cir. 2018)........................................................................... *passim*

*United States v. McLaughlin*,
   No. 3:12-cr-00179, 2013 WL 996266 (M.D. Pa. Mar. 13, 2013)...........................34

*United States v. Mendlowitz*,
   No. 17-cr-248 (VSB), 2019 WL 6977120 (S.D.N.Y. Dec. 20, 2019) ......................4

*United States v. Mercado*,
   573 F.3d 138 (2d Cir. 2009)..............................................................................20, 21

*United States v. Nekritin*,
   No. 10-CR-491 (S-2) (KAM), 2011 WL 2462744 (E.D.N.Y. June 17, 2011) ........12

*United States v. O'Connor*,
   580 F.2d 38 (2d Cir. 1978)......................................................................................19

*United States v. Paccione*,
   949 F.2d 1183 (2d Cir. 1991)..................................................................................22

*United States v. Reese*,
   933 F. Supp. 2d 579 (S.D.N.Y. 2013)......................................................................17

*United States v. Regan*,
   103 F.3d 1072 (2d Cir. 1997)..................................................................................17

4863-4880-0436.1

**Page(s)**

*United States v. Riggi,*
    541 F.3d 94 (2d Cir. 2008)........................................................................35

*United States v. Rosado,*
    728 F.2d 89 (2d Cir. 1984).......................................................................17

*United States v. Rounds,*
    No. 10-CR-239, 2015 WL 5918372 (W.D.N.Y. Oct. 9, 2015) ............................7, 8

*United States v. Rubin/Chambers, Dunhill Ins. Servs.,*
    828 F. Supp. 2d 698 (S.D.N.Y. 2011)..............................................................18, 19

*United States v. Saldarriaga,*
    204 F.3d 50 (2d Cir. 2000).......................................................................17

*United States v. Santos,*
    201 F.3d 953 (7th Cir. 2000) ...................................................................19

*United States v. Stewart,*
    No. 03 Cr. 717 (MGC), 2004 WL 113506 (S.D.N.Y. Jan. 26, 2004).......................17

*United States v. Thomas,*
    377 F.3d 232 (2d Cir. 2004).....................................................................11

*United States v. Tracy,*
    12 F.3d 1186 (2d Cir. 1993).....................................................................27

*United States v. Van Hise,*
    No. 1:12-cr-00847, 2013 WL 6877319 (S.D.N.Y. Dec. 31, 2013)....................33, 34

*United States v. Vargas,*
    18-CR-76 (PAC), 2018 WL 6061207 (S.D.N.Y. Nov. 20, 2018) ..........................22

*United States v. Weaver,*
    860 F.3d 90 (2d Cir. 2017)......................................................................8, 11

*United States v. Weigand,*
    520 F. Supp. 3d 609 (S.D.N.Y. 2021)...............................................................9, 10

*United States v. Young,*
    736 F.2d 565 (10th Cir. 1983), *rev'd on other grounds,* 470 U.S. 1 (1985)..........................31

*Washington v. Texas,*
    388 U.S. 14 (1967).................................................................................2, 15

4863-4880-0436.1

**Page(s)**

*Zafiro v. United States,*
    506 U.S. 534 (1993)...........................................................................................32, 33, 34

*Zaken v. Boerer*,
    964 F.2d 1319 (2d Cir. 1992)...........................................................................26, 28, 31

**Statutes, Rules, and Regulations**

17 C.F.R. § 275.202(a)(11)(G)-1 ..............................................................................16

Fed. R. Crim. Pro. 29 .................................................................................................4

Fed. R. Crim. Pro. 33 .................................................................................................4

Fed. R. Evid. 801(c) ..................................................................................................25

Fed. R. Evid. 801(d)(2)(D) .............................................................................. *passim*

Fed. R. Evid. 801(d)(2)(E) .............................................................................. *passim*

Fed. R. Evid. 803 ......................................................................................................25

SEC Rule 13d-3(a) ....................................................................................................16

SEC Rule 13d-3(b)....................................................................................................16

4863-4880-0436.1

Patrick Halligan, through his undersigned counsel, respectfully submits this memorandum of law in opposition to the government's motions *in limine* (ECF No. 164, "Gov't Mtn."). In addition to the arguments below, Mr. Halligan joins in the arguments set forth in Mr. Hwang's opposition brief, and incorporates and adopts those arguments as if set forth herein.

## **<u>INTRODUCTION</u>**

The government has given the defense notice of its intent to present a sprawling, complicated case-in-chief – its latest witness list includes 60 witnesses (including four putative experts), its latest exhibit list runs 104 pages and includes 3,130 documents, and it seeks to complicate and lengthen the trial with improper evidence concerning alleged conduct that predates the charged conspiracy, in some instances by a decade or more. Having shown no restraint in its own case, the government's motions *in limine* seek a laundry list of categorical, preemptive, and legally untenable constraints on Mr. Halligan's ability to present a robust defense.

As an initial matter, the government's requests should be denied because they are so nebulous, and the relief they seek is so ill-defined, that adjudicating them on the present record would require abstract, advisory rulings, devoid of factual context. Indeed, rather than focus its requests at specific evidence, the government strikes at generic topics such as Archegos's counterparties' "sophistication" and "due diligence," and the "lack of certain regulation" governing much of the Archegos family office's investment activities. *See* Gov't Mtn. at 15-20, 23-24. These blanket requests are an improper effort to "strike in shotgun fashion at whole topics and sources of prospective evidence, out of context and before any specific objection against its proper backdrop is raised[.]" *TVT Recs. v. Island Def Jam Music Grp.*, 250 F. Supp. 2d 341, 344 (S.D.N.Y. 2003). Moreover, by seeking broad, advisory rulings on hypothetical issues, the government's motions seem designed to elicit a preview of Mr.

Halligan's defense strategy, which he is not required to provide and the government is not entitled to receive. *See United States v. Fratello*, 44 F.R.D. 444, 452 (S.D.N.Y. 1968).

Accordingly, the government's requests should be denied, and the parties should address the admissibility of *actual* proffered evidence and arguments within the proper context, as it develops through trial.

To the extent the Court is inclined to assess the government's requests on this limited record, the requests fail on their merits. Among other things, the government's requests seek blunt restrictions on Mr. Halligan's ability to present evidence relevant to the jury's assessment of essential elements of the charged offenses, including both materiality and intent. Second Circuit law does not support the issuance of these sweeping, preemptive rulings, which would impose such expansive constraints on Mr. Halligan that they would deprive him of his "fundamental" "right to present a defense." *See Washington v. Texas*, 388 U.S. 14, 18-19 (1967) (discussing the "right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies").

At the same time the prosecution seeks improper restraints on Mr. Halligan's defense, it seeks free rein for its own evidence. In particular, the government asks the Court to grant essentially *carte blanche* permission to introduce as non-hearsay some unidentified universe of statements made by unidentified speakers. *See* Gov't Mtn. at 35. But the government asks for this ruling in an evidentiary vacuum, without providing *any* of the foundation required for the relief that it seeks.

Finally, separate from these requests, the government moves for permission to introduce proffer statements made by Mr. Hwang, "if and when he takes a contrary position" at trial. Gov't Mtn. at 53. As to the merits of this application, Mr. Halligan incorporates Mr.

2

Hwang's arguments. However, if those arguments are not accepted by the Court, Mr. Halligan explains below why the introduction of the proffer statements would cause him such exceptional prejudice that the only suitable remedy would be a severance and separate trial.

The government's motions should be denied in their entirety.

## ARGUMENT

### I.
### THE GOVERNMENT IS NOT ENTITLED TO BROAD, PREEMPTIVE RULINGS EXCLUDING RELEVANT EVIDENCE AND ARGUMENTS
### *(GOVERNMENT REQUESTS I.A – I.H)*

The government's first set of requests, which seek to preclude eight separate categories of evidence and argument, are an impermissible effort to use *in limine* motions as "preemptive weapons" to conduct an "advance trial of substantive portions of the case, or indeed as a substitute for the trial itself." *TVT Records*, 250 F. Supp. 2d at 344-45. Worse still, the government seeks certain of these substantive, preemptive rulings by mischaracterizing Mr. Halligan's defenses, and then bootstrapping those strawmen into sweeping requests that would foreclose obviously relevant and fundamentally important defenses as well. All of these requests should be denied, and the admissibility of particular evidence and arguments should be determined at trial with the necessary context rather than on the abstract, hypothetical, and incomplete premises set forth in the government's motion. *See United States v. Figueroa*, No. 7:23-CR-161 (MAD), 2023 WL 8258735, at *2 (S.D.N.Y. Nov. 29, 2023) ("[C]ourts considering a motion *in limine* may reserve decision until trial, so that the motion is placed in the appropriate factual context.").

A.    **Mr. Halligan Does Not Intend to Argue That "Fraud Should Be Excused"
But Should Be Allowed to Present Evidence and Arguments About the
Sophistication and Conduct of Archegos's Counterparties** (*Government Request I.A*)

The government's first request seeks to "exclude evidence and argument that
fraud should be excused on the basis of victim sophistication or purported culpability." Gov't
Mtn. at 15-16.

As an initial matter, this request can be denied as academic as Mr. Halligan does
not presently intend to argue that "fraud should be excused." Thus, on the terms of the
government's request, it should be denied.

However, insofar as the government's motion sweeps more broadly and seeks to
preclude *all* evidence about the sophistication and actual conduct of Archegos's counterparties, it
should also be denied. The government does not cite a single case that actually supports such a
request.[1] More fundamentally, excluding evidence about the banks' sophistication and conduct
would prevent Mr. Halligan from introducing evidence that is essential to the jury's evaluation of
elements of the charged offenses, specifically materiality and intent.

Under Second Circuit law, the sophistication of Archegos's counterparties is
relevant to the issue of materiality:

> A misstatement in a securities transaction is material so long as
> there is a substantial likelihood that a reasonable investor would
> find the … misrepresentation important in making an investment

---

[1]  It relies on *United States v. Connolly,* No. 16-cr-370 (CM), 2019 WL 2125044 (S.D.N.Y. May
2, 2019) and *United States v. Mendlowitz,* No. 17-cr-248 (VSB), 2019 WL 6977120 (S.D.N.Y.
Dec. 20, 2019), for the proposition that "everyone is doing it" is "not a defense to fraud" (just as
"everyone speeds" is not a defense to speeding), Gov't Mtn. at 15-16, but this principle is
irrelevant here, and certainly has nothing to do with the banks' sophistication or their conduct.
The charged conduct involves supposed misstatements *to Archegos's counterparties*; it would
make no sense for Mr. Halligan to argue that the counterparties made misrepresentations to
themselves. Moreover, the court in *Connolly* **admitted** evidence about the prevalence of alleged
misconduct in the relevant industry (that case involved alleged manipulation of LIBOR); on the
defendants' post-trial motion, the court simply concluded that evidence was not sufficient to
warrant relief under Fed. R. Crim. Pro. 29 or 33. *See Connolly*, 2019 WL 2125044, at *13.

decision. A misrepresentation is important if there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

The standard of a "reasonable investor," like the negligence standard of a "reasonable man," is an objective one. ***The standard may vary, therefore, with the nature of the traders involved in the particular market.*** The reasonable investor in a market in which many individual investors trade will be deemed to be somewhat less schooled and sophisticated than a reasonable investor in a market, like the one now before us, in ***which only institutions trade with the help of complex computer programs and professional traders***.

*United States v. Litvak* ("*Litvak II*"), 889 F.3d 56, 64-65 (2d Cir. 2018) (cleaned up) (emphases added). The Second Circuit in *Litvak II* went on to explain that "the materiality standard is an objective one and centers on the views of a hypothetical, reasonable investor ***in the market at issue***." *Id.* at 68 (emphasis added). Accordingly, Mr. Halligan is entitled to present evidence regarding the sophistication of Archegos's counterparties so that the jury can understand that the reasonable investor in the relevant market – here, the prime brokerage and Delta One trading market – is sophisticated. Granting the government's request to exclude such evidence would contravene Second Circuit authority, as investor sophistication goes to the heart of the jury's necessary inquiry into who the "reasonable investor" is "in the market at issue."

The government's request, if granted, would also improperly foreclose Mr. Halligan from presenting evidence and arguments that the parade of counterparty witnesses that the government apparently intends to present at trial – 27 on its most recent witness list – are *not* representative of reasonable investors in the prime brokerage and Delta One trading market. *See SEC v. Am. Growth Funding II, LLC*, No. 16-cv-828 (KMW), 2019 WL 1748186, at *5 (S.D.N.Y. Apr. 19, 2019) (in case alleging securities fraud, denying SEC's motion *in limine* to exclude evidence of investor sophistication). This would leave the jury with a skewed and one-

5

sided picture of the relevant industry, and it would prevent jurors from evaluating whether the government has met its burden to establish materiality. This would be prejudicial to Mr. Halligan in any circumstance, but the prejudice would be aggravated if the government were, for example, allowed to elicit evidence from the bank witnesses suggesting that alleged misrepresentations did "really matter" to them.[2]

Likewise, contrary to the government's argument, the sophistication of Archegos's counterparties is also relevant to the jury's evaluation of Mr. Halligan's intent. While the government apparently wants the jury to conduct that evaluation in a vacuum, the law in this circuit is clear (and the government cites no authority to the contrary) that a defendant must be allowed to present contextual evidence regarding the relevant industry where that evidence – as here – makes an inference of fraudulent intent less plausible. *See United States v. Kurland*, No. 20-cr-306 (NGG), 2022 WL 2669897, at *12 (E.D.N.Y. July 11, 2022) ("[defendant's] proposed questions about the alleged victims' decision-making processes, factors they considered important, or amounts of money that are material to them bear on the question of materiality to the extent that they illuminate whether [defendant] possessed a fraudulent intent") (cleaned up).

Finally, insofar as the government's motion is directed at evidence bearing upon the banks' "unrelated misconduct," the motion is overbroad and premature. *See* Gov't Mtn. at 16. The government does not identify a single example of the type of misconduct that it has in mind, nor does it explain why such misconduct is, in fact, "unrelated" to the charged conduct here.[3]

---

[2] By the government's own account, such testimony would be improper, as any individual banker's subjective reliance on alleged misrepresentations is not an element of any charged offense. *See* Gov't Mtn. at 18 ("subjective reliance . . . is not an element of the charged offenses").

[3] The cases the government cites, Gov't Mtn. at 16, are wildly inapposite. *United States v. Harvey*, 991 F.2d 981, 996 (2d Cir. 1993) (in child pornography prosecution, it was error to inflame the jury with evidence of defendant's possession of X-rated adult videos involving,

6

The admissibility of evidence regarding potential misconduct by Archegos's counterparties should be assessed on the appropriate record, rather than the government's speculation. *See United States v. Bradley*, No. 21-CR-00087, 2022 WL 1708400, at *3 (D. Conn. May 27, 2022) ("The court also retains discretion to reserve judgment on some or all motions *in limine* until trial so that the motions are placed in the appropriate factual context.").

**B.     Evidence Bearing Upon the Materiality of Alleged Misrepresentations Is Relevant and Admissible *(Government Request I.B)***

The government's second request seeks to "exclude evidence and argument that the counterparties were negligent or failed to conduct adequate due diligence." Gov't Mtn. at 17. This argument rests entirely on a distortion of Mr. Halligan's anticipated argument, which is not about whether the banks were "to blame" for having chosen to do business with Archegos, but rather whether the banks' conduct proves that even if misrepresentations were made to them, those misrepresentations simply did not matter in the total mix of information – i.e., the government has failed to establish the element of materiality. It would be prejudicial error to preclude Mr. Halligan from presenting such evidence and argument.

As an initial matter, even setting aside all of the following reasons that the government's request fails on its merits, the government is not entitled to the preemptive relief that it seeks because the relevance of these issues will also depend on the content of the prosecution witnesses' direct testimony and whether they open the door to cross-examination on matters including the adequacy of their due diligence. That determination is premature and the

---

among other things, bestiality and sadomasochism); *United States v. Borello*, 766 F.2d 46, 60 (2d Cir. 1985) (in prosecution for smuggling adult films into the United States, admission of the list of titles of sexually explicit films was "obviously prejudicial"  and probative value was minimal since it was not an obscenity charge); *United States v. Jamil*, 707 F.2d 638, 644 (2d Cir. 1983) (reversing district court's exclusion of tape recording from evidence where district court had made no findings that probative value was outweighed by unfair prejudice).

motion should be denied on this basis. *See United States v. Rounds*, No. 10-CR-239, 2015 WL 5918372, at *1 (W.D.N.Y. Oct. 9, 2015) ("Without hearing the evidence in context, this Court cannot enter a blanket pretrial ruling. The government's motion *in limine* is therefore denied as premature, without prejudice to the government raising this issue at an appropriate time during trial.").

Turning to the merits, the government focuses much of its discussion on the point that "reliance" is not an element of criminal fraud, Gov't Mtn. at 17, but this is a red herring because subjective "reliance" (or the absence thereof) is not the purpose for which Mr. Halligan will introduce evidence regarding banks' due diligence practices.[4] Instead, this evidence bears directly upon the materiality of the alleged misrepresentations at issue here.

Unlike reliance, materiality *is* an essential element of the charged offenses. *See, e.g.*, *United States v. Jabar*, 19 F.4th 66, 82 n.60 (2d Cir. 2021), *cert. denied sub nom. Bowers v. United States*, 142 S. Ct. 1396 (2022) (liability under the wire fraud statute "turns on the materiality of the misrepresentations" and "whether the alleged deception affect[ed] the very nature of the bargain.") (cleaned up). For a fact to be material, "there must be a substantial likelihood that the disclosure of the . . . fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). Under this objective standard, a "reasonable investor" is the hypothetical reasonable investor in the particular market, and the "total mix" includes all information in the public domain or facts reasonably available to that investor. *See Litvak II*, 889

---

[4]  For this reason, the government's citations to *United States v. Bankman-Fried,* No. 22 Cr. 673 (LAK), 2023 WL 6283509, at *3 (S.D.N.Y. Sept. 26, 2023), and *United States v. Weaver*, 860 F.3d 90, 95 (2d Cir. 2017), are unavailing. *See* Gov't Mtn. at 17. These cases address subjective reliance.

F.3d at 65, 68; *United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1199 (2d Cir. 1993).

        In that regard, the counterparties' diligence practices have obvious relevance to the jury's understanding of what information is *available* to a reasonable investor in the prime brokerage and Delta One trading market, as well as what information *matters* to a reasonable investor in this market. That is to say, what information meets the legal standard of materiality. Appropriate evidence bearing on this element includes not only the diligence practices that the banks actually employed, but the diligence practices that they *should have* employed, all of which the jury can consider in evaluating what mattered to reasonable investors in this market during the period of the alleged conspiracy. While perhaps the government is concerned that the evidence at trial will demonstrate that the alleged misrepresentations were not material in the context of a reasonable investor's diligence practices, that is not a reason to exclude the evidence. To the contrary, it is the reason that its exclusion would be improper and prejudicial to Mr. Halligan.

        The relevance and admissibility of this evidence is compelled by *Litvak II* and consistent with other decisions in this District. In particular, in *United States v. Weigand*, Judge Rakoff addressed these issues at length, in the context of a motion to quash a Rule 17(c) subpoena issued by the defendants in a bank fraud prosecution. 520 F. Supp. 3d 609 (S.D.N.Y. 2021). The defendants were charged in connection with a "transaction laundering scheme" to trick banks into processing debt and credit card transactions for marijuana, and issued a subpoena to a third-party payment processor ("Circle"). The court addressed why the evidence sought – which bore upon the banks' failure to enforce their own policies – was relevant to the materiality of charged misrepresentations:

[T]here is reason to believe that Circle charges a customer's debit or credit card for USD Coin in the amount of the marijuana purchase; credits Eaze [the marijuana marketplace] for the purchase, nominally in USD Coin; converts that USD Coin back into U.S. dollars; and transfers those dollars into Eaze's account. In essence, Circle offers Eaze USD Coin as a fig leaf separating the issuing bank from Eaze. But -- and here is defendants' key allegation -- Circle does not hide what it is doing from the banks. When Weigand's private investigator conducted a test buy, her credit card statement included the word "Eaze" in the description of the charge. The private investigator's bank had in its possession information tending to show that this charge related to Eaze.

[Defendants] observe that anyone who Googles Eaze -- or anyone familiar with this case -- knows that Eaze is a marijuana marketplace. Given the ease with which a bank could figure out that Eaze sells marijuana, and the alleged quantity of marijuana sales consummated by Eaze (tens of millions of dollars annually), defendants argue that a juror could infer that banks must know what Eaze and Circle are doing. The fact that banks nevertheless process such transactions, like the private investigator's test buy, **could arguably support an inference that the banks would not have cared about the misrepresentations that the defendants allegedly made**.

To be sure, defendants' argument requires several inferential steps, which a jury is free to make or to reject.

    . . .

The Government principally argues that the victim banks have policies prohibiting use of their credit and debit cards to make illegal purchases and that whether banks are effective at enforcing those policies is beside the point because a victim's negligence or ineptitude is no defense to bank fraud. **This is true as far as it goes, but it misunderstands defendants' theory. They intend to argue not that banks are lackadaisical in their enforcement, but rather that banks <u>do not care</u> about whether their cardholders are purchasing marijuana (at least in states where that is legal)**. If defendants uncover evidence sufficient to support such an inference, then, at least arguably, a juror might find that the alleged misstatements did not have a natural tendency to influence or a reasonable likelihood of influencing a bank's decision whether to process Eaze transactions.

*Id.* at 614 (emphasis added).

The government offers no compelling authority to the contrary. It relies on a series of cases in which there was no apparent dispute as to the materiality of the statements at issue, but defendants instead sought to assert a so-called "gullible victim" defense relying on idiosyncratic conduct or characteristics of the victims to negate the frauds perpetrated upon them. In *United States v. Thomas*, for example, the Second Circuit found no error where the trial court precluded the defense from arguing that a pastor – the alleged victim of travel fraud – should have asked more questions after he learned that certain funds the defendant promised had not been delivered. 377 F.3d 232, 241 (2d Cir. 2004) (cited in Gov't Mtn. at 17).[5] *See also United States v. Adelekan*, 567 F. Supp. 3d 459, 469 (S.D.N.Y. 2021) (decision does not include the word "material" and grants an unopposed motion to preclude evidence and argument regarding "the gullibility of victims") (cited in Gov't Mtn. at 17); *United States v. Amico*, 486 F.3d 764, 780 (2d Cir. 2007) (rejecting "reasonable victim" defense in mail fraud prosecution; no discussion of materiality element) (cited in Gov't Mtn. at 17); *United States v. Weaver*, 860 F.3d 90, 96 (2d Cir. 2017) (contractual disclaimer of reliance does not render prior misstatements immaterial: "Fraudsters may not escape criminal liability for lies told to induce gullible victims to make worthless investments by inducing them to sign a contract containing disclaimers of reliance.") (cited in Gov't Mtn. at 17).

---

[5]  The Second Circuit clarified that the materiality of the misrepresentations was not in issue; it described the defendant's argument as follows: "that the mail fraud statute does not reach material, false representations if a reasonable person would not have acted upon them." *Thomas*, 377 F.3d at 242. The court then went on to explain that allowing a defendant to rely on a victim's individual "foolishness" "would be inviting con men to prey on people of below-average judgment or intelligence, who are anyway the biggest targets of such criminals and hence the people most needful of the law's protection." *Id.* at 243-44 (cleaned up). Consistent with the discussion above, Mr. Halligan does not intend to argue that the banks were not sophisticated.

11

Critically, none of the Second Circuit cases cited by the government involved the issue presented here: the victims' diligence practices will necessarily inform the jury's understanding of what information is material to the reasonable investor in the relevant, specialized market. *See United States v. Carton*, No. 17 CR 680 (CM), 2018 WL 5818107, at *4 (S.D.N.Y. Oct. 19, 2018) (defendant sought expansive pretrial discovery, arguing that alleged victim's due diligence somehow bore upon his "lack of intent"; no discussion of element of materiality) (cited in Gov't Mtn. at 19); *United States v. Nekritin*, No. 10-CR-491 (S-2) (KAM), 2011 WL 2462744, at *6 (E.D.N.Y. June 17, 2011) (in health care fraud case, rejecting defendant's argument that Medicare and Medicaid's payments on allegedly fraudulent claims somehow bore upon his "knowledge and intent"; no discussion of element of materiality) (cited in Gov't Mtn. at 19). This is not surprising, because as the Second Circuit held in *Litvak II*, evidence bearing upon the jury's understanding of materiality in a specialized field is plainly admissible. *Litvak II*, 889 F.3d at 65.

The government's only authorities that even purport to address materiality not only come from district courts in other circuits, but they predate *Litvak II* as well. See *United States v. June,* No. 10–cr–30021–MAP, 2012 WL 245243, at *2 (D. Mass. Jan. 25, 2012) (to "assure that both the government and defense played by the same rules," holding that "[t]he government will not be able to offer evidence that, in the specific circumstances, the alleged victims actually relied on Defendant's representations, or actually considered these representations material, any more than Defendant will be able to offer evidence to the contrary") (cited in Gov't Mtn. at 18); *United States v. Benchick,* No. 13-cr-20453, 2014 WL 4181970, at *3 (E.D. Mich. Aug. 21, 2014) ("Even if [the banks] were negligent in giving out the

loans to Defendant, this evidence does not speak to Defendant's guilt.") (cited in Gov't Mtn. at 18).

Mr. Halligan respectfully requests that the Court apply *Litvak II* and allow him to present evidence and argument – including related to the banks' due diligence – that will help the jury assess what information is material to a reasonable investor in this specific field.



14

███████████████████████████████████████████████

███████████████████████████████████

**D.     The Defense Must Be Allowed to Present Evidence and Argument That the Charged Conspiracy Involved Lawful Conduct *(Government Request I.D)***

The government's next set of requests seek to preclude "evidence and argument that regulators or a lack of certain regulation are to blame or provide a defense to manipulation or fraud," and "evidence and argument about the purportedly 'novel,' 'unprecedented,' or 'aggressive' nature of the government's case." Gov't Mtn. at 23, 24. Beyond those descriptions, the government provides little, if any, particularity regarding the evidence or arguments that it seeks to exclude. The motion should be denied for that reason alone, and the government should be required to raise specific objections directed at arguments the defendants are actually making.

However, if the Court is inclined to reach the substance of these requests at this time, they should be denied. The absence of particularity suggests that these requests are designed to sweep broadly and prevent the jury from understanding a critical defense to the charged conduct: namely, *that it was not unlawful* to trade swaps in large volume and build highly concentrated positions and to use leverage to do so. Thus, granting these requests would infringe Mr. Halligan's basic due process right to "be heard in [his] defense." *Washington*, 388 U.S. at 18 (cleaned up).

The government assigns a sinister motive to the Archegos family office's decision and efforts to *comply* with a series of complex regulatory rules that *allowed it* to develop large, concentrated positions that it was not required to publicly disclose. *See, e.g.*, Gov't Mtn. at 10; Ind. at ¶ 9.[6] In particular, it alleges that the open-market, supposedly manipulative trading at

---

[6]  Pursuant to the Advisers Act Rule 202(a)(11)(G)-1, which took effect in 2011, commonly referred to as the SEC's "Family Office Rule," family offices are exempt from a variety of

issue in the case was "accomplished . . . by structuring it to avoid any public reporting requirements that would reveal Archegos's concentration." Gov't Mtn. at 10. The government does not, however, allege Archegos actually violated any of these public reporting requirements.

Given the government's contention that the "structuring" of Archegos's activities – including by operating as a family office and trading in derivative instruments – was undertaken to facilitate fraud, Mr. Halligan must be allowed to argue that trading in swaps was entirely lawful and is a common "vanilla" trading practice for large investors. To hold otherwise would result in a one-sided presentation, in which the government is allowed to introduce evidence and argument about the manner in which Archegos conducted its operations, but Mr. Halligan may not present evidence or argument rebutting and disproving the government's presentation. Such a one-sided presentation is simply impermissible in a criminal trial. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.").

Accordingly, the government's request should be denied. If the government is permitted to argue that the Archegos family office or its trading were structured to facilitate

---

regulations that apply to other asset management firms like hedge funds, which manage capital or assets from outside investors. *See* 17 C.F.R. § 275.202(a)(11)(G)-1. Also, under then-existing SEC rules, Archegos's total return swaps were generally not subject to the reporting requirements that apply to cash shares (particularly Section 13(d) of the Exchange Act), meaning that investors could acquire large positions through swaps without any requirement that the positions be publicly disclosed. And the SEC's own reporting and disclosure scheme did not require Archegos to make known to the market its beneficial ownership of equity shares totaling less than 5% of a company's outstanding shares, or that it was the holder of positions in total return swaps in any amount, concentrated or otherwise. SEC Rule 13d-3(a) (defining beneficial ownership); SEC Rule 13d-3(b) (identifying circumstances under which a person shall be deemed to be a beneficial owner). Similarly, the allegedly unlawful trading conduct was conducted on the open market, where Archegos's investments were subject to ordinary market forces of supply and demand. Ind. ¶ 21.

unlawful conduct, then the defense must be entitled to introduce evidence and argument that such structuring and trading were permitted by then-existing laws and regulations.

### E.    Mr. Halligan Does Not Intend to Argue for Jury Nullification
   *(Government Request I.E)*

The government does not dispute that this prosecution is novel, unprecedented, or aggressive, but contends that evidence and argument regarding these matters would "amount to attempts at jury nullification." Gov't Mtn. at 25.[7] Not so. Mr. Halligan has no intention to argue for jury nullification, and the government's request is moot.

To the extent the government seeks to preclude evidence about the regulatory environment in which Archegos operated, the request should be rejected for all of the reasons

---

[7]  The government cites a series of cases in which courts precluded defendants from calling into question the government's motives or the legitimacy of its conduct. Gov't Mtn. at 25. *United States v. Regan*, 103 F.3d 1072, 1082 (2d Cir. 1997) (in perjury prosecution, holding that "perjury trap" and "contrived materiality" defenses, which were predicated on notion that "outrageous government conduct mandated indictment's dismissal, were selective prosecution arguments, separate from issues of factual guilt, and therefore properly directed at court, not the jury); *United States v. Rosado*, 728 F.2d 89, 95 (2d Cir. 1984) (no error in allowing government to present rebuttal evidence of legitimacy of investigation after defendants, who were charged with criminal contempt for having defied order to testify before grand jury, had been permitted to litigate before jury whether government was misusing grand jury as tool of political oppression); *United States v. Stewart*, No. 03 Cr. 717 (MGC), 2004 WL 113506, *1 (S.D.N.Y. Jan. 26, 2004) (holding that because selective prosecution claim must be directed to the court, not the jury, evidence of prosecutorial bias was not relevant to issues jury was to decide on insider trading charges); *United States v. Saldarriaga*, 204 F.3d 50, 51 (2d Cir. 2000) (in drug prosecution, no error in failing to charge jury that government should have, but did not, "wire" the undercover officer for an audio recording of the drug sale, did not photograph or videotape the sale; and following the sale did not test for fingerprints the bags that contained the cocaine); *United States v. Reese*, 933 F. Supp. 2d 579, 583-84 (S.D.N.Y. 2013) (precluding defense from arguing jury nullification or the propriety of the government's investigation, but specifically allowing defendant to impeach witnesses' motives and veracity); *United States v. Demosthene*, 334 F. Supp. 2d 378, 380 (S.D.N.Y. 2004) (precluding argument concerning propriety of government's investigation or decision to supersede indictment because these were properly before court, rather than jury, under *Regan*).

As discussed above, evidence and arguments related to Archegos's compliance with applicable regulations, and the regulatory environment in which it operated, are relevant to factual and legal defenses that have nothing to do with the government's motives or legitimacy of its conduct.

discussed above. *See* above Pt. I.D. Evidence about the regulatory environment is also relevant to Mr. Halligan's state of mind. The government, of course, must prove that Mr. Halligan acted with criminal intent, and the inference that Mr. Halligan did not believe that his conduct or the conduct of others at Archegos was unlawful or improper is made more likely by Archegos's efforts to achieve compliance with (or exemption from) filing and reporting requirements.

**F.    The Government's Request to Categorically Exclude Evidence of Mr. Halligan's Good Acts and Non-Criminal Conduct Should be Denied *(Government Request I.F)***

The Government next asks the Court to preclude Mr. Halligan from presenting any evidence or argument concerning prior "good acts" or "noncriminal activities" "to disprove [his] guilt of the crimes charged." Gov't Mtn. at 26. With scant examples of specific evidence to be excluded (all of which we address below), the government argues that all "good acts evidence" would be inadmissible to show innocence and lack of intent and would create the risk of jury confusion and jury nullification. *Id.* The Court should reject this request as premature and overbroad. Mr. Halligan should be permitted to admit evidence of prior "good acts" that, for example, contradict the government's theories of motive and intent, negate the existence of the charged racketeering conspiracy, and for any other purpose that is appropriate in light of the evidence adduced at trial.

If the Court is inclined to address this request now, the government is not entitled to the blunt relief it seeks. The law is clear that evidence of a defendant's prior "good acts" may be relevant where those "good acts" "would undermine the underlying theory of a criminal prosecution." *United States v. Balboa*, No. 1:(S1) 12 Cr. 196 (PAC), 2013 WL 6196606, at *3 (S.D.N.Y. 2013) (denying government's motion *in limine* to preclude evidence that the defendant, a portfolio manager, marked down the value of other assets in the same fund; reasoning that such evidence could undermine the motive alleged by the government); *see also*

*United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 828 F. Supp. 2d 698, 707-08 (S.D.N.Y. 2011) (denying government's motion to exclude evidence regarding uncharged transactions to show defendants' lack of illicit intent because such transactions may be relevant to "cast doubt on the government's theory" that defendants had the requisite intent) (quoting *United States v. Santos*, 201 F.3d 953, 962 (7th Cir. 2000)).

First, certain evidence of Mr. Halligan's noncriminal conduct would be appropriate to rebut the government's allegation that the defendants "corrupted" the operations of the Archegos family office, and ran the fund through "pervasive fraud." Ind. ¶¶ 1, 20; Gov't Mtn. at 8. Mr. Halligan must be allowed to respond to this argument by demonstrating that the family office's trading and operations were conducted lawfully. *See Balboa*, 2013 WL 6196606, at *3; *United States v. Damti*, 109 F. App'x 454, 456 (2d Cir. 2004); *Rubin/Chambers*, 828 F. Supp. 2d at 708. Indeed, the cases cited by the government do not involve allegations of "pervasive" fraud and a multi-year racketeering conspiracy of the sort alleged here.[8]

---

[8]  *See* Gov't Mtn. at 27-28, citing: *United States v. Chambers*, 800 F. App'x 43, 45-46 (2d Cir. 2020) (affirming exclusion of evidence of meeting that undercover officer had with defendant's wife, where nothing illegal or incriminating occurred; meeting occurred two years after charged conduct and defendant was not present, so meeting would shed no light on defendant's intent); *United States v. O'Connor*, 580 F.2d 38, 43 (2d Cir. 1978) (affirming exclusion of defense witness testimony as to defendant's specific good acts where information had already been elicited in general terms and there was no allegation of pervasive bribery); *United States v. Boykoff*, 67 F. App'x 15, 20-21 (2d Cir. 2003) (affirming denial of discovery of IRS agent's report on all of defendant's clients tax returns where only a few clients' returns were at issue, report of this type was not generally discoverable in a criminal tax case, and district court's in camera review of the report showed no exculpatory material); *Levine v. SEC*, 436 F.2d 88, 91 (2d Cir. 1971) (no error in excluding testimony of 47 witnesses who would have testified that representatives of defendant broker dealer had made no misrepresentations to them, where four customers had already been allowed to present similar testimony and SEC presented only six customer witnesses); *United States v. Fiumano*, No. 14 Cr. 518 (JFK), 2016 WL 1629356, at *8 (S.D.N.Y. Apr. 25, 2016) (declining to rule on government's motion to preclude defense from introducing "good acts" evidence and reserving decision where government conceded it was unaware of defense witnesses or exhibits, or the nature of defense case).

4863-4880-0436.1

Mr. Halligan's right to show that the government has cherry-picked its evidence is particularly fundamental to his defense to the racketeering charge (Count One). To meet its burden on that count, the government must prove, among other things, the existence of a racketeering "enterprise" and a "pattern of racketeering activity" – an element that includes continuity. Continuity, in turn, requires the government to prove beyond a reasonable doubt that the predicate acts of racketeering are a regular way of conducting the defendant's ongoing legitimate business. *See Medinol Ltd. v. Bos. Sci. Corp.*, 346 F. Supp. 2d 575, 615 (S.D.N.Y. 2004) (Hellerstein, J.) (citing *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)). The prevalence of lawful conduct within the supposed "enterprise" – including as it relates to investments and interactions with counterparties – is therefore a relevant and appropriate defense to these allegations. Indeed, it negates the existence of the charged racketeering conspiracy.

Equally problematic, the government's overreaching request would unfairly prevent Mr. Halligan from presenting evidence that is relevant to the jury's evaluation of materiality. As discussed above, the materiality of a statement depends on the "total mix" of information available to reasonable investors. The jury cannot make this evaluation based on the government's cherry-picked statements alone. Accurate statements – including those not charged by the government, such as, for example, disclosures to the counterparties that Archegos was highly leveraged, invested in highly concentrated positions, and was subject to extremely volatile performance – are therefore necessary to the jury's evaluation of this element of the charged offense. *See United States v. Levin*, 15 Cr. 101 (KBF), 2016 WL 8711458, at *5 (S.D.N.Y. Jan. 8, 2016) (other acts evidence may be admitted to "provide background to the events alleged, and

enable the jury to understand the complete story of the crimes charged") (citing *United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009)).

In addition, if the government claims that Mr. Halligan's overall compensation was linked to his conduct and is thus evidence of his motive, Mr. Halligan should be permitted to prove otherwise through evidence that will show the extent of his lawful conduct and that he was not motivated by personal financial gain.

Moreover, the government's motion asks the Court to endorse a double standard by precluding evidence directly responsive to issues that the government itself intends to introduce. For example, the government's Rule 404(b) notice describes certain facts that the prosecution intends to present regarding the compensation that Mr. Halligan and other employees earned for their work at the Grace & Mercy Foundation, which is a not-for-profit philanthropic organization founded by Mr. Hwang and his family. The government apparently intends to argue that this compensation was somehow inappropriate. Gov't Mtn. at 13-14. If the government is allowed to introduce this evidence and make such arguments, Mr. Halligan obviously must be allowed to introduce evidence demonstrating the *bona fide* work that he performed to earn his salary from the foundation. *Holmes v. South Carolina*, 547 U.S. 319, 331 (2006) (holding that state supreme court's exclusion of evidence violated criminal defendant's right to present a complete defense and concluding that "[t]he point is that, by evaluating the strength of only one party's evidence, no logical conclusion can be reached regarding the strength of contrary evidence offered by the other side to rebut or cast doubt."). Yet that is precisely the sort of evidence that the government's broad motion, if granted, would preclude. Gov't Mtn. at 27 (asking the Court to preclude evidence of "charity and philanthropy" including

"insofar as it relates to the Grace & Mercy Foundation"). The jury should not hear a one-sided presentation of the evidence.

Finally, if the Court is not presently inclined to grant Mr. Halligan permission to introduce evidence of noncriminal conduct as discussed above, it should reserve decision on these matters until the relevant evidence is proffered. *See Fiumano*, 2016 WL 1629356, at *8 (reserving "decision on whether any ['good acts'] evidence the Defendant seeks to introduce is, in fact, inadmissible" because "[n]either the Government nor the Defendant identify specific acts that should be precluded").

**G.    The Government's Request to Categorically Exclude All Evidence of Mr. Halligan's Personal Circumstances Should Be Denied Because It Is Overbroad and Premature *(Government Request I.G)***

The government cites no authorities to support its request for a blanket pretrial order excluding any evidence of Mr. Halligan's personal circumstances. *See* Gov't Mtn. at 29.[9] The determination of whether such evidence is appropriate should be made on a case-by-case basis, based on the specific evidence and the issue for which it is proffered. It would be unfair and prejudicial to foreclose in advance broad, vaguely defined categories of evidence about Mr. Halligan. *Cf. United States v. Vargas*, 18-CR-76 (PAC), 2018 WL 6061207, at *3 (S.D.N.Y. Nov. 20, 2018) (declining at the motion *in limine* stage to "bar Defendant from presenting character witnesses or testimony about his personal circumstances to the extent they rebut facts brought into issue in the Government's case in chief").

---

[9]  To the contrary, in *United States v. Paccione*, the Second Circuit noted that the trial court had "properly allowed [defendant's] four character witnesses to testify to their opinions that [defendant] was a forthright man of honesty whose integrity was beyond reproach." 949 F.2d 1183, 1201 (2d Cir. 1991) (cited in Gov't Mtn. at 29). In *United States v. Battaglia*, the court specifically allowed defendant to seek the introduction of evidence of his "family and personal status" at trial, to the extent "such information should become relevant." No. S9 05 Cr. 774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (cited in Gov't Mtn. at 29).

In any event, the government's concerns that Mr. Halligan will seek to introduce improper or irrelevant evidence solely to engender sympathy are misplaced and unfounded. To the extent Mr. Halligan seeks to introduce evidence of his personal or professional background, that evidence will be relevant to his defense.

## H. The Government Is Not Entitled to a Preview of Mr. Halligan's Trial Evidence and Strategy *(Government Request I.H)*

The government seeks an order directing the defense "to provide notice to the Government at least four weeks prior to the beginning of trial as to whether either defendant intends to offer evidence or argument regarding the presence of attorneys." Gov't Mtn. at 30.[10] The government seeks to condition the defense's right to introduce evidence and arguments on providing such notice. *Id.* The government does not cite a single authority supporting such a requirement, which makes sense because it is not the law.

It is an elementary principle that a defendant must be allowed to establish his state of mind and good faith. *See, e.g.*, *United States v. Litvak* ("*Litvak I*"), 808 F.3d 160, 190 (2d Cir. 2015) ("[S]ince [good faith] may be only inferentially proven, no events or actions which bear even remotely on its probability should be withdrawn from the jury unless the tangential and confusing elements interjected by such evidence clearly outweigh its relevance[.]") (cleaned up). It is equally well established that evidence surrounding the environment in which the charged conduct occurred can be highly probative of the defendant's state of mind and good faith defenses. *Id.* at 188, 190 (quoting defendant's counsel's explanation of the relevance of evidence bearing upon "the environment in which Mr. Litvak [wa]s operating. It all goes back to state of mind."). In this regard, the presence and involvement of attorneys in that environment – even if

---

[10]   The government is correct that Mr. Halligan does not presently intend to advance an advice of counsel defense. *See* Gov't Mtn. at 30. Thus, the authorities that the government cites to describe the advice of counsel defense are irrelevant.

not advanced as an "advice of counsel" defense – is highly probative of a defendant's state of mind. *See Howard v. SEC*, 376 F.3d 1136, 1147 (D.C. Cir. 2004) ("reliance on the advice of counsel need not be a formal defense; it is simply evidence of good faith, a relevant consideration in evaluating a defendant's scienter"). Indeed, one authority cited by the government involved the admission of evidence regarding the presence of counsel as relevant to the defendant's state of mind and good faith. See *Tagliaferri v. United States*, No. 13-cr-115, 2018 WL 3752371, at *1–3 (S.D.N.Y. Aug. 8, 2018) ( "trial court ruled that even though it would not specifically instruct the jury on the advice of counsel defense, it would permit the defendant to elicit testimony that attorneys were involved in the transactions [] and [] to argue that this involvement affected [the defendant's] state of mind, thus bearing on whether he acted with fraudulent intent") (cleaned up).

Against this backdrop, there is no authority for the government's demand that the admission of evidence related to the presence of counsel be conditioned on Mr. Halligan providing supplemental pretrial disclosures describing the evidence and arguments he may introduce. *See* Gov't Mtn. at 30. This demand is a naked fishing expedition for a preview of defense strategy, which is inappropriate. The defense bears no burden and is not obligated to disclose defense theory or strategy unless required by statute. The admissibility of evidence related to Archegos's counsel can be assessed in the ordinary course, as and if it is offered, and with the proper context. At that same time, the Court can consider the government's request for a limiting instruction, which is premature at this juncture. *See* Gov't Mtn. at 32.[11]

---

[11]  While that issue should, as with the others discussed herein, be taken up in the proper context, it does bear note that the government's expressed concern about juror confusion is peculiar. Gov't Mtn. at 31. While the government expresses concern that jurors will be misled or confused by evidence about Archegos's lawyers, the government has included one of those lawyers on its witness list.

**II.**

**THE GOVERNMENT'S REQUEST FOR WHOLESALE ADMISSION OF UNSPECIFIED HEARSAY STATEMENTS SHOULD BE DENIED**
***(GOVERNMENT REQUEST II)***

The Government seeks a blanket ruling that unidentified statements made by unspecified Archegos employees are admissible for their truth under exceptions to the hearsay rule and because they are "not hearsay." Gov't Mtn. at 33, 35. This motion should be denied out of hand because the government has not even purported to identify the specific statements that are the subject of its request, far less establish the necessary foundation for a pretrial ruling on their admissibility. *See United States v. Lingat*, No. 1:21-cr-573 (MKV), 2024 WL 1051633, at *6 (S.D.N.Y. Mar. 11, 2024) ("the Court reserves decision until trial on the admission of potential co-conspirator statements, including the two examples provided by the Government," because "the Court simply does not have enough information to rule on this motion *in limine* … [T]he Court cannot make blanket or 'categorical' rulings in advance of hearing the proffered evidence and any potential objection, or knowing the context in which the statement is offered."); *Leser v. U.S. Bank Nat'l Ass'n*, No. 1:09-cv-2362, 2012 WL 6738402, at *4 (E.D.N.Y. Dec. 29, 2012) (reserving ruling under Rule 801(d)(2) "until the relevant witnesses testify and the appropriate foundation is laid").

For the reasons that follow, the motion also fails on its merits.

**A.    The Government Bears the Burden to Establish That Out-of-Court Statements Fall Within a Hearsay Exception or Are Not Hearsay**

Hearsay, generally meaning an out-of-court statement offered for the truth of the matter asserted therein, is inadmissible unless it falls within an enumerated exception or is "not hearsay." Fed. R. Evid. 801(c), 803 (exceptions to the hearsay rule), 801(d) (non-hearsay). The rule against hearsay is "grounded in the notion that untrustworthy evidence should not be presented to the triers of fact," because an out-of-court "declarant's word is not subject to cross-

25

examination" and "he is not available in order that his demeanor and credibility may be assessed by the jury." *Chambers v. Mississippi*, 410 U.S. 284, 298 (1973).

The Government seeks to invoke two carve-outs to the rule against hearsay – set forth in Rules 801(d)(2)(D) and 801(d)(2)(E) – to admit vast but poorly defined categories of evidence.

### 1.    Rule 801(d)(2)(D)

Under Rule 801(d)(2)(D), a statement is not hearsay if it "is offered against an opposing party and … was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Admissibility against an individual defendant under this Rule "depends on the relationship between the declarant and the defendant." *Zaken v. Boerer*, 964 F.2d 1319, 1322 (2d Cir. 1992). "In order to introduce evidence . . . under [this Rule], a party must lay a sufficient foundation by establishing (1) the existence of the agency [or employment] relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *Marcic v. Reinauer Transp. Co.*, 397 F.3d 120, 128–29 (2d Cir. 2005) (cleaned up) (citing *Pappas v. Middle Earth Condominium Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992).

The existence of an agency relationship "is ordinarily a question of fact." *Garanti Finansal Kiralama A.S. v. Aqua Marine and Trading Inc.*, 697 F.3d 59, 71 (2d Cir. 2012) (internal quotation marks omitted); *see also In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 79 (2d Cir. 2019) ("[g]enerally, whether an agency relationship exists is a mixed question of law and fact[]") (cleaned up). The Rule requires the Court to "examine . . . each statement [offered] to determine whether the requisite relationship existed between the declarant and [defendant] to make the statement admissible against [defendant] in [his] individual capacity." *Zaken*, 964 F.2d at 1323. The government, as the proponent of the evidence, bears the

burden of persuasion and must prove the foundational facts by a preponderance of the evidence. *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987).

    **2.**      **Rule 801(d)(2)(E)**

        Under Rule 801(d)(2)(E), a statement is not hearsay if it "is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." Statements are admissible pursuant to this rule only if a court finds that (1) a conspiracy existed at the time the statement was made; (2) the declarant and the defendant against whom the statement is offered were members of the conspiracy; and (3) the statement was made (a) in furtherance of the conspiracy and (b) during the course of the conspiracy. *See United States v. Tracy*, 12 F.3d 1186, 1196 (2d Cir. 1993) (citing *Bourjaily*, 483 U.S. at 175).

        While in appropriate circumstances declarations proffered as co-conspirator statements may be admitted in evidence on a conditional basis, subject to the later submission of proof of the *Bourjaily* prerequisites, this practice is neither absolute nor automatic. *Tracy*, 12 F.3d at 1199 (citing *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969)). To the contrary, where the scope of the alleged conspiracy is ill-defined and the "content and context" of the proffered statements is unclear, "[t]he proper procedure is to determine the issues surrounding admissibility . . . during the trial, and, if necessary, outside the presence of the jury." *United States v. Freedman*, 1:18-cr-00217 (KMW), 2019 WL 5387866, at *2 (S.D.N.Y. Oct. 22, 2019) (emphasis added) (cleaned up).

**B.      The Government Has Not Met Its Burden for the Admission**
**of Statements Under Rules 801(d)(2)(D) or 801(d)(2)(E)**

**1.      The Motion Should Be Denied In Its Entirety Because**
**the Government Has Not Identified the Statements It Intends To**
**Introduce, Far Less Laid an Appropriate Foundation for Their Admission**

Under both Rules 801(d)(2)(D) and 801(d)(2)(E), the required foundation must be

provided *for each statement* the government intends to introduce. *See Zaken*, 964 F.2d at 1322

("we examine therefore each statement [proffered] to determine whether" the required

foundation is established). The government's motion fails to identify the specific statements that

it intends to introduce, and therefore has not met its burden to lay the required foundation as to

*any statement*. *See* Gov't Mtn. at 35 (referring to "representative examples"). In particular, to

satisfy Rule 801(d)(2)(D), a statement must be made within the scope of the claimed agency

relationship, and to satisfy Rule 801(d)(2)(E), a statement must be made in furtherance of the

alleged conspiracy. Obviously, those determinations may be made only in the context of the

proffered statements. Accordingly, the appropriate course is for the government to identify each

statement or document it seeks to admit, and the basis for the requested admission, including

each element of the foundation required by the Rules. *See Freedman*, 2019 WL 5387866, at *2.

Moreover, for the reasons below, none of the eight "representative example"

statements identified by the government may be admitted as against Mr. Halligan.

**2.      The Government Has Not Established That**
**Rule 801(d)(2)(D) Applies to Particular Statements**

The government provides only one "example" of statements made by individuals

whom it has not alleged were co-conspirators. (GX-2991.)  These statements were made by

certain of Archegos's analysts, and the government makes no claim that it will show that Mr.

Halligan – who worked in the operations group, an entirely different division of Archegos from

the analysts – had an agency relationship with any analysts. Therefore, these statements are not admissible under Rule 801(d)(2)(D) as against Mr. Halligan.

In the final paragraph of Point II of its argument, the government makes a throwaway argument that since the defendants are alleged to have led the Archegos racketeering "enterprise" that "included Archegos Fund, LP; Archegos Capital Partners, LLC; Archegos Capital Management, LP, *and its employees*," those employees' statements are admissible under Rule 801(d)(2)(D). Gov't Mtn. at 39 (emphasis added). The government offers no legal support for this theory, which is not surprising because it would essentially flatten Rules 801(d)(2)(D) and (E) in every racketeering prosecution. Indeed, the Notes for Rule 801(d)(2)(E) demonstrate that the government's interpretation is contrary to the meaning and intent of the rules: "The limitation upon the admissibility of statements of co-conspirators to those made 'during the course and in furtherance of the conspiracy' is in the accepted pattern. While the broadened view of agency taken in [Rule 801(d)(2)(D)] might suggest wider admissibility of statements of co-conspirators, *the agency theory of conspiracy is at best a fiction and ought not to serve as a basis for admissibility beyond that already established*." Notes to Rule 801 (emphasis added).

If and when the government makes specific factual proffers regarding Mr. Halligan's supposed control and fiduciary relationship with particular employees, he will respond appropriately to enable the Court to adjudicate the admissibility of particular evidence.

### 3. The Government Has Not Established That Rule 801(d)(2)(E) Applies to Particular Statements

Nor has the government proffered facts sufficient to invoke the co-conspirator carve-out to the hearsay rule. The government identifies seven declarants – all former Archegos employees – as Mr. Halligan's and Mr. Hwang's supposed co-conspirators. Gov't Mtn. at 35. But that is all that it has to say about them, beyond the superficial contention that "[t]he evidence

at trial will readily show by a preponderance that the defendants conspired with" these seven former colleagues. *Id.* at 38. This is not enough for the Court to make a preliminary determination that statements made by any of these individuals might be admissible as against Mr. Halligan. *See United States v. Best*, No. 3:20-cr-00028 (VAB), 2022 WL 4008087, at \*12 n.4 (D. Conn. Sept. 2, 2022) (declining to rule pretrial on whether statements captured on audio recordings were made "in furtherance" of conspiracy, "[w]ithout additional context"). Notably, since the government intends to introduce these statements *as against Mr. Halligan*, it must lay a sufficient foundation regarding these six individuals' participation in a conspiracy *with Mr. Halligan*. *Cf. United States v. Birnbaum*, 337 F.2d 490, 494 (2d Cir. 1964) ("The fact that one conspirator tells another something relevant to the conspiracy does not alone make the declaration competent; the declaration must itself be an act in furtherance of the common object; mere conversation between conspirators is not that."). The government makes no effort to do so. Indeed, six of the seven former colleagues worked in entirely different divisions of Archegos from Mr. Halligan, and none of the government's "representative examples" of statements from those six individuals were sent to, or referred to, Mr. Halligan in any way. There is no factual basis in the government's motion for a preliminary determination that Mr. Halligan was part of a conspiracy with these individuals, far less that their statements were made in furtherance of a common conspiracy.

      As for the four statements made by Mr. Becker, who was Mr. Halligan's colleague in the operations department at Archegos, the government has not offered a sufficient proffer explaining why or how the statements it identifies were made in furtherance of a conspiracy in common with Mr. Halligan. *See* GX-3072, GX-123, GX-3275, GX-51. Two of the statements were not sent to Mr. Halligan, and those statements merely relate to the fact that Mr.

Hwang desired capacity to trade (GX-3072) and was in the trading room (GX-3275). These are hardly remarkable facts (if Mr. Becker's statements are accepted for their truth), because the Archegos family office was, after all, engaged in the business of investing. To the extent the government intends to characterize all of Archegos's investment activities as conduct in furtherance of the conspiracy, that is a new contention that is at odds with the indictment, which focuses on only certain of Archegos's investment activities involving a particular set of "certain securities." Ind. ¶¶ 2, 21, 70, 78; *see* Gov't Mtn. at 11. Similarly, the two messages that touch Mr. Halligan involve references to (i) a desire for increased investment capacity (GX-123) and (ii) onboarding a potential new counterparty (GX-51). Here again, these communications on their face relate to everyday activities of a family office engaged in legitimate investment activity, and the government has not made a sufficiently particularized showing as to why and how these communications are in furtherance of the charged conspiracy and admissible against Mr. Halligan.[12]

---

[12] The government notes that the Court "may consider the coconspirators' sworn plea allocutions to support a finding that a conspiracy with the defendant existed." Gov't Mtn. at 39. It fails to note that neither of the government's cooperating witnesses' plea allocutions refers specifically to Mr. Halligan. Mr. Becker's allocution refers generically to "others at Archegos," and Mr. Tomita's allocution refers just to "others." *United States v. Becker*, No. 1:22-cr-231 (LTS), Transcript of Proceedings, Apr. 21, 2022, at 34; *United States v. Tomita*, No. 1:22-cr-231 (LTS), Transcript of Proceedings, Apr. 22, 2022, at 39-41.

Nor could the government rely on Rule 801(d)(2)(D) to introduce Mr. Becker's statements. The government has not made the factual showing necessary under that Rule. It would also be wrong to suggest that every statement of a defendant's subordinate is his or her "agent" for the purposes of the hearsay rule. As the Tenth Circuit explained in *United States v. Young*, such a construction would "expand" Rule 801(d)(2)(D) and "create a loophole . . . through which evidence not contemplated by the authors of Rule 801 could be admitted." 736 F.2d 565, 567 (10th Cir. 1983) (cited with approval by the Second Circuit in *Zaken*, 964 F.2d at 1322–23), *rev'd on other grounds,* 470 U.S. 1 (1985).

4863-4880-0436.1

In short, the admissibility of alleged co-conspirator statements cannot properly be addressed at this stage. These determinations should be made on the basis of a more complete record, and with reference to the specific statements that the government intends to introduce.

### III.
### MR. HWANG'S PROFFER STATEMENTS SHOULD NOT BE INTRODUCED, BUT IF THEY ARE, THEN SEVERANCE IS REQUIRED
### *(GOVERNMENT REQUEST IV)*

The government's final request seeks permission to introduce Mr. Hwang's proffer statements from two interviews with the government in 2022. Gov't Mtn. at 53. The merits of that request are addressed by Mr. Hwang in his opposition brief, and Mr. Halligan adopts those arguments. Mr. Hwang's proffer statements should not be introduced at all, in any circumstance.

Mr. Halligan writes here only to address the unfair prejudice and infringement on his Sixth Amendment rights that he would suffer if these statements were introduced at trial. As discussed below, if these statements are introduced – and they should not be – then severance is required.

### A.      The Prejudicial Impact of the Admission of a Co-Defendant's Testimonial Statements Is Well Established

"If all the evidence in a joint trial of defendants [i]s admitted against each codefendant, no . . . prejudice could result from the joint trial." *United States v. Lane*, 883 F.2d 1484, 1498 (10th Cir. 1989). On the other hand, where "some evidence is admitted against some codefendants that is not admissible against others," that "may create a danger that evidence introduced only against some codefendants will be impermissibly considered against others." *Id.* Indeed, the Supreme Court specifically warned in *Zafiro v. United States*, that a "serious risk" that the jury will be unable to "mak[e] a reliable judgment" can occur "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant

were tried alone is admitted against a codefendant" – and, in particular, when the jury hears

"[e]vidence that is probative of a defendant's guilt but technically admissible only against a

codefendant." 506 U.S. 534, 539 (1993).

   A co-defendant's testimonial statements may be the most unfairly prejudicial

evidence in a joint trial, including because such statements implicate the defendant's Sixth

Amendment rights. In *Bruton v. United States*, the Supreme Court recognized that introduction at

a joint trial of "the powerfully incriminating extrajudicial statements of a codefendant, who

stands accused side-by-side with the defendant" creates an untenable "risk that the jury will not,

or cannot, follow instructions" to limit its consideration of the evidence only against the

declarant. 391 U.S. 123, 135–36 (1968). *Id*. "Where the Government seeks to offer a testimonial

statement from a defendant who will not testify at trial, and that statement specifically inculpates

a co-defendant, courts 'cannot accept limiting instructions as an adequate substitute for [the co-

defendant's] constitutional right to cross-examination." *United States v. Van Hise*, No. 1:12-cr-

00847, 2013 WL 6877319, at *9 (S.D.N.Y. Dec. 31, 2013) (citing *Bruton*, 391 U.S. at 135-37).

   Applying *Zafiro* and *Bruton*, numerous courts have found that the introduction of

a co-defendant's testimonial statements requires severance when the statements are inculpatory

to the defendant and severely compromise his own defense. For example, in *United States v.*

*Baker*, the Eighth Circuit held that Baker, charged with aiding and abetting co-defendant

Wheeler's illegal possession of ricin, should have been granted a separate trial. 98 F.3d 330, 335

(8th Cir. 1996). The court explained that the joint trial unfairly allowed the prosecution to

present, and the jury to hear, evidence that was at once "probative of Baker's guilt" but

"admissible only against Wheeler." *Id.* As to Baker, the evidence at issue, *including Wheeler's*

*statement to the FBI*, was inadmissible hearsay. *Id.* The court held that the situation posed "a

serious risk that the joint trial prevented the jury from making a reliable judgment about guilt or innocence." *Id.* (citing *Zafiro*, 506 U.S. at 539). And it further held that "the risk of substantial prejudice . . . was too high to be cured by less drastic measures, such as the limiting instructions given by the district court." *Id. See also United States v. McLaughlin,* No. 3:12-cr-00179, 2013 WL 996266, at *1, 8-10 (M.D. Pa. Mar. 13, 2013) (severance required in two defendant murder-for-hire case, where co-defendant's proffer statement was admitted and could not be redacted in a manner that would eliminate statements that were inculpatory to other defendant).

**B.     If Mr. Hwang's Proffer Statements Are Admitted, Severance Is Required**

When addressing the concerns raised by the introduction of testimonial statements by co-defendants, "courts generally have three options: (1) careful redaction of the out-of-court statement such that all references to the co-defendant are eliminated; (2) severance; or (3) exclusion of the statement at the joint trial." *Van Hise,* 2013 WL 6877319, at *9 (citing *United States v. Jass,* 569 F.3d 47, 56 n. 5 (2d Cir. 2009)). Here, exclusion of Mr. Hwang's proffers would fully resolve these concerns. However, a lesser remedy would not.

The prejudice to Mr. Halligan from the introduction of his co-defendant's proffer statements is self-evident: the very reason that the government would seek to use these statements is because it believes that the statements advance this prosecution. And because Mr. Hwang and Mr. Halligan are alleged to have been participants in a common conspiracy, evidence that the jury considers inculpatory to Mr. Hwang will inherently and severely prejudice Mr. Halligan's own defenses. This is particularly so given that the central pillar of the charged conspiracy involves investment activities that the government alleges were undertaken by Mr. Hwang, and not Mr. Halligan. *See, e.g.*, Ind. ¶¶ 2, 70. The two proffers, which were extensive, focus in large part on matters relating to those investment activities, including investing strategy, trading, and the financial markets, all central issues to the charged racketeering conspiracy. If the

jury is allowed to hear testimonial evidence from Mr. Hwang's proffers that the government

contends supports an inference that those investment activities were unlawful, there would be no

way – even with a limiting instruction – that it could not find the evidence inculpatory to Mr.

Halligan as well. *Cf. United States v. Riggi*, 541 F.3d 94, 104-05 (2d Cir. 2008) (introduction of

co-conspirators' plea allocutions was so prejudicial to defendants that limiting instruction was

not sufficient). Moreover, if the statements are introduced and Mr. Hwang does not testify at

trial, then Mr. Halligan would have no opportunity to examine Mr. Hwang regarding those

statements.

    Accordingly, if Mr. Hwang's proffer statements are admitted at trial, severance is

required.

<u>**CONCLUSION**</u>

    For the foregoing reasons and the reasons set forth in Mr. Hwang's brief, Mr.

Halligan respectfully requests that the Court deny the government's motions *in limine*.

Dated: New York, New York
   April 4, 2024

          Respectfully Submitted,

          FRIEDMAN KAPLAN SEILER
           ADELMAN & ROBBINS LLP


          s/ Mary E. Mulligan
          Mary E. Mulligan (mmulligan@fklaw.com)
          Timothy M. Haggerty (thaggerty@fklaw.com)
          Bonnie M. Baker (bbaker@fklaw.com)
          Anil K. Vassanji (avassanji@fklaw.com)
          Rupita Chakraborty (rchakraborty@fklaw.com)
          7 Times Square
          New York, New York  10036-6516
          (212) 833-1100

          *Attorneys for Patrick Halligan*