UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                       :

UNITED STATES OF AMERICA,           :
                                         :

    - v -                           :

                                         :     No. 22-cr-240 (AKH)

SUNG KOOK (BILL) HWANG and PATRICK  :
HALLIGAN                          :
            Defendants.           :
                                         :
-----------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PATRICK HALLIGAN'S MOTIONS *IN LIMINE* AND MOTION TO EXCLUDE

FRIEDMAN KAPLAN SEILER
 ADELMAN & ROBBINS LLP

7 Times Square
New York, NY 10036-6516
(212) 833-1100

*Attorneys for Patrick Halligan*

April 9, 2024

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

I.     MR. HALLIGAN'S MOTIONS IN *LIMINE* SHOULD BE GRANTED ..........................1

    1.    The Government Should Be Precluded From Offering Evidence Of Misrepresentations That Pre-Date The Charged Conspiracy...................................1

    2.    The Court Should Preclude The Government From Offering Testimony From Counterparty Witnesses That Misrepresentations Made By Archegos Were "Material"...............................................................................................5

    3.    The Government Should Be Precluded From Offering Improper Speculative And Conclusory Evidence Of Mr. Halligan's State Of Mind .............7

    4.    The Government Should Be Precluded From Introducing Evidence Of Misstatements That It Omitted From Notices To The Defense ..............................8

    5.    The Court Should Preclude The Government From Asserting Without Any Good Faith Basis In Admissible Evidence That Mr. Halligan Signed MUFG Trade Confirmations With Knowledge They Contained A False Statement.....................................................................................................9

    6.    The Government Should Be Precluded From Offering Evidence Or Argument About The Timing Of Mr. Halligan's Delivery To Counterparties Of Accurate Monthly Financial Disclosures ...............................11

    7.    The Government Should Be Precluded From Introducing Evidence And Making Arguments Regarding Tax-Related "Wash Sale" Or "Wash Trade" Transactions ...................................................................................12

    8.    The Court Should Preclude The Government From Offering Incorrect Evidence And Argument About Archegos's Purported Filing And Disclosure Obligations...........................................................................13

    9.    The Government Should Be Precluded From Introducing Any Evidence Of Discussions On Or After March 26 Concerning A Possible Bankruptcy Filing Or Wind-Down By Archegos......................................13

    10.    The Government Should Be Precluded From Introducing Any Evidence Of Decade-Old Misconduct At Tiger Asia .............................................15

II.     MR. HALLIGAN'S *DAUBERT* MOTION SHOULD BE GRANTED ...........................21

CONCLUSION.....................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bruton v. United States*,
   391 U.S. 123 (1968)..................................................................................................16

*Buie v. Phillips*,
   298 F. App'x 63 (2d Cir. 2008) ................................................................................5

*Crawford v. Washington*,
   541 U.S. 36 (2004)....................................................................................................16

*Ganino v. Citizens Utilities Co.*,
   228 F.3d 154 (2d Cir. 2000)......................................................................................14

*Holmes v. South Carolina*,
   547 U.S. 319 (2006)..................................................................................................20

*Jean-Laurent v. Hennessy*,
   840 F. Supp. 2d 529 (E.D.N.Y. 2011) .......................................................................9

*Tennessee v. St.*,
   471 U.S. 409 (1985)..................................................................................................16

*United States v. Anderson*,
   747 F.3d 51 (2d Cir. 2014)........................................................................................7

*United States v. Awadallah*,
   436 F.3d 125 (2d Cir. 2006)......................................................................................6

*United States v. Bellomo*,
   954 F. Supp. 630 (S.D.N.Y. 1997) ...........................................................................21

*United States v. Bortnovsky*,
   820 F.2d 572 (2d Cir. 1987)......................................................................................8

*United States v. Bradley*,
   No. 3:21-CR-00087 (VAB), 2022 WL 1708400 (D. Conn. May 27, 2022)............6

*United States v. Carboni*,
   204 F.3d 39 (2d Cir. 2000).................................................................................2, 5, 11

*United States v. Davis*,
   690 F.3d. 127 (2d Cir. 2012)..................................................................................7, 8

ii

**Page(s)**

*United States v. DiCicco,*
435 F.2d 478 (2d Cir. 1970)........................................................................18

*United States v. Discala,*
No. 22-675, 2023 WL 4118637 (2d Cir. June 22, 2023) ..............................7

*United States v. Figueroa,*
618 F.2d 934 (2d Cir. 1980)........................................................................21

*United States v. Gonzalez,*
110 F.3d 936 (2d Cir. 1997)........................................................................18

*United States v. Jones,*
16 F.3d 487 (2d Cir. 1994)..........................................................................16

*United States v. Martoma,*
No. 12 Cr. 973 (PGG), 2014 WL 31191 (S.D.N.Y. Jan. 6, 2014)..................3, 4, 12

*United States v. Miller,*
116 F.3d 641 (2d Cir. 1997)........................................................................11

*United States v. Offill,*
666 F.3d 168 (4th Cir. 2011) ........................................................................6

*United States v. Quinones,*
417 F. App'x 65 (2d Cir. 2011) .....................................................................9

*United States v. Schatzle,*
901 F.2d 252 (2d Cir. 1990)........................................................................17

*United States v. Stein,*
521 F. Supp. 2d 266 (S.D.N.Y. 2007).........................................................3, 4

*United States v. Stewart,*
433 F.3d 273 (2d Cir. 2006)........................................................................16

*United States v. Thai,*
29 F.3d 785 (2d Cir. 1994)........................................................................11, 12

*United States v. Townsend,*
No. S1 06 CR 34 (JFK), 2007 WL 1288597 (S.D.N.Y. May 1, 2007)..............3, 4

*United States v. Turkish,*
458 F. Supp. 874 (S.D.N.Y. 1978) ................................................................2

*United States v. Zhong,*
26 F.4th 536 (2d Cir. 2022) ..........................................................................3

4893-5879-7493.1

**Page(s)**

**Rules**

Fed. R. Evid. 103(d) ................................................................................................9

Fed. R. Evid. 403 ...................................................................................1, 5, 12, 14

Fed. R. Evid. 404(b) ....................................................................................... *passim*

**Other Authorities**

U.S. Const. Amend. VI ..................................................................................16, 17, 20

4893-5879-7493.1

Patrick Halligan, by his undersigned attorneys, respectfully submits this reply memorandum of law in further support of his motions *in limine* and his motion to exclude certain cumulative testimony from the government's proposed expert witnesses.[1]

## I.   MR. HALLIGAN'S MOTIONS IN *LIMINE* SHOULD BE GRANTED

### 1.
### THE GOVERNMENT SHOULD BE PRECLUDED FROM OFFERING EVIDENCE OF MISREPRESENTATIONS THAT PRE-DATE THE CHARGED CONSPIRACY

The government should be precluded from offering evidence of false or misleading statements that Mr. Halligan is alleged to have made before the charged conspiracy on three separate and independent grounds: first, the government has failed to provide the defense with proper notice of these statements; second, even if notice had been provided, these alleged pre-conspiracy misstatements do not constitute direct evidence of the charged offenses; and third; these alleged misstatements are inadmissible under Rules 404(b) and 403 because they are not offered for any non-propensity purpose and are far more prejudicial than probative. Halligan Br. at 11-23. Moreover, if these statements are not precluded on these grounds, many of them will nonetheless require exclusion on other evidentiary grounds, including hearsay.

*Notice.* The government's opposition trivializes Mr. Halligan's right to fair and sufficient notice. Mr. Halligan's complaint is not merely that the government "has not supplied [him] with *the precise wording* he used to mislead banks in the period prior to the charged conspiracy." Gov't Opp. at 75 (emphasis added). More fundamental than the "precise wording," the government has not provided *any* of the information encompassed by the Court direction –

---

[1]  The government's opposition brief, ECF No. 173, is referred to as the "Gov't Opp." Other capitalized terms are used as defined in Mr. Halligan's opening brief ("Halligan Br."). Exhibits to the Mulligan Declaration, ECF No. 168, are referred to by their ECF pagination.

almost two years ago – to identify "each and all the alleged misrepresentations, *by persons who made it, by their nature, persons who received it, date, time, place.*" ECF No. 29 at 16-17 (emphasis added). As Mr. Halligan explained in his opening brief, and the government does not dispute, neither the indictment nor the prosecution's August 18, 2022 letter (ECF No. 38) refers to a single false statement made to a counterparty before the charged conspiracy. Nor does the more recent 404(b) notice particularize when, to whom, or on what particular subjects the alleged pre-conspiracy misstatements were made. Mulligan Decl. Ex. A, ECF No. 168-1 at 6-7. Thus, this is not a dispute about, as the government claims, "exacting detail about the Government's trial evidence," Gov't Opp. at 77, but rather about Mr. Halligan's fundamental right to understand the conduct charged against him.

The government next argues that Mr. Halligan is not prejudiced because he has received the government's 3500 material and trial exhibit list, and he has been able to make motions *in limine* on the basis of those materials. *Id*. at 76-77. This turns the obligation to provide notice on its head. The government's failure to provide meaningful, specific notice is neither measured nor cured by defense counsel's diligence. *United States v. Turkish,* 458 F. Supp. 874, 882 (S.D.N.Y. 1978) (recognizing that notice requirement is not met by "burying the defendant in paper").

*Direct Evidence.* The government fails to demonstrate any proper basis for the admission of pre-conspiracy period misstatements as direct evidence. The parties agree on the legal standard: uncharged conduct is admissible as direct evidence only if it "(1) arose out of the same transaction or series of transactions as the charged offense, (2) if it is inextricably intertwined with the evidence regarding the charged offense, or (3) if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (cleaned up) (cited in

Gov't Opp. at 48). The government has not shown how statements made before 2020 meet any

prong of this test:

> (1) Plainly, statements made to counterparties before the charged conspiracy began do not arise out of the same transactions as the charged conduct. The government does not appear to argue otherwise. *See* Gov't Opp. at 78.

> (2) The government argues that proof of pre-conspiracy misstatements "touches" elements of the charged offenses, *id.*, but "touch[ing]" an element of a charged offense is a far cry from the "inextricable intertwining" that the law requires.

> (3) Statements made before 2020 are not necessary to "complete the story" of the charged offenses, as evidenced by the fact the government chose not to identify, in either the indictment or its August 18, 2022 letter (ECF No. 38), a single specific false statement made to a counterparty before 2020.

Equally flawed is the government's contention that pre-2020 evidence will support

its showing of a "criminal agreement between Halligan and Becker, the objectives of the criminal

conspiracies, and the conspirators' pattern of recurring misconduct in service of the Archegos

Enterprise." Gov't Opp. at 78. The flaw is basic: the conspiracy as alleged did not begin until

2020. Ind. ¶¶ 1, 68. For the government to now argue that the conspiracy began earlier would be a

new allegation and an improper amendment of the indictment.

Tellingly, the government offers no response to authorities that Mr. Halligan relied

upon in his opening brief, including *United States v. Townsend,* No. S1 06 CR 34 (JFK), 2007 WL

1288597, at *2 (S.D.N.Y. May 1, 2007), *aff'd sub nom. United States v. Mercado*, 573 F.3d 138

(2d Cir. 2009); *United States v. Zhong*, 26 F.4th 536, 552 (2d Cir. 2022) ("If necessary, the

government may introduce evidence of uncharged criminal conduct to complete the story of the

crime on trial, *not to tell a new one*.") (cleaned up, emphasis added); *United States v. Martoma,*

No. 12 Cr. 973 (PGG), 2014 WL 31191, at *3 (S.D.N.Y. Jan. 6, 2014) (uncharged conduct

inadmissible as direct evidence where indictment "tells a compelling, complete, and detailed story

with almost no mention" of uncharged acts); and *United States v. Stein*, 521 F. Supp. 2d 266, 271

(S.D.N.Y. 2007) (details of uncharged transaction must be *necessary to understand* the charged

transaction to meet "inextricably intertwined" standard). The decision in *Townsend* is instructive.

There, the court rejected some of the same arguments that the government advances here, finding that

even though uncharged transactions "were relevant to the background of the charged conspiracy,"

would "help to depict the relationship" between the defendant and his co-conspirator, and

"demonstrate the trust that developed between them," this still did not rise to the high standard of

being inextricably intertwined, nor was this evidence "crucial information without which the jury

will be confused or the government's theory of the case unfairly curtailed." 2007 WL 1288597,

at *2.[2]

   While the government does discuss GX-2302, the 2018 memorandum produced by

Wells Fargo, this discussion only highlights the confusion and unfair prejudice that pre-conspiracy

period evidence will cause. *See* Gov't Opp. at 77. The government describes the memo as having

been "prepared after Wells Fargo representatives met with Halligan and others," which is accurate

but incomplete. In fact, the memo indicates that Wells Fargo representatives held three separate

meetings with various combinations of Archegos personnel, with Mr. Halligan listed as an attendee

at only one of those three meetings. Mulligan Decl. Ex. D, ECF No. 168-6 at 2-3. Neither of the

statements that the government quotes in its opposition brief is attributed to Mr. Halligan, nor does

the memo indicate that either statement comes from the one meeting that he is reported to have

attended. *See* Gov't Opp. at 77. And one of the statements ("Archegos has made substantial

improvements to its compliance procedures and personnel") appears to be Wells Fargo's subjective

assessment, not a specific, factual statement purportedly made by Mr. Halligan or anyone else from

---

[2]  The government lists *Townsend* and *Martoma* in its table of authorities, but does not appear to
discuss those authorities on the referenced pages or, as far as counsel can discern, anywhere else in
the opposition. *See* Gov't Opp. at vi, vii.

Archegos. Thus, this document simply does not, as the government claims, "reflect[] Halligan and Becker misinforming banks." Gov't Opp. at 78. Moreover, the government offers no explanation of why conduct directed at Wells Fargo – which the government does *not* dispute received *zero* alleged misstatements during the charged period – meets any of the three *Carboni* prongs.

*Rule 404(b) and Rule 403*. The government makes no specific argument as to why pre-2020 misstatements may be admissible under Rule 404(b), nor does it raise any defense against Mr. Halligan's showing that Rule 403 requires their exclusion. In this regard, it is beyond reasonable dispute that the admission of statements from before 2020 would further complicate and lengthen the trial, by requiring the collateral litigation and presentation of evidence and argument on issues including, for example, the context in which those statements were made, their truth or falsity, and their materiality.[3]

For these reasons, as well as those in Mr. Halligan's opening brief, evidence of allegedly false statements made before the alleged conspiracy period should be excluded. Admission of these statements would prevent Mr. Halligan from having a fair trial.

**2.**
**THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM OFFERING TESTIMONY FROM COUNTERPARTY WITNESSES THAT MISREPRESENTATIONS MADE BY ARCHEGOS WERE "MATERIAL"**

In a prosecution for the alleged making of "material" misrepresentations, "material" is not, as the government argues, just "any word in the English language." *See* Gov't Opp. at 30. It

---

[3]  The government also ignores the substantial evidentiary issues that will arise at trial if it is allowed to seek admission of pre-2020 statements. Here again, the Wells Fargo credit memo only proves the point. Among other things, the memo includes hearsay within hearsay; the authorship of each statement in the twelve-page memo is unclear; the source of each statement in the memo is unclear; and without the necessary indicia of reliability, the admission of this nearly six-year-old memo would severely prejudice Mr. Halligan. *See Buie v. Phillips*, 298 F. App'x 63, 66 (2d Cir. 2008) ("No clearly established federal rule guaranteed petitioner an unfettered right to introduction of hearsay testimony bearing no assurance of reliability").

is a legal term of art, an essential element of the crimes charged against Mr. Halligan, and the Court will instruct the jury on its meaning. The determination of materiality is a question left squarely for the jury to decide.[4] The government's only response to all of this is to proffer that it won't ask witnesses "to express an opinion on the ultimate issue of materiality," *id.*, which seems to acknowledge the problem but comes up short as a solution.

Mr. Halligan's requested relief is simple and appropriate: the government should be instructed that it may not elicit testimony from any witness that information was material, and if any witness offers such testimony, it should be immediately stricken.

The government's quarrel on this score is peculiar, as its own motions *in limine* wrongly characterize broad swaths of evidence about bank due diligence practices as bearing on reliance (which is not an element of the charged offenses) rather than materiality (which is). *See* ECF No. at 164, at 17. As Mr. Halligan has explained, the government is wrong. *See* ECF No. 172, at 7-13. But here, when it comes to its own affirmative evidence, the government makes the same error, now in reverse: it seeks to introduce evidence of subjective reliance under the guise of, literally, "materiality." In other words, eliciting testimony from any individual bank employee about whether particular information was "material" to his or her decision-making appears to be an attempt to prove objective materiality through an individual witness's subjective reliance.

The government does not engage with authorities relied upon by Mr. Halligan, including *United States v. Awadallah*, 436 F.3d 125, 133-34 (2d Cir. 2006) and *United States v. Bradley*, No. 3:21-CR-00087, at *3-4 (VAB), 2022 WL 1708400 (D. Conn. May 27, 2022) (cited in Halligan Br. at 25-26). And its own authorities involve situations in which the defendant had not objected at trial, *United States v. Offill*, 666 F.3d 168, 178 (4th Cir. 2011), and where any error in

---

[4]  *See* Gov't Requests to Charge (ECF No. 127) at 12-13.

the introduction of lay opinion testimony did not prejudice the defendant because, among other things, "the challenged testimony was not central to the government's case at trial, and the wealth of other evidence in the record rendered the challenged testimony either unimportant or cumulative." *United States v. Discala*, No. 22-675, 2023 WL 4118637, at *4 (2d Cir. June 22, 2023). Such disputes can be avoided here by excluding this improper evidence before trial, so that the confusion and unfair prejudice can be prevented before it taints the trial process.

Given that the potential for confusion and unfairness to Mr. Halligan is great, and the solution is simple, the government should be precluded from eliciting any testimony that information was "material."

### 3.
### THE GOVERNMENT SHOULD BE PRECLUDED FROM OFFERING IMPROPER SPECULATIVE AND CONCLUSORY EVIDENCE OF MR. HALLIGAN'S STATE OF MIND

Mr. Halligan's *title* as the CFO of Archegos tells the jury absolutely nothing about his state of mind, or whether he knew one thing or another. The government mischaracterizes this motion as seeking "to hide from the jury [Mr. Halligan's] job title," but Mr. Halligan seeks nothing of the sort. *See* Gov't Opp. at 15. This motion seeks only narrow relief: the government should not be allowed to argue that Mr. Halligan had the requisite state of mind, or would have known one thing or another, merely because his title was CFO of Archegos.

The government focuses on the principle that a defendant's role in an alleged conspiracy may be inferred from all the circumstances, but as the cases that the government cites illustrate, determining "the circumstances" requires consideration of highly specific facts, not mere labels. *See United States v. Anderson*, 747 F.3d 51, 68 (2d Cir. 2014) (noting "heavily fact-specific" inquiry into factors sufficient to support knowledge inference) (cited in Gov. Opp. at 24); *see also United States v. Davis,* 690 F.3d. 127, 132 (2d Cir. 2012) (in drug conspiracy, inference of

defendant's knowledge supported by "overall circumstances," including defendant's control of circumstances around pickup of crates of illegal drugs, his recruitment of individuals to make the pickup, and his instructions to them on how to execute the pickup) (cited in Gov. Opp. at 24).

The government should be required to meet its burden of proof through the introduction of evidentiary facts about what Mr. Halligan did, not through his title alone.

**4.**
### THE GOVERNMENT SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF MISSTATEMENTS THAT IT OMITTED FROM NOTICES TO THE DEFENSE

Mr. Halligan does not seek, as the government claims, a "roadmap" of the prosecution's case or "flow chart" of its strategy. Gov't Opp. at 34. Rather, Mr. Halligan asks only to preclude the government from introducing at trial alleged misrepresentations that it has not disclosed in the indictment, or in the government's August 18, 2022 letter (ECF No. 38), or in its 404(b) notice. In a case as sprawling and complicated as the government appears intent to present, Mr. Halligan would be irredeemably prejudiced by the introduction of new allegations leveled for the first time at trial.

The government relies on the Court's decision denying defendants' motion for a bill of particulars, finding that the indictment and the August 18, 2022 letter were sufficient to permit Mr. Halligan to appropriately "prepare for trial" and "prevent surprise." ECF No. 66 at 3, ¶ 4 (quoting *United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir. 1987)). Mr. Halligan has, of course, prepared for trial as to the allegations that the government has *actually disclosed*. Consistent with this history, allowing the government to introduce new allegations at this late stage would undermine the very premise of the Court's prior decision, i.e., that Mr. Halligan has had a full and fair opportunity to prepare for trial and avoid surprise as to the particular allegations against him.

Mr. Halligan raised by way of example, and the government has addressed, glancing references in the 3500 material to "reports that falsely understated Archegos's gross exposure and were provided to Archegos counterparties." *See* Gov't Opp. at 31. But the cryptic statements of a cooperating witness are not proper notice. The government has provided no indication of who allegedly received the alleged report; what it looked like; when, how, or where it was created; or when, how, or where it was used. Nor does the government represent that it has identified the report that its cooperating witness purports to describe, or that it has listed the report on its exhibit list (now at over 3,200 documents).

The government has had two years since the indictment to provide proper notice of its allegations. With one month until trial begins, it is simply too late, and too prejudicial to the defense, for the prosecution to spring new allegations now.

**5.**

**THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM ASSERTING WITHOUT ANY GOOD FAITH BASIS IN ADMISSIBLE EVIDENCE THAT MR. HALLIGAN SIGNED MUFG TRADE CONFIRMATIONS WITH KNOWLEDGE THEY CONTAINED A FALSE STATEMENT**

The opposition barely contests that a paucity of admissible evidence supports the allegation that Mr. Halligan electronically signed MUFG trade confirmations knowing that they contained a false representation regarding Archegos's portfolio. Instead, it argues that because the threshold for the admission of evidence regarding this matter is "low," and there is (in the government's view) more than a "scintilla" of it, these allegations should go to the jury. Gov't Opp. at 35. The government is wrong; Mr. Halligan will be unfairly prejudiced if the government is allowed to waste the jury's time and attention, and invite their speculation, regarding a matter with no legitimate basis in admissible evidence. *See* Fed. R. Evid. 103(d) (inadmissible evidence should not be suggested to the jury); *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 548-49 (E.D.N.Y. 2011); *United States v. Quinones*, 417 F. App'x 65, 67 (2d Cir. 2011).

The opposition fails to address the essential issue: two of the witnesses on the government's exhibit list, Scott Becker and Jesse Martz, told the government that they were responsible for reviewing and forwarding those trade confirmations to Mr. Halligan for his e-signature, and that they were unaware that these confirmations contained any false statements. *See* Halligan Br. at 32-34. This is not simply, as the government characterizes it, that "no witness *told* the Government that Halligan knew the trade confirmations were false." Gov't Opp. at 35 (emphasis original). It's far worse: the government's witnesses admitted that they weren't aware of the false statements themselves, even though their job was to review these documents.[5] Nor does the government dispute that the MUFG confirmations were outliers, or that MUFG was the only one of Archegos's counterparties whose trade confirmations contained a boilerplate representation that counted *both* shares and derivatives. *See* Halligan Br. at 32.[6]

The government's claim that Mr. Halligan's signature on the MUFG trade confirmations is evidence of his knowledge of their falsity, Gov't Opp. at 35, is an impermissible attempt to invite the jury to make a speculative finding of Mr. Halligan's state of mind. To avoid wasting the jury's time with matters devoid of admissible evidence, and to avoid the prejudice that Mr. Halligan would suffer if these matters are introduced, the Court should preclude the government from introducing evidence and argument regarding the MUFG trade confirmations and their purported falsity.

---

[5]  The government claims in a footnote that the statement by Mr. Martz is not *Brady*, but offers no explanation of how or why this is so. Gov't Opp. at 35, n.9.

[6]  The potential for jury confusion on this point is highlighted by a misstatement in the government's brief. The government states that "Archegos *beneficially owned* far in excess of 5% of the outstanding shares in several securities." Gov't Opp. at 34 (emphasis added). But that is wrong: Archegos's beneficial ownership was less than 5% and only when combined with notional shares underlying its swap holdings (i.e., its derivative positions), did its total notional holdings exceed 5% of the outstanding float of certain issuers. *See* Ind. ¶ 14.

**6.**

**THE GOVERNMENT SHOULD BE PRECLUDED
FROM OFFERING EVIDENCE OR ARGUMENT ABOUT
THE TIMING OF MR. HALLIGAN'S DELIVERY TO COUNTERPARTIES
OF ACCURATE MONTHLY FINANCIAL DISCLOSURES**

Neither the indictment nor the government's opposition allege that the monthly

performance or annual financial data that Archegos provided to its counterparties was false or

misleading in any way. Nor could it, as its cooperating witness Mr. Becker has admitted he "was

not aware of any instances in which anyone at [Archegos] lied to the firm's auditors." Reply

Declaration of Mary E. Mulligan, Ex. A at 8. The government nonetheless insists that insofar as

this information was delayed in its delivery to Archegos's counterparties, this was "deceptive

conduct." Gov't Opp. at 37. It does not offer a single authority for its re-characterization of

accurate, if delayed, information as somehow "deceptive."

The government fares no better with its argument that a delay in providing accurate

monthly financial data to the counterparties is admissible as uncharged conduct. It is not direct

evidence of the crimes charged because it fails to satisfy any of the three *Carboni* prongs. 204 F.3d

at 44. *See* Halligan Br. at 38-39. The government argues that it "proves the existence of the

Archegos Enterprise as well as the agreement among enterprise members to specifically mislead

counterparties," but it does neither. *See* Gov't Opp. at 39. The charged RICO enterprise and

conspiracy revolve around completely different alleged false and deceptive misrepresentations,

whereas the financial information at issue was neither false nor deceptive and thus it could not, as

the government claims, "mislead counterparties." *Cf. United States v. Miller*, 116 F.3d 641, 682 (2d

Cir. 1997) (affirming admissibility of uncharged murders as "proof of the existence of the RICO

enterprise alleged in the indictment which used such acts of violence in furtherance of its narcotics

conspiracy") (cited in Gov't Opp. at 38); *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994)

(evidence of uncharged acts of robbery, beating, and extortion admissible as direct evidence of

11

existence of RICO conspiracy where indictment charged, *inter alia*, conspiracies to commit murder in aid of racketeering, assault with a dangerous weapon, and obstruction of commerce by robbery or extortion) (cited in Gov't Opp. at 38).

The government is also wrong that the delayed provision of accurate financial data is admissible under Rule 404(b) to prove Mr. Halligan's knowledge or intent. *See* Gov't Opp. at 39. As demonstrated by the authorities in Mr. Halligan's moving brief – which the opposition ignores – "other act" evidence offered to show knowledge or intent must be "sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the knowledge and intent inferences advocated by the proponent of the evidence." *United States v. Martoma,* No. 12 CR 973 PGG, 2014 WL 31191, at *4 (S.D.N.Y. Jan. 6, 2014) (cleaned up); *see also* Halligan Br. at 39-40 (citing cases). The manifest *dissimilarity* between the delay in providing accurate monthly financial information and the charged misconduct of making false statements to counterparties forecloses admission under Rule 404(b) for these purposes.

Finally, as set forth in Mr. Halligan's opening brief, Halligan Br. at 41, Rule 403 requires the exclusion of this evidence. It is not probative of any material fact in issue and is likely to confuse jurors, who may impermissibly infer that if the timing of the delivery of accurate information is an appropriate subject of evidence, then it must have some bearing on Mr. Halligan's propensity to make false statements to Archegos's counterparties, or that Mr. Halligan had a propensity to deceive counterparties.

## 7.
## THE GOVERNMENT SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE AND MAKING ARGUMENTS REGARDING TAX-RELATED "WASH SALE" OR "WASH TRADE" TRANSACTIONS

The government does not dispute, nor could it, that the term "wash sale" is a term of art with two distinct meanings: in one usage, it refers to type of manipulative trading and in the

other usage, it refers to lawful trades with particular tax treatment. The government acknowledges that neither type of transaction is at issue in this case, and in the few examples it discusses, it explains that references to "wash sales" are "ancillary to [its] intended proof." Gov't Opp. at 40. This concession confirms why the government should be precluded from introducing evidence referencing "wash sales," and all references to "wash sales" or "wash trades" should be redacted in any government exhibits. And in any event, as the government consents, Gov't Opp. at 41, if the term "wash sale" or "wash trade" is used in testimony, or documentary evidence, the jury should be instructed that any reference to these terms is a reference to lawful transactions subject to particular tax treatment and is not a reference to unlawful or manipulative conduct.

## 8.
### THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM OFFERING INCORRECT EVIDENCE AND ARGUMENT ABOUT ARCHEGOS'S PURPORTED FILING AND DISCLOSURE OBLIGATIONS

The government appears to concede that it does not intend to offer evidence or argument that misstates Archegos's filing and disclosure obligations, or its compliance with those obligations. Gov't Opp. at 44-45. If this is, in fact, the government's position, this motion is moot.[7]

## 9.
### THE GOVERNMENT SHOULD BE PRECLUDED FROM INTRODUCING ANY EVIDENCE OF DISCUSSIONS ON OR AFTER MARCH 26 CONCERNING A POSSIBLE BANKRUPTCY FILING OR WIND-DOWN BY ARCHEGOS

In arguing for the admissibility of bankruptcy or wind-down discussions that took place on or after March 26, days after the charged misrepresentations were made, the government seeks permission to impermissibly invite the jury to employ 20-20 hindsight and use Archegos's

---

[7] Mr. Halligan does not waive his right to object to particular testimony on this or any other ground.

collapse at the end of the week as evidence of what Mr. Halligan knew or intended earlier in the week.

The government claims that the defense seeks to hide Archegos's collapse from the jury, but this is not so. *See* Gov't Opp. at 42. Of course, the jury will learn about the events of March 22-26, 2021, including the precipitous decline in Archegos's positions, its eventual inability to meet its margin obligations, and the banks' decision to deliver notices of default. The only issue raised by this motion is that evidence of discussions on or after March 26, 2021 regarding Archegos's *bankruptcy or wind-down*, is not probative of any relevant fact, and will only confuse the issues.

Simply put, bankruptcy or wind-down discussions that took place on or after March 26 are not probative of Mr. Halligan's state of mind during the preceding week, or of any other material fact. If the government seeks to establish the truth or falsity of representations made on particular dates during that week, then admissible evidence of that is what existed *at the time* those representations were made, not days afterwards. *See Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 165 (2d Cir. 2000) ("Materiality is determined in light of the circumstances *existing at the time the alleged misstatement occurred*" based on all the facts as of the time of the transaction and not on "20–20 hindsight") (cleaned up, emphasis added).

Moreover, discussion of wind-down or bankruptcy on or after March 26 should be excluded under Rule 403. It would waste the jury's time and prolong the trial by necessitating testimony on the triggers and thresholds for corporate insolvency. Evidence or argument concerning discussions about Archegos's solvency on or after March 26 will also mislead the jury into speculating that anything Mr. Halligan knew on or after March 26, he must also have known

during the preceding week. Such an inference would be extremely unfair and prejudicial to Mr. Halligan.

**10.**

**THE GOVERNMENT SHOULD BE PRECLUDED FROM INTRODUCING ANY EVIDENCE OF DECADE-OLD MISCONDUCT AT TIGER ASIA**

The government claims that it "is not seeking to introduce any evidence that Halligan committed misconduct in 2008 or 2009 or to argue to the jury that Halligan committed misconduct in 2008 or 2009." Gov't Opp. at 62. Nonetheless, it remains unabashed in its desire to unfairly smear Mr. Halligan with the alleged misconduct at Tiger Asia, arguing vividly but without any basis, that Mr. Halligan "*enabled* Bill Hwang at Tiger Asia," and that "Hwang, Halligan, Tomita, and Becker *forged their bonds* during Hwang's first round of misconduct." *Id.* at 55, 56 (emphases added). These incendiary contentions fly in the face of the indictment itself, which alleges that the charged conspiracy began in 2020 – not more than a decade earlier.

The government's tactics amount to an evidentiary hit-and-run against Mr. Halligan: by introducing scores of evidence about alleged misconduct by others, and then arguing that Mr. Halligan "continued to work with Hwang" after that misconduct, the prosecution will leave the jury with the unmistakable impression that Mr. Halligan's guilt should be inferred from his proximity to the prior conduct and his continued professional association with Mr. Hwang. *See id.* at 72. The government has not overcome Mr. Halligan's showing that introduction of the Tiger Asia will incurably impair his right to a fair trial.

*Confrontation Clause.* To begin, the government's conditional withdrawal of the Tiger Asia plea allocution and plea agreement from its exhibit list does not resolve Mr. Halligan's Confrontation Clause objection. *See* Gov't Opp. at 71 n.17. The government forecasts that it may later seek admission of documents, referring to Mr. Halligan's concerns as "premature" (despite the fact that the documents were on the government's exhibit list when Mr. Halligan filed this

15

motion). *Id.* Allowing the government to disrupt trial if it later reverses course (again) would be unfair and disorderly; because these documents cannot be admitted against Mr. Halligan without violating his Sixth Amendment rights, Mr. Halligan therefore seeks an Order now, precluding their admission.

Worse, the government maintains its intent to introduce the Statement of Agreed and Admitted Facts from the Hong Kong proceeding. *See* Gov't Opp. at 71. This statement is testimonial, and the government offers no argument to the contrary. *Id.* Instead, it argues that it may introduce this document as against Mr. Halligan for a non-hearsay purpose, i.e., to "demonstrate[] that Halligan was aware of it," while at the same time admitting it as against Mr. Hwang for all purposes. *Id.* The prosecution's gambit is as convoluted as it is transparent. Juror confusion from such an instruction would be unavoidable – indeed, the inadequacy of the hearsay limiting instruction is the animating force behind the U.S. Supreme Court's decision in *Bruton v. United States*, where the Court explained that "in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination." 391 U.S. 123, 137 (1968).[8] And juror confusion would be amplified by the next

---

[8]  *Cf. United States v. Jones*, 16 F.3d 487, 493 (2d Cir. 1994) ("The presumption that a jury will adhere to a limiting instruction evaporates where there is an overwhelming probability that the jury will be unable to follow the court's instructions and the evidence is devastating to the defense."). The decisions that the government cites do not contemplate - far less sanction - the sort of end-run around the Sixth Amendment that the government attempts here by re-casting testimonial evidence as "non-hearsay." In *Crawford v. Washington*, 541 U.S. 36, 59 (2004) (cited in Gov't Opp. at 71), the Supreme Court merely stated (in a parenthetical in a footnote), that testimonial statements used for non-hearsay purposes do not violate the Confrontation Clause. Notably, *Crawford* relies for that principle on *Tennessee v. St.*, 471 U.S. 409, 415 (1985), where the Supreme Court observed that there were "no alternatives that would have both assured the integrity of the trial's truth-seeking function and eliminated the risk of the jury's improper use of the evidence," specifically noting that *"[s]everance obviously was not an available alternative"* in the circumstances. *Id.* at 415 n.7 (emphasis added). Here, of course, severance *is* available to eliminate the jury's improper use of Tiger Asia evidence as against Mr. Halligan. Finally, in *United States v. Stewart*, 433 F.3d 273, 293 (2d Cir. 2006) (cited in Gov't Opp. at 71), the Second Circuit adopted the narrow rule,

logical question – how does Mr. Halligan's "awareness" of a decade-old regulatory action in a foreign jurisdiction make any fact of consequence more or less probable in this case? The defendants are not being prosecuted for violations of Hong Kong trading laws, so even if Mr. Halligan were an expert on those laws, that fact would be beside the point. In sum, introduction of this testimonial statement, without an opportunity for cross examination, would result in the jury drawing improper and prejudicial conclusions about Mr. Halligan and his role in the prior conduct and would violate his Sixth Amendment rights.

      *Direct Evidence.* The government offers a grab bag of theories under which it claims the Tiger Asia evidence may be admitted as direct evidence. Rather than justify the admission of this evidence as against Mr. Halligan, these theories illustrate how far the prosecution is willing to strain to get the improper Tiger Asia evidence before the jury.

- *First*, it asserts that the Tiger Asia evidence provides "necessary context" for alleged misrepresentations in 2020 and 2021 made to Archegos's counterparties regarding Archegos's compliance program. Gov't Opp. at 54. But the government has never alleged a single misrepresentation concerning Tiger Asia, and the truth or falsity of any statements about Archegos's compliance program can be assessed without any reference to Tiger Asia.[9] The government next argues that the long-ago Tiger Asia matters gave the counterparties "specific concerns about doing business with Hwang" and gave "the Archegos conspirators" a motive to misrepresent the sufficiency of the family office's compliance procedures, *id.* at 55, but even if the Tiger Asia evidence had limited probative value on this score, it would not overcome the prejudice, confusion, and expansion of the trial that introducing these matters will engender. *See United States v. Schatzle*, 901 F.2d 252, 256 (2d Cir. 1990) and cases cited in Halligan Br. at 70. On the other hand, exclusion of this

---

obviously not applicable here, that "when the object of a conspiracy is to obstruct justice, mislead law enforcement officers, or commit similar offenses by making false statements to investigating officers, truthful statements made to such officers designed to lend credence to the false statements and hence advance the conspiracy are not rendered inadmissible by the Confrontation Clause."

[9] The government's examples of alleged misstatements regarding Archegos's compliance program prove the point. *See* Gov't Opp. at 54. These statements, allegedly made in October 2020, concern Archegos's then-existing "code of conduct," "policies and procedures," "trading surveillance," "training plan," and management team. *Id.* The jury can assess the truth or falsity of these statements – and any other statement about Archegos's 2020/2021 compliance program – without any evidence about Tiger Asia.

evidence would work no prejudice to the government, because it would be unimpaired in its ability to offer evidence regarding the truth or falsity of any statements that Archegos employees made regarding the sufficiency of the compliance program.

- *Second*, the government asserts that the Tiger Asia evidence "shows the formation of the Archegos Enterprise." Gov't Opp. at 55. Surely, the government should not be allowed to bloat the trial with evidence regarding four sets of alleged criminal and regulatory violations in three jurisdictions just so that it can establish the corporate formalities around Archegos's formation. We do not anticipate that there will be any dispute at trial as to when Archegos was established, nor who was employed at Archegos over time. *See id.*

- *Third*, the government claims that "the Tiger Asia Evidence proves how illegal relationships and mutual trust developed between the racketeering conspirators" and will help the jury "understand why Halligan . . . could—and did—understand even implicit directions on how to do their work, criminal or otherwise." *Id.* at 55, 56. This argument flies in the face of the government's representation that it does not intend to introduce evidence or argument that Mr. Halligan engaged in misconduct in 2008 or 2009. *Id.* at 62. Obviously the "illegal relationship" and "implicit directions" to perform "criminal" work presuppose illegal conduct, and thus amount to a bald and improper invitation for the jury to infer Mr. Halligan's guilt *to the crimes charged here* based on his association with Tiger Asia. *United States v. DiCicco,* 435 F.2d 478, 483 (2d Cir. 1970) ("[P]rior similar acts of misconduct performed by one person cannot be used to infer guilty intent of another person who is not shown to be in any way involved in the prior misconduct, unless it be under a 'birds of a feather' theory of justice."). Moreover, these contentions are at odds with the indictment itself, which alleges that the charged conspiracy began in 2020, not 2008 or 2009.

- *Fourth*, the government makes the vague claim that the Tiger Asia evidence "is essential" to show "the circumstances surrounding the events" and "to furnish an explanation of the understanding or intent with which certain acts were performed." Gov't Opp. at 56.[10] The government describes supposed "bitterness" that the defendants felt towards some counterparties after the Tiger Asia matters, *id.*, but it has never before contended that misrepresentations to counterparties were made as some sort of retribution for decade-old grievances; rather, the government has always been explicit that the alleged purpose of the alleged misrepresentations was to obtain "trading capacity, brokerage relationships, and specific margin rates" for

---

[10]  The government cites *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997). There, the Second Circuit found no error in the trial court's admission of evidence that defendants were fleeing from an uncharged attempted burglary, where the defendants' chaotic escape from the failed burglary led them right into the confrontation with an undercover police officer that resulted in firearm charges. This is a far cry from the situation presented here, where the uncharged conduct occurred more than a decade ago.

Archegos. *See* Ind. ¶ 74(b). The government cannot invent new allegations to smuggle Tiger Asia into the trial.

- *Fifth,* the government argues that certain Tiger Asia evidence "provide[s] direct evidence of Hwang's intent and willfulness." Gov't Opp. at 57. The government does not appear to argue that this justifies the admission of this evidence as against Mr. Halligan. *Id.* at 57, 62.

In sum, the government has offered no proper basis for the admission of the Tiger Asia evidence as direct evidence against Mr. Halligan.

*404(b).* Nor has the government offered a proper purpose under Rule 404(b). The government focuses much of its discussion on Mr. Hwang's supposed intent, but does not seem to assert, nor could it, that this evidence bears on Mr. Halligan's intent.[11] The government likewise seeks to liken the trading at issue in the Tiger Asia matters to the trading at issue here, but the government states "so far as the Government is aware, [Mr. Halligan] had no trading responsibilities in 2020 or 2021." *Id.* at 59, 62.

The only argument that the government seems to make as to Mr. Halligan is that the Tiger Asia evidence is proof of his knowledge that the conduct charged in the Tiger Asia cases is improper. *Id.* at 61. This is not relevant, though, because this case is not about the conduct charged in the Tiger Asia cases; it is about an entirely different set of facts involving different statutes, regulations, and jurisdictions, among other things. Moreover, even if limited evidence were marginally relevant for this limited purpose, (i) given the provocative nature of the Tiger Asia allegations, the jury could not fairly cabin its consideration to the question of Mr. Halligan's knowledge; (ii) any marginal relevance would not overcome the extraordinary prejudice that Mr. Halligan would suffer from the introduction of this evidence; and (iii) any marginal relevance is

---

[11] Mr. Hwang addresses the many flaws in the government's arguments as to his alleged intent.

also far outweighed by the burden, complication, and confusion that the introduction of this evidence will entail.

On this last point, the government wildly understates the complexity of the Tiger Asia evidence and the extent to which permitting this evidence will prolong and complicate the trial. The government focuses much of its discussion on largely objective chronological facts, such as when the criminal and regulatory proceedings were commenced and concluded, when Tiger Asia returned investor funds, and the dates of certain corporate filings, and then makes the outrageous assertion that it will seek to prove the *underlying conduct that gave rise to the prior actions* without meaningfully prolonging the trial. See Gov't Opp. at 64-65. Whatever shortcuts the government intends in its own case, the defense has a fundamental right to present a robust response to allegations of illegal conduct – whether that conduct is alleged to have occurred in the charged period or earlier. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.") (cleaned up).

*Severance.* Finally, the government opposes severance largely on the claim that the prejudice to Mr. Halligan from the introduction of Tiger Asia evidence is not sufficiently substantial to warrant this remedy. Gov't Opp. at 72. Here again, it is wrong. For just one illustration of the prejudice to Mr. Halligan from the introduction of this evidence which would not be admissible against him in a severed trial, consider the racketeering conspiracy count. In order to find that the government has proven the charged scheme, the jury must find that there was market manipulation by Archegos. The government argues – very explicitly – that the Tiger Asia evidence (including the testimonial Hong Kong statement) supports its showing of Mr. Hwang's intent to

commit market manipulation. *Id.* at 60-61. Thus, there is not merely a *possibility* that this evidence of past misconduct, which is inadmissible as against Mr. Halligan, could support an inference of his guilt to the charged offenses, but that is exactly the inference that the government is asking the jury to draw. *See, e.g.*, Gov't Opp. at 52, 55, 66 (evidence at trial will describe Archegos as a "rebranded" Tiger Asia; "the same individuals who enabled Bill Hwang at Tiger Asia, such as Halligan, Tomita, and Becker, had been promoted to new titles at Archegos…"). This risk warrants severance. *See United States v. Figueroa*, 618 F.2d 934, 944 (2d Cir. 1980) (granting new trial for two co-defendants, where there was "no suggestion that they were involved in [the third defendant's] prior criminal activity," and "the connection the jury could make between [third co-defendant's] inadmissible prior conviction and the guilt of the co-defendants was strong.").[12]

## II.   MR. HALLIGAN'S *DAUBERT* MOTION SHOULD BE GRANTED

Mr. Halligan has moved for an order precluding the government from offering cumulative or duplicative expert testimony. In response, the government assures the Court that "[t]he testimony of the [g]overnment's experts will not be cumulative." Gov't Opp. at 90. If this is so, the government should have no difficulty abiding by a Court order prohibiting its experts from offering cumulative testimony.

The need for such an order – rather than the government's say-so that it will keep opinions non-duplicative – is highlighted by the opposition's understatement of the substantial overlap of the government's expert disclosures. As Mr. Halligan showed in his opening brief,

---

[12] The government obscures the similarity between *United States v. Bellomo,* 954 F. Supp. 630 (S.D.N.Y. 1997) (cited in Gov't Opp. at 73) and this case. While the government focuses on the defendants who were not severed, it ignores that Judge Kaplan ordered severance for the co-defendants who could be "prejudice[d] … significantly" by the admission of evidence against other defendants "which is not alleged to have been a part of [the co-defendants'] criminal activity." *Id*. at 650-651. That is precisely the reason that severance is warranted if the Tiger Asia evidence is admitted here as against Mr. Hwang.

descriptions of overlapping and redundant proffered opinions appear *verbatim* in different expert reports, and this is by no means limited, as the government claims, to "basic terms and concepts … such as what a 'swap' is" and other "background topics." Gov't Opp. at 91. In fact, "background terms and concepts" is just the first of *fifteen* topics of substantial overlap among the government's experts, as Mr. Halligan identified in Appendix A to his motion. (ECF No. 160, at App. A.)

## CONCLUSION

For the foregoing reasons and those in Mr. Halligan's opening briefs, Mr. Halligan respectfully requests that the Court grant his motions *in limine* and motion to exclude proposed expert testimony.

Dated:   New York, New York
         April 9, 2024

Respectfully Submitted,

FRIEDMAN KAPLAN SEILER
ADELMAN & ROBBINS LLP


*s/ Mary E. Mulligan*
Mary E. Mulligan (mmulligan@fklaw.com)
Timothy M. Haggerty (thaggerty@fklaw.com)
Bonnie M. Baker (bbaker@fklaw.com)
Anil K. Vassanji (avassanji@fklaw.com)
Rupita Chakraborty (rchakraborty@fklaw.com)
7 Times Square
New York, New York  10036-6516
(212) 833-1100

*Attorneys for Patrick Halligan*