



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10007*

May 19, 2024

**VIA ECF**

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> **Re:** ***United States v. Hwang and Halligan*,**
> **S1 22 Cr. 240 (AKH)**

Dear Judge Hellerstein:

The Government respectfully writes to update the Court on the progress of the case and to advise the Court of evidentiary issues expected to arise during the upcoming trial week.

The Government expects the week of May 20, 2024 will focus on the testimony of Scott Becker, one of the two cooperating witnesses the Government anticipates will testify during the trial. The Government expects Mr. Becker's direct testimony to take the entirety of Monday's trial day and the majority of Tuesday's trial day. Based on the defense's preliminary estimates of cross-examination length, the Government further expects the cross-examination of Mr. Becker will take the remainder of Tuesday, all of Wednesday, and perhaps the beginning of Thursday.

During Mr. Becker's testimony, the Government will offer, among other things, (i) email correspondence between Mr. Becker and his co-conspirators—principally with defendant Bill Hwang, defendant Patrick Halligan, and cooperating witness William Tomita; (ii) Instant Bloomberg chat messages between various co-conspirators and among various agents of the defendants, such as the Archegos operations team; and (iii) contemporaneous entries from Mr. Becker's Archegos notebooks, including portions reflecting instructions given to him by Mr. Halligan and others. As previewed by the Government in its motions *in limine*, these materials are admissible as co-conspirator statements, statements of agents of the defendants, and prior consistent statements of Mr. Becker. *See* Gov't Br. (Dkt. 164) 33-40.

As to co-conspirator statements, Federal Rule of Evidence 801(d)(2)(E) provides in relevant part that "[a] statement is not hearsay if . . . the statement is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." To admit a statement under this rule, a district court must find two facts by a preponderance of the evidence: (1) that a conspiracy that included the defendant and the declarant existed; and (2) that the statement was made during the course of, and in furtherance of, that conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999). "In determining the existence and membership of the alleged conspiracy, the court must consider the circumstances surrounding the statement, as well as the contents of the alleged coconspirator's statement itself." *United States v. Gupta*, 747 F.3d 111, 123 (2d Cir. 2014). When determining

whether the predicate conspiracy has been established, the district court is not bound by the Rules of Evidence, *see* Fed. R. Evid. 104(a), and "the district court may consider the hearsay statement itself" as evidence of "the existence of a conspiracy." *United States v. Padilla*, 203 F.3d 156, 161 (2d Cir. 2000) (citing *Bourjaily*, 483 U.S. at 181). To be in furtherance of a conspiracy, a statement "must in some way have been designed to promote or facilitate achievement of the goals of that conspiracy." *United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994). Under this standard, a co-conspirator statement is admissible if it "can reasonably be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy." *United States v. Tarantino*, 846 F.2d 1384, 1412 (D.C. Cir. 1988).

The evidence at trial will continue to show by a preponderance that the defendants conspired with a number of Archegos employees, including Becker and Tomita, both of whom pled guilty to conspiring with the defendants and others. The Court can make a preliminary ruling that statements Becker and Tomita made in furtherance of the conspiracy are admissible, subject to the introduction of further trial evidence (including the statements themselves) that is sufficient to show the existence of a conspiracy. *United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993) ("[S]tatements proffered as co-conspirator statements may be admitted in evidence on a conditional basis, subject to the later submission of the necessary evidence" establishing that a conspiracy involving the defendants existed.). Notably, the Court may consider Becker's and Tomita's sworn plea allocutions to support a finding that a conspiracy with the defendants existed. *See United States v. Saneaux*, 392 F. Supp. 2d 506, 513-14 & n.10 (S.D.N.Y. 2005) (while proffer statements and plea allocutions are generally not admissible at trial, the Court may consider them in determining that there was a conspiracy and that co-conspirator statements made in furtherance of the conspiracy may be admitted); *Bourjaily*, 483 U.S. at 178 ("Rule [104] on its face allows the trial judge to consider any evidence whatsoever, bound only by the rules of privilege.").

As to statements of the defendants' agents, Federal Rule of Evidence 801(d)(2)(D) provides that "[a] statement is not hearsay if . . . the statement is offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." To admit a statement under this rule, the Court must find "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *Feis v. United States*, 394 F. App'x 797, 799 (2d Cir. 2010) (quoting *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992)). As the Second Circuit has explained, "admissibility under this rule should be granted freely," and there is a "liberal" standard for admissibility rooted in the understanding that agents and employees are usually the people "best informed about certain acts committed in the course of [their] employment." *Pappas*, 963 F.2d at 537.

Here, an agency relationship existed between Mr. Hwang and Archegos employees, inasmuch as Mr. Hwang was their employer and directed and controlled all of Archegos's operations. (*See* Tr. 352, 434, 527-30, 536). Similarly, at a minimum, at least certain of Archegos's employees were agents of Mr. Halligan, who was the Chief Financial Officer of Archegos and directed the firm's accounting, cash management, and operations functions. (*See* Tr. 354, 527, 533-34). Out-of-court statements that the Government anticipates offering made by Archegos employees, such as text messages, reports, and other statements made within the scope of those individuals' employment at Archegos are therefore not hearsay. *See, e.g.*, *United States v. Russo*,

302 F.3d 37, 45 (2d Cir. 2002) ("the objective of the joint venture that justifies deeming the speaker as the agent of the defendant need not be criminal at all"); *In re Reserve Fund Sec. Litig.*, No. 09 Civ. 4346 (PGG), 2012 WL 12354233, at *7-8 (S.D.N.Y. Oct. 3, 2012) (statements made by an employee of an entity are admissible when offered against the person who controls the entity).

With respect to the contemporaneous entries from Mr. Becker's Archegos notebooks in particular, the Government intends to offer into evidence certain handwritten notes that Becker maintained to keep track of the conspiracy's activities. For example, the Government intends to offer notes in which Mr. Becker kept track of margin and capacity levels in certain securities and at different counterparties (GX 51-A at 124-26); notes in which Mr. Becker recorded lies from Mr. Hwang, Mr. Halligan and others that he and others were supposed to deliver to the counterparties during the final week before the collapse of Archegos (GX 51-C at 32); and other notes reflecting statements from Mr. Hwang and Mr. Halligan during the course of the conspiracy, (GX 51-C at 14, 26).

Those writings are relevant, probative, and important, and are not inadmissible hearsay because Mr. Becker took notes "to memorialize information supplied to him . . . and to provide a reference to help . . . carry out his role in the conspiracy." *United States v. SKW Metals & Alloys, Inc.*, 195 F.3d 83, 88-89 (2d Cir. 1999). Recording instructions from co-conspirators and maintaining a record of the false statistics and information he provided to counterparties for later reference were "designed to promote or facilitate achievement of the goals of [the] conspiracy." *Rivera*, 22 F.3d at 436; *see also United States v. Persing*, 436 F. App'x 13, 19 (2d Cir. 2011) (affirming the trial court's conclusion that co-conspirator's notes, which were "designed to assist him in conducting his loan-shark business . . . were taken during the course of and in furtherance of that conspiracy"). These notes were "ways to keep track of" important issues that could implicate the conspiracy's success, "thereby indicating that the documents furthered the operations and efficiency of the conspiracy." *United States v. Donovan*, 55 F. App'x 16, 22 (2d Cir. 2003); *see also United States v. McPartlin*, 595 F.2d 1321, 1351 (7th Cir. 1979) (finding that "since [diary] entries were made so that [co-conspirator] could rely on them in carrying out his scheme, they aided and were in furtherance of the conspiracy"); *United States v. Dendy*, 995 F.2d 233, 1993 WL 175264, at *1 (9th Cir. May 25, 1993) (affirming trial court's conclusion that statements made in co-conspirator's diary were intended to "keep [defendant] and/or other persons advised" of the conspiracy).

For many of the same reasons, these materials are also statements of the defendants' agents under Rule 801(d)(2)(D). As noted above, Mr. Becker was an agent and employee of both Mr. Hwang and Mr. Halligan, and the defendants not only directed the operations of Archegos but in particular directed the business activities of Mr. Becker. Moreover, as is apparent from the nature of the documents described above, these materials were created within the scope of those agency relationships and are therefore not hearsay pursuant to Rule 801(d)(2)(D). *See, e.g.*, *Pappas*, 963 F.2d at 537.[1]

---

[1]    Certain of these materials may well also be covered by the so-called business records exception to the hearsay rule embodied in Federal Rule of Evidence 803(6). *See United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010) (cooperating witness's notes of conversations with co-

Further, certain of the statements the Government will offer—including those from Mr. Becker's notebooks—are separately admissible as prior consistent statements. A prior statement is not hearsay if the declarant "testifies and is subject to cross-examination about [the] prior statement"; the prior statement "is consistent with the declarant's testimony"; and the prior statement is offered for either of two purposes: (i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground. Fed. R. Evid. 801(d)(1)(B). Rule 801(d)(1)(B)(i) codifies the common-law rule, which recognizes that "[a] consistent statement that predates the [alleged] motive is a square rebuttal of the charge that the testimony was contrived as a consequence of that motive." *Tome v. United States*, 513 U.S. 150, 156, 158 (1995). Rule 801(d)(1)(B)(ii) "extend[s] substantive effect" of the traditional rule "to consistent statements that rebut other attacks on a witness," including "charges of inconsistency or faulty memory." Fed. R. Evid. 801(d)(1)(B) advisory committee note (2014).

Here, counsel for both defendants opened the case by, among other things, attacking Mr. Becker's credibility; counsel for Mr. Halligan in particular asserted that Mr. Becker is "manipulative" and "a very, very convincing liar." (Tr. 89-90; *see also* (*id.* 78-79 (counsel for Mr. Hwang asserting that Mr. Becker "could face . . . the best years of [his] life in jail, . . . but [he] could maybe avoid all that if [he] made a deal.")). Those attacks suffice to justify the admission of prior consistent statements now, and, as the Second Circuit has held, the Government need not wait for re-direct to offer the statements so long as the witness will be subject to cross-examination. *United States v. Flores*, 945 F.3d 687, 706 (2d Cir. 2019).

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _s/_____
    Matthew Podolsky
    Alexandra Rothman
    Samuel P. Rothschild
    Andrew Thomas
    Assistant United States Attorneys
    Tel.: (212) 637-1947/-2580/-2504/-2106

Cc: Counsel of Record (via ECF)

---

conspirator regarding false confirmation letters that defendant asked him to send were business records under Rule 803(6)).