# Kramer Levin



**Barry H. Berke**
Partner
**T** 212.715.7560
**F** 212.715.7660
bberke@KRAMERLEVIN.com

1177 Avenue of the Americas
New York, NY 10036
**T** 212.715.9100
**F** 212.715.8000

**May 20, 2024**

**BY ECF**

Hon. Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

     Re: _United States v. Sung Kook (Bill) Hwang, et al._, No. 22 Cr. 240 (AKH)

Dear Judge Hellerstein:

     On behalf of defendant Bill Hwang, we respectfully write in response to the prosecution's letter, which was filed last night, regarding evidence it intends to introduce during Scott Becker's testimony. _See_ ECF No. 194 ("Govt Ltr.").

     The prosecution seeks to offer emails, Instant Bloomberg chat messages, and notebook entries as "co-conspirator statements, statements of agents, and prior consistent statements of Mr. Becker." Govt Ltr. at 1. But each ground presents an evidentiary obstacle that it cannot overcome for all the exhibits it seeks to introduce.

     First, the prosecution has failed to establish by a preponderance of the evidence that Mr. Hwang participated in a conspiracy with Mr. Becker to make false and misleading statements to Archegos's counterparties. And it cannot do so. As Mr. Becker told the government, "he couldn't remember any specific instances or direct interaction with Mr. Hwang about the misrepresentations that Mr. Becker made to the counterparties[.]" April 13, 2022 Grand Jury Testimony, FBI Special Agent Thomas McDonald, Tr. 55. Because the prosecution cannot produce sufficient evidence of Mr. Hwang's participation in this conspiracy, this Court should not admit any statement by Mr. Becker in furtherance of it under Federal Rule of Evidence 801(d)(2)(E).

     "To admit a statement under the coconspirator exception to the hearsay definition, a district court must find two factors by a preponderance of the evidence: first, that a conspiracy existed that included the defendant and the declarant; and second, that the statement was made during the course of and in furtherance of that conspiracy." _United States v. Gigante_, 166 F.3d 75, 82 (2d Cir. 1999). "[W]hile the hearsay statement itself may be considered in establishing

the existence of the conspiracy, there must be some independent corroborating evidence of the defendant's participation in the conspiracy." *Id*. (internal quotation marks and citation omitted). And where "[t]he present record makes it plain that the government has yet to produce or proffer proof sufficient" to satisfy the preponderance of the evidence standard, such "paucity of the government's proof" requires, "in the interest of fairness," that "the government . . . elicit and place before the jury all the evidence it will rely upon to satisfy all prerequisites of admissibility . . . before [the coconspirator] declarations are placed before the jury." *United States v. Saneaux*, 365 F. Supp. 2d 493, 503-04 (S.D.N.Y. 2005); *see also United States v. Aguirre-Parra*, 763 F. Supp. 1208, 1217 (S.D.N.Y. 1991) ("The proper procedure is to determine the issues surrounding admissibility (the existence of the conspiracy, a particular defendant's role, whether the statements were made in furtherance of the conspiracy) during the trial, and, if necessary, outside the presence of the jury.").

The prosecution "has yet to produce or proffer proof" that Mr. Hwang knew about or played a role in allegedly making false and misleading statements to counterparties.  And in light of Mr. Becker's admission to the prosecution that "he couldn't remember any specific instances or direct interaction with Mr. Hwang about the misrepresentations that Mr. Becker made to the counterparties," the prosecution will not be able to overcome this hurdle.  Furthermore, the prosecution's reliance on Mr. Becker's and Mr. Tomita's sworn plea allocutions is of no moment.  *See* Govt Ltr. at 2.  Their allocutions wholly fail to show that Mr. Hwang had any knowledge of or played any role in the allegedly false statements to counterparties.  Given the "paucity of the government's proof" with respect to Mr. Hwang's alleged participation in a conspiracy with Mr. Becker to make false and misleading statements to counterparties, this Court should not allow the prosecution to introduce coconspirator hearsay statements until it "elicit[s] and place[s] before the jury all the evidence it will rely upon to satisfy all prerequisites of admissibility." *Saneaux*, 365 F. Supp. 2d at 503-04.  To do so beforehand would unfairly prejudice Mr. Hwang in the *likely* event that the prosecution cannot satisfy Rule 801(d)(2)(E)'s requirements.  *See Krulewitch v. United States*, 336 U.S. 440, 453 (1949) (Jackson, J., concurring) ("[A] conspiracy often is proved by evidence that is admissible only upon assumption that conspiracy existed.  The naive assumption that prejudicial effects can be overcome by instructions to the jury all practicing lawyers know to be unmitigated fiction.").

Second, the prosecution seeks to admit certain unidentified hearsay statements from Archegos employees on the grounds that they are statements "of a party's agent or employee on a matter within the scope of that relationship and while it existed." *See* Fed. R. Evid. 801(d)(2)(D).  But the prosecution's expansive interpretation of Rule 801(d)(2)(D)—that every statement by every employee of a company is admissible against the head of the company— defies the law and would deprive Mr. Hwang of his constitutional right to confront witnesses against him.

Circuit courts agree that "not everything that relates to one's job falls within the scope of one's agency or employment." *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 950 (7th Cir. 1998); *see, e.g., Litton Systems v. American Tel. and Tel. Co.*, 700 F.2d 785, 816-17 (2d Cir. 1983) ("The fact that [company attorney] summarized what some [company] employees said about other employees in the course of his investigation does not bring the events he summarized within the 'scope of his agency or employment.'"); *Rowell v. BellSouth Corp.*, 433 F.3d 794, 801 (11th Cir. 2005) (personal opinions about employer's motives were not admissible under Rule

801(d)(2)(D)).  "[E]xpanding the rule to include statements made by any person who is subordinate to a party opponent" would "create a loophole in the hearsay rule through which evidence not contemplated by the authors of Rule 801 could be admitted."  *United States v. Young*, 736 F.2d 565, 567 (10th Cir. 1983), *cited with approval in Zaken v. Boerer*, 964 F.2d 1319, 1322-23 (2d Cir. 1992), *rev'd on other grounds* 470 U.S. 1 (1985).

Although the prosecution fails to identify the out-of-court statements it seeks to introduce under Rule 801(d)(2)(D), certain categories of employee statements are plainly inadmissible. For example, where an Archegos employee with no responsibility for trading speculates about Archegos's trading strategy, such statements do not fall within the scope of employment.  *See Rowell*, 433 F.3d at 801-02 (district court properly excluded employee's speculative opinions about his employer's motives for layoffs under Rule 801(d)(2)(D) where employee was uninvolved in the decisions of how to formulate performance evaluations or structure the workforce reduction); *Hill v. Spiegel, Inc.*, 708 F.2d 233, 237 (6th Cir. 1983) (finding reversible error where district court admitted employee statements under Rule 801(d)(2)(D) without evidence that the employees "had any involvement in [the employer]'s decision"); *Smith v. New York and Presbyterian Hospital*, 440 F. Supp. 3d 303, 338-39 (S.D.N.Y. 2020) (text messages of former employee were inadmissible hearsay because they were out-of-court statements and were not made within the scope of an employment relationship).

Likewise, statements reflecting Archegos employees gossiping or otherwise complaining about their bosses are not statements made within the scope of their employment and are therefore not admissible under Rule 801(d)(2)(D).  *See Litton Systems, Inc. v. Am. Tel. and Tel. Co.*, 700 F.2d 785, 816 (2d Cir. 1983) (affirming exclusion of employee statements that fell outside the scope of the agency relationship because "[g]ossip does not become reliable merely because it is heard in an office"); *Miles v. New York Univ.*, 182 F.3d 900, 1999 WL 464974, at *1 (2d Cir. June 23, 1999) (summary order) (affirming exclusion of statements by an employee under Rule 801(d)(2)(D) because they were "just belly aching").

Finally, the prosecution argues that "certain of the statements the Government will offer" are admissible as prior consistent statements under Rule 801(d)(1)(B) because counsel for the defense opened the door to these statements when they argued in their openings that Mr. Becker is "manipulative" and a "very, very convincing liar" (counsel for Mr. Halligan), and that Mr. Becker had an incentive to cooperate (counsel for Mr. Hwang).  Govt Ltr. at 4.  Putting aside that the prosecution has failed to identify any particular statements that it believes are admissible for this reason, such "generalized attack[s] on credibility," without more, do not warrant admission of purportedly consistent prior statements by Mr. Becker.  *See United States v. Pierre*, 781 F.2d 329, 333-334 (2d Cir. 1986) (to be admissible, prior consistent statement must have "probative force beyond showing that the witness had at an earlier time been consistent with his trial testimony").

\*   \*   \*

For the foregoing reasons, Mr. Hwang respectfully objects to the introduction of any proffered evidence that does not satisfy the above-referenced grounds.

Respectfully submitted,

*/s/ Barry H. Berke*

Barry H. Berke
Dani R. James
Jordan Estes
Michael Martinez


cc:     Counsel of record