



*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10007*

May 21, 2024

**VIA ECF**

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

   Re: *United States v. Hwang and Halligan*,
      S1 22 Cr. 240 (AKH)

Dear Judge Hellerstein:

  The Government writes in opposition to defendant Bill Hwang's May 20, 2024 letter motion seeking to strike testimony regarding the defendant's decision not to reimburse employees for lost deferred compensation. (Dkt. 196). The defendant argues that the "[t]he only purpose in highlighting this testimony is to cast Mr. Hwang in an unfairly negative and pejorative light." (Dkt. 196 at 2). Not so. In fact, the primary purpose of this testimony was to provide a direct response to testimony elicited by the defendant on cross-examination of Mr. Jones seeking—contrary to the Court's *in limine* rulings and over the Government's objection—to cast blame on the counterparty-victims for somehow failing to provide funds to reimburse the defendant's employees. The defense, having elicited testimony on this subject during cross-examination, should not now be permitted to strike the testimony simply because they are unsatisfied with the witness's complete answers on the topic.

  The defense made an issue of who could pay for Archegos deferred compensation losses. Specifically, counsel for the defendant inquired as follows on cross-examination:

  Q.   And as part of that proposal that you were making to counterparties, the hope was that the counterparties would extend some cash for the deferred compensation pool, isn't that right?

  A.   Yes –

  MR. THOMAS: Objection, your Honor.

  THE COURT: Overruled.

  A. Yes—

    THE COURT: I'm sorry. Withdrawn. Go ahead.

    A. Okay.

    . . .

    THE COURT:    Where did the deferred compensation come into this?

    THE WITNESS:  So the—at that point, because the firm had essentially negative equity at the time, we were asked by the prime brokers under what terms might Archegos step in to help trade these things over the next couple of weeks. And one of the points that was on our term sheet that we proposed included cash compensation to meet some of the—at least the minimum obligations of the deferred compensation to be able to take care of our employees.

    BY MS. JAMES:

    Q.    And unfortunately, that proposal wasn't accepted; correct?

    A.    Correct.

(Tr. 694-95). In short, it was the defendant—over the Government's objection—who attempted to suggest that it was somehow the counterparty-victims' fault that the defendant's employees were not reimbursed for compensation lost as a result of the defendant's manipulation and fraud scheme. It was thus fair response for the Government to establish on redirect examination that *the defendant* declined to reimburse his employees.

    Indeed, defendant Hwang did not even lodge a contemporaneous objection to this testimony, and the Court correctly overruled defendant Halligan's objection. (Tr. 698). In any event, defendant Hwang's belated attempt to strike this testimony from the record should be denied—he should not be permitted to elicit unfair and prejudicial testimony regarding the counterparty-victims' ability to reimburse Mr. Hwang's employees and then preclude the Government from fair response.

    Moreover, contrary to the defendant's assertion (Dkt. 196 at 2), the probative value of Mr. Jones's testimony on this score is not substantially outweighed by the dangers of unfair prejudice or undue delay. The Government's redirect on this subject totaled three questions and created no delay whatsoever. That brief testimony did, however, offer meaningful probative value. First, as noted above, the testimony directly responds to a point elicited by the defense during cross-examination. Second, evidence of how Hwang reacted to the collapse of the deferred compensation pool shows Hwang's state of mind and consciousness of guilt. The jury has already heard testimony about how, upon Archegos's collapse, Archegos employees "were encouraged not to quit" and were told that they would "stay as part of the firm," notwithstanding the potential consequences to their deferred compensation (Tr. 562-63), and the Government anticipates that

future witnesses will testify about a coordinated effort to encourage certain Archegos employees to continue to work for Hwang at his foundation, Grace & Mercy, as a means of ensuring Hwang's continued control over his employees and their continued loyalty to him. Third, and more generally, the facts of the deferred compensation program prove aspects of the alleged racketeering enterprise, Hwang's role in it, and the consequences of Hwang's conduct. Among other things, the testimony about the Archegos deferred compensation program supports the inference that employees were financially incentivized to support Hwang's trading and disincentivized to raise concerns, which provides the jury with a basis to understand why and how Hwang corrupted the Archegos business without institutional resistance. The testimony also tends to prove the Indictment's allegations that defendants' fraud (and not Archegos's counterparty-victims) caused "millions of dollars of losses to innocent Archegos employees who had been required to allocate to Archegos a substantial amount of their pay as deferred compensation." S1 Indictment 22 Cr. 240 (AKH) at ¶ 7. As the Court has already ruled, "showing loss, showing the consequences of the alleged fraud is relevant." (Tr. 789).

* * *

Defendant Hwang's motion to strike should be denied. The brief redirect examination of Mr. Jones responded to testimony elicited by the defense and yielded evidence that, in the context of existing and anticipated testimony about Hwang's control over Archegos and its employees, offers probative value to the jury that is not substantially outweighed by a danger of unfair prejudice.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: s/_____
Matthew Podolsky
Alexandra Rothman
Samuel P. Rothschild
Andrew Thomas
Assistant United States Attorneys
Tel.: (212) 637-1947/-2580/-2504/-2106

Cc: Counsel of Record (via ECF)