

MARY E. MULLIGAN
mmulligan@fklaw.com
212.833.1123

TIMOTHY M. HAGGERTY
thaggerty@fklaw.com
212.833.1251

May 27, 2024

BY ECF

Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1050
New York, New York 10007

      Re:     United States v. Hwang et ano., No. 22-cr-240 (AKH)

Dear Judge Hellerstein:

      On behalf of defendant Patrick Halligan, we write to respectfully request that the Court reconsider the exclusion of evidence regarding cooperating witness Scott Becker's bias and motivation to testify against Mr. Halligan. Two cornerstones of our defense theory are (1) Mr. Becker's extreme personal bias against Mr. Halligan and (2) Mr. Becker's motivation to align himself with the government via his cooperation agreement.[1] Constraining our examination of Mr. Becker's bias and motivation has impaired Mr. Halligan's Confrontation Clause rights, and we seek redress as further described below.

      In addition, we seek narrow relief related to the erroneous exclusion of testimony that the government has conceded is exculpatory under *Brady*. In particular, we seek reconsideration of the Court's ruling which prevented Mr. Becker from testifying that – as he previously told the government – he is unaware of any instance in which anyone at Archegos lied to the firm's independent auditors.

      **I.**     **The Exclusion of Evidence Regarding Mr. Becker's Bias**

      During Mr. Becker's cross examination, we sought to pursue a line of inquiry regarding the nature and extent of his bias against, and disloyalty towards, Mr. Halligan. In reviewing the trial transcript, we realized that perhaps we belabored grievances and should have proceeded directly to the most blatant and probative evidence of extreme bias. While the prosecution did not object to our questions, the Court repeatedly directed us to move on.

---

[1] Our opening statement of May 13, 2024 clearly outlined these defense theories, including blunt and well-founded attacks on Mr. Becker's bias and motivation. *See* Tr. 89:21-92:16.

Hon. Alvin K. Hellerstein        - 2 -        May 27, 2024

Tr. 1425:11-1426:8. At another point, the Court precluded questioning regarding a particular instance in which Mr. Becker and the operations team hid information from Mr. Halligan. Tr. 1423:3-9.

### I.A.   The Precluded Bias Testimony and Evidence

We sought to elicit testimony from Mr. Becker that he hated Mr. Halligan. Indeed, in a January 2020 text exchange with members of the operations team, Mr. Becker wrote exactly that (DX 7003 [Ex. A]):

> scott.v.becker@gmail.com Scott Becker (owner)
> 01/29/20 07:02:22 PM
> These guys are out of their god damn minds. I'm ready for Pat to reply to me telling me I did something wrong. I hate all of them with such a passion.

We also sought to elicit testimony from Mr. Becker regarding two instances in which Mr. Becker wished death upon Mr. Halligan. In one instance, Mr. Becker wished that Mr. Halligan's plane would crash on his way home from a Christmas vacation – a Christmas holiday that found Mr. Becker working (DX 6809 [Ex. B]):

> +18458637921 Scott Becker (owner)
> 12/27/18 08:21:57 PM
> Just read that article. Work smarter not harder, my work goal for 2019. For now, I'll have a few more days of getting yelled at by my boss via email while he is at his beach house in Turks and Caicos for Christmas with his spoiled Long Island family. Maybe his plane will crash on his way home. 😎 But at least i can enjoy a glass of scotch while I recover from another busy day. See you Saturday.

We also sought to elicit testimony that Mr. Becker hoped Mr. Halligan and Mr. Hwang would be infected with Coronavirus and "die painful slow deaths" after he and other members of the operations team were asked to work in the office in March 2020 (DX 6819 [Ex. C]):

> +12158209375 Barima Osei
> 03/17/20 03:15:11 PM
> I really hope Bill has been hounding Pat nonstop today
>
> scott.v.becker@gmail.com Scott Becker (owner)
> 03/17/20 03:15:47 PM
> Hopefully he infected him with Coronavirus and they both die painful slow deaths.

This type of animosity goes well beyond everyday workplace friction.

Hon. Alvin K. Hellerstein         - 3 -         May 27, 2024

    In addition, we were precluded from introducing evidence that showed Mr. Becker's disloyalty to Halligan. The testimony that we sought to introduce would confirm that Mr. Becker referred to 2020 as the "best work year of his life," precisely because of how "little contact" he had with Mr. Halligan. In fact, Mr. Becker said exactly that in a Bloomberg instant chat with other members of the operations group (DX 3609 [Ex. D]):

> **Barima Osei: I was thinking the other day about the little contact we have with Pat**
>
> . . .
>
> David Hohlman: I've never been happier BKO
>
> …
>
> David Hohlman: At ACM
>
> **Barima Osei: Like he literally has to fight to figure out what's going on with us you know?**
>
> Barima Osei: Before he'd be in and out the room chatting our ear off
>
> Barima Osei: Stopping Scott from working
>
> **Barima Osei: Even his emails have dried up considerably**
>
> Barima Osei: We can just work
>
> **Scott Becker: 2020 has been the best work year of my life.**
>
> David Hohlman: And we can talk to each other about work stuff without the risk of him intervening
>
> **Scott Becker: And my life in general. Every time someone says, well that's 2020 ... I'm like F YEAH IT IS!**

    We also sought to elicit testimony regarding an instance in which Mr. Becker and the operations team hid information about the Archegos portfolio from Mr. Halligan – conduct that further proves Mr. Becker's disloyalty towards Mr. Halligan. In particular, we sought to cross examine Mr. Becker regarding the following exchange in an instant Bloomberg chat among the operations group members (excluding Mr. Halligan) (DX-6854 [Ex. E]):

> Barima Osei: Where are the aftermarket sheets?
>
> Barima Osei: [Don't] see them
>
> …

Hon. Alvin K. Hellerstein    - 4 -    May 27, 2024

```
David Hohlman:  I save them in the four sheets
folder
…
David Hohlman:  I just move it into that aftermarket
folder within the four sheets folder when I'm done
```
**David Hohlman:  That way pat [Halligan] doesn't see anything**

### I.B. The Bias Evidence Was Wrongly Excluded

Mr. Becker's bias is critical to Mr. Halligan's defense, and excluding inquiry on this topic has impaired Mr. Halligan's Confrontation Clause rights.

The United States Supreme Court and the Second Circuit have repeatedly affirmed criminal defendants' Sixth Amendment right to cross examine witnesses for bias. In *Davis v. Alaska*, that Court reversed a conviction where the defense was precluded from eliciting on cross examination that the prosecution's key witness was on probation at the time he implicated the defendant in the charged crimes. 415 U.S. 308 (1974). The defense argued that the witness's probationary status gave him a reason to make a "hasty and faulty identification [of the defendant] . . . to shift suspicion away from himself" and also exposed him to undue pressure while making the identification (at the risk his probation might be revoked if he does not make an identification that is satisfactory to the police). *Id.* at 311. While the defense was permitted a "limited cross examination" on the issue of the bias, the Supreme Court ruled that it was error to preclude a more robust cross examination on this issue:

> On these facts it seems clear to us that to make any such inquiry effective, defense counsel should have been permitted to expose to the jury ***the facts*** from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. ***Petitioner was thus denied the right of effective cross-examination which would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.***

*Id.* at 318 (emphases added) (cleaned up).[2] *See also Brinson v. Walker*, 547 F.3d 387, 393-95 (2d Cir. 2008) ("The Confrontation Clause protects a defendant's right to cross-examine witnesses for bias"; error of constitutional dimension to preclude cross examination

---

[2] *See also Davis*, 415 U.S. at 316 ("The partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony.") (cleaned up).

Hon. Alvin K. Hellerstein - 5 - May 27, 2024

regarding bias given "the likelihood that one possessing a bias of such intensity might distort his testimony against an object of his bias on account of it").

Evidence regarding Mr. Becker's hostility towards Mr. Halligan is central to Mr. Halligan's defense. During the period that the government alleges that Mr. Halligan and Mr. Becker were co-conspirators in a racketeering conspiracy and were supposedly part of a "corrupt core," Mr. Becker, in fact, hated Mr. Halligan, hid things from him, and disregarded his instructions.

In addition, evidence of Mr. Becker's *disloyalty* to Mr. Halligan is directly responsive to the prosecution's theory – expressed in the government's opening statement – that the alleged co-conspirators including Mr. Halligan and Mr. Becker are bound together by shared loyalty. *See* Tr. 14:10-17 (describing Archegos's alleged "corrupt core"). This evidence also refutes Mr. Becker's comment that certain of his intemperate comments may have been merely "vent[ing] to his peers." Tr. 1219:10-22.

While the Court has at various points commented on Mr. Becker's evident hostility towards Mr. Halligan in terms of everyday grievances, the evidence reveals deep personal animus and retaliatory intent at a level far beyond the sort of generic workplace friction that the Court suggested in its comments earlier in this trial. *See* Tr. 367:16-21 ("THE COURT: He didn't like his boss? . . . Characteristic of 95 percent of employees."). We respectfully submit that if we are not allowed to present evidence regarding the nature and extent of Mr. Becker's bias, there is a risk that the Court's prior comments could minimize the significance of Mr. Becker's hostility towards Mr. Halligan. This risk is heightened by the fact that we were permitted to inquire about some of Mr. Becker's broader grievances about Mr. Halligan's management style, but barred from inquiring about his most extreme outbursts.

Our evidence regarding this issue is admissible. To the extent practicable and in deference to the Court's preference for testimonial evidence, we will seek to elicit this evidence from testimony.

To the extent we seek introduction of the original instant Bloomberg messages and text messages where Mr. Becker made these statements (for example, if Mr. Becker denies making them), they would be offered to show Mr. Becker's state of mind, and thus are not excluded under the hearsay rule. Fed. R. Evid. 803(3). This evidence is authentic; it was included in materials the government produced to the defense in this case. Those materials include, among other things, text messages extracted from Mr. Becker's electronic devices that were seized by the FBI pursuant a search warrant.[3]

---

[3] Mr. Becker's seized personal devices which were produced to the defense as Rule 16 discovery contain extensive evidence of his scheming behind Mr. Halligan's back, including efforts to cause pain and harm to Mr. Halligan and his family. However, we do not, as the Court suggested, seek to "use every note [Mr. Becker] took" regarding his intense animosity towards Mr. Halligan. Tr. 1425:11-1426:8. In one example of the evidence we do **not**

Hon. Alvin K. Hellerstein  - 6 -  May 27, 2024

## II.     The Exclusion of Evidence Regarding Mr. Becker's Motivation and Credibility

Separate from the bias-related evidence discussed above, the Court also precluded a series of questions seeking to elicit Mr. Becker's understanding regarding the benefits he may receive for cooperating against Mr. Halligan, as well as his credibility and motivation to testify against Mr. Halligan. The Court sustained multiple objections to this line of inquiry, and in some instances the Court precluded questioning as to which the prosecution interposed no objection. Tr. 1473:11-15; 1475:1-6; 1475:11-14; 1476:19-22; 1477:14-17; 1477:21-1478:3; 1479:21-1480:16.

Here again, the Supreme Court's decision in *Davis* is instructive. The Court "recognized that ***the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination***." 415 U.S. at 316 (emphasis added). The Supreme also addressed applied these principles in *Delaware v. Van Arsdall*, holding that "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness." 475 U.S. 673, 680 (1986) (cleaned up). Notably, the Court in *Van Arsdall* found error where the criminal defendant had been precluded from cross examining a prosecution witness about a relatively modest benefit – dismissal of a pending drunk driving charge – in exchange for speaking with the prosecutors. *Id.*

Mr. Halligan's defense requires a meaningful opportunity to cross examine Mr. Becker regarding his motivations for cooperating with the government in this prosecution. Mr. Becker seeks a benefit of far greater magnitude than the witness in *Van Arsdall*, and a full exploration of his understanding of that benefit is not only relevant and admissible, but protected by the Confrontation Clause. Finally, we note that while the Court at several points explained various aspects of the cooperation and sentencing process, those explanations are not evidence and thus are no substitute for vigorous cross examination of the witness regarding the relevant ***facts***. *See* Tr. 1473:16-1474:5; 1478:4-1479:15; *see also Davis*, 415 U.S. at 318 ("to make any such inquiry [regarding a witness's bias] effective,

---

presently intend to introduce via Mr. Becker, during 2020, he engaged in a months-long campaign to gather and retain what he perceived as *kompromat* about Mr. Halligan involving a matter wholly unrelated to the current case. Mr. Becker told his brother that he was saving the information for "a rainy day to give to the HR lady [at Archegos]" if Mr. Halligan yelled at him again, and he also told other members of the operations team that, based on his belief that this information could be deployed to harm Mr. Halligan, he was "not afraid of getting yelled at anymore." As noted, and mindful of the Court's efforts to streamline the trial, we do not presently intend to introduce this evidence via Mr. Becker and describe it here only to emphasize that Mr. Becker's antipathy and vengeance towards Mr. Halligan is not normal and the episodes we do seek to introduce are not anomalous.

Hon. Alvin K. Hellerstein - 7 - May 27, 2024

defense counsel should have been permitted to expose to the jury *the facts* from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness") (emphasis added).

### III. The Exclusion of Testimony Regarding the Absence of False Statements to Archegos's Auditors

Separate from the matters discussed above, we also sought testimony from Mr. Becker confirming that he was not aware of any instance in which anyone at Archegos lied to the firm's auditors. The government objected, and the Court sustained the objection. Tr. 1438:23-1439:1.

Among other things, Mr. Becker testified on direct regarding the preparation of Archegos's annual audited financial statements, including the provision of these statements to Archegos's counterparties. Tr. 948:3 – 954:6. Accordingly, the testimony we sought to elicit is relevant.

Moreover, the government is aware of this, and also has acknowledged that this testimony would be exculpatory – Mr. Becker's statement that "BECKER was not aware of any instances in which anyone at ACM lied to the firm's auditors" is **the very first statement** listed in the 40-page *Brady* disclosure letter that government sent to the defense in October 2022. Against this backdrop, the government's objection to this testimony is improper, and it was error to preclude it.

### IV. Request for Relief

For the foregoing reasons, we respectfully submit that the exclusion of evidence regarding Mr. Becker's bias, motivation, and credibility constitutes error of constitutional magnitude. To remedy this error, we request that the Court:

(1) permit us to efficiently make focused inquiry of Mr. Becker regarding the nature and extent of his extreme bias against Mr. Halligan, including examination during our re-cross regarding the matters discussed herein;

(2) permit us to make further inquiry regarding Mr. Becker's agreement to cooperate with the prosecution as relevant to his motivation to testify against Mr. Halligan and his credibility; and

(3) permit Mr. Becker to answer whether he was aware on any instance in which anyone at Archegos lied to the firm's auditors.

Hon. Alvin K. Hellerstein — 8 — May 27, 2024

        We thank the Court for its attention to this matter.

        Respectfully submitted,

        *Mary Mulligan*

        Mary E. Mulligan

cc:    All Counsel (by ECF)