

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

May 30, 2024

<u>**VIA ECF**</u>

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      **Re:**    ***United States v. Hwang and Halligan*,**
             **S1 22 Cr. 240 (AKH)**

Dear Judge Hellerstein:

      The Government respectfully writes in opposition to defendant Bill Hwang's May 30, 2024 letter asking the Court to reconsider its denial of the defendant's motion to strike certain testimony of Christopher Salcedo, who, during the relevant time period, was a credit officer and director at UBS. (Dkt. 208). The Court properly denied the defendant's motion to strike Mr. Salcedo's testimony, and the defendant offers no persuasive reason for the Court to reconsider that denial.

      Mr. Salcedo's testimony was proper fact testimony from a lay witness. Indeed, Mr. Salcedo's testimony concerned analyses and considerations undertaken at the relevant time regarding the importance of representations made by Archegos and is directly probative of why the representations at issue were important to Mr. Salcedo and to UBS when made.

      As Mr. Salcedo testified, his job as a credit officer at UBS entailed "monitoring . . . and managing the credit risk exposure generated from [UBS's] various counterparties." (Tr. 1879). He explained that his job entailed "talking [with clients] about . . . their portfolio holdings, both at UBS and then across their various other brokers." (Tr. 1880). With respect to Archegos, Mr. Salcedo testified that, as the UBS credit officer in the independent risk function assigned to Archegos, his credit/risk view of Archegos was informed by Scott Becker's representations that the top holdings in Archegos's portfolio as a whole were "mega-cap stocks," such as Amazon. (*See, e.g.*, Tr. 1887). Because such mega-cap stocks were not among the top holdings in the portion of Archegos's portfolio *at UBS*, Mr. Salcedo testified that, as part of his job at UBS, he, in fact, undertook a risk analysis to assure himself that Archegos's portfolio at UBS was not replicated at Archegos's other counterparties. (*See, e.g.*, Tr. 1903). As Mr. Salcedo explained, of his analysis and process at the time, if Archegos's positions at UBS "were replicated across brokers," "it would be not just a liquidity issue, but it would be a severe liquidity issue," which, as Mr. Salcedo explained, was an important consideration for UBS at the time because that scenario would have impacted Archegos's ability "to manage their margin calls." (Tr. 1898). As part of the risk analysis that Mr. Salcedo, in fact, undertook, he asked fellow risk officers at UBS to "run . . . [a]

model" to look at what would happen if "the top 10 names in UBS' book . . . [we]re replicated" across Archegos's counterparties. (Tr. 1909-10). In fact, as reflected in the part of the transcript quoted in Mr. Hwang's letter, contemporaneous emails between Mr. Salcedo and his colleagues demonstrate that they actually undertook that risk analysis. (*See* Dkt. 208 at 1 (quoting Tr. 1911 (referring to "this email"))).

The portion of Mr. Salcedo's testimony that the defendant now seeks, for the second time, to strike, is his testimony describing this risk analysis that he and his colleagues in fact undertook as part of their jobs. Such testimony is fact testimony from a percipient lay witness who, as part of his employment, undertook analyses to decide how to deal with a client. He was asked questions, and gave answers, about actions he in fact took and why he took them. That testimony is neither expert, nor hypothetical. Rather, the testimony provides direct evidence of the contemporaneous importance of the representations Archegos made to UBS.

Mr. Salcedo's testimony on this topic is especially probative because the defendant has repeatedly suggested to the jury that counterparty banks, such as UBS, knowingly undertook the risk of doing business with the defendant because they understood that he had a "volatile" and "concentrated" portfolio. Indeed, the defendant has repeatedly questioned witnesses about that topic—including witnesses the jury heard from yesterday—inviting the jury to conclude that Archegos's lies to the banks did not matter to the banks' decisionmaking. (*See e.g.*, Tr. 1851). Mr. Salcedo's testimony illustrates otherwise: The misstated facts and intentionally concealed risks mattered significantly to the credit assessments of the counterparties—in this circumstance, to UBS in particular—regarding whether to extend credit to the defendant.

Finally, notwithstanding the defendant's characterization of Mr. Salcedo's testimony (Dkt. 208 at 3), no reasonable juror could have understood Mr. Salcedo to be offering an expert opinion on what the defendant intended through his trading. The Government did not elicit, and Mr. Salcedo did not provide, testimony about any mental process of the defendant or any expert opinion of any sort. To the contrary, Mr. Salcedo described his own and UBS's processes and considerations at the time. Mr. Salcedo's use of a term from the industry in which he was and remains employed, such as "corner the market," to convey the importance of the representations at the time did not convert his testimony into expert testimony.

For the foregoing reasons, the Government respectfully requests that the Court deny the defendant's motion for reconsideration of the Court's denial of the defendant's request to strike certain testimony of Mr. Salcedo.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _s/_____
   Matthew Podolsky
   Alexandra Rothman
   Samuel P. Rothschild
   Andrew Thomas
   Assistant United States Attorneys
   Tel.: (212) 637-1947/-2580/-2504/-2106

Cc: Counsel of Record (via ECF)