# Kramer Levin



**Barry H. Berke**
Partner
T 212.715.7560
F 212.715.7660
bberke@KRAMERLEVIN.com

1177 Avenue of the Americas
New York, NY 10036
T 212.715.9100
F 212.715.8000

**June 10, 2024**

**BY ECF**
Hon. Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re: <u>United States v. Sung Kook (Bill) Hwang, et al.</u>, No. 22 Cr. 240 (AKH)

Dear Judge Hellerstein:

      On behalf of defendant Bill Hwang, we respectfully write in response to the prosecution's June 2, 2024 letter regarding evidence that it seeks to elicit from cooperating witness, William Tomita, relating to Tiger Asia.  *See* ECF No. 210 ("Govt Ltr.").

## I.    Preliminary Statement

      It continues to be deeply unfair and prejudicial that the prosecution seeks to prove a Tiger Asia market-manipulation case that the United States Attorney's Office for the District of New Jersey ("DNJ") did not bring and that the SEC chose to settle with no admissions.  The prosecution aims to shore up its case through Mr. Tomita by returning to documentary evidence and allegations that predate the charged conduct by well more than a decade and concern a purported market-manipulation violation in Hong Kong involving a transient trading system with entirely different rules, participants, purposes, and practices (and potentially even trading in Japan and South Korea, too).  That evidence is so factually distinct from the alleged conduct at Archegos that the jury cannot reasonably draw the inferences advocated by the prosecution.[1]  *See United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011) (other act "evidence must be sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the . . . inference advocated by the proponent of the evidence."); *United States v. Gordon*, 987 F.2d 902, 908 (2d Cir. 1993) ("[T]he probative value of the proffered evidence depends largely on whether

---

[1] In addition to there being no proper basis for allowing such prejudicial, prior allegations under these circumstances, it also would be extremely unfair given the imbalance of information following the prosecution's cherry-picking of the SEC's files literally on the eve of trial.

or not there is a close parallel between the crime charged and the acts shown.") (internal quotation marks and citations omitted).

The experimental—and now long-defunct—closing auction in Hong Kong was nothing like closing auctions in U.S. exchanges. Most significantly, it prohibited the very type of order at issue in this trial—*i.e.*, limit orders—as well as the modification or cancellation of orders during its final minutes. The end result was price movements so extreme and volatile that Hong Kong regulators shut it down within a year. And even if that shuttered and dysfunctional closing auction were similar to its U.S. counterparts (which it was not), any comparison to it is groundless because virtually *none* of Archegos's trading occurred on any closing auction, as trial testimony has established. Simply put, the evidence of Tiger Asia trades on Hong Kong's closing auction in 2008-09 bears no sufficient similarity or close parallel to trading at Archegos in 2020-21 to justify its admission.

In addition, there can be no question that admission of such testimony as proposed by the prosecution would be unfairly prejudicial and have limited to no probative value, and therefore should be precluded under Federal Rule of Evidence 403. The prosecution expects Mr. Tomita to testify that he learned trading practices at Tiger Asia in 2008-09, but only came to understand their unlawful nature when Tiger Asia subsequently came under investigation. But the mere fact of an investigation is not probative of any unlawfulness and should be precluded. *See Gray v. Alpha and Omega Semiconductor Ltd.*, No. 20 Civ. 2414 (RA), 2021 WL 4429499, at *9 (S.D.N.Y. Sept. 27, 2021) (court did not "infer wrongdoing" of defendants "from the mere existence of an investigation" because "the fact that the government is probing [defendant]'s conduct for wrongdoing cannot be enough to establish that wrongdoing has been or will be found"). The prosecution cannot use the fact of a subsequent investigation as a replacement for legally proper evidence of a criminal plan or method, or knowledge or intent. Nor can such fact fairly inform the jury of the background of the alleged conspiracy. The alleged Tiger Asia misconduct happened nearly a dozen years before the alleged market manipulation at Archegos, involved different alleged co-conspirators, and concerned transactions on different foreign exchanges, subject to different rules, and using different trading orders. It is simply not sufficiently similar to the alleged market manipulation in the indictment, and the nearly 12-year intermission in purported manipulative trades is too long and tenuous to support the inferences the prosecution seeks. *See Curley*, 639 F.3d at 57 (district court "abuses its discretion if the evidence is not sufficiently similar to the charged conduct or if the chain of inferences necessary to connect [the] evidence with the ultimate fact to be proved [is] unduly long"); *United States v. Hatfield*, 685 F. Supp. 320, 325 (E.D.N.Y. 2010) (precluding prior alleged misconduct where, "[a]t most, the alleged insider trading violations serve as the first step in a strained 12-year long chain-of-causality which, ultimately led [the defendant] to decide to commit the charged offenses.").

The prosecution further claims that Mr. Tomita's Tiger Asia-related testimony is necessary to show that Mr. Tomita knew that market manipulation was unlawful. Such testimony, of course, is unnecessary. As this Court previously noted, if the prosecution proves manipulation against a defendant, it does not need to prove that the defendant was put on notice of it. In any event, the prosecution need not use evidence laden with criminal-propensity inferences to prove Mr. Tomita's knowledge that market manipulation is unlawful. It has evidence at its disposal that he participated in compliance sessions in which he received such

legal warnings and has already introduced a compliance manual with those warnings, training decks with even more explanations of what constitutes market manipulation, and related testimony from a former Archegos compliance officer.

The prosecution's final attempt to manufacture an excuse for introducing this more than decade-old Tiger Asia evidence fares no better: that the defense opened the door to it. But the defense could not have possibly opened the door to such long-past conduct on a foreign exchange's closing auction that bears no reasonable resemblance to the alleged conduct at Archegos.

Significantly, the introduction of the Tiger Asia evidence also would cause undue delay and waste time, further warranting exclusion under Federal Rule of Evidence 403. It would require testimony from lay and expert witnesses about the procedures at one foreign securities exchange (and as many as three), the differences between the Tiger Asia trades and the Archegos trades, the differences between closing auctions in the Hong Kong exchange and U.S. exchanges, not to mention a significantly extended cross-examination of Mr. Tomita and the impeachment of hearsay declarant, Raymond Park, who is the author of the prosecution's cherry-picked documentary evidence.

In the end, the prosecution's attempt to once again introduce Tiger Asia evidence is an improper effort to shore up holes in its case with classic propensity evidence. And clear legal authority makes this salvo no more persuasive than its prior bids.

## II.     Relevant Background

At the May 6, 2024 oral argument addressing the introduction of Tiger Asia evidence through Mr. Tomita, the Court made clear that it would not permit Tiger Asia evidence to "swallow up" the trial or "overshadow what happens in Archegos." Oral Argument Tr. at 14:5-7 (May 6, 2024). The Court warned, "This is a hard enough case to try, but it is going to involve Archegos. Not anything else. Not investment advisors. Not Tiger management. Not what the SEC does or anything else. It's going to deal with transactions and statements and words that deal with Archegos." *Id.* at 26:7-17. The Court told the prosecution, "[y]ou want to show a method, you can show a method. If you want to show a plan, you can show a plan. But you have to elicit it by testimony." *Id.* at 22:13-15. With respect to Tiger Asia documents, which are more than a decade old, the Court explained that the defense "is correct that each one of these [trading documents] will set off a trial in itself" and that "[w]e are not going to have mini trials of each of these particular aspects." *Id.* at 21:2-7.

## III.    Testimony of Mr. Tomita and Related Documentary Evidence Regarding Tiger Asia Are Inadmissible to Show Background of the Charged Conspiracy or Preparation, Plan, Knowledge, and Intent

The prosecution nevertheless seeks to try a Tiger Asia market-manipulation case that will "swallow up" the trial and "overshadow what happen[ed] in Archegos." It fails to contend with factual differences between the Hong Kong closing auction and U.S. exchanges that make the Tiger Asia evidence not probative and thus inadmissible. And it thereby injects overwhelming unfair prejudice into the trial, attempting to tie the alleged market manipulation at Archegos to

the mere fact of an investigation of Tiger Asia a decade earlier, and endeavoring to bridge a nearly 12-year gap in alleged market misconduct on the basis of a single document from the DNJ's and SEC's long-closed parallel investigations.  Moreover, it fails to account for the time it would take to try these Tiger Asia allegations.  It would require testimony from lay and expert witnesses about the operations of foreign securities exchanges, the details of the underlying Tiger Asia transactions, the application of the long-defunct Hong Kong closing auction's rules to Tiger Asia's transactions, and the impeachment of hearsay declarant Raymond Park.  It would indeed be a trial within a trial.

For starters, the prosecution glosses over the factual differences between the Hong Kong closing auction and U.S. exchanges that make the alleged conduct at Tiger Asia insufficiently similar to warrant admission in this trial.  As the defense has briefed previously to this Court, the Hong Kong closing auction was an experiment that lasted a mere ten months before it was shut down for lack of "orderliness, fairness, and transparency."[2]  The ten-minute auction was nothing short of a free-for-all.  During the last two minutes, only market orders were accepted—*i.e.*, orders with limit prices were prohibited.[3]  And no order could be modified or cancelled during the last two minutes.[4]  Not only do U.S. exchanges, like the New York Stock Exchange and Nasdaq, not have an analogous closing auction process, even Hong Kong does not have one anymore.

Failing to account for the differences between U.S. exchanges and the short-lived and dysfunctional Hong Kong closing auction, the prosecution proposes to present Mr. Tomita's testimony along with a selected document—an email from hearsay declarant Raymond Park—as evidence that Mr. Hwang directed his traders to make "large trades in the auction with no limit price."  Govt Ltr. at 3.  The implication is that placing a large order with no limit price is proof of market manipulation.  But, as the rules of the Hong Kong auction made clear, no orders with limit prices were permitted in the final two minutes of the auction.  Thus, no unlawful inference of market manipulation can fairly be drawn from such orders.  And to make matters even more complicated and confusing, the prosecution seeks to use this document to elicit testimony about trading in Japan and South Korea, Govt Ltr. at 3, which would require additional lay and expert testimony to rebut any unfair negative inferences.

---

[2] Press Release, *HKEx Proposes to Suspend Securities Market's CAS from 23 March*, Hong Kong Exchanges and Clearing Limited (Mar. 12, 2009).

[3] Consulting Paper, *The Introduction of a Closing Auction Session*, Hong Kong Exchanges and Clearing Limited at 8 (March 2007), https://www.hkex.com.hk/-/media/HKEX-Market/News/Market-Consultations/2006-to-2010/March-2007-Consultation-Paper/Consultation-paper/c_auction_e.pdf; Press Release, *HKEx Publishes Consultation Conclusions on the Proposed Introduction of a Closing Auction Session for its Securities Market*, Hong Kong Exchanges and Clearing Limited (July 19, 2007), https://www.hkex.com.hk/News/News-Release/2007/070719news?sc_lang=en.

[4] HKEx Consulting Paper, *supra* fn. 3 at 8; HKEx Press Release, *supra* fn. 3.

Further, even if the Hong Kong auction and auctions on U.S. exchanges *were* similar (and they were not), no inference about Mr. Hwang's conduct in this case could be drawn from his end-of-day trading instructions at Tiger Asia because the testimony at trial has demonstrated that the nature of Mr. Hwang's instructions was substantially different. As the prosecution's expert witness, Dr. Taveras, testified, Archegos used limit orders "98 percent of the time" to place its trades. Trial Tr. 2119:18-19 (May 30, 2024). And "of the 8 million or so" Archegos trades that Dr. Taveras reviewed, "only about 300 or so were in the closing cross" or closing auction. *Id.* at 2125:5-9.[5] That equates to *0.00375%* of all trades or approximately *zero* percent. Indeed, Dr. Taveras did not even include the closing auction in her charts of Archegos's trading, "because Archegos never traded in the closing auction or almost never traded." *Id.* at 2328:18-22. In other words, Archegos virtually never traded in closing auctions and barely used market orders, the two purported vehicles of manipulation at Tiger Asia about which the prosecution seeks to present evidence. It is thus hard to see how purportedly manipulative instructions by Mr. Hwang in 2008-09 to place market orders, with no limit price, in the Hong Kong closing auction could have any bearing on how Mr. Tomita understood instructions by Mr. Hwang in 2020-2021—*nearly 12 years later*—to place orders for trades near the end of the trading day—but *not* at the closing auction—with a limit price. That is particularly the case given that the alleged motive for this conduct at Tiger Asia—to boost the value of the portfolio at month end in order to earn higher management fees—is entirely absent at Archegos, a family office with no outside investors.

These substantial factual differences notwithstanding, the prosecution nonetheless argues that it should be permitted to elicit testimony from Mr. Tomita concerning two types of instructions that Mr. Hwang allegedly gave to Mr. Tomita at Tiger Asia: "instructions about 'marking the close,'" and "instructions about getting trading capacity." Govt Ltr. 2. According to the prosecution, these instructions are admissible because (1) they will "inform the jury of the background of the conspiracy charged" and (2) they are "probative of Mr. Hwang's preparation, plan, knowledge, and intent." *Id.* at 4. The prosecution is wrong.

First, the substantial differences described above mean that Mr. Tomita's proposed testimony cannot "inform the jury of the background of the conspiracy charged." Govt Ltr. at 4. Conduct that occurred nearly 12 years before the schemes charged in the indictment allegedly began, involved different alleged co-conspirators, and concerned different securities traded on different, foreign exchanges, using different trading techniques, cannot constitute background evidence "necessary to complete the [i]ndictment's story" of the crimes on trial. *See United States v. Levy*, No. S5 11 Cr. 62 (PAC), 2013 WL 655251, at *1 (S.D.N.Y. Feb. 22, 2013) (evidence of defendants' prior FTC fraud not admissible "as background to the charged conspiracy" because it "involved a separate, discrete incident of fraud or deceit that [wa]s not inextricably intertwined with the Indictment's charges or necessary to complete the Indictment's story"). The prosecution concedes that Mr. Tomita was not a member of a purported Tiger Asia criminal conspiracy in 2008-09,[6] yet posits that criminal instructions were implanted in Mr.

---

[5] As Dr. Taveras testified, the term "closing cross" or "closing auction" refers to "an auction where the closing price of a security is set on a daily basis." *Id.* at 2124:21-2125:1.

[6] *See* ECF No. 164-1 at 1.

Tomita and laid dormant for a dozen years, only to spring to life like some form of criminal cicada. The theory simply strains credulity.

Second, and for substantially the same reasons, such evidence from 2008-09 cannot be "probative of Mr. Hwang's preparation, plan, knowledge, and intent" to manipulate U.S. markets in 2020-21. Govt Ltr. at 4. *See Curley,* 639 F.3d at 57 (other acts must be "'sufficiently similar to the conduct at issue to permit the jury reasonably to draw . . . the [state of mind] inference advocated by the [prosecution]'"); *Gordon,* 987 F.2d at 909 (abuse of discretion to admit evidence of other acts that were not "sufficiently similar" and thus "did virtually nothing to prove" defendant's knowledge).

Even if Mr. Tomita's proposed Tiger Asia testimony were minimally relevant (and it is not), its probative value would be far outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time under Rule 403. The prosecution "anticipates that Mr. Tomita will testify that he understood the unlawful nature of certain of the trading practices that Mr. Hwang directed him to undertake between 2020 and 2021 . . . because Tiger Asia had come under investigation for those same trading practices and had been forced to return outside capital." Govt Ltr. at 5. But it is not the case that Tiger Asia came under investigation for the same trading practices as this case, as the wholly dissimilar closing auction rules in Hong Kong and the absence of virtually any closing-auction trading at Archegos make clear. And, critically, the fact that Tiger Asia was the subject of investigations is not probative of any unlawfulness or wrongdoing. *See Gray v. Alpha and Omega Semiconductor Ltd.*, No. 20 Civ. 2414 (RA), 2021 WL 4429499, at *9 (S.D.N.Y. Sept. 27, 2021) (court did not "infer wrongdoing" of defendants "from the mere existence of an investigation" because "the fact that the government is probing [defendant]'s conduct for wrongdoing cannot be enough to establish that wrongdoing has been or will be found"); *cf. United States v. Velez-Vasquez*, 116 F.3d 58, 60 (2d Cir. 1997) (approving jury instruction that an indictment "is simply an accusation in writing," is "not evidence of guilt," and is "entitled to no weight in deciding the facts of the case"). The impermissible inferences from the fact of an investigation would unfairly prejudice Mr. Hwang, and the prosecution must be precluded from using such propensity testimony to bolster its case. *See Curley*, 639 F.3d at 57 (other act evidence is improper if "offered to who the defendant's propensity to commit the offense").

Furthermore, the introduction of the Tiger Asia evidence would cause undue delay and waste time. The prosecution's proposal would require fact and expert testimony, and implicate legal issues, about the operation of the Hong Kong, Japanese, and South Korean securities exchanges, and the securities laws and regulations governing those foreign jurisdictions, so that the jury would not be misled to believe that wholly appropriate trading was somehow unlawfully manipulative. Aside from rigorous cross-examination of Mr. Tomita, the Tiger Asia evidence would require testimony from lay and/or expert witnesses about the operations of foreign securities exchanges, the details of the transactions themselves, the application of the Hong Kong closing auction's short-lived and idiosyncratic rules to Tiger Asia's transactions, and hearsay declarant Raymond Park. The prosecution cannot avoid this obligation by seeking to rely on a single cherry-picked document that purportedly reinforces its interpretation of the evidence. *See United States v. Stein*, 521 F. Supp. 2d 266, 270 (S.D.N.Y. 2007) (rejecting the prosecution's "unduly optimistic" attempts to "minimize the prejudicial effect . . . by arguing that proof of the uncharged [acts] would be simple and short" where it "could not avoid tackling the complicated

task of explaining the transactions because its probative value, if any, would be contingent upon establishing sufficient similarity"). The prosecution fails to acknowledge that admission of this document and Mr. Tomita's related testimony would require the defense to offer rebuttal evidence to give context to discussions at Tiger Asia that refute the prosecution's allegations regarding Mr. Hwang's alleged manipulative intent in 2008 and 2009, as well as expert witnesses to explain the rules and regulations governing the Hong Kong, Japanese, and South Korean exchanges. In short, the prosecution seeks to have a trial within a trial to prove instances of market manipulation at Tiger Asia that U.S. prosecutors declined to prosecute more than a decade ago after a full investigation.

## IV. The Tiger Asia Evidence is Inadmissible to Show that Mr. Tomita Knew Certain Actions Were Wrongful

The prosecution also contends that "Mr. Tomita will testify that he came to understand that certain trading activity, including marking the close, was wrongful and unlawful because of the investigation into Tiger Asia that caused Mr. Hwang to return outside investors' money and to operate going forward as a family office." Govt Ltr. at 2. Such testimony is wholly unnecessary for two reasons.

First, as the Court correctly noted when the prosecution similarly argued that the Tiger Asia investigations put Mr. Hwang on notice that his conduct was wrongful, "the prejudicial effect far outweighs the relevance of that point," and observed that "[i]f you prove a manipulation, you don't have to prove that he was put on notice before that something he did could be considered a manipulation." Pre-Trial Conference Tr. at 66:15-20 (Apr. 11, 2024). That same reasoning applies here. The prosecution does not need to prove that Mr. Tomita was aware that certain conduct constituted market manipulation to show that he and Mr. Hwang conspired to artificially inflate stock prices. The relevant inquiry is whether Mr. Hwang intended to manipulate the market at *Archegos*, not at Tiger Asia.

Second, even if Mr. Tomita's understanding that certain conduct constituted unlawful market manipulation were relevant, the prosecution can establish this fact by showing that Mr. Tomita participated in a compliance training covering market manipulation just months before the start of the charged conspiracy. This training, conducted in September 2019 and again in September 2020, informed Mr. Tomita that "Market and Price Manipulation" was "a violation of securities laws"; "Marking the Close" was a "Manipulative Practice[]"; and "[l]arge quantities of orders entered on opposing sides" would "draw the regulators' attention." SDNY_P004_0000056169 at 56174-77 (2019 training); GX-277-R at 20-22 (2020 training). And the prosecution has already admitted a compliance manual with those warnings, training decks with full explanations of market manipulation, and related testimony from Fernanda Piedra, an Archegos compliance officer. *See* GX-274; Trial Tr. at 1784:10-1788:25 (May 29, 2024). If the prosecution seeks to present evidence that Mr. Tomita knew certain acts were unlawful, it can do so without taking a long and unfairly prejudicial detour into criminal conduct allegedly committed by Mr. Hwang. *See United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009) (district court abused its discretion by admitting evidence of prior convictions as "propensity evidence in sheep's clothing … with insufficient regard for the unfair prejudice that surely would result" when the prosecution had non-prejudicial evidence available to prove intent and knowledge) (citation omitted).

V.  **The Defense Did Not Open the Door to Irrelevant Testimony That is Inadmissible Under Rule 404(b)**

Finally, the prosecution claims that defense arguments about Mr. Hwang's longstanding trading strategy at Archegos of concentrating in a small number of stocks entitle it to introduce Tiger Asia evidence because "those trades [] show Mr. Hwang's intent here." Govt Ltr. at 5. The prosecution is wrong again. More than decade-old conduct involving different order types, different trading mechanisms, and different exchanges with different rules has no bearing on Mr. Hwang's intent during the relevant period. Simply put, the defense cannot have opened the door to past acts that are so different from the at-issue conduct that they cannot plausibly shed light on the charged crimes. *See Gordon*, 987 F.2d at 908-09 (because "the probative value of the proffered evidence depends largely on whether or not there is a close parallel between the crime charged and the acts shown," "it is an abuse of discretion for the trial court to admit other act evidence if the other act or acts are not sufficiently similar to the conduct at issue") (internal quotation marks and citations omitted); *Curley,* 639 F.3d at 56-57 (same).

\* \* \*

For the foregoing reasons, Mr. Hwang respectfully requests that the Court preclude the prosecution from offering evidence through William Tomita relating to Tiger Asia.

Respectfully submitted,

*/s/ Barry H. Berke*

Barry H. Berke
Dani R. James
Jordan Estes
Michael Martinez

cc:   Counsel of record