UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/7/25
```

UNITED STATES OF AMERICA,

    -against-

SUNG KOOK (BILL) HWANG and
PATRICK HALLIGAN,

    Defendants.

22-CR-240 (AKH) (BCM)

**SCHEDULING ORDER**

**BARBARA MOSES, United States Magistrate Judge**.

    The purpose of the Phase I hearing, scheduled for **May 9, 2025 at 10:00 a.m.**, is to determine which former Archegos employees are "victims" for purposes of restitution under the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663(A)(a)(2). That question, in turn, implicates two distinct factual issues, addressed below. Moreover, those questions must be answered with respect to both the individuals for whom the Government seeks restitution – a group now numbering 40 – and one additional former Archegos employee, Dave Park, who made his own claim for restitution after the Government has declined to seek restitution on his behalf.

    **1**.    **Knowing Participation**

    The law is clear – and the parties agree – that any employee who knowingly participated in defendants' criminal conduct is not a victim under the MVRA and thus is not eligible for restitution in any amount. *See United States v. Reifler*, 446 F.3d 65, 127 (2d Cir. 2006) ("coconspirators" cannot be victims within the meaning of the MVRA); Gov. Rest. Mem. (Dkt. 409) at 15, *id*. at 21 & n.1; Hwang Rest. Mem. (Dkt. 408) at 27. The law is equally clear, in our Circuit, that it is the Government's burden to show, by a preponderance of the evidence, "that each alleged victim was actually a 'victim.'" *United States v. Archer*, 671 F.3d 149, 172 (2d Cir. 2011). In many cases, this can be done categorically. But where it is "plausible" that some of the

individuals who claim to be victims were in fact knowing participants and thus ineligible for restitution, "the government must proffer some individualized evidence to meet its burden[.]" *Id*.

After careful review of the parties' restitution memoranda, together with the extensive record materials appended thereto, I conclude that it is "plausible" that two of the individuals identified by the Government as victims were knowing participants in the criminal conduct. I reach this conclusion because, as defendant Hwang points out, the Government was at one point "undecided" about whether these two employees were "'innocent victims entitled to restitution' or knowing participants," Hwang Rest. Mem. at 26-27, and because there is nothing in the trial record – or in the victim statement submitted by their counsel – upon which the Court could rely to find that the Government correctly resolved its doubts in favor of restitution.[1] Consequently, the Government must present individualized evidence supporting its current view that these two employees are "innocent" of the offense conduct. Gov. Rest. Mem. at 15.

The Court cannot – and does not – require that the two former Archegos employees testify. *See* 18 U.S.C. § 3664(g)(1). Defendant Hwang is correct, however, that subsection (g)(1) "does not preclude a court from hearing testimony from a willing victim," nor "excuse the government from its obligation to produce sufficient evidence to prove [entitlement to] restitution by a preponderance." Hwang Rest. Mem. at 23. If the two employees are unwilling to testify, the Government may be able to discharge its burden as to these two employees through other evidence, for example, testimony from others with knowledge of their role at Archegos.

---

[1] Where, as here, "the prosecution's burden of proof would require it to prove a negative and the facts at issue are more readily ascertainable by the defendant," the Court may appropriately look to the defendant "to assume a burden of production of evidence that presents at least a triable issue as to the fact at issue, at which point the burden of persuasion must be assumed by the prosecution." *Archer*, 671 F.3d at 173. In this case, defendants do not suggest that any of the employees identified as victims by the Government (other than the two discussed above) were knowing participants in the criminal conduct.

No later than **5:00 p.m. on May 8, 2025**, the Government must advise the Court and defendants whether it will present testimony at the Phase I hearing as to these two employees and, if so, it must identify its witness(es). Additionally, if the Government chooses to submit new documentary evidence as to whether these two employees were knowing participants in the criminal conduct, it must supply that evidence to the Court and to defendants no later than **5:00 p.m. on May 8, 2025**.

    2.    **Coercion**

Most of the former Archegos employees newly identified by the Government as victims (in January 2025) "participated only in Archegos's mandatory deferred compensation program," Hwang Rest. Mem. at 10, which required that they defer 25% of each annual bonus, to be invested in the Archegos fund for a minimum of four years. In other words, the money they lost when Archegos failed was money they had no choice but to invest in defendants' enterprise. However, sixteen of those employees also participated in the firm's elective deferred compensation plan, which permitted them to defer and invest a total of up to 50% of their 2018 bonus and up to 60% of their 2019 and 2020 bonuses, and/or chose in late 2019, to re-defer their 2016 investments (which they could otherwise have withdrawn in January 2021). *Id*. at 10-11.

As to these sixteen, defendant Hwang contends that the Government must present testimony or other individualized "proof of coercion" before any restitution can be awarded for the loss of their elective or re-deferred contributions. *Id*. at 16-17. In Hwang's view, this is "the law of the case," based on statements made by the district judge during sentencing proceedings on December 19, 2024 and January 27, 2025, "and therefore binding precedent." *Id*. at 16. He further argues that the Court cannot rely on the existing record for this purpose. *Id*. at 18-22.

The Government takes a very different view, arguing that nothing in the MVRA requires it to prove that the employees were "coerced or pressured into contributing," Gov. Rest. Mem. at 17, and that the district judge's inquiries and comments during the sentencing proceedings did not constitute a ruling on this point. *Id*. at 18; *see also id*. at 2 (the district judge did not create a "new rule of law that imposes on victims and the Government the responsibility to prove that they were coerced into their losses"). The Government adds that if a finding of coercion is required, "there is ample basis in the [existing] record to make that finding as to all employee victims." *Id*. at 20. The Government thus asserts – as it did during the May 7, 2025 conference before this Court – that it has no need or obligation to present any further evidence as to coercion. *Id*. at 21; *see also* 4/7/25 Tr. at 11:11-23.

This Court agrees with the Government as to the requirements of the MVRA. As used in that statute, "the term 'victim' means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2). "Courts have interpreted this language to impose cause-in-fact and proximate cause requirements, respectively." *United States v. Goodrich*, 12 F.4th 219, 229 (2d Cir. 2021). "Cause-in-fact," that is, but-for cause, is not seriously disputed in his case. But for defendants' offense conduct, the Archegos fund would not have imploded in late March 2021, destroying the value of the employees' deferred compensation accounts.

As to proximate cause, the key question is whether "the harm alleged has a sufficiently close connection to the conduct," *Robers v. United States*, 572 U.S. 639, 645 (2014) (citation omitted), "which we evaluate based on whether that harm was 'foreseeable' to a defendant." *Goodrich*, 12 F.4th at 229. Victims are not required to show that they acted non-negligently, *see United States v. Zafar*, 291 F. App'x 425, 429 (2d Cir. 2008) (summary order), nor that they

attempted to mitigate their damages. *See United States v. Holland*, 394 F. App'x 766, 768 (2d Cir. 2010) (summary order); *United States v. Agnew*, 171 F. App'x 376, 397 (2d Cir. 2006) (summary order). Moreover, it is uncontroversial that where innocent investors incur losses in a market manipulation scheme – which is, in essence, the contention here – the fact that they made those investments voluntarily, in hopes of profit, is no bar to restitution. *See*, *e.g.*, *United States v. Goodrich*, 12 F.4th 219 (2d Cir. 2021).[2]

Here, there is no question that defendants were aware of the employees' "deferral balance," which they tracked on a daily basis and utilized – alongside Hwang's own capital – to fuel their unlawful trading. *See* Rothman Decl. Ex. P (Dkt. 410-12.) In my view, therefore, there is no principled distinction to be made between innocent employees who lost their deferred compensation because they were *required* to invest it in the Archegos fund and innocent employees who lost their deferred compensation because they *chose* to do so (or chose not to withdraw a portion of it when they had the opportunity to do so in late 2019), trusting that the fund would be operated in accordance with the law. In both cases, the resulting loss was entirely foreseeable to defendants "in the course of committing the offense[s] of conviction." *Goodrich*, 12 F.4th at 223.

That said, there is no guarantee that the district judge will agree with my assessment. Moreover, I concur with defendants that neither the evidence presented at trial nor the victim

---

[2] In *Goodrich*, the defendant was convicted of conspiring to manipulate the market for the stock of a company called Cubed. In the district court, the Government obtained an order of restitution as to all losses sustained by Cubed investors as a result of the manipulation, including those who purchased unrestricted Cubed shares on the public OTC market and those who purchased restricted shares through a private placement orchestrated by a co-defendant. 12 F.4th at 227. On appeal, the Second Circuit held that the losses of the private placement investors were too remote to require restitution, because there was little evidence that Goodrich "even knew or foresaw that a private placement was occurring." *Id*. at 232. However, the appellate court did not disturb the restitution order as to the OTC purchasers.

statements submitted to date show that all sixteen employees who made elective deferral or re-deferral decisions did so as a result of coercion or pressure from the defendants. Consequently, although the Government previously indicated that, if requested to present individualized coercion evidence, it would "preserve the matter for a cross-appeal, rather than attempt to adduce evidence from each of the victims that they each felt pressured," 4/7/25 Tr. at 11:16-21, I will provide the Government with one more opportunity to present testimony or other individualized evidence of coercion – particularly as to those employees who did not submit victim statements or did not address the coercion issue in their victim statements.

No later than **5:00 p.m. on May 8, 2025**, the Government must advise the Court and defendants whether it will present testimony or new documentary evidence at the Phase I hearing as to whether the elections made by sixteen employees challenged by defendant Hwang (or some subset thereof) were coerced rather than truly voluntary. If so, it must identify the witnesses and supply the new documentary evidence to the Court and to defendants no later than **5:00 p.m. on May 8, 2025**.[3]

### 3. Dave Park

In his April 18, 2025 letter-brief (4/18/25 Park Ltr.) (Dkt. 406), which was filed unsealed and unredacted on the docket of this action, Park argues that the Government has "failed to establish by a preponderance of the evidence that [he] was a knowing participant in the conspiracy charged by the Government," and therefore that the Court should "reject the government's demand that Mr. Park be excluded from inclusion in the District Court's final restitution order." 4/18/25

---

[3] Alternatively, if the Government wishes to present new evidence as to coercion but requires more time to gather that evidence, it may, after conferring with defense counsel, propose an adjourned date for a "Phase IB" hearing on that issue, in which case the May 9 hearing will cover the remaining issues discussed herein.

Ltr. at 1; *see also id*. at 6 ("the government's assertion that Mr. Park was a co-conspirator . . . is entirely speculative and otherwise fails to prove Mr. Park's knowing and intentional participation in the alleged conspiracy by a preponderance of the evidence.") Mr. Park also advises the Court that he is prepared to testify at the Phase I hearing, *id*., and previews some of the facts to which he will presumably testify under oath. *Id*. at 1, 3-4.

The MVRA does not expressly assign the burden of proof (or, for that matter, the burden of production) where, as here, a self-identified victim seeks restitution but the Government is unwilling to request an award on that individual's behalf. It thus falls to the Court to allocate these responsibilities "as justice requires." 18 U.S.C. § 3664(e). It cannot be the case, however, that every self-proclaimed victim must be accepted as such under the MVRA unless the Government *disproves* that claim. Rather, if the Government is unwilling to persuade the Court "that each alleged victim was actually a 'victim,'" *Archer*, 671 F.3d at 172, it falls to the claimant himself to shoulder that burden. *See United States v. Smathers*, 879 F.3d 453, 460 (2d Cir. 2018) ("As a general matter, the burden of proof as to a given issue is normally placed on the party that has an affirmative goal and presumptive access to proof.") (citing *United States v. Technodyne LLC*, 753 F.3d 368, 380 (2d Cir. 2014)).

Consequently, unless Mr. Park advises the Court (and the parties) otherwise no later than **5:00 p.m. on April 8, 2025**, he will be expected to testify at the Phase I hearing – at least as to his claim that he was not a knowing participant in the criminal conduct at issue.[4] Additionally, if Mr.

---

[4] For the same reasons discussed above (in connection with the Government's victim list), I do not believe that Mr. Park is required to establish that he was pressured or coerced into participating in the elective deferral plan. However, I will not prohibit questioning on this topic by the parties – whether or not Mr. Park addresses the issue on direct examination.

Park intends to submit new documentary evidence at the Phase I hearing, he must supply that evidence to the Court and to the parties no later than **5:00 p.m. on May 8, 2025**.

If the parties cannot resolve any remaining issues regarding the sequencing of their presentations and related issues during the Phase I hearing, the Court will set aside time at the outset of the proceeding for that purpose.

Dated: New York, New York
      May 7, 2025                      **SO ORDERED.**

_____
**BARBARA MOSES**
**United States Magistrate Judge**