

MARY E. MULLIGAN
mmulligan@fklaw.com
212.833.1123

July 15, 2025

**VIA ECF**

Hon. Alvin K. Hellerstein
United States District Judge
Daniel Patrick Moynihan
  United States Courthouse
500 Pearl St.
New York, NY 10007-1312

        Re:    <u>United States v. Hwang, Halligan</u>, No. 22-cr-240-AKH

Dear Judge Hellerstein:

      We are counsel to defendant Patrick Halligan. We write pursuant to the Court's Order of July 2, 2025, seeking the parties' final submissions as to matters related to restitution and sentencing. [ECF No. 443.]

### I. Introduction

      Mr. Halligan has been convicted of serious offenses, and he will face very substantial punishment: eight years of imprisonment, over $3 billion in restitution, and $2,085,000 in criminal forfeiture.[1] The only issue that remains open regarding his sentencing is the manner and schedule pursuant to which restitution shall be paid, as provided by 18 U.S.C. § 3664(f)(2) ("Upon determination of the amount of restitution owed to each victim, the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid . . .").

      For the reasons set forth in this submission, Mr. Halligan respectfully submits that the restitution order proposed herewith as Exhibit A affords fair and correct consideration of his "(A) financial resources . . . including whether any of these assets are

---

[1] Mr. Halligan recognizes that these matters have been determined by the Court over Mr. Halligan's various objections. This includes, among other objections, his objections to any award of restitution, as well as the apportionment of restitution as among the co-defendants. (*See* ECF No. 445, at 5-6.) Mr. Halligan does not now seek to relitigate issues that the Court has previously decided, but reserves his appellate rights as to these and all other matters. In that connection, by proposing a restitution order here that attempts to reflect the rulings the Court has previously rendered throughout Mr. Halligan's sentencing proceedings, we do not waive Mr. Halligan's appellate rights as to those prior rulings.

Hon. Alvin K. Hellerstein — - 2 - — July 15, 2025

jointly controlled; (B) projected earnings and other income . . . ; and (C) [] financial obligations." 18 U.S.C. § 3664(f)(2).

Under the restitution order proposed here, Mr. Halligan would transfer to the Clerk of Court to be held in escrow pending the determination of his expedited appeal his interests in: (i) *all* of his individually held and jointly held financial accounts, with limited exceptions to provide for his appellate legal fees and costs, as well as his family's reasonable educational and medical expenses; (ii) the proceeds from the sale of his family's vehicles, except those that his family members use for necessary day-to-day transportation, including to work and school; and (iii) 15% of his gross monthly employment income. *See* Ex. A.

Counsel for Mr. Halligan has conferred with the government regarding the terms of the restitution order attached hereto as Exhibit A, and the government has advised that its only objection to the proposed order is that the government opposes the establishment of an escrow arrangement to hold assets pending Mr. Halligan's appeal; aside from that objection, the government does not object to any term of the proposed restitution order. For the reasons set forth herein, Mr. Halligan respectfully requests that the Court adopt the restitution order attached as Exhibit A hereto.

## II. The Restitution Order Must Provide a Procedure and Schedule that Accounts for Mr. Halligan's Financial Resources and Obligations

The procedure and schedule governing Mr. Halligan's restitution payments should begin from the reality that there is substantially no prospect that he will ever be able to fully satisfy the $3.1 billion obligation that the Court has ordered. (*See* ECF No. 445, at 5-6.) Given the enormity of this obligation, a fair and just payment procedure must account for what is realistic and possible given Mr. Halligan's financial resources, while also "guard[ing] against the possibility of wreaking undue depredations upon [his] innocent family." *United States v. Golino*, 956 F. Supp. 359, 363 (E.D.N.Y. 1997) (citing *United States v. Johnson,* 964 F.2d 124, 128–29 (2d Cir. 1992)). We respectfully submit that the proposed restitution order affords full respect to the Court's determinations as to the identification of the victims and their losses under the Mandatory Victims Restitution Act ("MVRA"), while also affording due consideration to Mr. Halligan's resources and needs, including his family circumstances.

Consideration of the defendant's financial circumstances is mandatory when determining a restitution payment schedule. *United States v. Hagerman*, 506 F. App'x 14, 21 (2d Cir. 2012) ("the court is *obligated* to set the defendant's restitution payment schedule 'in consideration of ... the financial resources and other assets of the defendant'") (emphasis added, citing 18 U.S.C. § 3664(f)(2)). The statute provides, in relevant part, that after the Court has determined the amount of restitution owed to each victim, it:

Hon. Alvin K. Hellerstein      - 3 -      July 15, 2025

> *shall*, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of--
>
> > (A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;
> >
> > (B) projected earnings and other income of the defendant; and
> >
> > (C) any financial obligations of the defendant; including obligations to dependents.

18 U.S.C. § 3664(f)(2) (emphasis added); *United States v. Slate*, 207 F. App'x 664, 665 (7th Cir. 2006) (vacating restitution order based on "district court's failure to consider [defendant's] resources" when setting restitution payment schedule); *cf.* U.S.S.G. § 5H1.6 ("Family responsibilities that are complied with may be relevant to the determination of the amount of restitution or fine."). As part of this consideration, courts have explained that "it is desirable, when sentencing [including restitution payment schedules], to avoid unnecessarily harming innocent family members." *Golino*, 956 F. Supp. at 362.

    **III.**      **The Proposed Restitution Order Affords Appropriate Consideration to Mr. Halligan's Financial Resources and Family Circumstances**

    **A. Relevant Financial and Family Circumstances**

Mr. Halligan's financial and family circumstances are described in our prior submissions, including our sentencing submission of January 17, 2025 [ECF No. 380] and most recently our letter of February 3, 2025 [filed under seal]. We incorporate those submissions here, and highlight only several of the key financial and family circumstances that should be taken into account in fashioning a fair, just, and appropriate restitution payment schedule. *See United States v. Hollman Cheung,* 952 F. Supp. 148, 151 (E.D.N.Y. 1997) ("The law requires that in fixing restitution the court consider the on-going financial needs of defendant's spouse and dependent children.").



Hon. Alvin K. Hellerstein        - 4 -        July 15, 2025





Hon. Alvin K. Hellerstein    - 6 -    July 15, 2025



### B. The Proposed Restitution Order

The proposed restitution order achieves the objectives of the MVRA, while affording statutorily appropriate consideration to Mr. Halligan's financial and family circumstances. Below, we explain how the proposed order would function (including by ensuring that assets subject to restitution are held in escrow pending Mr. Halligan's expedited appeal) and how it addresses each category of Mr. Halligan's assets in the circumstances of this case and his family's individual circumstances.

> 1. *Assets Subject to Restitution Would Be Transferred to the Clerk of Court to be Held in Escrow Pending the Determination of Mr. Halligan's Expedited Appeal*

First, in response to the Court's inquiry regarding Mr. Halligan's position as to the establishment of an escrow arrangement to hold assets that he transfers or liquidates to satisfy his restitution obligation, the restitution order attached here as Exhibit A adopts such an arrangement. Under the proposed order, assets that Mr. Halligan transfers to the Clerk of

Hon. Alvin K. Hellerstein - 7 - July 15, 2025

Court prior to the determination of his expedited appeal would be held in escrow, and would not be disbursed to victims pending the determination of his appeal.

This escrow arrangement is necessary and appropriate to ensure that, in the event the Second Circuit determines certain issues in Mr. Halligan's favor, these assets remain available for return to Mr. Halligan or such other disposition as the Second Circuit may direct.

This escrow arrangement would ***not*** stay Mr. Halligan's requirement to make payments and to satisfy his restitution obligation. To the contrary, the proposed restitution order would require Mr. Halligan to transfer his interests in substantially all of his financial accounts within 30 days from entry of judgment, and the proceeds from the sale of family vehicles within 60 days from the entry of judgment, and would also require him to remit 15% of his gross employment income each month that his appeal is pending. *See* Ex. A. The escrow arrangement would, however, require that the disbursement of these assets be stayed pending the determination of Mr. Halligan's appeal. This mechanism is appropriate under the relevant stay factors. *See United States v. Cosme*, 2024 WL 4202495, at *1 (S.D.N.Y. Sept. 16, 2024) (explaining that courts "examine[] four factors when considering a motion to stay restitution payments: 1) the likelihood of success on appeal; 2) whether the applicant will be irreparably injured absent a stay; 3) whether issuance of the stay will substantially injure other parties interested in the proceeding; and 4) where the public interest lies.") (citation omitted).

Most critically, an escrow arrangement is necessary to protect against the risk that assets will be distributed as restitution and not later recoverable by Mr. Halligan in the event of a reversal by the Second Circuit, thus causing substantial irreparable harm to Mr. Halligan and his family.[3] *See United States v. Yalincak*, No. 05CR153 (JBA), 2015 WL 6456537, at *3 (D. Conn. Oct. 26, 2015) (granting stay of distribution of certain restitution amounts, holding that "recouping the garnished funds from [victim] after they have been distributed to him would be difficult, if not impossible"). The modest delay in the distribution of restitution payments to victims during the pendency of an expedited appeal would not cause substantial injury to them because the assets from which the payments would be made (if the Second Circuit affirms) would be safely secured in escrow and thus not subject to dissipation during the appeal. Likewise, the public interest in ensuring that victims receive the restitution to which they are entitled would be fully honored by ensuring that assets are secure against dissipation during appeal, while at the same time protecting against the risk of later litigation if restitution is disbursed before the Second Circuit has had the opportunity to review the issues presented on appeal. *Cf. United States v. Silver*, 203 F. Supp. 3d 370, 385

---

[3]  This Court has previously observed that there are "a lot of appealable issues" in this case. 11/20/24 Tr. at 43; *see also* 11/21/24 Tr. at 109 ("there are certainly very good arguments to make" before the Second Circuit).

Hon. Alvin K. Hellerstein	- 8 -	July 15, 2025

(S.D.N.Y. 2016) (staying payment of fine under Fed. R. Crim. P. 38(e) after granting bail pending appeal).

> 2. *Mr. Halligan's Interest in Individual and Joint Financial Accounts Would Be Transferred to the Clerk of Court and Held in Escrow Pending Appeal*

Under the proposed order, Mr. Halligan would transfer to the Clerk of Court to be held subject to the escrow arrangement described above his interests in ***all of the bank accounts and brokerage accounts that he holds individually or jointly with his wife, as well as his IRA,*** subject only to the following limitations:

> (i) prior to the transfer of these assets, he would be permitted to pay non-refundable legal fees to his appellate counsel for his legal fees in connection with his appeal in this matter. These legal fees are set forth in the engagement letter from this firm to Mr. Halligan, dated July 8, 2025, and have not yet been paid pending approval from this Court, *see* Ex. A. at ¶ 2.a.ii; and
>
> (ii) he would be permitted to retain $75,000 in one financial account, which amount Mr. Halligan would be allowed to use to pay his family's reasonable education[4] and medical expenses as well as legal disbursements in connection with his appeal in this matter. Mr. Halligan would also use this account to deposit his employment income (a percentage of which, as discussed below, would be paid as restitution). If Mr. Halligan's appeal is unsuccessful, any remaining balance in this account would be transferred to the Clerk of Court within 30 days of the issuance of the mandate, *see* Ex. A at ¶ 2.a.iii-iv.

[REDACTED] Following the transfer of his interests in these accounts to the government, Mr. Halligan's only financial account of any type would be the one account described above, with its permitted initial retained balance of **$75,000**.

> 3. *Proceeds from the Sale of the Halligan Family's Vehicles Would Be Held in Escrow Pending Appeal*

As explained in our February 3, 2025 submission, it remains Mr. Halligan's intention to sell most of his family's vehicles to satisfy the financial obligations arising from

---

[REDACTED footnote]

Friedman Kaplan Seiler & Adelman LLP            4931-0774-6646.2

Hon. Alvin K. Hellerstein - 9 - July 15, 2025

his criminal conviction. Accordingly, the restitution order proposed here would require Mr. Halligan to sell all but three of the family vehicles and transfer the proceeds from these sales to the Clerk of Court, subject to the same term of escrow as the accounts described above – i.e., the amounts will be held by the Clerk of Court and will not be distributed to victims pending the determination of Mr. Halligan's expedited appeal. See Ex. A at ¶ 2.b.

The only vehicles that would *not* be sold, and which would be excluded from any restitution order, are the vehicles that Mr. Halligan's family members regularly use for necessary transportation to work and school. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

### 4. Mr. Halligan Would Remit 15% of His Monthly Gross Income, To Be Held in Escrow Pending Appeal

The proposed order provides that Mr. Halligan will remit 15% of his gross employment income to the government to be held in escrow pending the determination of his appeal. See Ex. A at ¶ 2. Mr. Halligan would make the first such payment on August 5, 2025, and would continue to make such payments each month based on his prior month's income. *Id.*

Mr. Halligan will honor this obligation through his employment as a case manager for a firm that provides support and counseling to individuals swept up in the criminal justice system. In this role, Mr. Halligan is able to apply his experiences in this case, along with his life experiences, to help his clients and their families as they proceed through the justice process, including from post-arrest counseling, incarceration preparation, support during incarceration, and support and counseling during the reentry period following release. His income in this role is variable dependent on the number of cases and consultations he participates in each month.

Additionally, the proposed restitution order requires that Mr. Halligan's monthly income remissions continue during his period of incarceration. While these



Hon. Alvin K. Hellerstein — 10 —                    July 15, 2025

remissions will likely be modest, they reflect Mr. Halligan's commitment to honor his obligations including in prison in the event he does not prevail on his appeal.



\* \* \*

Hon. Alvin K. Hellerstein — - 11 - — July 15, 2025

      For the foregoing reasons, and all of the reasons addressed in our prior submissions to this Court which are incorporated here by reference, we respectfully request that the Court enter the proposed restitution order in the form attached hereto as Exhibit A.

      Respectfully submitted,

*[signature]*

      Mary E. Mulligan

Enclosure (Exhibit A)

cc: All Counsel (by ECF and E-Mail, with enclosure)